## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LANNETT COMPANY INC.,

*Plaintiff,*

v.

KV PHARMACEUTICALS,
DRUGTECH CORPORATION, and
THER-RX CORPORATION,

*Defendants.*

KV PHARMACEUTICAL COMPANY,
THER-RX CORP., and DRUGTECH
CORP.,

*Counterclaim-Plaintiffs,*

v.

LANNETT COMPANY, INC.,

*Counterclaim-Defendant.*

Civil Action No. 08-338

# REDACTED
# PUBLIC VERSION

---

## OPENING BRIEF IN SUPPORT OF
## COUNTERCLAIM-PLAINTIFFS' MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

*Of counsel:*

Richard L. DeLucia
Howard J. Shire
Elizabeth A. Gardner
Charles A. Weiss
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Frederick L. Cottrell, III (#2555)
Chad M. Shandler (#3796)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street, P.O. Box 551
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
shandler@rlf.com

*Attorneys for Counterclaim-Plaintiffs
KV Pharmaceutical Company, Ther-Rx Corp.,
and Drugtech Corp.*

**TABLE OF CONTENTS**

Page

TABLE OF DECLARATIONS .................................................................................. iii

TABLE OF AUTHORITIES ..................................................................................... iv

STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ..................................... 1

SUMMARY OF ARGUMENT .................................................................................... 3

     A.　**REDACTED**

                                         ...... 3

     B.　All Four Requisite Factors Support a TRO and Preliminary Injunction ................ 5

          1.　Ther-Rx Is Likely To Prevail on the Merits of its Patent and Trademark Claims ................................................................................. 5

               a.　Lannett's Product Clearly Infringes Ther-Rx's Patent ................... 5

               b.　Ther-Rx Is Likely To Prevail on Patent Validity and Enforceability ....................................................................... 5

               c.　Ther-Rx Is Likely To Prevail on its Trademark Claims ................ 6

          2.　**REDACTED**

                                           ............ 7

          3.　The Balance of Hardships Tips Decidedly in Favor of Ther-Rx ................ 8

          4.　The Public Interest Would Be Served by Entry of an Injunction ............... 8

STATEMENT OF FACTS ......................................................................................... 8

ARGUMENT ........................................................................................................ 11

I.　Ther-Rx Is Entitled to a Temporary Restraining Order Pending Adjudication of its Motion for a Preliminary Injunction .................................................................. 12

     A.　Ther-Rx Is Entitled to a TRO in Light of Lannett's Blatant and Intentional Misappropriation and Misuse of the PrimaCare Trademarks ................................ 12

B.     Ther-Rx Is Entitled to a TRO in Light of Lannett's Clear Patent
       Infringement.................................................................................... 15

II.    Ther-Rx Is Likely To Succeed on the Merits Because Lannett's Generic of
       PrimaCare ONE Clearly Infringes Patent Claims as to Which Lannett Has Not
       Stated Grounds for Invalidity or Unenforceability as well as Two Registered
       Trademarks ..................................................................................... 15

       A.     Lannett's Product Plainly Infringes the '666 Patent.......................... 15

       B.     Ther-Rx Is Likely To Prevail on the Issue of Validity Because Lannett Has
              Not Stated Grounds of Invalidity or Unenforceability of the '666 Patent............. 19

       C.     Ther-Rx Is Likely To Prevail on the Merits of its Claims for Trademark
              Infringement.............................................................................. 21

              1.     Entitlement to Protection ...................................................... 22

              2.     Likelihood of Confusion........................................................ 22

                     a.     The Marks Are Identical ............................................... 24

                     b.     Ther-Rx's Marks Are Very Strong ................................. 25

                     c.     Factors Indicative of the Care and Attention Expected of
                            Consumers................................................................. 25

                     d.     Lannett Has Acted in Bad Faith, Intending To Cause
                            Confusion and Trade Off of the Goodwill and Reputation
                            of Ther-Rx's Market-Leading Brand .............................. 26

                     e.     Bridging the Gap ......................................................... 27

                     f.     The Parties' Products Are Marketed Through the Same
                            Channels to the Same Consumers ................................. 27

                     g.     Actual Confusion ........................................................ 27

                     h.     The Parties' Products Are Directly Competitive ............. 27

III.                             **REDACTED**                               ................... 28

       A.
                                                    ........................................... 31

i

B.   Continued Presence in the Market of Lannett's Inferior Infringing Product Will Damage the Value and Reputation of the PrimaCare ONE Product and Ther-Rx's Registered Trademarks ................................................................. 32

C.   Even if Ther-Rx' Harm Were Potentially Compensable by Money Damages, It Is Doubtful that Lannett Has Sufficient Resources To Pay a Large Judgment ................................................................................................. 33

IV.   The Balance of Hardships Favors Ther-Rx ........................................................ 35

V.   The Public Interest Favors Grant of a Preliminary Injunction To Prevent Confusion of PrimaCare ONE with Lannett's Inferior Product ......................... 36

CONCLUSION ............................................................................................................. 39

## TABLE OF DECLARATIONS

| Title of Declaration: | Referred to as: |
| --- | --- |
| Declaration of Harry G. Brittain (with Exhibits A and B) | "Brittain Decl." |
| Declaration of Scott E. Goedeke (with Exhibits C-G) | "Goedeke Decl." |
| Declaration of Frederick Cottrell (with Exhibits H-N) | "Cottrell Decl." |
| Declaration of Jacqueline N. Gutmann, M.D. (with Exhibit O) | "Gutmann Decl." |
| Declaration of Maurice Jordan | "Jordan Decl." |
| Declaration of Bernadette Vitali, R.Ph. | "Vitali Decl." |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,
  237 F.3d 198 (3d Cir. 2000).................................................................................. 23

Abbott Labs. v. Andrx Pharms., Inc.,
  473 F.3d 1196 (Fed Cir. 2007).............................................................................. 29

Atlas Powder Co. v. Ireco Chems.,
  773 F.2d 1230 (Fed. Cir. 1985)............................................................................. 28

Bill Blass, Ltd. v. Saz Corp.,
  751 F.2d 153 (3d Cir. 1984)................................................................................. 36

Bio-Technology General Corp. v. Genentech, Inc.,
  80 F.3d 1553 (Fed. Cir. 1996)................................................................ 28, 29, 30, 31

Calvin Klein Indus., Inc. v. BFK Hong Kong, Ltd.,
  714 F. Supp. 78 (S.D.N.Y. 1989)........................................................................... 23

Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.,
  269 F.3d 270 (3d Cir. 2001)................................................................................. 25

Chere Amie, Inc. v. Windstar Apparel, Corp.,
  191 F. Supp. 2d 343 (S.D.N.Y. 2001)..................................................................... 38

Church of Scientology Int'l. v. Elmira Mission,
  794 F.2d 38 (2d Cir. 1986).................................................................................. 28

Consolidated Cigar Corp. v. Monte Cristi de Tabacos,
  58 F. Supp. 2d 188 (S.D.N.Y. 1999)....................................................................... 27

Cordis Corp. v. Medtronic, Inc.,
  780 F.2d 991 (Fed. Cir. 1985)............................................................................. 34

Demaco Corp. v. F. von Langsdoff Licensing Ltd.,
  851 F.2d 1387 (Fed. Cir. 1988)............................................................................ 20

El Greco Leather Prods. Co. v. Shoe World, Inc.,
  806 F.2d 392 (2d Cir. 1986)........................................................................... 12, 13

Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,
  30 F.3d 466 (3d Cir. 1994).................................................................................. 23

Ford Motor Co. v. Summit Motor Prods., Inc.,
    930 F.2d 277 (3d Cir. 1991)...................................................................................... 24

Forest Labs., Inc. v. Ivax Pharms., Inc.,
    438 F. Supp. 2d 479 (D. Del. 2006) ......................................................................... 20

Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,
    111 F.3d 993 (2d Cir. 1997)...................................................................................... 38

Glaxo Group Ltd. v. Apotex, Inc.,
    No. 00 C 5791, 2002 U.S. Dist. LEXIS 26018, (N.D. Ill. June 10, 2002)........................ 31

Glaxo Group Ltd. v. Apotex, Inc.,
    No. 02-1492, 2003 WL 1918246 (Fed. Cir. Apr. 22, 2003) ........................................ 29, 31

Graham v. John Deere Co.,
    383 U.S. 1 (1966)...................................................................................................... 20

H.H. Robertson Co. v. United Steel Deck, Inc.,
    820 F.2d 384 (Fed. Cir. 1987)................................................................................... 37

Interpace Corp. v. Lapp, Inc.,
    721 F.2d 460 (3d Cir. 1983)...................................................................................... 23

Kos Pharms., Inc. v. Andrx Corp.,
    369 F.3d 700 (3d Cir. 2004)............................................................................... passim

Liquid Glass Enters. v. Porsche AG,
    8 F. Supp. 2d 398 (D.N.J. 1998) ............................................................................... 27

Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,
    799 F.2d 867 (2d Cir. 1986)...................................................................................... 27

McNeil Labs., Inc. v. American Home Prods. Corp.,
    416 F. Supp. 804 (D.N.J. 1976) ................................................................................ 28

Morgenstern Chem. Co. v. G.D. Searle & Co.,
    253 F.2d 390 (3d Cir. 1958)................................................................................ 14, 37

Opticians Ass'n of America v. Independent Opticians of America,
    920 F.2d 187 (3d Cir. 1990)............................................................................ 27, 29, 36

Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,
    143 F.3d 800 (3d Cir. 1998)...................................................................................... 22

Pfizer, Inc. v. Teva Pharms. USA, Inc.,
    429 F.3d 1364 (Fed. Cir. 2005).......................................................................... 29, 36

Polymer Techs., Inc. v. Bridwell,
    103 F.3d 970 (Fed. Cir. 1996)........................................................................... 32

Proctor & Gamble Co. v. Paragon Trade Brands, Inc.,
    989 F. Supp. 547 (D. Del. 1997).................................................................... 20

Roper Corp. v. Litton Sys, Inc.,
    757 F.2d 1266 (Fed. Cir. 1985)..................................................................... 28

S & R Corp. v. Jiffy Lube Int'l, Inc.,
    968 F.2d 371 (3d Cir. 1992)............................................................ 12, 23, 28, 29

Sanofi-Synthelabo v. Apotex, Inc.,
    470 F.3d 1368 (Fed. Cir. 2006)................................................................. passim

Sanofi-Synthelabo v. Apotex, Inc.,
    488 F. Supp. 2d 317 (S.D.N.Y. 2006)......................................................... 30, 36

Shire US Inc. v. Barr Labs. Inc.,
    329 F.3d 348 (3d Cir. 2003)........................................................................ 11

Smith Int'l, Inc. v. Hughes Tool Co.,
    718 F.2d 1573 (Fed. Cir. 1983).................................................................... 37

Taj Mahal Enters. v. Trump,
    745 F. Supp. 240 (D.N.J. 1990) .................................................................. 24

Tefal, S.A. v. Products Int'l Co.,
    529 F.2d 495 (3d Cir. 1976)........................................................................ 28

Tootsie Roll Indus. Inc. v. Sathers Inc.,
    666 F. Supp. 655 (D. Del. 1987)............................................................. 12, 15

Versa Prods., Inc. v. Bifold Co. (Mfg.) Ltd.,
    50 F.3d 189 (3d Cir. 1995).......................................................................... 26

Voice Sys. & Servs. v. VMX, Inc.,
    Civ. No. 91-C-88-B, 1992 WL 510121 (N.D. Okla. Nov. 5, 1992) .................. 34

Warner-Lambert Co. v. Northside Dev. Corp.,
    86 F.3d 3 (2d Cir. 1996)............................................................................. 13

Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.,
    698 F.2d 862 (7th Cir. 1983) ...................................................................... 12

WMS Gaming, Inc. v. Int'l Game Tech.,
    184 F.3d 1339 (Fed. Cir. 1999)................................................................... 20

**Statutes**

15 U.S.C. § 1065 ...................................................................................................................... 22

15 U.S.C. § 1115(b) ................................................................................................................. 22

Lanham Act § 15 ...................................................................................................................... 22

Lanham Act § 33(b) .................................................................................................................. 22

**Other Authorities**

3 J. Thomas McCarthy, <u>McCarthy on Trademarks</u>
    <u>and Unfair Competition</u> § 23:32 (4th ed. 2003) ................................................................. 26

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

Counterclaim-Plaintiffs KV Pharmaceutical Company ("KV"), Ther-Rx Corporation ("Ther-Rx"), and Drugtech Corporation ("Drugtech") (collectively, "Movants") respectfully submit this brief in support of their motion for a temporary restraining order and preliminary injunction to prevent counterclaim-defendant Lannett Company Inc. ("Lannett") from irreparably harming them by continuing to sell its knock-off of Movants' top-selling prescription prenatal vitamin PrimaCare ONE®. The Lannett product infringes at least one patent and two registered trademarks (one incontestable) protecting this product,

## REDACTED

PrimaCare ONE is the top-selling prescription prenatal vitamin in the United States, and is Ther-Rx's flagship product. PrimaCare ONE is unique in several respects, including its mixture of essential fatty acids ("EFAs") in addition to vitamins and minerals. The EFAs are highly purified from fish oil, and include the omega-3 fatty acids DHA and EPA. Because fish-oil supplements can have unpleasant tastes or odors and may cause indigestion or belching—particular problems with pregnant women who frequently experience nausea and heightened sensitivity to strong smells or tastes—PrimaCare ONE is formulated to be well tolerated for taste,

---

[1]    The marks PrimaCare ONE® and PrimaCare® are registered to Drugtech and exclusively licensed to Ther-Rx. Both Ther-Rx and Drugtech are wholly owned subsidiaries of KV. For convenience, this brief will generally refer to Ther-Rx because it sells PrimaCare ONE® and PrimaCare® and is most closely associated with these products in the eyes of physicians and patients. For easier reading, the registered trademark symbol will generally be omitted.

Movants have filed herewith their counterclaims against Lannett setting forth the causes of action on which this motion is based. They will answer or move in response to Lannett's Amended Complaint within the time provided by the civil rules.

smell, and overall digestive tolerability. For pregnant women, these are not issues of mere convenience: they drive the product's ability to be taken day-after-day for months at a time (during a time that is self-evidently important for both the expectant mother and her developing baby), and are critical to the product's ability to garner and maintain acceptance among both the women who take it and the doctors who prescribe it (who have a choice among competing products).

Lannett's product is a poorly manufactured, blatantly infringing knock-off of PrimaCare ONE. Relevant to this motion, the Lannett product:

- clearly infringes a patent that covers the formulation of PrimaCare ONE;

- outrageously infringes the federally registered trademark PrimaCare ONE by printing that trademark three times on the bottle that is dispensed to patients, in large type, red ink, and with a stylized font very similar to that used by Ther-Rx (see infra at 6 for a comparison, and Goedeke Decl.,[2] Ex. G, for photos);

- positions these reproductions of the PrimaCare ONE trademark at the top of the bottle, so that they will remain exposed and visible to patients even after the pharmacy applies its own label—which is likely to obscure Lannett's name— leading women to believe that they are actually receiving PrimaCare ONE;

- copied the distinctive color of the PrimaCare ONE gel caps (deep purple, see Goedeke Decl., Ex. G, for photos) to further deceive women into believing that they are taking PrimaCare ONE when they are not;

- has gel caps that are irregular, misshapen, and leaky, resulting in a strong smell of fish when the bottle is opened and the transfer of smelly fish oil to the patients' fingers when they handle the gel caps (see Exhibit G for photos), severely devaluing PrimaCare ONE's reputation for quality and tolerability; and

- has less than half the DHA content of PrimaCare ONE when the Lannett product was tested by Ther-Rx (109 mg of DHA in the Lannett product versus 260 mg of DHA in PrimaCare ONE).

---

[2]     The declarations filed in support of this motion are listed in a table following the Table of Contents on page iii supra.

## REDACTED

Lannett lacks the financial resources to pay damages to which Ther-Rx would be entitled after protracted litigation, Ther-Rx seeks a TRO and preliminary injunction before the marketplace—which in the field of prescription products is heavily influenced by how health insurance plans categorize the products for reimbursement—adjusts to a world in which a generic for PrimaCare ONE is the norm and PrimaCare ONE itself is relegated to the sidelines.

### SUMMARY OF ARGUMENT

**A.**

## REDACTED

A TRO and preliminary injunction are urgently needed to prevent continued sale and distribution of Lannett's infringing product

## REDACTED

At least one patent and two registered trademarks are plainly infringed by Lannett's product.  Lannett identifies no grounds in its amended complaint on which that patent is invalid or unenforceable, and the registered trademark PRIMACARE has become incontestable.

Lannett's product is inferior in several respects to PrimaCare ONE.  For example, the infringing Lannett product:

- smells strongly of fish and its gel caps leak their oily contents.  For women who are already coping with the digestive discomforts of pregnancy such as morning sickness and heartburn, the foul smell and taste of the Lannett product would likely be intolerable.

3

- does not match the ingredients in PrimaCare ONE. Among other deficiencies, an assay of the Lannett product reveals that it contains only about 109 mg of the important omega-3 fatty acid DHA, as compared to 260 mg of DHA in PrimaCare ONE. The Lannett product is also mislabeled and misleading as to its source of vitamin C. Unlike the fishy odor and smelly and leaking gel caps—which can be immediately detected by the consumer—these deficiencies are hidden.

- has larger capsules that are irregularly shaped, making them harder to swallow and likely to cause concern among women taking them. But they are of the same distinctive purple color as PrimaCare ONE, which in combination with Lannett's blatant trademark infringement, is likely to lead consumers to believe that the misshapen, overly large, and smelly Lannett gel caps are PrimaCare ONE.

