IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LANNETT COMPANY INC., <br><br> *Plaintiff*, <br><br> v. <br><br> KV PHARMACEUTICALS, DRUGTECH CORPORATION, and THER-RX CORPORATION, <br><br> *Defendants.* <br><br> ━━━━━━━━━━━━━━━━━━━ <br><br> KV PHARMACEUTICAL COMPANY, THER-RX CORP., and DRUGTECH CORP., <br><br> *Counterclaim-plaintiffs,* <br><br> v. <br><br> LANNETT COMPANY, INC., <br><br> *Counterclaim-defendant* | Civil Action No. 08-338 <br><br> **REDACTED PUBLIC VERSION** |

**DECLARATION OF SCOTT E. GOEDEKE IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Scott E. Goedeke, declare:

1.    I am senior vice president of marketing of Ther-Rx Corporation ("Ther-Rx").
Ther-Rx is a wholly owned subsidiary of KV Pharmaceutical Company ("KV"). Ther-Rx
markets and sells PrimaCare ONE® in the United States. I have been in my current position for 7
years, and have had responsibility for the PrimaCare ONE® brand since its launch in April 2004.
I have held positions in pharmaceutical and prescription supplement marketing and sales,
including at Ther-Rx, for more than 17 years.

2.      My responsibilities at Ther-Rx include brand strategy creation and execution for products including PrimaCare® and PrimaCare ONE®; financial planning; market analysis; product pricing; sales force education and deployment; marketing; and providing direction for new clinical development programs. I regularly work with my staff to anticipate PrimaCare ONE® sales in light of possible market conditions, and I keep current on developments in the market for prenatal supplements. I am generally familiar with the usual patterns and practices of physician prescribing and the way in which physicians evaluate prescription products, the way that these products are dispensed to patients, and the way that insurance reimbursement and other economics of the prescription supplement business influences sales of these products.

3.      I am fully familiar with the facts set forth herein.

## THER-RX, PRIMACARE ONE®, and PRIMACARE®

4.      Ther-Rx, KV's branded marketing subsidiary, is an innovator in women's healthcare, particularly in the market for prescription prenatal vitamins. Although it is conventional to use the phrase "prenatal vitamins" or "prenatal supplements," these products are also prescribed for women who have already given birth (especially those who are nursing), and for women who are trying to conceive.

5.      PrimaCare ONE® is a prescription prenatal supplement containing essential fatty acids ("EFAs") including omega-3 fatty acids, which support improved health, including support of increased cognitive and visual development and functioning in the baby, potentially decreasing the rate of premature births, and supporting increased cardiovascular health in the mother.

6.      PrimaCare ONE® is the leading prescription prenatal vitamin in the United States. It is also Ther-Rx's single largest product.

7.     PrimaCare ONE® was the first single-dose prescription prenatal vitamin with EFAs available in the United States. It was introduced in April 2004. A copy of the package insert for PrimaCare ONE® is attached as Exhibit C.

8.                                **REDACTED**

9.     Ther-Rx also sells a product called PrimaCare®, which was the first prescription prenatal vitamin with EFAs available in the United States. PrimaCare® has separate dosage units for the EFAs and the vitamins/minerals, the former contained in a gel cap and the latter contained in a solid tablet, with both dosages packaged together. It was introduced in January 2002.

10.               **REDACTED**

11.    As the first prescription prenatal vitamin with EFAs and the first single-dose prescription prenatal vitamin with EFAs, the PrimaCare® line enjoys a reputation of innovation and a position as a market leader. Since the introduction of these products, other manufacturers have introduced prescription prenatal vitamins with EFAs and prescription single-dose prenatal vitamins with EFAs, but none have duplicated the unique formula of PrimaCare ONE®.

12.    Through the development, manufacture, and marketing of PrimaCare ONE®, Ther-Rx has established good will with physicians, pharmacists, and patients. Ther-Rx is widely recognized as an innovator and market leader, with PrimaCare ONE® recognized as a very desirable and highly valued prescription prenatal supplement. address

13.    Ther-Rx markets the PrimaCare ONE® product to physicians and other providers through a process of "detailing," in which members of Ther-Rx sales teams visit these healthcare

- 3 -

professionals to promote the product.

## REDACTED

14.    Ther-Rx's products, including the PrimaCare® and PrimaCare ONE® supplements, are routinely showcased and promoted at medical conferences and conventions throughout the United States.

15.

## REDACTED

16.    I am familiar with the reputation of the PrimaCare® and PrimaCare ONE® products and know that they are highly regarded among physicians and pharmacists, who have come to know, recognize, and identify goods bearing the PrimaCare® and PrimaCare ONE® marks as being high-quality goods of Ther-Rx.

17.    The maintenance of high quality standards is essential to the preservation of the excellent reputation PrimaCare® products, which is of utmost importance to the company.

18.    The PrimaCare ONE® product contains EFAs derived from highly purified fish oil. For nutritional purposes, EFAs derived from fish oil are superior to those derived from plant sources because EFAs derived from fish oil have both EPA (a specific omega-3 fatty acid) and DHA (another specific omega-3 fatty acid), while EFAs derived from plant sources do not have both of these components. Moreover, EPA and DHA derived from fish oil have been more extensively studied than omega-3 fatty acids from plant sources.

- 4 -

19.    Because EFAs from fish oil can have a very unpleasant fishy odor and taste—and fishy odors or tastes are especially problematic in prenatal supplements due to the heightened sensitivity of pregnant women to strong tastes or smells—PrimaCare ONE® was designed and is manufactured to avoid fishy odors or tastes. For example, the gel caps are very strong and great care is taken in the manufacturing and packaging process to prevent leakage.

20.    As prescription supplements, PrimaCare® and PrimaCare ONE® are sold to the consumer through retail pharmacies (or through mail-order pharmacies, mostly with respect to women who have prescription drug coverage that mandate or encourage the use of a mail-order pharmacy) throughout the United States. Retail pharmacies include national chains such as Rite Aid, Walgreen's, and CVS; local or regional retail chains such as Duane Reade; independent neighborhood pharmacies; and pharmacy departments of supermarkets and discount stores (such as Wal-Mart, Target, and Shop Rite).

21.

# REDACTED

22.

# REDACTED

23.    DrugTech Corporation ("DrugTech") is a wholly owned subsidiary of KV and a sister company of Ther-Rx. DrugTech owns the trademark registrations for the mark PRIMACARE (U.S. Trademark Registration 2,582,817, which issued on June 18, 2002) and the mark PRIMACARE ONE (U.S. Trademark Registration 3,414,475, which issued on April 22, 2008). Copies of both Registration Certificates are attached as Exhibit D.

24.    Rights to use the PrimaCare® and PrimaCare ONE® trademarks are licensed to

Ther-Rx.  Several examples of Ther-Rx's use of the PrimaCare ONE® trademark, showing the

style and font that is used on the box and bottle, as well as in our promotional materials and

literature, are attached as Exhibit E.

25.    The PrimaCare® and PrimaCare ONE® products have been very successful

commercially, and thus the PrimaCare® and PrimaCare ONE® marks have become valuable

symbols of goodwill and are of great value to Ther-Rx.

26.    The package for PrimaCare ONE® has consistently listed U.S. Patent 6,576,666.

## HOW PRIMACARE ONE® IS PRESCRIBED AND PAID FOR

27.    Most prescription prenatal supplement purchases in the United States are at least

partially paid for by employer-sponsored health insurance or government programs like

Medicaid.

28.    The majority of employer-sponsored health insurers divide costs between the

patient and the insurer, so that the patient provides a portion of the total payment for the

prescription in the form of a set dollar co-pay, and the insurer provides the balance of the

payment.

29.    Insurers typically restrict their coverage to an approved list of prescription drugs,

known as a formulary.  Drugs on the formulary are segregated into separate tiers.  The most-

favorable tier typically comprises low-cost generic therapeutics.  Less-favorable tiers comprise

"preferred branded therapeutics," and "non-preferred branded therapeutics."