As explained below, prescription prenatal vitamins (branded and generic) are not approved by the FDA in the manner that the agency regulates most pharmaceuticals. The FDA has not reviewed Lannett's product for safety, efficacy, or similarity to PrimaCare ONE. Thus, in addition to the familiar market factors that permit generics to capture rapidly the market from branded innovators—which have been found in many cases to support preliminary injunctions against generics—this case presents an even more serious situation in which the demonstrably inferior Lannett product may also **REDACTED** by failing to provide the benefits of PrimaCare ONE and causing side effects such as reactions to the unpleasant fishy odor and taste that are erroneously attributed to PrimaCare ONE.[3]

---

[3]    As noted infra n. 7, other patents are also infringed by the Lannett product and are included in the counterclaim, but for simplicity, this motion is based only on the '666 patent.

4

B.    **All Four Requisite Factors Support a TRO and Preliminary Injunction**

1.    **Ther-Rx Is Likely To Prevail on the Merits of its Patent and Trademark Claims**

a.    **Lannett's Product Clearly Infringes Ther-Rx's Patent**

The claims of U.S. Patent 6,576,666 ("the '666 patent") are directed primarily to formulations of prenatal supplements with an innovative combination of EFAs, vitamins, and minerals. As set forth below, Lannett's product plainly meets every element of at least claims 1, 21, and 22. Infra at 15-19.

b.    **Ther-Rx Is Likely To Prevail on Patent Validity and Enforceability**

Lannett's complaint purports to plead inequitable conduct with respect to a later patent in the '666 patent family, i.e., U.S. Patent 7,112,609 ("the '609 patent"), which is a continuation-in-part of the '666 patent. However, Lannett's inequitable conduct case (which is without any merit in any event) is limited to the '609 patent because it rests on prior art that was mailed in by a lawyer representing an unknown client well after the '666 patent issued. Thus, while Lannett alleges that Ther-Rx's outside patent attorney became aware of the supposedly material prior art yet failed to cite it during prosecution of the '609 patent, it does not and cannot contend that he (or others) knew of this art during prosecution of the '666 patent, which had issued years earlier.

Accordingly, with respect to the clearly infringed '666 patent, Lannett has not stated a case of unenforceability. And because its complaint does not show how or why the '666 patent is invalid, Ther-Rx properly rests on the presumption of validity to establish likelihood of success. Further, as set forth below, (i) secondary considerations such as commercial success of PrimaCare ONE and copying by others (Lannett) give added weight to the nonobviousness of the

5

asserted claims; (ii) the opinion of Ther-Rx's pharmaceutical expert is that none of the references that Lannett attached to its amended complaint, nor the prior art of record during prosecution of the '666 patent or its parent, render claims 1, 21, or 22 of the '666 patent invalid, Brittain Decl. ¶¶ 36-47; and (iii) the allowance of similar claims by the European Patent Office and related claims by the Australian Patent Office are further support of validity.

        **c.**     <u>**Ther-Rx Is Likely To Prevail on its Trademark Claims**</u>

The key elements of trademark infringement here are that: (i) the PrimaCare® and/or PrimaCare ONE® marks are entitled to protection; and (ii) there is a likelihood of confusion between Lannett's product and the trademarks as used or intended to be used in the marketplace. <u>See</u> <u>Kos Pharms., Inc. v. Andrx Corp.</u>, 369 F.3d 700, 709 (3d Cir. 2004). Examination of Lannett's use of Ther-Rx's marks on the label of its product, compared to the legitimate mark, reveals inescapable confusion.

Repeated three times around the top of the bottle of Lannett's product:



Compared to the type face used by Ther-Rx for the bona fide PrimaCare ONE® mark:

## *PrimaCare*° ONE

As set forth below, the small "Compare to the active ingredients in" statement on Lannett's label utterly fails to eliminate the likelihood of confusion, and in fact appears clearly calculated to cause and exacerbate confusion. <u>Infra</u> at 9-10.

6

**2.**

## REDACTED

Irreparable harm should be presumed given Ther-Rx's compelling infringement case and Lannett's lack of a meaningful invalidity or unenforceability case with respect to the '666 patent.

## REDACTED

3.     **The Balance of Hardships Tips Decidedly in Favor of Ther-Rx**

**REDACTED**

Lannett will not

be similarly harmed because it has not yet developed the market, and any harm that Lannett does

incur would be entirely of its own making.

4.     **The Public Interest Would Be Served by Entry of an Injunction**

Lannett's trademark infringement is detrimental to the public interest because it will

cause confusion among consumers, e.g., a woman who thinks she is getting the trusted brand

PrimaCare ONE would instead be getting the inferior Lannett knock-off. With respect to the

patent claim, the public interest favors entry of an injunction to protect Ther-Rx's legitimate

patent rights against Lannett's wanton infringement.

## STATEMENT OF FACTS

Ther-Rx has developed a successful line of prescription prenatal vitamins, the most

successful of which is PrimaCare ONE. Indeed, PrimaCare ONE, which entered the market in

April 2004, is the top prescription prenatal vitamin sold in the United States,     **REDACTED**

Goedeke Decl. ¶¶ 6, 21-22.

PrimaCare ONE contains a unique and desirable blend of EFAs, vitamins, and minerals.

Id. at ¶¶ 5, 11, 18, and Ex. C. EFAs support improved health, including support of increased

cognitive and visual development and functioning in babies, potentially decreasing the rate of

premature births, and supporting increased cardiovascular health in mothers. Id. at ¶ 5.

8

PrimaCare ONE was the first product of its type to successfully combine EFAs along with vitamins and minerals in a single gel cap. Id. at ¶ 7.[4]  Following its introduction, a number of other manufacturers introduced single-dose prenatal supplements with EFAs, but none have copied the specific formulation of PrimaCare ONE. Id. at ¶ 11.

On Friday, June 6, 2008, counsel for Lannett sent a letter to KV demanding that it refrain from asserting its patents for PrimaCare ONE. Id. at ¶ 33, and Ex. F. That same day, Lannett filed its complaint in the instant case. Before those events, Ther-Rx had no indication or notice that Lannett might be planning to introduce a knock-off of PrimaCare ONE. Id. at ¶ 33.

Having received this letter (and complaint) from Lannett, Ther-Rx began investigating Lannett's activities. On Wednesday, June 11, Ther-Rx first received specimens of Lannett's product and its package insert. Id. at ¶ 34, and Ex. G. As can be seen, the Lannett product has a repeating band along the top of the bottle exhorting the reader to "compare to the active ingredients in PrimaCare ONE." But the "compare to" statement is in small blue type, while the phrase "PrimaCare ONE" is in large red type and duplicates the font and style used on the PrimaCare ONE packaging and advertising materials. Indeed, unlike the sort of comparative statements seen on store-brand products—which consistently feature the store's own name and or house mark most prominently—on Lannett's bottle, "PrimaCare ONE" is far more prominent than Lannett's own name.

---

[4]    Prior to PrimaCare ONE, its predecessor PrimaCare®—also a Ther-Rx product—was the first product of its type to provide EFAs in a prescription prenatal supplement. Unlike PrimaCare ONE, which combines all ingredients in a single gel cap, PrimaCare is a dual-dose per day formulation, with solid tablets containing vitamins and minerals and gel caps containing EFAs. Goedeke Decl. ¶ 9.

Further, from some directions the only indicia visible on the bottle is the "PrimaCare

ONE" band, and when a retail pharmacy puts its own adhesive label on the bottle before

dispensing it to a patient, the "PrimaCare ONE" band will be the <u>only</u> part of the original label

still visible. Vitali Decl. ¶ 18; Goedeke Decl. ¶ 53. The predominance of "PrimaCare ONE" on

the Lannett bottle is shown in the photos below:



Goedeke Decl., Ex. G at 1-3.

This Lannett product is not an FDA-approved generic of the type that the Court knows so

well from Hatch-Waxman cases. In Hatch-Waxman cases, a company seeking to launch an

approved generic must file an Abbreviated New Drug Application ("ANDA"). If the generic

company wishes to launch before expiration of patents listed in the Orange Book, it must file a

Paragraph IV certification and give notice to the New Drug Application ("NDA") holder. If suit

10

is filed within 45 days, an automatic stay is triggered that generally permits adjudication of the controversy (at least at the district court level) before the generic can be launched.

No such FDA approval is required for a generic prenatal vitamin. Rather than file an ANDA, the generic manufacturer simply undertakes to make a formulation that may be considered substitutable for the branded product.[5] Private companies that collect information on prices and availability of drugs compare the label of the proposed generic to the label to the branded product. If they believe the labels meet their criteria for substitution, they list the branded product as "multisource" and indicate the names of the other companies that can also provide such a product. Goedeke Decl. ¶ 35.

Further, because a company seeking to introduce a generic prenatal vitamin does not submit an ANDA or a patent certification, there is no mechanism for advance notice to the patent holder and no provision for an automatic stay. Thus, a TRO and preliminary injunction are the only means available in such situations, which is why they are required in this case to halt Lannett's infringement.