30.    Patient co-pays are higher for drugs listed on less-favorable tiers (i.e., preferred

branded, non-preferred branded) than for a drug of the same price listed on a more-favorable tier

(i.e., generics).    Further, the prescription coverage components of many health plans provide no coverage at all for branded products that are not on the formulary.

31.    The Medicaid program assists in the payment of medical expenses for low-income individuals. Medicaid is administered by the states, and its coverage for that reason varies from state to state.

32.    In most states, Medicaid pays for drugs only if the drug is on the state's approved drug list, which is referred to as either a formulary or preferred drug list. Medicaid formularies do not have tiers; a drug is either listed on the state's Medicaid formulary or it is not listed. If a drug is not listed on the state's Medicaid formulary, the patient would have to pay the full cost of the drug, which means that physicians rarely if ever prescribe such drugs to Medicaid patients (who by definition are low-income individuals).

### LANNETT'S ENTRY INTO THE MARKET

33.    On June 6, 2008, KV first received a letter from counsel for Lannett attached as Exhibit F. Prior to that time, KV had not heard from Lannett and had no indication or notice that Lannett might be planning to introduce a generic version of PrimaCare ONE®. To me and my colleagues at KV and Ther-Rx, Lannett was known as a small generic pharmaceutical company but not a participant in the prescription prenatal supplement industry.

### REDACTED

, Lannett does not have a field sales force and relies on generic substitution for sales of its products.

34.    On June 11, 2008, KV received bottles of the Lannett product, along with a package insert. Photographs of the Lannett product, a side-by-side photograph of a Lannett gel cap and a PrimaCare ONE® gel cap (with the PrimaCare ONE® gel cap on the left and the

- 7 -

Lannett gel cap on the right), and a copy of the package insert are attached as Exhibit G. Also as part of Exhibit G are three photographs of Lannett gel caps that were poured from their bottle onto a white piece of paper. As can be seen, some of the gel caps had leaked, causing the yellow oily stains on the paper. These photographs were taken by counsel.

35.    Although a prescription product, the Lannett product has not, like many prescription pharmaceuticals, gone through the FDA regulatory process, and the FDA has made no determination of the product's safety, efficacy, or similarity to other products. A private company that collects information on prices and availability of drugs—such as First DataBank, Inc.—has pharmacists on its staff review the label of the proposed generic and compare it to the branded product. If the product meets certain criteria, the company like First DataBank lists the branded product as "multisource" and indicates what other companies can also provide such a product.

36.    Once a branded product is listed as multisource, a pharmacist who receives a prescription for that branded product will see that a generic is available when he or she enters the prescription information for the branded product into the pharmacy's computer system in order to fill the prescription.

37.    Based on information in the marketplace, Lannett has already launched the product it describes as "Multivitamin With Mineral Capsules." Based on my experience, it is plain from the label and package insert that Lannett intends to market its product as a generic version of PrimaCare ONE®. If private companies like First DataBank that provide product availability information to pharmacies and wholesalers list Lannett's product as a multisource product for PrimaCare ONE®, pharmacists who are presented with prescriptions for PrimaCare ONE® will, as noted above, see from their pharmacy computer systems that the Lannett product

is available for substitution.

**REDACTED**

38.

**REDACTED**

39.    Once a generic is introduced into the marketplace, the generic will capture a significant share of the market in a brief period of time.

**REDACTED**

40.    The speed with which a branded version can be replaced with a generic product can be explained by the following:

41.    Once an entity like First DataBank lists a product like Lannett's as a multisource for a product such as PrimaCare ONE®, pharmacies may substitute the multisource for the brand,

**REDACTED**

**REDACTED**

**REDACTED**

**THE REPUTATION OF PRIMACARE ONE® IN THE MARKET AND THE VALUE OF THE PRIMACARE® AND PRIMACARE ONE® TRADEMARKS WILL BE DAMAGED BY THE PRESENCE IN THE MARKET OF LANNETT'S PRODUCT**

      50.    I have inspected a number of bottles of the Lannett product and the gel caps contained therein. Photographs are attached as Exhibit G.

51.    At the top of Lannett's bottle is a label that displays the PrimaCare ONE® mark in bright red ink. In addition, the PrimaCare ONE® trademark is displayed in the identical font utilized by Ther-Rx. To the left reads the following in much smaller and harder to read print, "*Compare to the Active ingredients in.*"

52.    Lannett was not granted permission by Ther-Rx to use the PrimaCare® or PrimaCare ONE® marks, nor would Ther-Rx grant permission to Lannett (or any other generic manufacturer) to use these marks because of their great value to Ther-Rx.

53.    Lannett uses our PrimaCare® and PrimaCare ONE® trademark in three locations, encircling the bottle in a strategically placed location, at the top of the bottle and above Lannett's own label.



When dispensed to a patient, the dispensing pharmacy will place its own label over the Lannett label. In my experience, such pharmacy labels do not encircle the entire bottle. Thus, no matter where and how the pharmacy label is applied, at least one of the PrimaCare ONE® logos will be

visible to the patient. This is not so with respect to Lannett's own name and logo on the bottle, which may be covered up by the pharmacy label. Thus, patients receiving the Lannett product are likely to believe that they are in fact receiving PrimaCare ONE®, unless the pharmacist specifically emphasizes to them that their prescriptions for PrimaCare ONE® were instead filled with a generic substitute.

54.     Several bottles of the Lannett product I inspected contained one or more leaking gel caps. As a result, when the bottles are opened, there is an overpowering fishy odor. Further, because of the leakage, the gel caps were coated with oil, unpleasant and difficult to handle, and left a strong fishy odor on the hands. This leakage issue will cause even the intact gels caps to also have a strong fishy taste and smell. This would be a major problem with any person taking this product, especially pregnant women, who are often very sensitive to strong odors or tastes.

55.     As noted above, the PrimaCare ONE® product uses a strong gel cap to avoid leakage and to avoid fishy odors or tastes. Indeed, in developing and formulating PrimaCare ONE®, great care was taken to avoid a fishy odor or taste.

56.     The gel cap used for the PrimaCare ONE® product has a distinctive purple color. The Lannett product also uses purple gel caps as seen in Exhibit G. To my knowledge, until Lannett recently introduced this product, no other prescription prenatal supplement in the United States used a purple gel cap. From my experience, I believe that Lannett's use of a purple gel cap, when so many other colors of gel caps are available, is plainly an attempt to copy the appearance of PrimaCare ONE®.

57.     The DHA and EPA content of PrimaCare ONE® are also promoted by Ther-Rx, and this is also important to the acceptance of PrimaCare ONE® by physicians and patients, particularly the fact that PrimaCare ONE® contains 260 mg of DHA and 40mg of EPA. The

relatively high amount of DHA is important because it is reported to support improved health of the baby and the mother, support increased cognitive and visual development and functioning in the baby, potentially decrease the rate of premature births, and support increased cardiovascular health in the mother.

58.    The label of Lannett's product states only that it contains 300 mg of omega fatty acids. Unlike the label of PrimaCare ONE®, which as noted above shows the specific content of DHA and EPA, the amount of DHA and EPA in the Lannett product is not available from the Lannett label.

59.    The Lannett product was assayed at KV in the company's analytical lab using the validated method for testing PrimaCare ONE®. The Lannett product contained only 109 mg of DHA (as compared to 260 of DHA in PrimaCare ONE®) and a significantly higher amount of EPA (175 mg, as compared to 40 mg in PrimaCare ONE®).