## ARGUMENT

The familiar four-part test governs motions for preliminary injunctions on both patent and trademark claims: (i) a reasonable likelihood of success on the merits; (ii) irreparable harm if an injunction is not granted; (iii) the balance of hardship; and (iv) the public interest. Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1374 (Fed. Cir. 2006) (patent); Shire US Inc. v. Barr Labs. Inc., 329 F.3d 348, 352 (3d Cir. 2003) (trademark). The same standard applies to the grant

---

[5]    Indeed, no ANDA is possible for generic products of this type in part because the branded products are themselves not the subject of NDAs or FDA approval.

of a TRO, the sole difference being the duration of the order. <u>Tootsie Roll Indus. Inc. v. Sathers</u>
<u>Inc.</u>, 666 F. Supp. 655, 658 (D. Del. 1987) (applying four-part test and granting TRO).

Ther-Rx easily satisfies these criteria because (i) Lannett's infringement of the '666
patent is self-evident (and seemingly admitted), and it has failed to state a challenge to validity;
(ii) Lannett is marketing a directly competing but notably inferior product with an exhortation
(albeit unlawfully designed to confuse) printed right on the label for the consumer or dispenser to
"compare to the active ingredients in PrimaCare ONE," the predictable result being that
Lannett's generic will be dispensed in place of PrimaCare ONE;        **REDACTED**
                                    (iii) the harm to Ther-Rx from the loss of its market-leading position for
PrimaCare ONE would vastly exceed any "harm" to Lannett from a delay in its ability to
continue sales of its knock-off product; and (iv) because Lannett's product is inferior to
PrimaCare ONE, the public interest favors enforcement of Ther-Rx's trademark and patent rights.

I.    **Ther-Rx Is Entitled to a Temporary Restraining Order Pending**
      **Adjudication of its Motion for a Preliminary Injunction**

   A.    **Ther-Rx Is Entitled to a TRO in Light of Lannett's Blatant and**
         **Intentional Misappropriation and Misuse of the PrimaCare**
         **Trademarks**

"[T]rademark infringement amounts to irreparable injury as a matter of law." <u>S & R</u>
<u>Corp. v. Jiffy Lube Int'l, Inc.</u>, 968 F.2d 371, 378 (3d Cir. 1992). Courts readily issue preliminary
relief against a violation of the trademark laws because the trademark holder, of course, cannot
control the quality of the infringer's goods. <u>El Greco Leather Prods. Co. v. Shoe World, Inc.</u>,
806 F.2d 392, 395 (2d Cir. 1986) ("actual quality of the goods is irrelevant; it is the control of
quality that a trademark holder is entitled to maintain"); <u>Wesley-Jessen Div. of Schering Corp. v.</u>
<u>Bausch & Lomb, Inc.</u>, 698 F.2d 862, 867 (7th Cir. 1983). "Distribution of a product that does

not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image." Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 6 (2d Cir. 1996) (affirming grant of preliminary injunction against distributor of stale cough drops); El Greco, 806 F.2d at 395 ("One of the most valuable and important protections afforded by the Lanham Act is the right to control the quality of the goods manufactured and sold under the holder's trademark.").

Ther-Rx seeks a TRO for precisely these reasons: to prevent Lannett from further distributing its knock-off supplements and prevent certain public confusion if Lannett is permitted to continue its unauthorized and intentional exploitation of the PRIMACARE marks.

There is also a strong public interest in protecting pregnant women, their developing unborn children, and nursing mothers and infants from Lannett's confusingly similar but demonstrably inferior version of PrimaCare ONE. First, Lannett's product does not have the same mixture of EFAs as PrimaCare ONE. Specifically, PrimaCare ONE contains 260 mg of DHA and 40 mg of EPA. Goedeke Decl. ¶ 57. An assay of Lannett's product shows that it has only 109 mg DHA and 175 mg EPA. Jordan Decl. ¶ 7; Goedeke Decl. ¶ 59.

Second, inspection of the respective products reveals the Lannett product's manifest inferiority. Upon opening bottles of the Lannett product, one is struck by a smell of fish. Vitali Decl. ¶ 30; Goedeke Decl. ¶ 54. This smell would be totally unacceptable in a supplement used by pregnant women, who have a heightened sensitivity to odor-induced nausea. Gutmann Decl. ¶ 8; Vitali Decl. ¶¶ 27-28; Goedeke Decl. ¶¶ 19, 54. By contrast, PrimaCare ONE is made with a strong gel cap and does not have a detectable smell of fish. Vitali Decl. ¶¶ 30-31; Goedeke Decl. ¶ 19. Additionally, Lannett's gel cap is also larger than PrimaCare ONE. Vitali Decl. ¶ 31, Goedeke Decl, Ex. G. The combination of a larger gel cap and the fishy smell may greatly

13

reduce a woman's compliance, which can, in turn, deny her unborn child critical nutrients required for optimum development. Vitali Decl. ¶¶ 28, 31; see also Gutmann Decl. ¶ 11.[6]

Once the pharmacy label is placed on the bottle for Lannett's product, the faint, barely legible Lannett mark may be completely covered. Vitali Decl. ¶ 18; Goedeke Decl. ¶ 53. When this occurs, the only source-identifying mark on the Lannett bottle dispensed to the patient is a copy of the PrimaCare ONE stylized mark, virtually ensuring that the inferior Lannett product will be associated with PrimaCare ONE. Id.

Moreover, if the Lannett product is classified as a generic for PrimaCare ONE, pharmacies have a strong incentive to substitute Lannett's product when an expecting mother hands her pharmacist a prescription for PrimaCare ONE. Vitali Decl. ¶¶ 20-23; Goedeke Decl. ¶ 42. It follows that women taking Lannett's product will receive a substantially lower amount of DHA as compared to the PrimaCare ONE product, while under the false impression that they are taking the trusted, physician-preferred PrimaCare ONE product with its much larger amount of DHA. Goedeke Decl. ¶¶ 57-59. Moreover, "[p]revention of confusion and mistakes in medicines is too vital to be trifled with" because "[c]onfusion in such products have serious consequences for the patient." Morgenstern Chem. Co. v. G.D. Searle & Co., 253 F.2d 390, 393 (3d Cir. 1958).

---

[6]    A further offense to the pregnant woman is that the Lannett gel caps leak, Goedeke Decl. ¶ 54, ensuring that anyone handling them would be subjected to the smell of fish after handling the gel cap, as it is difficult to rid one's hands of this foul smell. The unsuspecting pregnant woman will mistakenly believe that the substandard product is PrimaCare ONE, the product her doctor prescribed.

**B.    Ther-Rx Is Entitled to a TRO in Light of Lannett's Clear Patent Infringement**

The standard for grant of a TRO is the same as for grant of a preliminary injunction.

Tootsie Roll Indus., 666 F. Supp. at 658 ("courts apply the standards for granting a preliminary

injunction in determining the propriety of issuing a temporary restraining order"). Ther-Rx's

claim of patent infringement is strong, infra at 15-19, and showing of irreparable harm is

compelling, infra at 28-34.    **REDACTED**

**II.    Ther-Rx Is Likely To Succeed on the Merits Because Lannett's Generic of PrimaCare ONE Clearly Infringes Patent Claims as to Which Lannett Has Not Stated Grounds for Invalidity or Unenforceability as well as Two Registered Trademarks**

**A.    Lannett's Product Plainly Infringes the '666 Patent**

The claims of the '666 patent are primarily directed to the innovative formulations of

advantageously balanced EFAs with vitamins and minerals. Lannett's knock-off of PrimaCare

ONE unquestionably infringes at least three claims of this patent.[7]

Indeed, Lannett's appears to admit infringement in its Amended Complaint. First,

Lannett alleges that "The KV Patents . . . prevent Lannett and other competitors from introducing

---

[7]    The '666 patent is a continuation of U.S. Patent No. 6,258,846 ("the '846 patent"), the claims of which are primarily directed to methods of supplementing the nutritional status of pregnant and lactating women by using such formulations. A third patent, the '609 patent, is a CIP of the '666 patent.

The '846 and '609 patents are also infringed by Lannett's product, and they are included in Ther-Rx's counterclaim for infringement. However, in the interest of narrowing the issues for this motion, and because there are ample grounds to grant the preliminary injunction based on the '666 patent, this motion is limited to the '666 patent.

Further, although Lannett's allegation of inequitable conduct is wholly without merit, there is no reason to consider that matter now because it has no bearing on the '666 patent or on Ther-Rx's entitlement to a preliminary injunction based on that patent.