60.    The PrimaCare ONE® product has also achieved a reputation in the market for excellent tolerability with respect to gastrointestinal ("GI") side effects, an important concern here because (i) pregnant women commonly suffer from nausea, heartburn, indigestion, and other intestinal discomforts, and (ii) fish-oil supplements are commonly associated with GI side effects such as indigestion and belching even in people who are not pregnant or especially sensitive to such effects. Given the differences between the fish oil used in PrimaCare ONE® and the Lannett product, as well as the leakage problems described above, it is doubtful that Lannett's product would have the same excellent tolerability of PrimaCare ONE®. If a woman with a prescription for PrimaCare ONE® received Lannett's product in its place and experienced GI side effects, the complaint is likely to be made about PrimaCare ONE®, since the physician may not know that her prescription for PrimaCare ONE® was filled with Lannett's product and

may believe in any event that the patient is sensitive to EFAs without recognizing that the effect is peculiar to Lannett's product. Such concerns or complaints would likely lead physicians to reduce or stop writing prescriptions for PrimaCare ONE®, irreparably eroding the market for PrimaCare ONE®.

61.     The confusion that will result from Lannett's sale of its confusingly similar generic version of PrimaCare ONE®, in combination with the inferior quality of Lannett's product, will undoubtedly cause irreparable harm to the reputation of the valuable PrimaCare® and PrimaCare ONE® marks and to Ther-Rx.

62.

## REDACTED

63.

- 15 -

**REDACTED**

64.

65.

**THER-RX WILL SUFFER LOSSES FROM RETURNS OF PRIMACARE ONE®
BY PURCHASERS**

66.    As is typical in the industry, Ther-Rx has contractual obligations to accept returns

of PrimaCare ONE® from wholesalers or other purchasers who end up with excess PrimaCare

ONE® in their inventory.

67.    If Lannett's product were to capture a significant portion of PrimaCare ONE®'s

market share, Ther-Rx would likely receive abnormally high returns as purchasers who had

received quantities based on their historical sales end up selling less and less because of the shift in sales to the generic. In these circumstances, Ther-Rx would likely be unable to resell the returned items, both because of the declining demand for PrimaCare ONE® and the need to ship product that is not too close to its expiration date. The returned product would thus be a total loss.

**REDACTED**

## **CONCLUSION**

69.

**REDACTED**

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 17, 2008

/ Scott E. Goedeke

# EXHIBIT C

# *PrimaCare*® ONE

**A once-daily prenatal vitamin supplement, including key omega-3 fatty acids (DHA and EPA) and 1 mg folic acid**

**Rx Only**

**DESCRIPTION:** PrimaCare® ONE is a prescription prenatal/postnatal multivitamin/mineral capsule with omega-3 fatty acids. Each purple soft gelatin capsule for oral administration contains:

**Essential Fatty Acids:**

| | |
|---|---|
| Omega-3 Fatty Acids | .330 mg |
| Docosahexaenoic Acid (DHA) | .260 mg |
| Eicosapentaenoic Acid (EPA) | .40 mg |
| α-Linolenic Acid (ALA) | .30 mg |
| Linoleic Acid | .30 mg |

**Vitamins:**

| | |
|---|---|
| Vitamin C (as *Ester-C*®*) | 25 mg |
| Vitamin D₃ (cholecalciferol) | 170 IU |
| Vitamin E (dl-alpha-tocopheryl acetate) | 30 IU |
| Folic Acid, USP | 1 mg |
| Vitamin B₆ (pyridoxine hydrochloride) | 25 mg |

**Minerals:**

| | |
|---|---|
| Calcium | 150 mg |
| Iron | |
| Carbonyl iron (elemental iron) | .20 mg |
| Sumalate™† (elemental iron) | .7 mg |

*\*Ester-C*® is a patented pharmaceutical grade material consisting of calcium ascorbate and calcium threonate. *Ester-C*® is a licensed trademark of The Ester C Company.
†Sumalate™ (ferrous asparto glycinate) is a trademark of Albion International, Inc., Clearfield, Utah. U.S. Patent pending

**Inactive Ingredients:** D&C Red No. 33, ethylvanillin, FD&C Blue No. 1, gelatin, glycerine, hydrogenated vegetable oil, lecithin, malic acid, methylparaben, propylparaben, silicon dioxide, soybean oil, succinic acid, titanium dioxide, vegetable shortening, and yellow beeswax.

**INDICATIONS:** PrimaCare® ONE is indicated to provide vitamin/mineral and omega-3 fatty acid supplementation throughout pregnancy, during the postnatal period for both lactating and non-lactating mothers, and throughout the childbearing years. It is also useful for improving nutritional status prior to conception.

**CONTRAINDICATIONS:** This product is contraindicated in patients with a known hypersensitivity to any of the ingredients.

**WARNINGS:** Folic acid alone is improper therapy in the treatment of pernicious anemia and other megaloblastic anemias where vitamin B₁₂ is deficient. Folic acid in doses above 1.0 mg daily may obscure pernicious anemia, in that hematologic remission can occur while neurological manifestations remain progressive.

> **WARNING: Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.**

**PRECAUTIONS**

**Pediatric Use:** Safety and effectiveness in pediatric patients have not been established.

**Geriatric Use:** Clinical studies on this product have not been performed to determine whether elderly subjects respond differently from younger subjects. In general, dose selection for an elderly patient should be cautious, usually starting at the low end of the dosing range, reflecting the greater frequency of decreased hepatic, renal, or cardiac function, and of concomitant disease or other drug therapy.

**ADVERSE REACTIONS:** Allergic sensitization has been reported following both oral and parenteral administration of folic acid.

**DOSAGE AND ADMINISTRATION:** Usual dosage is one capsule daily, or as prescribed by a physician.

**HOW SUPPLIED:** PrimaCare® ONE prenatal/postnatal multivitamin/mineral capsules are purple soft gelatin capsules, imprinted "Ther-Rx 200" in white ink, packaged in bottles of 30 capsules (NDC 64011-200-19).

Store at controlled room temperature 15°—30° C (59°—86° F).

**KEEP THIS AND ALL DRUGS OUT OF THE REACH OF CHILDREN.**

P5516   03/07

Manufactured by Accucaps Industries Limited
Windsor, Ontario, Canada

Marketed by Ther-Rx Corporation
St. Louis, MO 63044

U.S. Patent Nos.: 4,822,816; 5,070,085; 5,516,925; 6,197,329; 6,258,846; 6,569,857; 6,576,666; 6,716,814; 7,112,609.
Other U.S. Patents pending.

# EXHIBIT D

Int. Cl.: 5

Prior U.S. Cls.: 6, 18, 44, 46, 51, and 52

**United States Patent and Trademark Office**

Reg. No. 2,582,817
Registered June 18, 2002

## TRADEMARK
### PRINCIPAL REGISTER

# PRIMACARE

DRUGTECH CORPORATION (DELAWARE COR-
PORATION)
900 MARKET STREET
WILIMINGTON, DE 19801 BY ASSIGNMENT KV
PHARMACEUTICAL COMPANY (DELAWARE
CORPORATION) ST. LOUIS, MO 63144

FOR: FOOD SUPPLEMENTS, NUTRITIONAL
SUPPLEMENTS, DIETARY SUPPLEMENTS, AND
PRE-MENOPAUSAL AND POST-MENOPAUSAL VI-

TAMIN AND NUTRITIONAL SUPPLEMENTS, IN
CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 12-29-2001; IN COMMERCE 12-29-2001.

SN 75-723,732, FILED 6-8-1999.

JULIA HARDY COFIELD, EXAMINING ATTOR-
NEY

Int. Cl.: 5

Prior U.S. Cls.: 6, 18, 44, 46, 51 and 52

**United States Patent and Trademark Office**

Reg. No. 3,414,475

Registered Apr. 22, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# PRIMACARE ONE

DRUGTECH CORPORATION (DELAWARE CORPORATION)
300 DELAWARE AVENUE, SUITE 1270
WILMINGTON, DE 19801

FOR: FOOD SUPPLEMENTS, NUTRITIONAL SUPPLEMENTS, DIETARY SUPPLEMENTS, AND PRE-MENOPAUSAL AND POST-MENOPAUSAL VITAMIN AND NUTRITIONAL SUPPLEMENTS , IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 4-19-2004; IN COMMERCE 4-19-2004.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 2,582,817.