15

their competitive multivitamin/mineral and omega-3 fatty acid supplementation products in competition with the KV Defendants' product, PrimaCare ONE[TM]." (D.I. 4 ¶ 12.) Because a patent cannot prevent a <u>noninfringing</u> product from being introduced into the marketplace, Lannett's allegation is tantamount to an admission of infringement.[8]

Second, Lannett's count for a declaratory judgment of noninfringement alleges only that it will not infringe because the patents-in-suit "have failed to comply with the requirements of Sections 102 and 103 of Title 35 of the United Stated [sic] Code, and other relevant sections of Title 35." (D.I. 4 ¶¶ 25-26.) It does not allege that its knock-off lacks an element of every claim of the patents, and certainly does not identify with specificity any particular element that cannot be found in its product.

In any event, Lannett plainly infringes the '666 patent. Claims 1, 21, and 22 of the '666 patent are reproduced below, followed by a table prepared by Ther-Rx's expert Dr. Brittain, showing that each element of these claims is found in Lannett's product. There is no question that the product infringes at least these claims, and at minimum, Ther-Rx surely has at least a likelihood of success on this issue.

---

[8] Lannett is properly held to its statement even though for at least two reasons it is legally incorrect. First, absent a preliminary injunction, a competitor that is prepared to run the risk of infringement is <u>not</u> stopped by the patents from commencing sales. Because the products at issue are not listed in the Orange Book and not within the ANDA process, there is no 30-month stay of approval as in Hatch-Waxman cases. Indeed, under the regulatory scheme that applies to prenatal vitamins, Lannett does not need FDA approval to start selling its product or to induce pharmacists to fill prescriptions for PrimaCare ONE with its knock-off.

Second, the claims of Ther-Rx's patents do not embrace any and all formulations of prenatal vitamins containing EFAs, and there are other prescription prenatal supplements that contain EFAs (just not with the same formulation as PrimaCare ONE). Goedeke Decl. ¶ 11.

1.    A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-fed by the woman, which comprises:

    a)    about 10 mg to 100 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof;

    b)    about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof;

    c)    about 10 mg to 125 mg of a vitamin $B_6$ compound or derivative thereof;

    d)    about 0.1 mg to 3 mg of a folic acid compound or derivative thereof;

    e)    about 100 mg to 2,000 mg of a calcium compound or derivative thereof;

    f)    about 25 mg to 500 mg of a vitamin C compound or derivative thereof;

    g)    about 10 mg to 400 mg of a vitamin E compound or derivative thereof; and

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10, said weight ratio specifically formulated to enrich the breast milk of the woman to optimize neurological development of an infant breast-fed by the woman.

21.    The composition of claim 1, additionally comprising a vitamin compound selected from the group consisting of a vitamin A compound, a B complex vitamin compound, a vitamin D compound, and combinations thereof.

22.    The composition of claim 1, further comprising a biologically-acceptable mineral compound which is iron.

| Claim 1 of U.S. Patent 6,576,666 | Lannett's infringing product |
| --- | --- |
| a) about 10 mg to 100 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof | 30 mg of linoleic acid plus 30 mg of linolenic acid, for a total of 60 mg of the first fatty acid |

17

| Claim 1 of U.S. Patent 6,576,666 | Lannett's infringing product |
|---|---|
| b) about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof | 300 mg of omega-3 fatty acid |
| c) about 10 mg to 125 mg of a vitamin $B_6$ compound or derivative thereof | 25 mg of vitamin $B_6$ |
| d) about 0.1 mg to 3 mg of a folic acid compound or derivative thereof | 1 mg of folic acid |
| e) about 100 mg to 2,000 mg of a calcium compound or derivative thereof | 150 mg of calcium or 374.6 mg of calcium carbonate |
| f) about 25 mg to 500 mg of a vitamin C compound or derivative thereof | 25 mg of vitamin C or 27.9 mg of calcium ascorbate |
| g) about 10 mg to 400 mg of a vitamin E compound or derivative thereof | 30 mg of vitamin E (30 IU = 30 mg) |
| and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10, said weight ratio specifically formulated to enrich the breast milk of the woman to optimize neurological development of an infant breast-fed by the woman | ratio is 60:300 which equals<br><br>1:5 of first fatty acid to second fatty acid |

| Claim 21 of U.S. Patent 6,576,666 | Lannett's infringing product |
|---|---|
| The composition of claim 1, additionally comprising a vitamin compound selected from the group consisting of a vitamin A compound, a B complex vitamin compound, a vitamin D compound, and combinations thereof. | 170 IU of vitamin $D_3$ |

| Claim 22 of U.S. Patent 6,576,666 | Lannett's infringing product |
|---|---|
| The composition of claim 1, further comprising a biologically-acceptable mineral compound which is iron. | 27 mg of iron (20 mg from carbonyl iron and 7 mg from iron amino acid chelate) |

Brittain Decl. ¶¶ 29-35 (infringement analysis and conclusion).

> **B.    Ther-Rx Is Likely To Prevail on the Issue of Validity Because Lannett Has Not Stated Grounds of Invalidity or Unenforceability of the '666 Patent**

Ther-Rx's likelihood of success on the issue of validity is satisfied if (i) Lannett fails to raise a "substantial question" with regard to validity or enforceability, or (ii) Lannett succeeds in raising a substantial question but Ther-Rx demonstrates that the defense lacks "substantial merit." Sanofi-Synthelabo, 470 F.3d at 1374.

Here, apart from a general allegation of invalidity unsupported by any facts, Lannett pleads only that the '609 patent is unenforceable for inequitable conduct. It does not plead that the two earlier patents in this family—which includes the '666 patent—are similarly unenforceable. Nor could Lannett make such an allegation, because with respect to the '609 patent it alleges that Ther-Rx's outside patent counsel learned of the allegedly material prior art in July 2005 (D.I. 4 ¶¶ 38-39), two years after the issuance of the '666 patent in June 2003.

Although the '666 patent is entitled to a presumption of validity and Lannett bears the burden of proving invalidity, there are also affirmative indicia of validity that cannot be disregarded. As noted above, Lannett pled that Ther-Rx's patents have prevented competition. Supra at 14. Experience teaches that in the pharmaceutical industry, challenges to patents are legion and that products protected only by invalid patents are rapidly subject to generic attack. But except for Lannett, that is not the case here even though PrimaCare ONE is the top-selling

19

prescription prenatal vitamin in the U.S. market and has been on the market since April 2004.
Goedeke Decl. ¶¶ 6, 21.

The status of PrimaCare ONE in the marketplace is also objective evidence of
nonobviousness. PrimaCare ONE is the top prescription prenatal supplement in the United
States. Id. at ¶ 6. As an embodiment of the patent, the commercial success of PrimaCare ONE is
an important factor weighing against obviousness. Graham v. John Deere Co., 383 U.S. 1, 17-18
(1966); Demaco Corp. v. F. von Langsdoff Licensing Ltd., 851 F.2d 1387, 1391 (Fed. Cir.
1988); Forest Labs., Inc. v. Ivax Pharms., Inc., 438 F. Supp. 2d 479, 494 (D. Del. 2006), aff'd,
501 F.3d 1263 (Fed. Cir. 2007). And the rapid ascent of PrimaCare ONE to the top of the
market demonstrates not only commercial success, but also a previously unmet need for a single-
dose prenatal supplement with a desirable blend of EFAs. See WMS Gaming, Inc. v. Int'l Game
Tech., 184 F.3d 1339, 1359-60 (Fed. Cir. 1999) (long-felt need as evidence of nonobviousness).

Lannett's attempt to copy PrimaCare ONE—instead of developing a different
formulation of prenatal vitamin with EFAs as has been done by several other companies—is
further evidence of nonobviousness. Forest Labs., 438 F. Supp. 2d at 496; Proctor & Gamble Co.
v. Paragon Trade Brands, Inc., 989 F. Supp. 547, 594 (D. Del. 1997).

Further, Ther-Rx's expert Dr. Brittain has reviewed the references attached as Exhibit 8
to Lannett's Amended Complaint, as well as the prior art that was of record during prosecution
of the '666 patent and its parent. Brittain Decl. ¶¶ 36-37. He has concluded that none of the
references—neither those before the examiner nor those now cited by Lannett—anticipate or
render obvious claims 1, 21, or 22 of the '666 patent. Id. at ¶¶ 46-47. Dr. Brittain's analysis and
explanation, which include demonstrating how the references cited by Lannett do not remotely
disclose the formulation of these claims, are set forth in detail in his declaration. Id. at ¶¶ 38-45.

20

Further still, claims very close to those at issue here were examined and allowed by the European Patent Office ("EPO"), and similar claims were allowed by the Australian Patent Office. Cottrell Decl., Ex. H (granted European patent); Ex. I (granted Australian patent). While not dispositive of questions of validity under United State law, allowance of claims by two other examining authorities is additional evidence of validity.

Finally, the U.S. examiner explained in the Notice of Allowance the grounds for allowing the '666 patent:

> Applicant's amendments distance the instant claims from the prior art compositions. An exhaustive literature search failed to produce any reference to the claimed compounds for the use herein claimed. Although compounds claimed by Applicant, reside in the prior [sic: art], the prior art use fails to state, or suggest those claimed compounds in the amounts, or ratios herein claimed. No suggestion resides in the prior art for optimizing the herein claimed ingredients in the manner claimed.