SER. NO. 77-281,823, FILED 9-18-2007.

SHAUNIA CARLYLE, EXAMINING ATTORNEY

# EXHIBIT E

NDC 64011-200-10

*PrimaCare*
ONE

www.primacareone.com

30 Capsules
Rx Only

HIGH
OMEGA-3
DHA
EPA

A once-daily prenatal vitamin including high levels of omega-3 fatty acids (both DHA and EPA) and 1 mg folic acid

- Supports healthy full-term pregnancy
- Supports fetal brain and eye development
- Naturally helps soften stools

*Right for each mom and baby*





*PrimaCare*®
ONE

A once-daily prenatal vitamin including
high levels of omega-3 fatty acids
(both DHA and EPA) and 1 mg folic acid

30 Capsules

Rx Only



*PrimaCare*
ONE

A once-daily prenatal vitamin
supplement, including high levels of
omega-3 fatty acids (DHA and EPA)
and 1 mg folic acid

*Right for each mom and baby*

Ther-Rx Corporation – PrimaCare® – For Patients

For Patients | For Healthcare Providers | EFA & Pregnancy Basics | For Patients

*PrimaCare®*



## PrimaCare®

Give your baby an essential start — *anything less is simply not enough.*

Prenatal nutrition is important! Give every baby an essential start with PrimaCare® and PrimaCare® ONE; the leading prescription prenatal vitamins with essential fatty acids (EFAs) that contain a patented and balanced source of DHA and EPA. (65)

### The PrimaCare®/PrimaCare® ONE 360 Advantage

☒ A unique blend of 360 mg of essential fatty acids (EFAs) and precursors, including**:

&gt; Docosahexaenoic acid (DHA)
&gt; Alpha-linolenic acid (ALA)
&gt; Eicosapentaenoic acid (EPA)
&gt; Linoleic acid (LA)

PrimaCare® provides the highest amount, and the most complete range of any essential fatty acids of any prenatal vitamin. (1-4) Other prescription prenatal vitamins and over-the-counter (OTC) vitamins:

☒ May only contain DHA
☒ Have lower total essential fatty acids (up to 80% lower)

**Omega-3s from fish oil source have been studied extensively (10-13, 22, 25, 29)**

Omega-3 essential fatty acids have been studied extensively in pregnancy and newborns. (11-13, 22, 48) Some prescription prenatal vitamins contain algae sources (sometimes known as "all natural vegetarian sources" or "plant sources"), and have not been studied extensively in pregnancy.

Fish oil omega-3 benefits to baby include:





**REASONS**

*Why PrimaCare®
is right for you.*

more...

Tell a friend
Have a friend
that might
be interested?
☑ Send e-mail

Our patient education brochures offer helpful information to better prepare you for your next prenatal visit:



Ther-Rx Corporation - PrimaCare® - For Patients

The right prenatal can make a difference

Para español, Haga clic aqui.

How To Prepare For a Healthy Baby

**Learn more about other Ther-Rx products**

Anti-Infectives
- Gynazole-1®
- Clindesse®

**Advanced Prescription Nutritionals**
- Encora®

Prescription Prenatals
- PreCare Premier®²
- Premasika²
- Repliva 21/7™

Iron Deficiency
- Repliva 21/7™

..........................................

Footnote References >>
*(found in parentheses)*

Please see full Prescribing Information >>

---

□ Decreased risk of preterm birth (11-13)

□ Improved cognitive function (15-17)

□ Improved visual acuity (16, 18-20)

**Fish oil omega-3 benefits to mother include :**

□ Decreased incidence of postpartum depression (21-24)

□ Improved cardiovascular profile (25-31)

□ Maintenance of bone health (32-34)

□ Fish oil-based fatty acids act as a natural stool softener to decrease risk of constipation (36)

*360 mg total EFAs including DHA and EPA plus precursors



PrimaCare®

Ther-Rx Corporation

Home | Search | Contact Us | Site Directory | Safety Information | Prescribing Information | Ther-Rx & Women's Healthcare

©2008 Ther-Rx Corporation Terms of Use of Site

# PrimaCare®

A prenatal vitamin supplement with a range of omega-3 fatty acids (DHA and EPA), vitamins, minerals, and stool softeners

**Rx Only**

**DESCRIPTION:** PrimaCare® is a prescription prenatal/postnatal multivitamin/mineral capsule and tablet combination for oral administration with essential fatty acids that consists of two dosage forms on each blister card designated as AM and PM, as follows:

**AM dose is a dye-free, white, soft gelatin capsule containing the following ingredients:**

**Essential Fatty Acids:**

| | |
|---|---|
| Omega-3 Fatty Acids | 300 mg |
| Linoleic Acid | 30 mg |
| Linolenic Acid | 30 mg |

**Vitamins and Minerals:**

| | |
|---|---|
| Vitamin D₃ (cholecalciferol) | 170 IU |
| Vitamin E (d-alpha-tocopheryl acetate) | 30 IU |
| Calcium (calcium carbonate) | 150 mg |

**PM dose is a dye-free, oval-shaped, pink, film-coated tablet containing the following ingredients:**

**Vitamins:**

| | |
|---|---|
| Vitamin C (as Ester-C®)* | 100 mg |
| Vitamin D₃ (cholecalciferol) | 230 IU |
| Vitamin K | 90 mcg |
| Vitamin B₁ (thiamine mononitrate, USP) | 3 mg |
| Vitamin B₂ (riboflavin, USP) | 3.4 mg |
| Vitamin B₃ (niacinamide) | 20 mg |
| Vitamin B₆ (pyridoxine hydrochloride, USP) | 50 mg |
| Folic Acid, USP | 1 mg |
| Vitamin B₁₂ (cyanocobalamin) | 12 mcg |
| Biotin | 35 mcg |
| Pantothenic Acid | 7 mg |

**Minerals:**

| | |
|---|---|
| Calcium (as CalciPure™ calcium carbonate) | 250 mg |
| Iron (as Sumalate™)† | 30 mg |
| Zinc (zinc oxide, USP) | 11 mg |
| Selenium | 75 mcg |
| Copper (cupric oxide) | 1.3 mg |
| Chromium | 45 mcg |
| Molybdenum | 50 mcg |

**Other:**

| | |
|---|---|
| Docusate Sodium | 50 mg |
| Succinic Acid | 35 mg |

*Ester-C® is a patented pharmaceutical grade material consisting of calcium ascorbate and calcium threonate. Ester-C® is a licensed trademark of Zila Nutraceuticals, Inc.

†Sumalate™ (ferrous asparto glycinate) is a trademark of Albion International, Inc., Clearfield, Utah. U.S. Patent pending.

**Inactive Ingredients:**

**Capsule:** ethylvanillin, gelatin, glycerine, hydrogenated vegetable oil, lecithin, methylparaben, propylparaben, soybean oil, titanium dioxide, vegetable shortening, and yellow beeswax. Dye free

**Tablet:** carnauba wax, colloidal silicon dioxide, croscarmellose sodium, ethylvanillin, hydrogenated vegetable oil, hypromellose, lactose monohydrate, magnesium stearate, microcrystalline cellulose, polydextrose, polyethylene glycol, povidone, red iron oxide, sodium benzoate, titanium dioxide, and triacetin. Dye free

**INDICATIONS:** PrimaCare® is indicated to provide vitamin/mineral and essential fatty acid supplementation throughout pregnancy, during the postnatal period for both lactating and non-lactating mothers, and throughout the childbearing years. It is also useful for improving nutritional status prior to conception.