Cottrell Decl., Ex. N at 2. This decision is entirely consistent with the decisions of the EPO, the Australian Patent Office, the opinion of Dr. Brittain, and the secondary indicia of nonobviousness discussed above.

## C.    Ther-Rx Is Likely To Prevail on the Merits of its Claims for Trademark Infringement

In order to prevail on its claims for trademark infringement and false representation under the Lanham Act and at common law, Ther-Rx must prove, _inter alia_: (i) the PrimaCare and PrimaCare ONE marks are entitled to protection; and (ii) there is a likelihood of confusion between Lannett's products and the Ther-Rx's trademarks. Kos Pharms., 369 F.3d at 708-09. Ther-Rx is likely prevail on both of these points.

21

1.    **Entitlement to Protection**

The PrimaCare and PrimaCare ONE marks for prenatal supplements are nationally recognized, as evidenced by Ther-Rx's widespread sale of prenatal supplements bearing those marks. PrimaCare ONE is the top-selling prescription prenatal vitamin in the U.S.,    **REDACTED** Goedeke Decl. ¶¶ 6, 22. As the first single-dose prescription prenatal vitamin with EFAs, PrimaCare ONE enjoys a reputation of innovation and a position as the market leader. Id. at ¶ 11. Other manufacturers have since introduced branded prescription prenatal vitamins with EFAs and single-dose prenatal vitamins with EFAs, but none have duplicated the unique formula of PrimaCare ONE. Id.

Moreover, the federal registration for the PrimaCare mark has become incontestable, and is conclusive evidence of the validity of the registered mark and DrugTech's ownership. Lanham Act §§ 15, 33(b), 15 U.S.C. §§ 1065, 1115(b).

The U.S. trademark registration for PrimaCare ONE is *prima facie* evidence of its exclusive rights in and to this mark. The evidence amply demonstrates a likelihood that Ther-Rx will prevail on this first element of its claims for trademark infringement and false representation under the Lanham Act and at common law.

2.    **Likelihood of Confusion**

Lannett's distribution of prenatal supplements bearing the Ther-Rx trademarks establishes a likelihood of success on the merits and the right to preliminary injunctive relief. Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 804 (3d Cir. 1998) ("where the

identical mark is used concurrently by unrelated entities, the likelihood of confusion is
inevitable"); S & R Corp., 968 F.2d at 375.[9]

Further, Ther-Rx's likelihood of success is apparent from an analysis of the factors
traditionally considered in determining whether confusion is likely: (i) similarity of the owner's
and the infringer's marks; (ii) the strength of the owner's mark; (iii) the price of the goods and
other factors indicative of the care and attention expected of consumers when making a purchase;
(iv) the length of time the infringer has used the mark without evidence of actual confusion
arising; (v) the intent of the infringer in adopting the mark; (vi) actual confusion; (vii) whether
the goods are marketed through the same channels of trade and advertised through the same
media; (viii) the extent to which the targets of the parties' sales efforts are the same; (ix) the
relationship of the goods in the minds of the public because of similarity of function; and (x)
other factors suggesting that the consuming public might expect the senior user to manufacture a
product in the junior user's market. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237
F.3d 198, 215 (3d Cir. 2000); Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983).
"Each factor is 'weighed . . . separately," which "is not to say that all factors must be given equal
weight." Kos Pharms., 369 F.3d at 709 (quoting Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,
30 F.3d 466, 476 & n.11 (3d Cir. 1994)). As stated in greater detail below, because Lannett has
intentionally copied the PrimaCare and PrimaCare ONE marks to exploit Ther-Rx's goodwill
and induce confusion between the Lannett product and PrimaCare ONE, this factor weighs

---

[9]    Moreover, a person who reproduces and uses a registered trademark in commerce on the
same goods sold by the mark owner without its consent is liable for infringement where, as in
this case, confusion necessarily results. Calvin Klein Indus., Inc. v. BFK Hong Kong, Ltd., 714
F. Supp. 78, 79 (S.D.N.Y. 1989).

heavily in Ther-Rx's favor. Indeed, the infringer's intent is one of the most important factors.

Taj Mahal Enters. v. Trump, 745 F. Supp. 240, 249 (D.N.J. 1990).

a.    **The Marks Are Identical**

The Third Circuit has stated that "perhaps the most important of [the Lapp] factors is . . .

the degree of similarity between the two marks." Ford Motor Co. v. Summit Motor Prods., Inc.,

930 F.2d 277, 293 (3d Cir. 1991). Accordingly, where the marks are essentially same, it is very

probable that they are confusingly similar. Id. A cursory glance of Lannett's misuse of the

PrimaCare ONE mark on its label reveals such inescapable confusion:

Lannett's infringing label:



Type face of the bona fide PrimaCare ONE mark:

*PrimaCare* ONE

The text "[c]ompare to the active ingredients in" is miniature and lower-contrast in

contrast to the unauthorized, imitative use of the PrimaCare ONE mark in bold red letters. Vitali

Decl. ¶ 17; Goedeke Decl., Ex. G. Lannett succeeded in creating a copy of the stylized

PrimaCare ONE mark, i.e., with the same or similar font, with only the "P" and "C" capitalized,

and with "ONE" in all capital letters. Lannett's slavish copying weighs heavily in favor of Ther-

Rx. Moreover, consumers may see no other trademark on Lannett's bottle because the Lannett

24

label may be obscured by the pharmacy label when the bottle is dispensed. Goedeke Decl. ¶ 53; Vitali Decl. ¶ 18.[10]

This is not a case of lawful comparative advertising. On the contrary, Lannett stands that concept on its head, with the clear intention to trade off of the well-known and respected PrimaCare ONE marks.

### b.    Ther-Rx's Marks Are Very Strong

As discussed at supra at 20, Ther-Rx's marks are very strong as evidenced by the recognition that PrimaCare and PrimaCare ONE branded prenatal supplements have achieved in the marketplace and among medical professionals. PrimaCare ONE is the top selling prenatal supplement in the United States. Goedeke Decl. ¶¶ 6, 60.

## REDACTED

### c.    Factors Indicative of the Care and Attention Expected of Consumers

Although physicians and pharmacists are trained professionals, the ultimate consumers of both products are not experts. Rather, expecting mothers are the general public, e.g., primarily young women of childbearing age. Kos Pharms., 369 F.3d at 715-16, n. 12. When the relevant consumers include both professionals and the general public, the standard of care to be exercised should be equal to the least sophisticated consumer in the class. Checkpoint Sys., Inc. v. Check

---

[10]    In addition, while in smaller (but nevertheless in prominent bold red) type immediately under use of "PrimaCare® ONE," Lannett identifies the mark as "Registered trademark of Ther-Rx Corp.," further confusing consumers into believing the product is Ther-Rx's product rather than Lannett's. This will be especially true if the pharmacist covers the Lannett label with the pharmacy label, leaving only Ther-Rx's name visible on the bottle below the mark "PrimaCare® ONE." Vitali Decl. ¶ 18; Goedeke Decl. ¶ 53.

Point Software Techs., Inc., 269 F.3d 270, 285 (3d Cir. 2001); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:32 (4th ed. 2003) ("[I]t is proper to require a lesser quantum of proof of confusing similarity for drugs and medicinal preparations . . . . [For] prescription drugs, [this] rule . . . should control over the supposed 'sophistication' of physicians and pharmacists."); see also Kos Pharms., 369 F.3d at 717, n. 13 (holding drug manufacturers cannot use marks that would be confusingly similar to non-experts in connection with prescription drugs). This factor strongly favors Ther-Rx.

> **d.   Lannett Has Acted in Bad Faith, Intending To Cause Confusion and Trade Off of the Goodwill and Reputation of Ther-Rx's Market-Leading Brand_____**

The intent to confuse or deceive consumers as to the product's source may be highly probative of likelihood of confusion. Versa Prods., Inc. v. Bifold Co. (Mfg.) Ltd., 50 F.3d 189, 205-06 (3d Cir. 1995). Here, there is overwhelming evidence that Lannett both copied and gave prominence to Ther-Rx's marks with the intent to confuse women as to the source or provenance of Lannett's infringing product.