**CONTRAINDICATIONS:** This product is contraindicated in patients with a known hypersensitivity to any of its ingredients

**WARNINGS:** Folic acid alone is improper therapy in the treatment of pernicious anemia and other megaloblastic anemias where vitamin B₁₂ is deficient. Folic acid in doses above 1.0 mg daily may obscure pernicious anemia, in that hematologic remission can occur while neurological manifestations remain progressive

> **WARNING: Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.**

**PRECAUTIONS**

**Pediatric Use:** Safety and effectiveness in pediatric patients have not been established

**Geriatric Use:** Clinical studies on this product have not been performed to determine whether elderly subjects respond differently from younger subjects. In general, dose selection for an elderly patient should be cautious, usually starting at the low end of the dosing range, reflecting the greater frequency of decreased hepatic, renal, or cardiac function, and of concomitant disease or other drug therapy

**ADVERSE REACTIONS:** Allergic sensitization has been reported following both oral and parenteral administration of folic acid.

**DOSAGE AND ADMINISTRATION:** PrimaCare®'s patented Chronametric Systems™ dosing regimen, consisting of one "AM" dose (capsule) taken in the morning and one "PM" dose (tablet) taken at night, should be followed for improved nutrient absorption potential, or as prescribed by a physician

---

**HOW SUPPLIED:** PrimaCare® is supplied in a 30-day unit-of-use dispensing carton containing blister cards of 30 capsules and 30 tablets (NDC 64011-204-28)

PrimaCare® AM capsules are dye-free, white, soft gelatin capsules, imprinted "Ther-Rx 145" on one side in pink ink. The PM tablets are dye-free, oval-shaped, pink, film coated tablets, debossed "Ther-Rx" on one side and "196" with a partial bisect on the other side

Store at controlled room temperature 15°–30° C (59°–86° F).

**KEEP THIS AND ALL DRUGS OUT OF THE REACH OF CHILDREN.**

04-297-1   07/06
Mktd. by Ther-Rx Corp
St. Louis, MO 63044

U.S. Patent Nos.: 4,822,816; 5,070,085; 5,494,681; 5,516,925; 5,945,123; 6,197,329; 6,214,379; 6,228,388; 6,258,846; 6,375,956; 6,488,956; 6,569,857; 6,576,666; 6,716,814.
Other U.S. Patents pending

# PrimaCare®
# ONE

A once-daily prenatal vitamin supplement, including key omega-3 fatty acids (DHA and EPA) and 1 mg folic acid

**Rx Only**

**DESCRIPTION**

PrimaCare® ONE is a prescription prenatal/postnatal multivitamin/mineral capsule with essential fatty acids. Each purple soft gelatin capsule for oral administration contains:

**Essential Fatty Acids:**

| | |
|---|---|
| Omega-3 Fatty Acids | 300 mg |
| Linoleic Acid | 30 mg |
| Linolenic Acid | 30 mg |

**Vitamins:**

| | |
|---|---|
| Vitamin C (as Ester-C®)* | 25 mg |
| Vitamin D₃ (cholecalciferol) | 170 IU |
| Vitamin E (d-alpha-tocopheryl acetate) | 30 IU |
| Folic Acid, USP | 1 mg |
| Vitamin B₆ (pyridoxine hydrochloride) | 25 mg |

**Minerals:**

| | |
|---|---|
| Calcium | 150 mg |
| Iron (carbonyl iron) | 27 mg |

*Ester-C® is a patented pharmaceutical grade material consisting of calcium ascorbate and calcium threonate. Ester-C® is a licensed trademark of Zila Nutraceuticals, Inc.

**Inactive Ingredients:** D&C Red No. 33, ethylvanillin, FD&C Blue No. 1, gelatin, glycerine, hydrogenated vegetable oil, lecithin, methylparaben, propylparaben, soybean oil, titanium dioxide, vegetable shortening, and yellow beeswax

**INDICATIONS:** PrimaCare® ONE is indicated to provide vitamin/mineral and essential fatty acid supplementation throughout pregnancy, during the postnatal period for both lactating and non-lactating mothers, and throughout the childbearing years. It is also useful for improving nutritional status prior to conception.

**CONTRAINDICATIONS:** This product is contraindicated in patients with a known hypersensitivity to any of its ingredients.

**WARNINGS:** Folic acid alone is improper therapy in the treatment of pernicious anemia and other megaloblastic anemias where vitamin B₁₂ is deficient. Folic acid in doses above 1.0 mg daily may obscure pernicious anemia, in that hematologic remission can occur while neurological manifestations remain progressive.

> **WARNING: Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.**

**PRECAUTIONS**

**Pediatric Use:** Safety and effectiveness in pediatric patients have not been established

**Geriatric Use:** Clinical studies on this product have not been performed to determine whether elderly subjects respond differently from younger subjects. In general, dose selection for an elderly patient should be cautious, usually starting at the low end of the dosing range, reflecting the greater frequency of decreased hepatic, renal, or cardiac function, and of concomitant disease or other drug therapy.

**ADVERSE REACTIONS:** Allergic sensitization has been reported following both oral and parenteral administration of folic acid.

**DOSAGE AND ADMINISTRATION:** Usual dosage is one capsule daily, or as prescribed by a physician

**HOW SUPPLIED:** PrimaCare® ONE prenatal/postnatal multivitamin/mineral capsules are purple soft gelatin capsules, imprinted "Ther-Rx 142" in white ink, packaged in bottles of 30 capsules (NDC 64011-142-19).

Store at controlled room temperature 15°–30° C (59°–86° F)

**KEEP THIS AND ALL DRUGS OUT OF THE REACH OF CHILDREN.**

P5031   10/05
Mktd. by Ther-Rx Corp
St. Louis, MO 63044
U.S. Patent Nos.: 4,822,816; 5,070,085; 6,197,329; 6,258,846; 6,569,857; 6,576,666
Other U.S. Patents pending

# Exhibit F



Fox Rothschild LLP
ATTORNEYS AT LAW

Mail: P.O. Box 5231, Princeton, NJ 08543-5231

Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648-2311
Tel 609.896.3600  Fax 609.896.1469
www.foxrothschild.com

Jonathan Lagarenne
Direct Dial: (609) 896-4588
Email Address: jlagarenne@foxrothschild.com

June 6, 2008

**VIA FAX AND FEDERAL EXPRESS**
Marc S. Hermelin
Vice Chairman and Chief Executive Officer
KV Pharmaceuticals
2503 South Hanley Road
St. Louis, MO 63144

Re:    **Lannett Company's Multivitamin with Minerals Capsule**

Dear Mr. Hermelin:

We are counsel representing Lannett Company, Inc., who is launching into the marketplace a multivitamin with minerals capsule. We understand that KV Pharmaceuticals, through its wholly-owned subsidiary Drugtech Corporation, is the owner of United States Patent Numbers 6,258,846; 6,576,666 and 7,112,609 which relate to a multivitamin with minerals capsule products and methods of treatment. It is our contention that these patents are invalid and/or unenforceable.

Based on KV Pharmaceuticals' past and present history of using its patents to prevent others from offering products that compete with KV Pharmaceuticals products, we presume that KV Pharmaceuticals will seek to assert these patents to prevent Lannett's entry into the market. We are, therefore, prepared to file today the attached complaint in federal court seeking a declaration that Lannett's product does not infringe any of the patents' claims and that the patents are invalid and/or unenforceable. If we are mistaken as to KV Pharmaceuticals' intention with respect to the aforementioned patents and KV Pharmaceuticals would be prepared to enter into a binding covenant not to sue Lannett with respect to the launch of its multivitamin, please contact the undersigned immediately

A Pennsylvania Limited Liability Partnership

California        Delaware        Florida        Nevada        New Jersey        New York        Pennsylvania



Fox Rothschild LLP
ATTORNEYS AT LAW

Marc S. Hermelin
June 6, 2008
Page 2

in writing to so advise.  If we do not hear from you, we will assume that we have correctly understood
KV Pharmaceuticals' intentions with respect to the aforementioned patents and shall proceed
accordingly to protect our client's interests.