First, when the pharmacy's label is affixed to the manufacturer's vial, the Lannett mark, which is already small, may be completely covered. Vitali Decl. ¶ 18. Second, Lannett's calculated use of PrimaCare ONE and Ther-Rx's corporate name in bold red lettering around the entire circumference of the bottle—using the same stylized font as is used by Ther-Rx itself—makes it the most prominent, and perhaps only, visible source-identifying mark once the pharmacy label is applied. Third, Lannett used a purple gel cap, which is distinctive to PrimaCare ONE. Goedeke Decl. ¶ 56.

e.      **Bridging the Gap**

Where the parties sell the identical type of product, "there is no gap to bridge [and] this factor strongly favors plaintiffs." Consolidated Cigar Corp. v. Monte Cristi de Tabacos, 58 F. Supp. 2d 188, 198 (S.D.N.Y. 1999).

f.      **The Parties' Products Are Marketed Through the Same Channels to the Same Consumers**

Lannett is targeting the same consumers, expecting mothers, physicians, and pharmacists, using the identical channels of trade. Accordingly, this factor weighs strongly in Ther-Rx's favor, supporting a finding of likelihood of confusion.

g.      **Actual Confusion**

Ther-Rx is not required to show any instances of actual confusion. Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 195 (3d Cir. 1990); Liquid Glass Enters. v. Porsche AG, 8 F. Supp. 2d 398, 403 (D.N.J. 1998); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 875 (2d Cir. 1986) ("Of course, it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source."). To require proof of actual confusion would unfairly penalize the trademark owner for acting swiftly to "protect its trademark rights before serious damage has occurred." Id. This is especially so here, because Lannett's infringement has just begun.

h.      **The Parties' Products Are Directly Competitive**

The parties' respective products are in the same category, i.e., prescription prenatal supplements containing EFAs, vitamins and minerals.

\*   \*   \*

In conclusion, Ther-Rx has demonstrated a strong likelihood of confusion. All the pertinent factors favor Ther-Rx.

**III.**                              **REDACTED**

A presumption of irreparable injury arises from a clear showing of patent infringement and validity. Bio-Technology General Corp. v. Genentech, Inc., 80 F.3d 1553, 1565-66 (Fed. Cir. 1996) (patent holder entitled to presumption of irreparable harm in light of strong showing of infringement and validity and lack of substantial merit to infringer's defenses); Atlas Powder Co. v. Ireco Chems., 773 F.2d 1230, 1232 (Fed. Cir. 1985); Roper Corp. v. Litton Sys, Inc., 757 F.2d 1266, 1271-72 (Fed. Cir. 1985). Here, Lannett plainly infringes the '666 patent, has not stated a case of invalidity or unenforceability against it, and there is affirmative proof of validity as explained above.

The probability of public confusion as to the source or sponsorship of infringing products is, itself, irreparable harm. McNeil Labs., Inc. v. American Home Prods. Corp., 416 F. Supp. 804, 809 (D.N.J. 1976) ("loss of goodwill is sufficient irreparable injury to justify the issuance of a preliminary injunction"); Tefal, S.A. v. Products Int'l Co., 529 F.2d 495, 497-98 (3d Cir. 1976); Church of Scientology Int'l. v. Elmira Mission, 794 F.2d 38, 42 (2d Cir. 1986) ("[O]ur traditional rule [is] that a finding of irreparable harm follows from a trademark plaintiff's showing of infringing use and likelihood of confusion.").

Thus, Ther-Rx's entitlement to a preliminary injunction follows from its showing of likelihood of success on the merits of its trademark claims. S & R Corp., 968 F.2d at 378. Because a trademark owner has the right to control the use of its trademark and the goodwill that its trademark symbolizes, irreparable harm flows from its "loss of control of reputation, loss of

28

trade and loss of good will." Opticians Ass'n, 920 F.2d at 195. As the Third Circuit explained in that case:

> [T]he key in these cases in not better use, but rather, lack of control which potentially might result in a damaged reputation. [This Circuit has] held that a plaintiff's mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use . . . . Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.

Id. at 195-196. (citations omitted; emphasis added). It follows that Ther-Rx will be irreparably harmed by Lannett's sale of its infringing products. S & R Corp., 968 F.2d at 378.

Even if Ther-Rx were not entitled to this presumption, however, the harm it would suffer from the continued sale of Lannett's knock-off is plain. Not surprisingly, the pharmaceutical field provides numerous examples of affirmed preliminary injunctions against generic (or substitute) drugs based in part on district court findings that the patentee will suffer irreparable harm. See, e.g., Sanofi-Synthelabo, 470 F.3d at 1368 (affirming preliminary injunction against generic version of Plavix); Pfizer, Inc. v. Teva Pharms. USA, Inc., 429 F.3d 1364 (Fed. Cir. 2005) (affirming preliminary injunction against generic version of Accupril); Abbott Labs. v. Andrx Pharms., Inc., 473 F.3d 1196, 1213 (Fed Cir. 2007) (affirming preliminary injunction against generic version of Biaxin-XL); Glaxo Group Ltd. v. Apotex, Inc., No. 02-1492, 2003 WL 1918246 (Fed. Cir. Apr. 22, 2003) (affirming preliminary injunction against generic version of Ceftin); Bio-Technology General, 80 F.3d 1553 (affirming preliminary injunction against non-generic but potentially substitutable formulation of human growth hormone).

In the Sanofi-Synthelabo case concerning Plavix, for example, the innovator companies moved for a preliminary injunction not long after the defendant (Apotex) launched its product.

29

470 F.3d at 1373 (Fed. Cir. 2006). Affirming the preliminary injunction, the Federal Circuit

agreed that the plaintiffs "would suffer irreversible price erosion if an injunction were not

entered," id. at 1382, noting that the district court found that:

> [S]ince Apotex's generic product entered the market, Sanofi has been forced to
> offer discounted rates and price concessions to third-party payors, such as health
> maintenance organizations, in order to keep Plavix® on a favorable pricing tier,
> which governs what consumers pay for that drug. The [district] court found that
> the availability of a generic product encourages third party payors to place
> Plavix® on a less favorable tier, thereby requiring consumers to pay a higher co-
> pay, and perhaps deterring them from purchasing Plavix®. The [district] court
> identified additional consequences of unfavorable tier placement, including a
> decrease in demand for Plavix®. According to Sanofi, it is nearly impossible to
> restore Plavix® to its pre-launch price since the generic product entered the
> market.

Id.; see also 488 F. Supp. 2d 317, 342-43 (S.D.N.Y. 2006) (district court's opinion on these

issues). The Federal Circuit also found that there was no error in the district court's findings of

irreparable harm from "loss of consumer good will by customers who will have grown

accustomed to lower prices" and "layoffs of employees involved in marketing Plavix." 470 F.3d

at 1382-83; see 488 F. Supp. 2d at 343.

 In Bio-Technology General, the patents at issue (owned by Genentech) were directed to

methods of making human growth hormone ("hGH"). BTG manufactured its own hGH in Israel

using a similar method, and planned to import it for sale in the United States. 80 F.3d at 1557.

BTG filed a declaratory judgment action against Genentech, and received FDA approval for its

product about four months later. Id. Genentech counterclaimed for infringement and sought a

preliminary injunction, which was entered by the district court. Id. The Federal Circuit affirmed,

finding that the district court was correct in affording Genentech a presumption of irreparable

harm given its clear showing of infringement and validity, and further holding that the district

court had not erred in finding that Genentech would suffer harm from the loss of revenues and goodwill.  Id. at 1565-66.

Similarly, the finding of irreparable harm in Glaxo v. Apotex—involving a generic formulation of the antibiotic Ceftin—rested in part on the presumption and in part on factual findings.  There, the Federal Circuit accepted the district court's findings that Glaxo would be irreparably harmed by decreases in the price it could charge for Ceftin, and by losses of profit and market share.  2003 WL 1918246 at *4-*5 Fed. Appx. at 755-56; see also No. 00 C 5791, 2002 U.S. Dist. LEXIS 26018, at *9 (N.D. Ill. June 10, 2002) (district court opinion).

## REDACTED

A.

As the Federal Circuit has explained:

31

Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.

Polymer Techs., Inc. v. Bridwell, 103 F.3d 970, 975-76 (Fed. Cir. 1996).

**REDACTED**

**B.    Continued Presence in the Market of Lannett's Inferior Infringing Product Will Damage the Value and Reputation of the PrimaCare ONE Product and Ther-Rx's Registered Trademarks**

Here, given the sensitive nature of the products (prenatal vitamins) and the demonstrated

inferiority of the infringing Lannett knock-off, the damage to Ther-Rx from confusion between

32

PrimaCare ONE and the inferior Lannett product is manifest. Women who think what they perceive to be PrimaCare ONE has a fishy smell or taste, is unduly large and hard to swallow, consists of irregular and misshapen gel caps, or leaks onto their fingers and on the other gel caps in the bottle, will form an immediate distrust of PrimaCare ONE and perhaps any other product sold by Ther-Rx. If they complain to their doctors about these problems and request a prescription for some other prenatal vitamin, the doctors are likely to form the same negative impression, perhaps thinking that the quality of PrimaCare ONE is "not what it used to be." In addition to Mr. Goedeke's declaration, the damage that will result is explained in the declarations of Dr. Gutmann (an OB/GYN) and Ms. Vitali (an experienced retail pharmacist).