Sincerely,

Jonathan Lagarenne, Esq.
FOX ROTHSCHILD, LLP

Enclosure

LV1 950775v1 06/06/08

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LANNETT COMPANY INC., | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| KV PHARMACEUTICALS, | : | |
| DRUGTECH CORPORATION, and | : | |
| THER-RX CORPORATION, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Lannett Company, Inc. ("Lannett") brings this action against Defendants, KV

Pharmaceuticals ("KV"), DrugTech Corporation ("DrugTech"), and Ther-Rx Corporation

("Ther-Rx") (collectively, the "KV Defendants"), and alleges as follows:

### PARTIES

1.    Plaintiff Lannett Company, Inc. is a Delaware corporation having its principal

place of business at 9000 State Road, Philadelphia, PA 19136.

2.    Upon information and belief, Defendant KV Pharmaceuticals is a Delaware

corporation having its principal place of business at 2503 South Hanley Road, St. Louis, MO

63144.

3.    Upon information and belief, Defendant DrugTech Corporation is a Delaware

corporation having its principal place of business located at 300 Delaware Avenue, Suite 1270,

Wilmington, DE 19801.  DrugTech is a wholly-owned subsidiary of KV Pharmaceuticals.

DrugTech owns the patents at issue and licenses the patents to KV Pharmaceuticals and Ther-Rx

Corporation.

PHl 2032105v1 05/30/08

4.    Upon information and belief, Defendant Ther-Rx Corporation is a Missouri corporation having its principal place of business at 1 Corporate Woods Drive, Brigeton, MO 63044. Ther-RX is a wholly owned subsidiary of KV Pharmaceuticals responsible for marketing and selling the patented products at issue, and is a licensee of DrugTech Corporation.

## NATURE OF ACTION

5.    This is an action for a declaratory judgment of patent invalidity, non-infringement, unenforceability for inequitable conduct and unfair competition.  Lannett seeks a declaration that patents belonging to the KV Defendants, specifically, U.S. Patent No. 6,258,846 ("the '846 patent") , U.S. Patent No. 6,576,666 ("the '666 patent"), and U.S. Patent No. 7,112,609 ("the '609 patent") (collectively the "KV Patents") are invalid and/or unenforceable. True and correct copies of the '846 patent, the '666 patent and the '609 patent are attached hereto as Exhibits "1", "2" and "3" respectively.  Lannett also seeks a declaration that Lannett's nutritional dietary product - Multivitamin With Mineral Capsules -- does not infringe upon the KV Patents and that the KV Defendants have engaged in unfair competition and deceptive trade practices in the marketplace by preventing Lannett and others from entering the market.

6.    This action is also brought under the Clayton Act, 15 U.S.C. §§ 15 and 25, as amended, and the Sherman Act, 15 U.S.C. §§ 1 and 2, where Defendants have asserted invalid or unenforceable patents in order to inhibit competition in the marketplace.

## JURISDICTION AND VENUE

7.    This action arises under the patent laws of the United States, Title 35 of the United States Code, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and state laws regarding unfair competition and deceptive trade practices, 6 Del. C. § 2532.  This Court has subject matter jurisdiction over count one (declaratory judgment of non-infringement ), count two (declaratory judgment of invalidity), count three (inequitable conduct) and count four

2

(antitrust violations) pursuant to 28 U.S.C. §§ 1331, 1367, 1338 and 2201-2202, as claims arising under the patent laws of the United States and the Declaratory Judgment Act. The Court also has subject matter jurisdiction over count five (deceptive trade practices) because count five forms part of the same case or controversy as the claims contained in counts one through five. Jurisdiction is also conferred by 28 U.S.C. § 1337, and the Clayton Act, as amended. The Court has supplemental jurisdiction over the state law claim of deceptive trade practices pursuant to 28 U.S.C. § 1367.

8.      Based on information and belief, venue in this judicial district is proper under the provisions of 28 U.S.C. §§ 1391(c) and 1400(b), where the Defendants KV and DrugTech are Delaware corporations and Ther-Rx engages in significant business in, and derives significant profit within, the State of Delaware. The KV Defendants sell their PrimaCare One Product through various pharmacies within the State of Delaware and have significant annual sales in the State of Delaware.

9.      This Court also has jurisdiction over Lannett's claim for violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532, pursuant to 28 U.S.C. § 1338(b) because those claims are joined with substantial and related claims under the Patent and Trademark Laws of the United States.

## FACTUAL BACKGROUND

10.     Lannett has plans to market its Multivitamin With Mineral Capsules, a multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support, within the United States. Dietary multivitamin/mineral and omega-3 fatty acid supplements are prescribed by healthcare professionals throughout pregnancy, during the postnatal period for both lactating and non-lactating mothers, and throughout the childbearing years.

3

PHI 2032105v1 05/30/08

11.    The KV Patents prevent Lannett and other competitors from introducing their competitive multivitamin/mineral and omega-3 fatty acid supplementation products in competition with the KV Defendants' product, PrimaCare One. There is a reasonable likelihood that the KV Defendants will assert a claim for patent infringement against Lannett once its product, Multivitamin With Mineral Capsules, enters the marketplace.

12.    Lannett has a reasonable belief, based upon prior art and the patents' prosecution histories, that the KV Patents are invalid, non-infringed and unenforceable.

13.    Lannett has informed the KV Defendants of its intent to market a product arguably within the scope of the KV Patents.

14.    In light of the apparent invalidity of the KV Patents, Lannett has sought assurances from the KV Defendants that they will not assert their facially invalid patents to block Lannett's entry into the market. The KV Defendants have failed or refused to provide such assurances. Thus, an Article III case or controversy exists between Lannett and the KV Defendants.

15.    The KV Defendants are motivated to maintain their market share, which is comprised of invalid and/or unenforceable patents, to keep Lannett and other competitors from entering the marketplace and to prevent the dilution of KV Defendants' market share for dietary supplement multivitamin/mineral and omega-3 fatty acid products.

## COUNT ONE

### Declaratory Judgment of Noninfringement

16.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

4

17.    Upon information and belief, the '846 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on July 10, 2001 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly-owned subsidiary of KV Pharmaceuticals.

18.    Upon information and belief, the '666 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on June 10, 2003 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

19.    Upon information and belief, the '609 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on September 26, 2006 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

20.    The KV Defendants have failed to comply with the requirements of Sections 102 and 103 of Title 35 of the United Stated Code, and other relevant sections of Title 35.

21.    Thus, Lannett has not infringed upon, and will not infringe upon the KV Patents by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or importing such a product into the United States.

22.    Based on the foregoing, an actual and justiciable controversy exists between Lannett and the KV Defendants with respect to the KV Patents.

### COUNT TWO

#### Declaratory Judgment of Invalidity

23.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

24.    Upon information and belief, the KV Patents are invalid based upon prior art and the patents' prosecution histories.

25.    The KV Patens are invalid for failure to comply with the requirements of sections 102 and 103 of Title 35 of the United States Code, and other relevant sections of Title 35.

5

PHl 2032105v1 05/30/08

26.    The KV Patents are invalid.  Thus, Lannett has not, is not and will not infringe upon the KV Patents by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or by importing such a product into the United States.

27.    The KV Patents are invalid.  Therefore, Lannett has not induced or contributed to, and is not inducing or contributing to, infringement of the KV Patents, and will not induce or contribute to infringement of the KV patents, by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or by importing such a product into the United States.

## COUNT THREE

### Inequitable Conduct

28.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

29.    Upon information and belief, the '609 patent is unenforceable based upon the KV Defendants' inequitable conduct and the patent's prior art and prosecution history.