Such events are an absolutely predictable result of the confusion that will result from Lannett's piratical use of the PrimaCare ONE mark encircling the shoulder of its bottle combined with its promotion as the infringing product as a generic version of PrimaCare ONE. A woman who has never seen PrimaCare ONE and has her first prescription for PrimaCare ONE filled with the Lannett knock-off is likely to believe that the problems she observes and experiences are associated with PrimaCare ONE even if she realizes that she has received a generic, assuming that the problems are with this type of product and not attributable to some particular defect of the generic. A complaint about the product to her doctor is not likely to result in a second prescription for PrimaCare ONE, but rather in a prescription for a different brand entirely.

C.    **Even if Ther-Rx' Harm Were Potentially Compensable by Money Damages, It Is Doubtful that Lannett Has Sufficient Resources To Pay a Large Judgment**

## REDACTED

33

**REDACTED**

According to its most recent

annual financial statement, Lannett realized a loss of $6.9 million on sales of $82.6 million.

Cottrell Decl., Ex. J at 22, 69, 70. It has operated at a loss for each of the last four quarters, id.,

Ex. K at 6; Ex. L at 4; Ex. M at 4, and has current assets of $43 million (of which $6.6 million is

in cash) versus current liabilities of $20.3 million. Id. And since Lannett has been operating at a

loss and is only intermittently profitable, there is no reason to believe that its financial condition

will suddenly improve.

Lannett's inability to satisfy a judgment of the magnitude likely to result if a preliminary

injunction is denied and money damages are awarded at the end of the case further demonstrates

the need for an injunction. Voice Sys. & Servs. v. VMX, Inc., Civ. No. 91-C-88-B, 1992 WL

510121, at *9 (N.D. Okla. Nov. 5, 1992) (finding that patentee lacked adequate remedy at law

and granting preliminary injunction based in part on finding that accused infringer would be

unable to satisfy money judgment); cf. Cordis Corp. v. Medtronic, Inc., 780 F.2d 991, 996 (Fed.

Cir. 1985) (rejecting as factually unproven patentee's allegation that accused infringer lacked

ability to pay judgment, but seeming to recognize legal validity of argument that financial

irresponsibility of infringer may be an element of irreparable harm).

**IV.    The Balance of Hardships Favors Ther-Rx**

**REDACTED**

By contrast, any harm to Lannett is purely of its own making. It has obviously known of the Ther-Rx's patents since the earliest days of its decision to develop a knock-off of PrimaCare ONE, since the patent numbers are marked on the PrimaCare ONE label. Id. at ¶ 26.[11] Even a

---

[11]    Of course, the trademarks are known as a matter of law due to their federal registrations, and would be plain to anyone examining a bottle of PrimaCare ONE or the product label. Indeed, (continued   )

knock-off product does not get developed, contracted for, manufactured, and imported from India overnight; the label and package insert of Lannett's product show revision dates of <u>January and February</u> 2008, respectively.   Brittain Decl., Ex. B; Goedeke Decl., Ex. G.  Yet, Lannett waited until mere days before its anticipated launch to first contact Ther-Rx and file its declaratory judgment action, forcing Ther-Rx to ask for the Court's assistance on an emergency basis.  Under these circumstances, if Lannett would suffer any hardship at all as a result of an injunction, most of that hardship would come from its risky (perhaps reckless) decision to commit to a product that so plainly infringes.   <u>See Pfizer, Inc.</u>, 429 F.3d at 1382 (affirming district court's holding that accused infringer undertook risky investment in production facilities and launch preparations with eyes open to the consequences); <u>see also Sanofi-Synthelabo</u>, 488 F. Supp. 2d at 344 (stating that potential harms to accused infringer caused by preliminary injunction, including loss of investment costs, would not have accrued if that party had postponed its launch until the conclusion of litigation rather than engaging in an "at-risk launch"), <u>aff'd</u>, 470 F.3d 1368 (Fed. Cir. 2006).

## V.     The Public Interest Favors Grant of a Preliminary Injunction To Prevent Confusion of PrimaCare ONE with Lannett's Inferior Product

The public interest in preventing confusion from Lannett's trademark infringement is manifest.  "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." <u>Opticians Ass'n</u>, 920 F.2d at 197; <u>see also Bill Blass, Ltd. v. Saz Corp.</u>, 751 F.2d 153, 156 (3d Cir. 1984) (public interest in protection of trademarks to avoid confusion of the consuming public).  Expecting

---

Lannett acknowledged the registered status of the PrimaCare ONE mark on its product label. Goedeke Decl., Ex. G.

36

mothers deserve not to be misled by Lannett's willful and calculated exploitation of Ther-Rx's marks. If the Lannett product is classified as a generic for PrimaCare ONE, pharmacies have a strong incentive to substitute Lannett's product when a woman hands her pharmacist a prescription for PrimaCare ONE. Vitali Decl. ¶¶ 20-23; Goedeke Decl. ¶¶ 41-45. It follows that women will be taking Lannett's product with a substantially lower amount of DHA as compared to the PrimaCare ONE product, while under the false impression that they are taking the trusted, physician-preferred PrimaCare ONE product with its much larger amount of DHA. Goedeke Decl. ¶¶ 53, 57-59. "Prevention of confusion and mistakes in medicines is too vital to be trifled with" because "[c]onfusion in such products have serious consequences for the patient." Morgenstern Chem., 253 F.2d at 393.

Because the patent system promotes important societal goals, such as the public interest in encouraging drug development and protecting the exclusionary rights granted by valid patents, Sanofi-Synthelabo, 470 F.3d at 1383-84, the public interest favors grant of the injunction. See also H.H. Robertson Co. v. United Steel Deck, Inc., 820 F.2d 384, 391 (Fed. Cir. 1987) (noting importance to public policy of granting preliminary injunction in the face of flagrant infringement); Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1577-78, 1581 (Fed. Cir. 1983) (inability of patent owner to obtain an injunction devalues patent rights).

Further, if the undesirable characteristics of Lannett's knock-off cause women to reject it or voice complaints, it is likely that their doctors will switch them to a different supplement entirely, not recognizing that they result from the different formulation of Lannett's product. Goedeke Decl. ¶¶ 60, 63. In this manner, women who would (in the judgment of their physicians) preferably receive PrimaCare ONE will end up on a different supplement that their doctors would not otherwise have selected. It is surely adverse to the public interest for the

37

presence of an infringing product to potentially compromise the nutritional management of pregnant and nursing women.

Moreover, where an infringing product has already been shipped to distributors, a preliminary injunction that simply enjoins further sales of the infringing product and allows existing supplies to pass through the streams of commerce will not afford the aggrieved party the full measure of relief to which it is entitled. Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 998 (2d Cir. 1997) (preliminary injunction that required defendant to remove all infringing trade dress from retail stores around the world during pendency of action); Chere Amie, Inc. v. Windstar Apparel, Corp., 191 F. Supp. 2d 343, 352 (S.D.N.Y. 2001) (granting preliminary injunction and ordering that defendants recall from all distributors any products employing the plaintiffs' trademark).

Where there is a strong likelihood of consumer confusion, a recall of the infringing goods is necessary to restore the status quo, pending a final resolution on the merits. Fun-Damental Too, 111 F.3d at 997. Ther-Rx therefore respectfully requests that this Court maintain the status quo, and as part of the injunctive relief, order a recall of Lannett's infringing products which have already been released into the marketplace.

*    *    *    *    *

38

and as part of the injunctive relief, order a recall of Lannett's infringing products which have already been released into the marketplace.

\* \* \* \* \*

## CONCLUSION

For the reasons stated above, the Court should restrain and enjoin Lannett from infringing the '666 patent and the PrimaCare marks by selling or distributing its infringing product, and order Lannett to recall such quantities of its infringing product that are already in the marketplace.

*Of Counsel:*

Richard L. DeLucia
Howard J. Shire
Elizabeth A. Gardner
Charles A. Weiss
KENYON & KENYON LLP
One Broadway
New York, NY  10004
(212) 425-7200

Dated:  June 17, 2008

*Chad M. Shandler/Anne Shea Gaza*

Frederick L. Cottrell, III (#2555)  *(#4093)*
cottrell@rlf.com
Chad M. Shandler (#3796)
shandler@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
(302) 651-7700

*Attorneys for Counterclaim-Plaintiffs*
*KV Pharmaceutical Company, Ther-Rx Corp.,*
*and Drugtech Corp.*

39

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2008, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Sophia Siddiqui
Fox Rothschild LLP
919 Market Street, Suite 1300
P. O. Box 2323
Wilmington, DE   19899-2323

I hereby certify that on June 17, 2008, I sent by Electronic Mail the foregoing document to the following non-registered participants:

Samuel H. Israel
Gerard P. Norton
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA   19103

_____
Chad M. Shandler (#3796)
shandler@rlf.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2008, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Sophia Siddiqui
Fox Rothschild LLP
919 Market Street, Suite 1300
P. O. Box 2323
Wilmington, DE   19899-2323

I hereby certify that on June 24, 2008, I sent by Electronic Mail the foregoing document to the following non-registered participants:

Samuel H. Israel
Gerard P. Norton
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia,. PA   19103

Anne Shea Gaza (#4093)
gaza@rlf.com