30.    The '609 patent was filed on June 10, 2003, and issued on September 26, 2006.

31.    The '609 patent is a continuation-in-part of the '666 patent, which is a continuation-in-part of the '846 patent.  In other words, these three patents constitute a family of patents that claim the KV Defendants' product, PrimaCare One.

32.    Defendants filed a continuation application for the '609 patent on December 26, 2004 as U.S. Application Serial No. 11/021,344 ("the '344 Continuation Application").  The '344 Continuation Application was filed almost two years before the issuance of the '609 patent on September 26, 2006, and more than one year after the filing date of the '609 patent on June 10, 2003.

6

38.    The '539 Application is material to the patentability of the '344 Continuation Application, and therefore it is also material to the patentability of the '609 patent.

39.    During the prosecution of the '609 patent, the KV Defendants, with knowledge of the '539 Application, did not disclose the reference to the USPTO as a prior art reference.

40.    On October 4, 2005, during the prosecution of the '609 patent, the KV Defendants responded to a Non-final Office Action from the USPTO.

41.    In its written response to the USPTO on October 4, 2005, the KV Defendants were aware of '539 Application but failed to disclose it as prior art. In fact, in their written response, the KV Defendants represented that the "pending claims 53-60 are patentable as written. A notice of allowance is thereby respectfully requested." See Written Response of the KV Defendants dated October 4, 2005 at p. 10, ¶ 3 attached hereto as Exhibit 5. Therefore, the KV Defendants asserted that the application was patentable with full knowledge that they had not disclosed the '539 Application to the USPTO.

42.    On February 21, 2006, USPTO Examiner Jennifer Kim and Primary Examiner ShengJun Wang conducted a personal interview of Sarah Vaz (Reg # 34,747), a representative for the KV Defendants, in furtherance of the prosecution of what would eventually issue as the '609 patent. During this interview, the KV Defendants were aware that the '539 Application was material prior art, but did not disclose the reference to the USPTO examiners.

43.    On March 10, 2006, the KV Defendants submitted an amendment after a Final Office Action to the USPTO in furtherance of the prosecution of what would eventually issue as the '609 patent. The KV Defendants again stated that the "application is in condition for allowance". See Amendment After Final Office Action at p. 4, ¶ 1 attached hereto as Exhibit 6. However, the KV Defendants knew that they had not disclosed the '539 Application to the USPTO Examiner as a material prior art reference to the patentability of the '609 patent.

8

33.     On July 12, 2005, Gary J. Connell, Esquire ("Mr. Connell") of Sheridan Ross,
P.C., on behalf of an undisclosed client, filed a third-party submission with the United States
Patent and Trademark Office ("USPTO") stating that European Patent Application EP 0 705 539
A2 ("the '539 Application"), which was published on April 10, 1996, is material to the
patentability of the '344 Continuation Application. A true and correct copy of the third party
submission is attached hereto as Exhibit 4. The disclosure reveals that the KV Patents are
invalid and/or unenforceable.

34.     Mr. Connell also mailed a copy of the third-party submission to counsel for the
KV Defendants on July 12, 2005. Thus, the KV Defendants and their counsel were aware that
the '539 Application was prior art for the '344 Continuation Application.

35.     Mr. Connell's actions clearly demonstrate a desire on the part of his client to
invalidate the KV Defendants' dietary supplement patents via an administrative procedure
through the USPTO in order to enter the dietary supplement market dominated exclusively by
the KV Defendants.

36.     This administrative proceeding has been pending before the USPTO since July
12, 2005, but a decision has not been issued. However, the proceeding has prevented the
continued prosecution of a fourth patent application for the KV Defendants' product, PrimaCare
One. As a result, the KV Defendants have been able to maintain their market share and
effectively prevent the entry of other competitors into the marketplace.

37.     On July 12, 2005, Mr. Connell mailed a copy of the third-party submission to
counsel for the KV Defendants. The '609 patent was issued on September 26, 2006. Thus, the
KV Defendants knew or should have known that the '539 Application was prior art to the '609
patent about fourteen (14) months prior to issuance of the '609 patent.

7

PH1 2032105v1 05/30/08

44.    On June 13, 2006, the KV Defendants paid the issue fee to the USPTO in furtherance of the prosecution of what would eventually issue as the '609 patent.

45.    The KV Defendants, however, had a duty of disclosure to reveal all prior art information material to patentability to the USPTO during the prosecution of the '609 patent.

46.    The duty of disclosure arises from case law and the Code of Federal Regulations governing patent procurement. See 37 C.F.R. §§ 1.56, 1.97 and 1.98.

47.    The duty to disclose information material to patentability exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. See 37 C.F.R. § 1.56.

48.    The Defendants made affirmative statements to the USPTO that the application to eventually issue as the '609 patent was patentable, while intentionally withholding the '539 Application, which was material to patentability of the '609 patent.

49.    The '609 patent is unenforceable. Therefore, Lannett has not infringed upon, and is not infringing upon any claims of the '609 patent, and will not infringe upon any claims of this patent by making, using, offering to sell or selling its Multivitamin With Mineral Capsules, or importing such a product into the United States.

50.    Moreover, Lannett has not induced or contributed to, and is not inducing or contributing to, the infringement of any claims of the '609 patent, and will not induce or contribute to the infringement of any claims of this patent, by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or importing such a product into the United States.

9

## COUNT FOUR

### Anti-Trust Violations

51.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

52.    Upon information and belief, the KV Defendants have obtained and maintained monopoly power in the relevant market for the multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support. The relevant geographic market for this product is the United States.

53.    Upon information of belief, the KV Defendants knew or should have known that the KV Patents are invalid and/or unenforceable, in light of the '539 Application.

54.    The KV Defendants pursued issuance of the '609 patent with the USPTO and allowed the USPTO to issue the '609 patent despite knowledge of the existence of invalidating prior art. Moreover, the KV Defendants have taken no steps to correct defects in the '846 patent and the '666 patent.

55.    Furthermore, upon information and belief, the KV Defendants have not taken any steps to address the prior art issue in the pending '344 Continuation Application currently before the USPTO, despite the undeniable conclusion that there is a third party adversely affected by the pending application and the KV Patents.

56.    Defendants have obtained and maintained their market power through acquisition and maintenance of their fraudulently-procured '609 patent, as well as their invalid '846 and '666 patents.

57.    In light of the apparent and undeniable invalidity of the '846 patent, the '666 patent and the '609 patent, Lannett has requested assurances from the KV Defendants that they will not assert their facially invalid patents to block Lannett's entry into the market. The KV

10

Defendants have failed or refused to provide such assurances. Therefore, an Article III case or controversy exists between Lannett and the KV Defendants.

58.    As a result of the KV Defendants' anticompetitive conduct, Lannett stands to lose substantial sales of its Multivitamin With Mineral Capsules for prenatal and postnatal support. This injury is a competitive injury of the sort that the antitrust laws were intended to prevent because Lannett and the KV Defendants directly compete in the marketing and sale to end-users of multivitamin/mineral products containing omega-3 fatty acids. In addition, Lannett was forced to hire counsel and bring the instant action to obtain redress for the KV Defendants' unlawful and anticompetitive conduct.

59.    The KV Defendants have violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully obtaining and maintaining market power in the relevant market by use of threats to enforce patents that the KV Defendants knew were invalid and/or procured fraudulently. Section 4 of the Clayton, 15 U.S.C. § 15(a), authorizes private suits for damages based upon violations of the Sherman Act.

60.    As the result of the KV Defendants' unlawful and anticompetitive conduct described above, Lannett has suffered economic injury.

**COUNT FIVE**

**Violation of Deceptive Trade Practices Act**

61.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

62.    Upon information and belief, the KV Defendants knew or should have known that the '609 patent is invalid and/or unenforceable, especially in light of the '539 Application.

11

63.     The KV Defendants have, and continue to represent, in the course of their business, that PrimaCare One is covered by the '609 patent, when the KV Defendants knew or should have known that this patent was invalid and/or unenforceable.

64.     The KV Defendants have, and continue to advertise that PrimaCare One is covered by the '609 patent, when the KV Defendants knew or should have known that this patent was invalid and/or unenforceable.

65.     Upon information and belief, and in the course of their business, as alleged above, the KV Defendants' conduct violates 6 Del. C. § 2532.

66.     The KV Defendants' conduct violates 6 Del. C. § 2532 and unfairly interferes with Lannett's ability to compete with the KV Defendants on the merits of their products.

67.     Because of the KV Defendants' conduct violating 6 Del. C. § 2532, Lannett has suffered and will continue to suffer economic injury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court order the following relief:

A.     Declare that the Multivitamin With Mineral Capsules sold by Lannett Company Inc. does not infringe upon the claims of the '846 patent, the '666 patent and the '609 patent;

B.     Declare that the claims of the '846 patent, the '666 patent and the '609 patent issued to the KV Defendants are invalid;

C.     Declare that the claims of the '609 patent issued to the KV Defendants are unenforceable; and

D.     Award such other and further relief as this Court deems just and proper.

12

## <u>DEMAND FOR JURY TRIAL</u>

Lannett hereby demands a trial by jury on all issues.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

By: _____

Sophia Siddiqui, Esquire (#4914)
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE  19801
(302) 622-4278
(302) 656-8920
gwilliams@foxrothschild.com
ssiddiqui@foxrothschild.com

<u>Of Counsel</u>
Samuel H. Israel, Equire
Gerard P. Norton, Equire
Fox Rothschild LLP
2000 Market St., 10th Floor
Philadelphia, PA  19103
(215) 299-2000
(215) 299-2150

Attorneys for Plaintiff
Lannett Company Inc.

Date: June 6, 2008

13

# Exhibit G



Compare to
the active
ingredients in *PrimaCare® ONE*
*Registered trademark of Ther-Rx Corp.



NDC 0527-1637-30

LANNETT

Multivitamin
with Minerals
Rx only
30 Capsules



...az.r.y
...873
...DGES OUT OF THE REACH

...mrdose of iron-containing
...use of fatal poisoning in
...his product out of reach of
...cidental overdose, call a
...urse immediately.
Made in India

1637-307

compare to
the active
ingredients in *PrimaCare® ONE*

*Registered trademark of Ther-Rx Corp.

Usual dose: One cap...
Store at 15°-30°C...
KEEP THIS AND ALL...
OF CHILDREN.

WARNING: Acce...
products is a lead...
children under 6...
children. In case...
doctor or poison co...

Rev. 01/08

N 0527 1...
3

*compare to*
*the active*
*ingredients in* *PrimaCare® ONE**
*Registered trademark of Ther-Rx Corp.

Exp. Date: 03/2003

Lot No.: O-10180

Each capsule contains:
Omega-3 Fatty Acids, 300 mg;
Linoleic Acid, 30 mg; Linolenic Acid,
30 mg; Vitamin C, 25 mg; Vitamin D3,
170 IU; Vitamin E, 30 IU; Folic Acid,
USP, 1 mg; Vitamin B6, 25 mg;
Calcium, 150 mg; Iron, 27 mg

Manufactured For:
Lannett Company, Inc.
Philadelphia, PA 19136











MULTIVITAMIN WITH MINERALS

MULTIVITAMIN WITH MINERALS

**Rx only**

A once-daily prenatal vitamin supplement, including key omega-3 fatty acids (DHA and EPA) and 1 mg folic acid.

**DESCRIPTION**
Multivitamin with minerals is a prescription prenatal/postnatal multivitamin/mineral capsule with essential fatty acids

Each purple soft gelatin capsule for oral administration contains:

**Essential Fatty Acids and Precursors:**

| | |
|---|---|
| Omega-3 Fatty Acids | 300 mg |
| Linoleic Acid | 30 mg |
| Linolenic Acid | 30 mg |

**Vitamins:**

| | |
|---|---|
| Vitamin C (as calcium ascorbate and calcium threonate*) | 25 mg |
| Vitamin D3 (cholecalciferol) | 170 IU |
| Vitamin E (dl-alpha-tocopheryl acetate) | 30 IU |
| Folic Acid, USP | 1 mg |
| Vitamin B6 (pyridoxine hydrochloride) | 25 mg |

**Minerals:**

| | |
|---|---|
| Calcium (as calcium carbonate) | 150 mg |
| Iron | |
| Carbonyl iron (elemental iron) | 20 mg |
| Ferrochel®† amino acid chelate (elemental iron) | 7 mg |

*Compare to Ester-C®, a patented pharmaceutical grade material consisting of calcium ascorbate and calcium threonate. Ester-C® is a licensed trademark of Zila Nutraceuticals, Inc.

†Ferrochel® is a registered trademark of Albion Advanced Nutrition, Clearfield, Utah.

**Inactive Ingredients:** Hydrogenated vegetable oil, lecithin, yellow beeswax, colloidal silicon dioxide, refined soya oil, gelatin, glycerin, sorbitol, methylparaben, propyl-

paraben, D&C Red # 33, FD&C Blue # 1. titanium dioxide, ethylvanillin. White imprinting ink inactive ingredients: Shellac glaze in IMS 74 OP, titanium dioxide, purified water, N-butyl alcohol, lecithin (soya), and antifoam DC 1510

**INDICATIONS**
Multivitamin with minerals capsules are indicated to provide vitamin/mineral and essential fatty acid supplementation throughout pregnancy, during the postnatal period for both lactating and non-lactating mothers, and throughout the child-bearing years. It is also useful for improving nutritional status prior to conception

**CONTRAINDICATIONS**
This product is contraindicated in patients with a known hypersensitivity to any of the ingredients

**WARNINGS**
Folic acid alone is improper therapy in the treatment of pernicious anemia and other megaloblastic anemias where vitamin B12 is deficient. Folic acid in doses above 1 0 mg daily may obscure pernicious anemia, in that hematologic remission can occur while neurological manifestations remain progressive.

> **WARNING: Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.**

**PRECAUTIONS**
**Pediatric Use:** Safety and effectiveness in pediatric patients have not been established.

**Geriatric Use:** Clinical studies on this product have not been performed to determine whether elderly subjects respond differently from younger subjects. In general, dose selection for an elderly patient should be cautious, usually starting at the low end of the dosing range, reflecting the greater frequency of decreased hepatic, renal, or cardiac function, and of concomitant disease or other drug therapy.

**ADVERSE REACTIONS**
Allergic sensitization has been reported following both oral and parenteral administration of folic acid

**DOSAGE AND ADMINISTRATION**
Usual dosage is one capsule daily, or as prescribed by a physician

**HOW SUPPLIED**
MULTIVITAMIN WITH MINERALS prenatal/postnatal multivitamin/mineral capsules are purple, oblong-shaped, soft gelatin capsules. imprinted "LCI 1637" in white ink, packaged in bottles of 30 capsules (NDC 0527-1637-30)

Store at controlled room temperature 15°-30°C (59°-86°F).

**KEEP THIS AND ALL DRUGS OUT OF THE REACH OF CHILDREN.**

Manufactured for:
Lannett Company, Inc.
Philadelphia. PA 19136

Rev. 02/08

**CERTIFICATE OF SERVICE**

I hereby certify that on June 24, 2008, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Sophia Siddiqui
> Fox Rothschild LLP
> 919 Market Street, Suite 1300
> P. O. Box 2323
> Wilmington, DE   19899-2323

I hereby certify that on June 24, 2008, I sent by Electronic Mail the foregoing document to the following non-registered participants:

> Samuel H. Israel
> Gerard P. Norton
> Fox Rothschild LLP
> 2000 Market Street, 10th Floor
> Philadelphia,. PA   19103

Anne Shea Gaza (#4093)
gaza@rlf.com

RLF1-3293395-1