# EXHIBIT "I"



UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONE
UNITED STATES PATENT AND TRADE
WASHINGTO
www.u

Bib Data Sheet

CONFIRMATION NO. 521

| SERIAL NUMBER 09/885,158 | FILING DATE 06/21/2001 RULE | CLASS 514 | GROUP ART UNIT 1617 | ATTORNEY DOCKET NO. 23818Y |
|---|---|---|---|---|

**APPLICANTS**

Marc S. Hermelin, Glendale, MO;
R. Saul Levinson, Chesterfield, MO;
George Paradissis, St. Louis, MO;

* CONTINUING DATA ••••••••••••••••••••••
   THIS APPLICATION IS A CON OF 09/323,159 06/01/1999 PAT 6,258,846

* FOREIGN APPLICATIONS •••••••••••••••••• *none*

| oreign Priority claimed ☐ yes ☒ no 5 USC 119 (a-d) conditions et ☐ yes ☐ no ☐ Met after Allowance | STATE OR COUNTRY MO | SHEETS DRAWING | TOTAL CLAIMS 31 | INDEPENDENT CLAIMS 5 |
|---|---|---|---|---|
| erified and cknowledged    Examiner's Signature    Initials | | | | |

iary M. Nath
IATH & ASSOCIATES PLLC
030 15th Street, N.W. - 6th Floor
Vashington ,DC 20005

**ITLE**
Iutritional supplements

| FILING FEE RECEIVED 1068 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees ( Filing ) |
| | | ☐ 1.17 Fees ( Processing Ext. of time ) |
| | | ☐ 1.18 Fees ( Issue ) |
| | | ☐ Other |
| | | ☐ Credit |





jc860 U.S PTO
09/885158
06/21/01

INITIALS *[signature]*

# CONTENTS

|  | | Date Received (Incl. C. of M.) or Date Mailed |
|---|---|---|
| 1. Application _____ papers. | | |
| 2. *[handwritten]* | 6/21/01 |
| 3. IOS | 9/28/01 |
| 4. *[handwritten]* Rsp(3mos) | 12-17-01 |
| 5. *[handwritten]* Declaration | 4/5/02 |
| 6. *[handwritten]* | 4/1/02 |
| 7. *[handwritten]* | 4/1/02 |
| 8. *[handwritten]* | 7-2-02 |
| 9. *[handwritten]* Ext of Time (3mos) | 11/04/02 |
| 10. RCE | 11/04/02 |
| 11. *[handwritten]* Amdt B | 11/04/02 |
| 12. *[handwritten]* Allowance | 1.28.03 |
| 13. | |
| 14. | |
| 15. | |
| 16. | |
| 17. | |
| 18. | |
| 19. | |
| 20. | |
| 21. | |
| 22. | |
| 23. | |
| 24. | |
| 25. | |
| 26. | |
| 27. | |
| 28. | |
| 29. | |
| 30. | |
| 31. | |
| 32. | |
| 33. | |
| 34. | |
| 35. | |
| 36. | |
| 37. | |
| 38. | |
| 39. | |
| 40. | |
| 41. | |

| | Date Received (Incl. C. of M.) or Date Mailed |
|---|---|
| 42. | |
| 43. | |
| 44. | |
| 45. | |
| 46. | |
| 47. | |
| 48. | |
| 49. | |
| 50. | |
| 51. | |
| 52. | |
| 53. | |
| 54. | |
| 55. | |
| 56. | |
| 57. | |
| 58. | |
| 59. | |
| 60. | |
| 61. | |
| 62. | |
| 63. | |
| 64. | |
| 65. | |
| 66. | |
| 67. | |
| 68. | |
| 69. | |
| 70. | |
| 71. | |
| 72. | |
| 73. | |
| 74. | |
| 75. | |
| 76. | |
| 77. | |
| 78. | |
| 79. | |
| 80. | |
| 81. | |
| 82. | |

(LEFT OUTSIDE)

US006576666B2

(12) **United States Patent**
   Hermelin et al.

(10) Patent No.: **US 6,576,666 B2**
(45) Date of Patent: **Jun. 10, 2003**

(54) **NUTRITIONAL SUPPLEMENTS**

(75) Inventors: **Marc S. Hermelin**, Glendale, MO (US); **R. Saul Levinson**, Chesterfield, MO (US); **George Paradissis**, St. Louis, MO (US)

(73) Assignee: **Drugtech Corporation**, Wilmington, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/885,158**

(22) Filed: **Jun. 21, 2001**

(65) **Prior Publication Data**

US 2002/0032234 A1 Mar. 14, 2002

**Related U.S. Application Data**

(63) Continuation of application No. 09/323,159, filed on Jun. 1, 1999, now Pat. No. 6,258,846.

(51) Int. Cl.[7] ..................... **A61K 31/20; A61K 31/44; A61K 31/495; A61K 31/50; A61K 31/34**

(52) U.S. Cl. ..................... **514/560; 514/345; 514/249; 514/474; 514/458**

(58) Field of Search ..................... 514/560, 345; 514/249, 474, 458

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,925,560 A | 12/1975 | Scott et al. | 426/2 |
| 4,642,317 A | 2/1987 | Palmquist et al. | 514/588 |
| 4,753,926 A | * 6/1988 | Lucas et al. | 514/2 |
| 5,004,728 A | 4/1991 | Chalupa et al. | 514/12 |
| 5,143,737 A | 9/1992 | Richardson | 426/2 |
| 5,264,217 A | 11/1993 | Horrobin | 424/439 |
| 5,562,913 A | 10/1996 | Horrobin | 424/401 |

| | | | |
|---|---|---|---|
| 5,635,198 A | 6/1997 | Nishimura et al. | 424/438 |
| 5,744,161 A | 4/1998 | Majeed et al. | 424/464 |
| 5,776,504 A | 7/1998 | McCarty | 424/682 |

OTHER PUBLICATIONS

Clark et al, 117CA:25288, 1992.*
FDA (United States Food and Drug Administration), 104CA:4736, 1985.*
Alvarez et al. 107CA:22135, 1986.*
The Merck Manual 185: 968 (16th Ed. 1992).
The Merck Manual 185: 1929–1931 (16th Ed. 1992).
*Physician Desk Reference (PDR)*, 53rd Ed., 1011, 1999.
*Physician Desk Reference (PDR)*, 53rd Ed., 1522–3, 1999.
*Physician Desk Reference (PDR)*, 53rd Ed., 1692, 1999.
*Physician Desk Reference (PDR)*, 53rd Ed., 2802, 1999.
*Physician Desk Reference (PDR)*, 53rd Ed., 2916–17, 1999.
*Physician Desk Reference (PDR)*, 53rd Ed., 2917–18, 1999.
*Physician Desk Reference (PDR)*, 53rd Ed., 3128, 1999.
*Physician Desk Reference (PDR)*, 53rd Ed., 3163, 1999.
*Physician Desk Reference (PDR)*, 53rd Ed., 3212, 1999.
Whitney, E. and Rolfes, S., *Understanding Nutrition*, 6th Ed., 136–40, 1993.
Whitney, E. and Rolfes, S., *Understanding Nutrition*, 6th Ed., 493–504, 1993.

* cited by examiner

*Primary Examiner*—Russell Travers
(74) *Attorney, Agent, or Firm*—Nath & Associates PLLC; Gary M. Nath

(57) **ABSTRACT**

The present disclosure relates to novel nutritional compositions containing linoleic acid and/or linolenic acid which optimize child neurological development and provide improved nutritional support for women prior to and during lactation. The nutritional compositions are intended for use by women to optimize infant neurological development and provide improved nutritional support for women prior to, during and after lactation.

**23 Claims, No Drawings**

US 6,576,666 B2

1

# NUTRITIONAL SUPPLEMENTS

This application is a continuation application of U.S. patent application Ser. No. 09/323,159, filed Jun. 1, 1999 now U.S. Pat. No. 6,258,846, the entire contents of which are hereby incorporated by reference in their entirety.

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention is directed to novel compositions containing fatty acids, in particular, linoleic acid and linolenic acid, for use by pregnant and/or lactating women to optimize infant neurological development and provide improved nutritional support for women prior to, during and after lactation.

### 2. Description of the Related Art

At some time prior to the end of pregnancy, pregnant women face the decision of whether or not to breast-feed their infants. It is estimated that over 50% of all mothers choose to breast-feed their infants. See *The Merck Manual,* 185:1929–1931 (16th ed. 1992). Furthermore, the number of women deciding to breast-feed appears to be on the increase, particularly in higher socioeconomic groups. Id. Most experts would agree that this increase is very desirable in view of the numerous recognized nutritional benefits for developing infants which accompany their consumption of human milk. Because of the nutritional benefits for infants, many health care providers and dietitians believe breast-feeding is sufficiently important to warrant that every effort be made to breast-feed, even if only for a short time. See Whitney et al., *Understanding Nutrition,* 493–504 (6th ed. 1993).

Moreover, in addition to the nutritional benefits of breast-feeding, many women simply want to breast-feed their infants for emotional or psychological reasons. However, regardless of a women's underlying reasons for breast-feeding, her nutritional status is implicated in the decision of whether to breast-feed her child. For example, a nutritional deficiency in a woman may severely limit the quantity of breast milk which is produced or, in some cases, entirely prevent lactation from occurring.

Generally speaking, the nutritional benefits of breast-feeding stem from the unique nutrient composition and protective factors present in breast milk which promote infant health and development. Id. at 494. For example, breast milk generally contains all of the vitamins required for infant development, with the possible exception of vitamin D. Id. at 500. Further, breast milk is an abundant source of minerals and, more importantly, some minerals are present in breast milk in highly desirable ratios (e.g., the 2-to-1 ratio of calcium to phosphorus in breast milk is ideal for the absorption of calcium). Id. Breast milk also contains invaluable immunological agents, including antiviral agents such as immunoglobulins, and antibacterial agents such as lactoferrin.

In addition to the above discussed vitamins, minerals and immunological agents, breast milk also contains various "energy nutrients". For example, breast milk contains lactose which is the carbohydrate present in breast milk and which facilitates calcium absorption. Id. A relatively small amount of protein, primarily in the form of alpha-lactalbumin, is also present in breast milk, thus placing less stress on the infant's immature kidneys. Id. Breast milk additionally contains fat along with fat-digesting enzymes. Id. Linoleic acid, a fatty acid, is found in large quantities in breast milk. Id.

2

The presence of fatty acids in breast milk is significant for various reasons, as described below. First, the body derives most of its energy from triglycerides, a molecule of glycerol with three fatty acids attached. The stored fatty acids support most of life's activities when individual's are between meals or must go without food. While the body can make many fatty acids, it cannot make linoleic acid or linolenic acid. These two fatty acids are indispensable to body functions and therefore must be supplied through food.

Secondly, essential fatty acids are important for the developing brain, immunological system and cardiovascular system, and have some role to play in every organ of the body. Linoleic acid is the most important member of the omega-6 family of fatty acids. The body uses linoleic acid to synthesize an important 20-carbon fatty acid, arachidonic acid, which helps maintain the structural integrity of cell membranes.

Linolenic acid is the most important member of the omega-3 family of fatty acids. The body requires this fatty acid to make eicosapentaenoic acid (EPA) and docosahexaenoic acid (DHA). Many body tissues require EPA and DHA. DHA is especially important in the retina and in the cerebral cortex of the brain. Half of the DHA in a fetus's body accumulates in the brain before birth, and half after birth, an indication of the importance of fatty acids to the fetus during pregnancy and then to the young infant during lactation.

Successful breast-feeding requires that the mother maintain good nutrition and adequate rest. A good, nutritional diet is needed to support the stamina that nursing an infant requires. Beyond this, however, a woman must consume a nutrient-rich diet to produce nutrient-rich milk.

A healthy nursing mother generally makes about 25 ounces of milk each day. To produce this milk, the mother needs to consume 650 kcalories above what she would normally require for herself. Woman are advised to eat about 500 kcalories worth of extra food and let the extra fat left over from pregnancy provide the rest. Woman may not consume enough food for many reasons, including the desire to lose all of the weight gained during pregnancy. But restricting food and energy in this fashion will result in breast milk which is lacking in nutrients, low quantities of breast milk or, in the worse case scenario, no breast milk at all.

According to the medical literature, a nursing mother should eat foods high in nutrients and drink plenty of fluid. Nutritional deprivation in the mother generally reduces the quantity, more so than the quality, of the milk. So while woman can produce milk with sufficient protein, carbohydrate, fat and minerals even if their own intake is insufficient, the quality of the breast milk is maintained at the expense of the mother's own nutrient repositories. Moreover, quantities of particular vitamins, such as B6, B12, A and D, in breast milk will actually decline in response to a inadequate intakes by the mother.

Infants have different nutritional needs than those of children and adults. They require more fat and less protein than adults. Breast milk contains high concentrations of fat-digesting enzymes that allow for highly efficient fat absorption. Breast milk, as well as colostrum, contain the essential fatty acid linoleic acid. *Understanding Nutrition,* Whitney and Rolfe, 6th Ed., 136–40 (1993).

Full term babies who are not fed enough linoleic acid suffer from dermatosis and growth failure. These conditions are easily reversed when linoleic acid is added to the infant's diet. Fatty acid deficiency in a breast-feeding infant is a

US 6,576,666 B2

**3**

hazzard of long term low fat parental dieting. *The Merck Manual*, 16th Ed., 968 (1992).

Methods of administering linolenic acid to lactating females have been previously described. Specifically, Horrobin, U.S. Pat. No. 5,264,217, discloses methods for increasing the total fat content of milk, the essential fatty acid content of milk and the flow of milk during lactation, or for preventing or reducing the normal decrease in milk fat content that occurs during prolonged lactation, by administering gamma linolenic acid, dihomo-gamma-linolenic acid or their mixture to a lactating female.

Other references disclose compositions and methods that have been developed for achieving fat enrichment of ruminant milk for consumption by humans. In general, animal feed is supplemented with fatty acids. In turn, the milk produced by the ruminants is itself rich in fatty acids.

Chalupa et al., U.S. Pat. No. 5,004,728, describe a method for increasing milk yields in lactating ruminants. The ruminants are fed somatotropin and salts of long chain fatty acids. The fatty acids in the feed increases the level of long chain fatty acids in the milk produced by the ruminant. One long chain fatty acid suitable for this inventive subject matter is linoleic acid.

Nishimura et al., U.S. Pat. No. 5,635,198, describe a granular agent comprised by an active core coated by certain fatty acids and oils to be administered to ruminants. This granular agent has a superior absorption rate and results in, among other benefits, efficient lactation in the ruminant.

Scott et al., U.S. Pat. No. 3,925,560, describe a feed supplement for ruminants comprising fatty acids encapsulated with a protein-aldehyde reaction product. These fatty acid supplements, including linoleic acid, provide high energy feed supplements for ruminants. These supplements will result in the ruminate producing a milk very high in unsaturated fats.

Palmquist et al., U.S. Pat. No. 4,642,317, describe a process for feeding ruminants fatty acids in the form of their calcium salts, which are added to feed. This process would allow dairy cows to make milk high in fats, without depleting their own fatty acid stores.

Richardson, U.S. Pat. No. 5,143,737, describes a method for the modification of ruminant food so that the ruminant will produce a milk with modified fat. This method comprises a non-toxic food to be surrounded by an acid-sensitive nontoxic crosslinking material. Animals eating this composition will make milk with a higher level of unsaturated fats.

Furthermore, several prenatal supplements are available which provide pregnant women with varying amounts of vitamins and minerals. The *Physicians' Desk Reference* describes various vitamin and mineral supplements for use by pregnant women. For example, Nestabs® CBF, prenatal formula, available from The Fielding Company, Maryland Heights, Mo., contains 4,000 I.U. of vitamin A, 400 I.U. of vitamin D, 30 I.U. of vitamin E, 120 mg of vitamin C, 1 mg of folic acid, 3 mg of thiamine, 3 mg of riboflavin, 20 mg of niacinamide, 3 mg of pyridoxine, 8 mcg of vitamin B₁₂, 20 mg of calcium, 100 mg of iodine, 15 mg of zinc, and 50 mg of iron per dose. NESTABS® CBF are "expressly formulated for use during pregnancy and lactation" and are available only in tablet form. See *Physicians' Desk Reference*, (53d Ed., 1999) 1011.

Materna® prenatal vitamin and mineral formula, available from Lederle Laboratories, Pearl River, N.Y., contains 5,000 I.U. of vitamin A, 400 I.U. of vitamin D, 30 I.U. of vitamin E, 120 mg of vitamin C, 1 mg of folic acid, 3 mg of vitamin B₁, 3.4 mg of vitamin B₂, 10 mg of vitamin B₆, 20

**4**

mg of niacinamide, 12 mcg of vitamin B₁₂, 30 mcg of biotin, 10 mg of pantothenic acid, 200 mg of calcium, 150 mcg of iodine, 27 mg of iron, 25 mg of magnesium, 2 mg of copper, 25 mg of zinc, 25 mg of chromium, 25 mg of molybdenum, 5 mg of manganese, and 20 mcg of selenium per dose. Materna® is designed "provide vitamin and minerals supplementation prior to conception, throughout pregnancy and during the postnatal period for both lactating and nonlactating mothers" and is available in tablet form only. See. Id. at 1522–3.

Enfamil® Natalins® RX multivitamin and multimineral supplements, available from Mead Johnson Nutritionals, Evansville, Ind., provide 4000 I.U. of vitamin A, 80 mg of vitamin C, 400 I.U. of vitamin D, 15 I.U. of vitamin E, 1.5 mg of thiamin, 1.6 mg of riboflavin, 17 mg niacin, 4 mg of vitamin B₆, 1 mg of folic acid, 2.5 mcg of vitamin B₁₂, 30 mcg of biotin, 7 mg of pantothenic acid, 200 mg of calcium, 54 mg of iron, 25 mg of zinc, and 3 mg of copper per dose. Enfamil® Natalins® RX are "to supplement the diet during pregnancy of lactation" and are available only in tablet form. See Id. at 1692.

Prenate® Ultra™ prenatal vitamins, available from Sanofi Pharmaceuticals, New York, N.Y., contain 90 mg of elemental iron, 150 mcg of iodine, 200 mg of calcium, 2 mg of copper, 25 mg of zinc, 1 mg of folic acid, 2700 I.U. of vitamin A, 400 I.U. of vitamin D₃, 30 I.U. of vitamin E, 120 mg of vitamin C, 3 mg of vitamin B₁, 304 mg of vitamin B₂, 20 mg of vitamin B₆, 12 mcg of vitamin B₁₂, 20 mg of niacinamide, and 50 mg of docusate sodium per dose. Prenate® Ultra™ is "indicated for use in improving the nutritional status of women throughout pregnancy and in the postnatal period for both lactating and nonlactating mothers and is only available in tablet form. See Id. at 2802.

Niferex®-PN formula, available from Schwarz Pharma, Inc., Milwaukee, Wis., contains 60 mg of iron, 1 mg of folic acid, 50 mg of vitamin C, 3 mcg of vitamin B₁₂, 4,000 I.U. of vitamin A, 400 I.U. of vitamin D, 2.43 mg of vitamin B₁, 3 mg of vitamin B₂, 1.64 mg of vitamin B₆, 10 mg of niacinamide, 125 mg of calcium, and 18 mg of zinc per dose. Niferex®-PN is "indicated for prevention and/or treatment of dietary vitamin and mineral deficiencies associated with pregnancy and lactation" and is only available in tablet form. See *Physicians' Desk Reference*, (53d Ed., 1999) 2916–7.

Niferex®-PN Forte formula, available from Schwarz Pharma, Inc., Milwaukee, Wis., contains 60 mg of iron, 1 mg of folic acid, 50 mg of vitamin C, 3 mg of vitamin B₁₂, 5,000 I.U. of vitamin A, 400 I.U. of vitamin D, 30 I.U. of vitamin E, 80 mg of vitamin C, 1 mg of folic acid, 3 mg of vitamin B₁, 3.4 mg of vitamin B₂, 4 mg of vitamin B₆, 20 mg of niacinamide, 12 mcg of vitamin B₁₂, 250 mg of calcium, 200 mcg of iodine, 10 mg of magnesium, 2 mg of copper, and 25 mg of zinc per dose. Niferex®-PN is "indicated for prevention and/or treatment of dietary vitamin and mineral deficiencies associated with pregnancy and lactation" and is only available in tablet form. See Id. at 2917–8.

Advanced Formula Zenate® prenatal multivitamin/ mineral supplement, available from Solvay Pharmaceuticals, Marietta, Ga., contains 3,000 I.U. of vitamin A, 400 I.U. of vitamin D, 10 I.U. of vitamin E, 70 mg of vitamin C, 1 mg of folic acid, 1.5 mg of vitamin B₁, 1.6 mg of vitamin B₂, 17 mg of niacin, 2.2 mg of vitamin B₆, 2.2 of vitamin B₁₂, 200 mg of calcium, 175 mcg of iodine, 65 mg of iron, 100 mg of magnesium, and 15 mg of zinc per dose. Advanced Formula Zenate® is "a dietary adjunct in nutritional stress associated with periconception, pregnancy and lactation" and is only available in tablet form. See Id. at 3128.

US 6,576,666 B2

5

Precare® prenatal multi-vitamin/mineral formula, available from UCB Pharma, Inc., Smyrna, Ga., contains 50 mg of vitamin C, 250 mg of calcium, 40 mg of iron, 6 mcg of vitamin D, 3.5 mg of vitamin E, 20 mg of vitamin B₆, 1 mg of folic acid, 50 mg of magnesium, 15 mg of zinc and 2 mg of copper per dose. Precare® "is indicated to provide vitamin and mineral supplementation throughout pregnancy and during the postnatal period—for both lactating and nonlactating mothers and is available only in caplet form. See Id. at 3163.

Natafort® prenatal multivitamin, available from Warner Chilcott, Rockaway, N.J., contains 1,000 I.U. pf vitamin A, 400 I.U. of vitamin D₃, 11 I.U. of vitamin E, 120 mg of vitamin C, 1 mg of folic acid, 2 mg of thiamine mononitrate, 3 mg of riboflavin, 20 mg of niacinamide, 10 mg of vitamin B₆, 12 mcg of vitamin B₁₂, and 60 mg of iron per dose. Natafort® is designed "to provide vitamin and mineral supplementation throughout pregnancy and during the postnatal period, for both the lactating and non-lactating mother" and is only available in tablet form. See Id. at 3212.

However, none of the above formulations provide women with essential fatty acids in amounts and proportions necessary to optimize infant neurological development. Further, the prenatal nutritional supplements containing vitamins and minerals are entirely lacking in essential fatty acids. In the case of the enriched ruminant milk, while this milk may be a good source of fatty acids for adults, ruminant milk is not recommended for infants because even supplemented formula cannot match the immunological benefits of breast milk.

Therefore, there remains a need for a nutritional formulation which optimizes infant neurological development. It is also desirable to have nutritional formulations which prevent a woman's stores of fatty acids from becoming depleted during lactation. There is also a particular need for nutritional formulations which provide essential fatty acids in optimal ratios and amounts, along with required vitamins and minerals. Moreover, it is desirable to have formulations and methods which prepare a woman's body for the stresses imposed by lactation.

## SUMMARY OF THE INVENTION

The compositions of the present inventive subject matter overcome the deficiencies of currently-available nutritional supplements by providing formulations which are specifically tailored for women during the period prior to and during lactation and which optimize infant neurological development while inhibiting depletion of a nursing mother's nutritional stores. The present compositions contain a novel combination of fatty acids in critical ratios and amounts, optionally in combination with various vitamins and minerals.

In one embodiment of the inventive subject matter, a composition comprises a first fatty acid compound selected from the group consisting of linoleic acid, linolenic acid, a derivative thereof and a combination thereof in an amount ranging from about 10 mg to 100 mg; and a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof in an amount ranging from about 10 mg to 100 mg; wherein the weight ratio of the first fatty acid compound to the second fatty acid compound is about 1:0.1 to 10.

In another embodiment of the inventive subject matter, a composition comprises a first fatty acid compound selected from the group consisting of linoleic acid, linolenic acid, a

6

derivative thereof and a combination thereof in an amount ranging from 10 mg to 100 mg; a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof in an amount ranging from about 10 mg to 100 mg; a vitamin B6 compound or derivative thereof in a range of about 20 mg to 125 mg; a folic acid compound or derivative thereof in a range of about 0.1 mg to 3 mg; and a calcium compound or derivative thereof in a range of about 100 mg to 1000 mg. The weight ratio of the first fatty acid compound to the second fatty acid compound is about 1:0.1 to 10.

In a further embodiment of the inventive subject matter, a composition comprises a first fatty acid compound selected from the group consisting of linoleic acid, linolenic acid, a derivative thereof and a combination thereof in an amount ranging from 10 mg to 100 mg; a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof in an amount ranging from about 10 mg to 100 mg; a vitamin B6 compound or derivative thereof in a range of about 20 mg to 125 mg; a folic acid compound or derivative thereof in a range of about 0.1 mg to 3 mg; a calcium compound or derivative thereof in a range of about 100 mg to 1000 mg; a magnesium compound or derivative thereof in a range of about 25 mg to 400 mg; a vitamin C compound or derivative thereof in a range of about 25 mg to 400 mg; and a vitamin E compound or derivative thereof in a range of 10 mg to 400 mg. The weight ratio of the first fatty acid compound in the composition to the second fatty acid compound in the composition is about 1:0.1 to 10.

In a further embodiment of the inventive subject matter, a composition for administration to a female mammal for enriching the milk of said female mammal to optimize neurological development of a neonate being nursed by the female mammal, which comprises about 10 mg to 1000 mg per 55 kg of said mammal's body weight of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof; about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof; and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.01 to 10.

In yet another embodiment of the inventive subject matter, a composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-fed by the woman, which comprises about 10 mg to 1000 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a derivative thereof and a combination thereof; about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof; and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.01 to 10.

The inventive subject matter also provides a method for enriching the breast milk of a woman to optimize neurological development of her breast-fed infant, which comprises administering a first fatty acid compound to the woman during a period which begins at least at about the tenth week of pregnancy. This first fatty acid compound is

US 6,576,666 B2

7

selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof. It also involves administering a second fatty acid compound to said woman during a period which begins at least at about the tenth week of pregnancy. The second fatty acid is selected from the group consisting of docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to the woman together with said first fatty acid compound. The weight range of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

In another embodiment of the present invention subject matter, a method for enriching the breast milk of a woman wishing to optimize or who is concerned about the neurological development of the infant she breast-feeds comprises administering a first fatty acid compound in a range of about 10 mg to 100 mg to the woman during a period which begins at least at about the tenth week of pregnancy. This first fatty acid compound is selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof. It also involves administering a second fatty acid compound to said woman during a period which begins at least at about the tenth week of pregnancy in a range of 10 mg to 100 mg respectively for linoleic and linolenic acids. The second fatty acid is selected from the group consisting of docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to the woman together with said first fatty acid compound. The weight range of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

In a further embodiment of the inventive subject matter, a method for enriching the breast milk of a woman to optimize the neurological development of the infant she breast-feeds comprises administering a first fatty acid compound to the woman during a period which begins at least at about the tenth week of pregnancy and ends at the conclusion of breast-feeding or continues on as a nutritional supplement for the mother in a range of 10 mg to 100 mg. This first fatty acid compound is selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof. It also involves administering a second fatty acid compound to said woman during a period which begins at least at about the tenth week of pregnancy. The second fatty acid is selected from the group consisting of docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to the woman together with said first fatty acid compound. It also involves administering a nutritional compound to said woman during a period which begins at least at about the tenth week of pregnancy. This compound is selected from a group consisting of a vitamin compound, a biologically-acceptable mineral compound, a derivative thereof and a combination thereof, and said nutritional compound being administered together with said first and said second fatty acid compounds. The weight range of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

In a further embodiment of the inventive subject matter, a method for enriching the to a female mammal for enriching the milk of said female mammal to optimize neurological development of the neonate, which comprises: administer-

8

ing a first fatty acid compound to the woman during a period commencing at least at about the tenth week of pregnancy and terminating at the conclusion of breast-feeding, said first fatty acid compound being selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof; administering a second fatty acid compound to said woman during the period commencing at least at about the tenth week of pregnancy and terminating at the conclusion of breast-feeding, said second fatty acid compound being selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to the woman together with said first fatty acid compound; and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

In a further embodiment of the inventive subject matter, a method for enriching the milk of a female mammal to optimize neurological development of a neonate being nursed by the female mammal, which comprises administering a first fatty acid compound to the female mammal during a period commencing at least at about the tenth week of gestation, said first fatty acid compound being selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof; administering a second fatty acid compound to said female mammal during the period commencing at least at about the tenth week of gestation, said second fatty acid compound being selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to the female mammal together with said first fatty acid compound; and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

## DETAILED DESCRIPTION OF THE INVENTION

As used herein, "nutritional stores" refers to the levels of vitamins, minerals and other nutrients which will be available for use by the mother, developing embryo, fetus and newborn infant.

"Nutritional status" refers to the presence or absence of any nutrient deficiency, or in other words, the extent to which physiological nutrient demands are being satisfied such that deficiency is avoided.

"Optimize neurological development" refers to attainment of the highest degree of neurological development possible through natural processes without the use of any unnatural substances or procedures, such as drugs, surgery and the like.

"Biologically active substance" refers to any substance or substances comprising a drug, active therapeutic substance, metabolite, medicament, vitamin, or mineral, any substance used for treatment, prevention, diagnosis, cure or mitigation of disease or illness, any substance which affects anatomical structure or physiological function, or any substance which alters the impact of external influences on an animal, or metabolite thereof, and as used herein, encompasses the terms "active substance", "therapeutic substance", "agent", "active agent", "active therapeutic agent", "drug", "medication", "medicine", "medicant", and other such similar terms.

"Specific physiological needs" refers to the unique requirements for certain levels of certain nutrients by one

US 6,576,666 B2

9

class of persons, such as lactating women, pregnant women, etc., as distinguished from other classes.

"Biologically-acceptable" refers to being safe for human consumption.

"Neonate" refers to the offspring of a female mammal that is nursed by said female mammal and has not yet been weaned.

The compositions of the present inventive subject matter provide several specific new and unexpected benefits. First, the formulations ensure that both the mother and her infant or infants are provided with adequate energy during the period of lactation. Secondly, the formulations allow the mother to maintain adequate fatty acid stores for both her own use and for incorporation into her breast milk as her supplies are depleted during lactation. Thirdly, the fatty acids optimize the neurological development of the infant consuming the breast milk. Fourthly, when administered prior to lactation, the present compositions prepare women for the increased physiological demands and stresses to be placed upon their bodies. Finally, the present compositions help women recover from pregnancy and lactation and prepare women for additional pregnancies and subsequent lactation.

Thus, the inventive subject matter provides a composition designed to be administered to a woman for the purpose of both enriching her breast milk for the benefit of her child and also to directly benefit the woman. In fact, in some cases, the formulations may allow a woman to breast-feed her infant where in the absence of taking the present composition breast-feeding would have been either unsafe or outright impossible. Infants consuming the enriched breast milk, as described herein, will experience optimal neurological development. Further, the present composition will help a post-partum woman to recover from her pregnancy and labor optimally and efficiently by providing her with the fatty acids lost in pregnancy and lactation. In addition, the present composition will place a woman in optimal condition for an additional pregnancy and the lactation that will follow by helping her increase her nutritional stores of critical nutritional compounds.

The present inventive subject matter is based, in part, on the discovery that when compositions having certain fatty acids, in certain amounts and proportions to one another, are administered to women prior to and during lactation, infants who consume the breast milk of said women will achieve optimized neurological development. In particular, supplementing the mother's diet with certain fatty acids for a period beginning at ten weeks after conception and either ending when lactation ceases or being continued as a supplement will not only optimize the neural development of the breast-feeding infant, but also ensure that the mother has adequate essential fatty acids for her own use. The fatty acid supplement may also further contain vitamins and minerals to confer added health benefits to the infant and mother. In addition to benefiting a breast-feeding human infant, the present invention can also benefit the offspring of non-human mammals that are nursed by their mothers. The composition of the present invention could be administered to a mammal in animal feed, pill form, or other appropriate dosage forms to such mammals.

Without being limited by theory, the present compositions stimulate the production of breast milk which is enriched with essential fatty acids in amounts which optimize infant neurological development. These compositions achieve such enrichment of the breast milk through one or more natural biological pathways. For example, the arachidonic acid

10

cascade may play a significant role in the enrichment of the breast milk. Specifically, in the arachidonic acid cascade, linoleic acid is converted first to gamma-linolenic acid and then to further metabolites such as dihomo-gamma-linolenic acid and arachidonic acid which are precursors of 1 or 2 series prostaglandin respectively, as shown in the outline below:



The present composition contains at least two fatty acid compounds. The first fatty acid compound is selected from the group consisting of a linoleic acid compound, a linolenic acid compound, derivatives thereof and combinations thereof. The second fatty acid compound is selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid compound, an omega-2 fatty acid compound, derivatives thereof and combination thereof. Moreover, when the first fatty acid compound is linolenic acid or a derivative thereof and the second fatty acid compound is an omega-3 fatty acid, said omega-3 fatty acid is not linolenic acid or a derivative thereof. It is also preferred that when the first fatty acid compound is linoleic acid or a derivative thereof and the second fatty acid compound is an omega-2 fatty acid, said omega-2 fatty acid is not linoleic acid or a derivative thereof.

The two fatty acid compounds are present in the composition in critical proportions to one another. Preferably, the weight ratio of the first fatty acid to the second fatty acid is about 1:0.001 to 50. More preferably, the weight ratio of the first fatty acid compound to the second fatty acid compound is about 1:0.1 to 10. Even more preferably, the weight ratio of the first fatty acid compound to the second fatty acid compound is about 1:0.9 to 2.5. Most preferably, the weight ratio of the first fatty acid compound to the second fatty acid compound is about 1:1 to 2.

The fatty acids of the present inventive subject matter may be used as such or as biologically acceptable and physiologically equivalent derivatives as, for example, detailed later herein. Reference to any of the fatty acids including reference in the claims is to be taken as including reference to the acids when in the form of such derivatives. Equivalence is demonstrated by entry into the biosynthetic pathways of the body as evidenced by effects corresponding to those of the acids themselves or their natural glyceride esters. Thus, indirect identification of useful derivatives is by their having the valuable effect in the body of the fatty acid itself, but conversion, for example, of gamma-linolenic

US 6,576,666 B2

11

acid to dihomo-gamma-linolenic acid and on to arachidonic acid can be shown directly by gas chromatographic analysis of concentrations in blood, body fat, or other tissue by standard techniques, well known to persons of ordinary skill in the art to which the present inventive subject matter pertains.

Derivatives of linoleic acid, as used in the present inventive subject matter, include, without limitation, salts of linoleic acid, alkaline salts of linoleic acid, esters of linoleic acid, and combinations thereof. Derivatives of linolenic acid, as used in the present inventive subject matter, include, without limitation, salts of linolenic acid, alkaline salts of linolenic acid, esters of linolenic acid, and combinations thereof. The salts and alkaline salts herein refer to those regularly used organic or inorganic salts which are acceptable for pharmaceutical use. Non-limiting exemplary linolenic acids include gamma-linoleic acid and dihomo-gamma-linolenic acid.

The fatty acids of the present inventive subject matter may be from any source, including, without limitation, natural or synthetic oils, fats, waxes or combinations thereof. Moreover, the fatty acids herein may be derived, without limitation, from non-hydrogenated oils, partially hydrogenated oils, fully hydrogenated oils or combinations thereof. Non-limiting exemplary sources of fatty acids include seed oil, fish or marine oil, canola oil, vegetable oil, safflower oil, sunflower oil, nasturtium seed oil, mustard seed oil, olive oil, sesame oil, soybean oil, corn oil, peanut oil, cottonseed oil, rice bran oil, babassu nut oil, palm oil, low erucic rapeseed oil, palm kernel oil, lupin oil, coconut oil, flaxseed oil, evening primrose oil, jojoba, tallow, beef tallow, butter, chicken fat, lard, dairy butterfat, shea butter or combinations thereof. Specific non-limiting exemplary fish or marine oil sources include shellfish oil, tuna oil, mackerel oil, salmon oil, menhaden, anchovy, herring, trout, sardines or combinations thereof. Preferably, the source of the fatty acids is fish or marine oil, soybean oil or flaxseed oil.

The present composition may optionally contain additional vitamins and biologically-acceptable minerals. Non-limiting exemplary vitamins and biologically acceptable minerals and their derivatives thereof for inclusion in the present compositions include vitamin A, B vitamins, vitamin C, vitamin D, vitamin E, vitamin K, folic acid, iron, calcium, magnesium, potassium, copper, chromium, zinc, molybdenum, iodine, boron, selenium, manganese, derivatives thereof or combinations thereof. These vitamins and minerals may be from any source or combination of sources, without limitation. Non-limiting exemplary B vitamins include, without limitation, thiamine, niacinamide, pyridoxine, riboflavin, cyanocobalamin, biotin, pantothenic acid or combinations thereof.

When vitamin C is present in the composition of the present inventive subject matter, it is preferably present in an amount ranging from about 10 mg to about 500 mg. More preferably, the vitamin C is present in an amount ranging from about 25 mg to about 400 mg. Even more preferably, the vitamin C is present in an immediate release form in an amount ranging from about 25 mg to about 50 mg. Most preferably, the vitamin C is present in a controlled release form in an amount ranging from about 250 mg to about 500 mg.

When vitamin E is present in the composition of the present inventive subject matter, it is preferably present in an amount ranging from about 5 mg to about 500 mg. More preferably, the vitamin E is present in an amount ranging from about 10 mg to about 400 mg. Even more preferably,

12

the vitamin E is present in a controlled release form in an amount ranging from about 250 mg to about 400 mg. Most preferably, the vitamin E is present in an immediate release form in an amount ranging from about 10 mg to about 50 mg.

Vitamin $B_6$ may also be present in the composition of the present inventive subject matter. Vitamin $B_6$ is preferably present in an amount ranging from about 10 mg to about 200 mg. More preferably, vitamin $B_6$ is present in an amount ranging from about 20 mg to about 125 mg. Even more preferably, vitamin B6 is present in an immediate release form in an amount ranging from about 20 mg to about 50 mg. Most preferably, vitamin $B_6$ is present in a controlled release form in an amount ranging from about 50 mg to about 125 mg.

Folic acid may also be incorporated into the composition of the present inventive subject matter. When folic acid is present in the composition, it is preferably present in an amount ranging from about 0.1 mg to about 3 mg. More preferably, folic acid is present in an immediate release form in an amount ranging from about 0.1 mg to about 2 mg. Even more preferably, folic acid is present in a controlled release form in an amount ranging from about 1.5 mg to about 3 mg.

Calcium is preferably present in the composition of the present inventive subject matter in an amount ranging from about 100 mg to about 2,500 mg. More preferably, calcium is present in an amount ranging from about 100 mg to about 1,000 mg. Even more preferably, calcium is present in an immediate release form in an amount ranging from about 100 mg to about 500 mg. Most preferably, calcium is present in a controlled release form in an amount ranging from about 500 mg to about 2,000 mg.

Magnesium is preferably present in the composition of the present inventive subject matter in an amount ranging from about 25 mg to about 400 mg. More preferably, magnesium is present in the composition of the present inventive subject matter in an immediate release form in an amount ranging from about 25 mg to about 100 mg. Even more preferably, magnesium is present in the composition of the present inventive subject matter in a controlled release form in an amount ranging from about 100 mg to about 400 mg.

The composition of the present inventive subject matter may also include one or more biologically active substance. The biologically active substances incorporated into the present inventive subject matter are nonteratogenic to protect the unborn fetus. For example, without limitation, the biologically active substance may be a lactogen compound, a derivative of a lactogen compound or combinations thereof. Derivatives of lactogen compounds include, without limitation, salts of lactogen compounds, alkaline salts of lactogen compounds, esters of lactogen compounds and combinations thereof.

Various additives may be incorporated into the present composition. Optional additives of the present composition include, without limitation, starches, sugars, fats, antioxidants, amino acids, proteins, derivatives thereof or combinations thereof.

It is also possible in the nutritional composition of the present inventive subject matter for the dosage form to combine various forms of release, which include, without limitation, immediate release, extended release, pulse release, variable release, controlled release, timed release; sustained release, delayed release, long acting, and combinations thereon. The ability to obtain immediate release, extended release, pulse release, variable release, controlled release, timed release, sustained release, delayed release, long acting characteristics and combinations thereof is per-

US 6,576,666 B2

13

formed using well known procedures and techniques available to the ordinary artisan. Each of these specific techniques or procedures for obtaining the release characteristics does not constitute an inventive aspect of this inventive subject matter all of which procedures are well known to those of ordinary skill in the art. As used herein, a "controlled release form" means any form having at least one component formulated for controlled release. As used herein, "immediate release form" means any form having all its components formulated for immediate release.

Any biologically-acceptable dosage form, and combinations thereof, are contemplated by the inventive subject matter. Examples of such dosage forms include, without limitation, chewable tablets, quick dissolve tablets, effervescent tablets, reconstitutable powders, elixirs, liquids, solutions, suspensions, emulsions, tablets, multi-layer tablets, bi-layer tablets, capsules, soft gelatin capsules, hard gelatin capsules, caplets, lozenges, chewable lozenges, beads, powders, granules, particles, microparticles, dispersible granules, cachets, douches, suppositories, creams, topicals, inhalants, aerosol inhalants, patches, particle inhalants, implants, depot implants, ingestibles, injectables, infusions, health bars, confections, animal feeds, cereals, cereal coatings, foods, nutritive foods, functional foods and combinations thereof. The preparation of the above dosage forms are well known to persons of ordinary skill in the art.

The following procedures represent, without limitation, acceptable methods of preparing formulations falling within the scope of the inventive subject matter. For example, animal feed may be by methods well known to persons of ordinary skill in the art. Animal feeds may be prepared by mixing the formulation with binding ingredients to form a plastic mass. The mass is then extruded under high pressure to form tubular (or "spaghetti-like") structures that are cut to pellet size and dried.

Quick dissolve tablets may be prepared, for example, without limitation, by mixing the formulation with agents such as sugars and cellulose derivatives, which promote dissolution or disintegration of the resultant tablet after oral administration, usually within 30 seconds.

Cereal coatings may be prepared, for example, without limitation, by passing the cereal formulation, after it has been formed into pellets, flakes, or other geometric shapes, under a precision spray coating device to deposit a film of active ingredients, plus excipients onto the surface of the formed elements. The units thus treated are then dried to form a cereal coating.

For example, health bars may be prepared, without limitation, by mixing the formulation plus excipients (e.g., binders, fillers, flavors, colors, etc.) to a plastic mass consistency. The mass is then either extended or molded to form "candy bar" shapes that are then dried or allowed to solidify to form the final product.

Soft gel or soft gelatin capsules may be prepared, for example, without limitation, by dispersing the formulation in an appropriate vehicle (vegetable oils are commonly used) to form a high viscosity mixture. This mixture is then encapsulated with a gelatin based film using technology and machinery known to those in the soft gel industry. The industrial units so formed are then dried to constant weight.

Chewable tablets, for example, without limitation, may be prepared by mixing the formulations with excipients designed to form a relatively soft, flavored, tablet dosage form that is intended to be chewed rather than swallowed. Conventional tablet machinery and procedures, that is both direct compression and granulation, i.e., or slugging, before

14

compression, can be utilized. Those individuals involved in pharmaceutical solid dosage form production are well versed in the processes and the machinery used as the chewable dosage form is a very common dosage form in the pharmaceutical industry.

Film coated tablets, for example, without limitation, may be prepared by coating tablets using techniques such as rotating pan coating methods or air suspension methods to deposit a contiguous film layer on a tablet. This procedure is often done to improve the aesthetic appearance of tablets, but may also be done to improve the swallowing of tablets, or to mask an obnoxious odor or taste, or to improve to usual properties of an unsightly uncoated tablet.

Compressed tablets, for example, without limitation, may be prepared by mixing the formulation with excipients intended to add binding qualities to disintegration qualities. The mixture is either directly compressed or granulated then compressed using methods and machinery quite well known to those in the industry. The resultant compressed tablet dosage units are then packaged according to market need, i.e., unit dose, rolls, bulk bottles, blister packs, etc.

The present inventive subject matter contemplates nutritional compositions formulated for administration by any route, including without limitation, oral, buccal, sublingual, rectal, parenteral, topical, inhalational, injectable and transdermal. The physicochemical properties of nutritional compositions, their formulations, and the routes of administration are important in absorption. Absorption refers to the process of nutritional composition movement from the site of administration toward the systemic circulation. Most orally administered nutritional compositions are in the form of tablets or capsules primarily for convenience, economy, stability, and patient acceptance. They must disintegrate and dissolve before absorption can occur. Using the present inventive subject matter with any of the above routes of administration or dosage forms is performed using well known procedures and techniques available to the ordinary skilled artisan.

The present inventive subject matter contemplates the use of biologically-acceptable carriers which may be prepared from a wide range of materials. Without being limited thereto, such materials include diluents, binders and adhesives, lubricants, plasticizers, disintegrants, colorants, bulking substances, flavorings, sweeteners and miscellaneous materials such as buffers and adsorbents in order to prepare a particular medicated composition.

Binders may be selected from a wide range of materials such as hydroxypropylmethylcellulose, ethylcellulose, or other suitable cellulose derivatives, povidone, acrylic and methacrylic acid co-polymers, pharmaceutical glaze, gums, milk derivatives, such as whey, starches, and derivatives, as well as other conventional binders well known to persons skilled in the art. Exemplary non-limiting solvents are water, ethanol, isopropyl alcohol, methylene chloride or mixtures and combinations thereof. Exemplary non-limiting bulking substances include sugar, lactose, gelatin, starch, and silicon dioxide.

The plasticizers used in the dissolution modifying system are preferably previously dissolved in an organic solvent and added in solution form. Preferred plasticizers may be selected from the group consisting of diethyl phthalate, diethyl sebacate, triethyl citrate, crotonic acid, propylene glycol, butyl phthalate, dibutyl sebacate, caster oil and mixtures thereof, without limitation. As is evident, the plasticizers may be hydrophobic as well as hydrophilic in nature. Water-insoluble hydrophobic substances, such as

US 6,576,666 B2

15

diethyl phthalate, diethyl sebacate and castor oil are used to delay the release of water-soluble vitamins, such as vitamin $B_6$ and vitamin C. In contrast, hydrophilic plasticizers are used when water-insoluble vitamins are employed which aid in dissolving the encapsulated film, making channels in the surface, which aid in nutritional composition release.

The composition of the present inventive subject matter may be administered in a partial, i.e., fractional dose, one or more times during a 24 hour period, a single dose during a 24 hour period of time, a double dose during a 24 hour period of time, or more than a double dose during a 24 hour period of time. Fractional, double or other multiple doses may be taken simultaneously or at different times during the 24 hour period.

The compositions of the present invention are intended for use by humans and other mammals. The dosages are adjusted according to body weight and thus may be set forth herein on a per body weight basis. For example, if the formula specifies a range of about 10–1000 mg for a 55 kg individual, that range would be adjusted for a 35 kg individual to about 6.3–63 mg (e.g., the lower range limit=(35 kg/55 kg) *10 mg=6.3 mg). Decimal amounts may be rounded to the nearest whole number. In the above manner the present compositions may thus be adapted to be suitable for any individual, including any mammal, regardless of its size.

The present composition is adapted to meet the specific physiological needs of a breast-feeding mother. For example, the formulations may focus on special nutritional needs of the mother that are not generally addressed in prenatal supplements, such as essential fatty acids, iron and calcium, without limitation. The iron and calcium, when present, are provided in amounts to optimize nutritional benefit to the mother, while minimizing unpleasant side effects which may accompany overly large doses. The formulation can be further tailored based upon the specific needs, genetic predispositions or identified deficiencies of women. Moreover, the present composition can be used as one component of a prescribed therapy.

Biologically-acceptable calcium compounds include, but are not limited to, any of the well known calcium supplements, such as calcium carbonate, calcium sulfate, calcium oxide, calcium hydroxide, calcium apatite, calcium citrate-malate, bone meal, oyster shell, calcium gluconate, calcium lactate, calcium phosphate, calcium levulinate, and the like.

Biologically-acceptable magnesium compounds which may be incorporated into the present inventive subject matter include, but are not limited to, magnesium stearate, magnesium carbonate, magnesium oxide, magnesium hydroxide and magnesium sulfate.

The compositions of the present inventive subject matter may be provided in a blister pack or other such pharmaceutical package, without limitation. Further, the compositions of the present inventive subject matter may further include or be accompanied by indicia allowing women to identify the compositions as products for persons planning to or currently breast-feeding their infants. The indicia may further additionally include an indication of the above specified time periods for using said compositions.

The composition of the present inventive subject matter is preferably administered during a period commencing no later than at least the tenth week of pregnancy. More preferably, the composition is administered during a period of time commencing on about the tenth week of pregnancy and continuing through to completion of breast-feeding or continuing on as a nutritional supplement for the mother.

16

The present inventive subject matter includes a method for enriching the breast milk of women to optimize neurological development of infant's breast-fed by said women. The methods include administration of the present composition to women during a critical period. The critical period of administration is the period commencing at least at about the tenth week of pregnancy and terminating at the conclusion of breast-feeding or continuing on as a nutritional supplement for the mother.

The present composition and method may increase lactogenesis or the quantity of breast milk produced during lactation. Further, the compositions and methods may prevent or at least minimize fatty acid deficiency in lactating women. The quality of breast milk may also be improved by the compositions and methods. Moreover, the duration of the period of lactation may be extended by the present compositions and methods. Thus, women who would have difficulty breast-feeding for more than four weeks after pregnancy when not taking the present composition, could breast-feed for more than four weeks after pregnancy when taking the present composition.

The foregoing is considered as illustrative only of the principles of the inventive subject matter. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the inventive subject matter to the exact construction and operation shown and described, and accordingly all suitable modifications and equivalents may be resorted to, falling within the scope of the inventive subject matter.

The following examples are illustrative of preferred embodiments of the inventive subject matter and are not to be construed as limiting the inventive subject matter thereto. All percentages are based on the percent by weight of the final delivery system for formulation prepared unless otherwise indicated and all totals equal 100% by weight.

## EXAMPLES

### Example 1

The following formulations are used to prepare compositions for administration to women prior to and during lactation:

| Component (in mg unless otherwise indicated) | Formula I | Formula II | Formula III |
|---|---|---|---|
| Linoleic Acid | 10 | 100 | 20 |
| Linolenic Acid | 10 | 100 | 20 |
| Omega-3 Fatty Acid | 10 | 10 | 50 |
| Omega-2 Fatty Acid | — | — | 50 |
| Vitamin C | 25 | 400 | 50 |
| Vitamin E (I.U.) | 10 | 400 | 200 |
| Vitamin A (I.U.) | 2700 | 2700 | 2700 |
| Vitamin D₃ (I.U.) | 400 | 400 | 400 |
| Vitamin B₆ | 20 | 125 | 20 |
| Iron | 90 | 90 | 90 |
| Calcium | 2500 | 400 | 1000 |
| Microcrystalline Cellulose | 200 | 200 | 200 |
| Starch | 200 | 200 | 200 |
| Silicon Dioxide | 3 | 5 | 5 |
| Magnesium Stearate | 10 | 12 | 15 |

### Example 2

The following compositions are used to prepare controlled release products for administration to women prior to and during lactation:

US 6,576,666 B2

17

| Component (in mg unless otherwise indicated) | Controlled Release Formula A | Controlled Release Formula B |
|---|---|---|
| Linoleic Acid | 20 | 20 |
| Linolenic Acid | 20 | 20 |
| Omega-3 Fatty Acid | 50 | 50 |
| Omega-2 Fatty Acid | 50 | 50 |
| Vitamin C | 250 | 400 |
| Vitamin B (I.U.) | 200 | 400 |
| Vitamin A (I.U.) | 2700 | — |
| Vitamin $D_3$ (I.U.) | 400 | — |
| Vitamin $B_6$ | 125* | 125* |
| Iron | 90* | — |
| Calcium | 500 | 100 |
| Microcrystalline Cellulose | 200 | 200 |
| Starch | 200 | 200 |
| Silicon Dioxide | 5 | 1 |
| Magnesium Stearate | 15 | 15 |
| Ethylcellulose | 60 | 60 |
| Folic Acid | — | 3 |
| Magnesium | — | 25 |

*formulated for controlled release

Example 3

The following compositions are used to prepare products for administration to women prior to and during lactation:

| Component | IV | V | VI | VII | VIII | IX |
|---|---|---|---|---|---|---|
| Linoleic Acid | 10 | 100 | 20 | 10 | 100 | 20 |
| Linolenic Acid | 10 | 100 | 20 | 10 | 100 | 20 |
| Omega-3 Fatty Acid | 10 | 10 | 50 | 10 | 10 | 50 |
| Omega-2 Fatty Acid | — | — | 50 | — | — | 50 |
| Vitamin B6 | 20 | 125 | 20 | 20 | 125 | 20 |
| Folic Acid | 0.1 | 3 | 1 | 0.1 | 3 | 1 |
| Calcium | 100 | 400 | 1000 | 100 | 1000 | 1000 |
| Magnesium | — | — | — | 25 | 400 | 25 |
| Vitamin C | — | — | — | 25 | 400 | 400 |
| Vitamin E (I.U.) | — | — | — | 10 | 400 | 400 |
| Microcrystalline Cellulose | 100 | 100 | 200 | 100 | 100 | 100 |
| Starch | 100 | 100 | 200 | 100 | 100 | 100 |
| Silicon Dioxide | 0.3 | 0.7 | 1 | 0.3 | 1 | 1 |
| Magnesium Stearate | 3 | 7 | 15 | 3 | 15 | 15 |
| Lactose | 100 | — | — | 100 | — | — |
| Ethylcellulose | — | — | — | — | — | — |

The above components are in mg unless otherwise indicated. Tablets incorporating the above formulations are prepared using conventional methods and materials known in the pharmaceutical art. The resulting nutritional compositions were recovered and stored for future use.

Example 4

A soft gelatin supplement may be prepared, by first combining mineral oil and soybean oil in a first vessel and blending it to form a uniform oil mixture, heating the oil mixture to 45 degrees Celsius, and then adding propylene glycol. In a second vessel preheated to 70 degrees Celsius, yellow beeswax and soybean oil are added and blended until a uniform wax mixture is formed. The wax mixture is cooled to 35 degrees Celsius and then added to the oil mixture. To this combined oil and wax mixture, folic acid, vitamin $B_6$,

18

iron, magnesium, and calcium are then added and blended together to form a uniform biologically active mixture. The mixture is then cooled to 30 degrees Celsius to form a viscous biologically active core composition, after which time the composition is ready for encapsulation in a soft gelatin shell.

A soft gelatin shell is prepared by heating purified water in a suitable vessel and then adding gelatin. This water gelatin mixture is mixed until the gelatin is fully dissolved, and then glycerin, preservative, one or more flavors, and one or more colorants are added. This gelatin mixture is blended well and cooled. The shells are then filled with the core composition and formed in accordance with soft gelatin techniques commonly used and well known to persons of skill in the art.

The inventive subject matter being thus described, it will be apparent that the same may be varied in many ways. Such variations are not to be regarded as a departure from the spirit and scope of the inventive subject matter, and all such modifications are intended to be within the scope of the appended claims.

We claim:

1. A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-fed by the woman, which comprises:

   a) about 10 mg to 100 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof;

   b) about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof, a combination thereof;

   c) about 10 mg to 125 mg of a vitamin $B_6$ compound or derivative thereof;

   d) about 0.1 mg to 3 mg of a folic acid compound or derivative thereof;

   e) about 100 mg to 2,000 mg of a calcium compound or derivative thereof;

   f) about 25 mg to 500 mg of a vitamin C compound or derivative thereof;

   g) about 10 mg to 400 mg of a vitamin E compound or derivative thereof; and

   wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10, said weight ratio specifically formulated to enrich the breast milk of the woman to optimize neurological development of an infant breast-fed by the woman.

2. The composition of claim 1, wherein said composition additionally contains a biologically active substance.

3. The composition of claim 2, wherein the biologically active substance is a lactogen compound or derivative thereof.

4. The composition of claim 1, wherein said composition is administered during a period commencing no later than the tenth week of pregnancy.

5. The composition of claim 1, wherein said composition is administered during a period of time commencing at least at about the tenth week of pregnancy.

6. The composition of claim 1, wherein said composition is adapted to meet specific physiological needs of a breast-feeding mother.

US 6,576,666 B2

19

20

7. The composition of claim 1, wherein said composition is in an oral dosage form.

8. The composition of claim 7, wherein said oral dosage form is selected from the group consisting of immediate release, extended release, pulsed release, delayed release, controlled release and combinations thereof.

9. The composition of claim 7, wherein said oral dosage form is selected from the group consisting of a chewable tablet, quick dissolve tablet, an effervescent tablet, a hard gelatin capsule, a soft gelatin capsule, reconstitutable particles, microparticles, a suspension, an elixir, a caplet, a fortified food, pudding, yogurts, gelatin, cereal and combinations thereof.

10. The composition of claim 1, wherein said composition is administered once during a twenty four hour period of time.

11. The composition of claim 1, wherein said composition is administered at least twice during a twenty four hour period of time.

12. The composition of claim 1, wherein said composition increases lactogenesis.

13. The composition of claim 1, wherein said composition increases the quantity of breast milk produced during lactation.

14. The composition of claim 1, wherein said composition prevents deficiency of essential fatty acids in the woman.

15. The composition of claim 1, wherein said composition is provided with indicia indicating a time period of use.

16. The composition of claim 15, wherein said time period of use is prior to, during and after lactation.

17. The composition of claim 15, wherein said time period commences at about the tenth week of pregnancy.

18. The composition of claim 1, wherein said composition extends the duration of the period of lactation.

19. The composition of claim 1, wherein said composition improves quality of said breast milk.

20. The composition of claim 1, wherein said composition achieves enrichment of said breast milk through a natural biological pathway.

21. The composition of claim 1, additionally comprising a vitamin compound selected from the group consisting of a vitamin A compound, a B complex vitamin compound, a vitamin D compound, and combinations thereof.

22. The composition of claim 1, further comprising a biologically-acceptable mineral compound which is iron.

23. A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-fed by the woman, which comprises:

a) about 10 mg to about 100 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof;

b) about 10 mg to about 1000 mg of a second fatty acid compound for each compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid compound, an omega-2 fatty acid compound, a derivative thereof and a combination thereof;

c) a vitamin compound selected from the group consisting of about 10 mg to about 200 mg of a vitamin $B_6$ compound or derivative thereof, about 0.1 mg to about 3 mg of a folic acid compound or derivative thereof, about 25 mg to about 500 mg of a vitamin C compound or derivative thereof, about 10 mg to about 400 mg of a vitamin E compound or derivative thereof, and combinations thereof; and

d) a biologically acceptable mineral compound which is selected from the group consisting of about 100 mg to about 2000 mg of a calcium compound or derivative thereof, about 25 mg to about 400 mg of a magnesium compound or derivative thereof, and combinations thereof;

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10, said weight ratio specifically formulated to enrich the breast milk of the woman to optimize neurological development of an infant breast-fed by the woman.

* * * * *



BOX PATENT APPLICATION
Attorney Docket No.  23818Y

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Mark S. HERMELIN et al.

Serial No.:  NOT YET ASSIGNED

Filed:      June 21  , 2001

For:        NUTRITIONAL SUPPLEMENTS
            (Continuation application of U.S. Patent Application
            Serial No. 09/323,159 filed on June 1, 1999)

### TRANSMITTAL LETTER

Commissioner of Patents
Washington, D.C. 20231

Sir:
     Submitted herewith for filing in the U.S. Patent and Trademark
Office is the following:

(1)  Transmittal Letter;
(2)  Filing Form;
(3)  Copy of parent Application Serial No. 09/323,159 consisting
     of:
          57  pages Textual Specification
          19  pages of 55 claims
           1  page containing the Abstract of the Disclosure;

(4)  Preliminary Amendment;
(5)  Executed Declaration/Power of Attorney (as originally filed  with
     parent application);
(6)  Check No. 14979    in the amount of $ 1,068.00 for filing fee;
     and
(7)  Postcard for early notification of serial number.

                              Respectfully submitted,

                         NATH & ASSOCIATES PLLC

                    By: _____
                         Gary M. Nath
                         Registration No. 26,965
                         Joshua B. Goldberg
                         Registration No. 44,126

Date: June 21  , 2001
NATH & ASSOCIATES PLLC
1030th 15TH  Street, NW - 6TH Floor
Washington, D.C. 20005
GMN/JBG/TEH:ayd

BOX PATENT APPLICATION
Atty. Docket No.: 23818Y

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Marc S. HERMELIN et al.

Serial No.:  Not yet assigned

Filing Date: _June 21, 2001_

For:          NUTRITIONAL SUPPLEMENTS
              (Continuation application of U.S. Patent Application
              Serial No. 09/323,159 filed on June 1, 1999)

## FILING FORM

## FOR CONTINUING U.S. PATENT APPLICATION

Commissioner of Patents
Washington, D.C.  20231

Sir:

1.    This is a Request for filing a
      XXX Continuation Application under:
           XXX 37 CFR § 1.53(b)(1)
      ___ Divisional Application under:
           ___ 37 CFR § 1.53(b)(1)
      ___ Continuation-In-Part (CIP) application
           ___ 37 CFR § 1.53(b)(2)

      of **prior** ("parent") application:
           Serial No.: 09/323,159
           Filed:      June 1, 1999
           Entitled:   **NUTRITIONAL SUPPLEMENTS**

2.    XXX  Enclosed for application under 37 CFR §§ 1.53(b) are:
      _77_ pages of text (specification, claims, abstract)
      _55_ claims

Atty. Docket No.: 23818Y

3.  The **present** application names the following inventor(s):

    Marc S. HERMELIN
    R. Saul LEVINSON
    George PARADISSIS

    _____ Newly executed oath or declaration (original or copy)

    XXX  Copy from a prior application (37 CFR 1.52 (b))

_____ (37 CFR § 1.53--"CIP") The above-identified application (in which no payment of the Issue Fee, abandonment of or termination of proceedings has occurred) is hereby expressly abandoned as of the filing date of this new application.

The **Total Filing Fee** is calculated as follows:

    ___ Enter the Amendment filed in the prior patent application on _____ prior to calculating the filing fee.

    XXX  Enter the enclosed Preliminary Amendment prior to calculating the filing fee.

| | (Col 1) NUMBER OF CLAIMS FILED | (Col 2) NUMBER OF EXTRA CLAIMS | SMALL ENTITY RATE | SMALL ENTITY FEE | OR | NON-SMALL ENTITY RATE | NON-SMALL ENTITY FEE |
|---|---|---|---|---|---|---|---|
| TOTAL | 31 | minus 20 = 11 | x9= | 0 | | x18= | 198 |
| INDEP | 5 | minus 3 = 2 | x40= | 0 | | x80= | 160 |
| BASE FILING FEE: | | | +355= | 0 | | +710= | 1,068 |
| xx Multiple Dependent Claims | | | +135= | 0 | | +270= | 0 |
| | | | TOTAL | 0 | OR TOTAL | | 1,068 |

_____ Applicant(s) is/are a "small entity". A Verified Statement Claiming Small Entity Status:
    _____ was filed in the parent application, and small entity status is still proper and desired (Rules 60, 62 only);
    _____ is filed herewith;
    _____ will be filed at a later date.

Atty. Docket No.: 23818Y

<u>XXX</u>  A check including the above-indicated filing fee of $1,068.00 is enclosed.

_____  A Petition for Extension of Time (to keep the parent case pending) is enclosed, with a check including the $ ____ extension fee.

_____  Assignment document(s) is/are submitted herewith, with a check including the recordation fee of $ ____ per Assignment.

_____  No check is enclosed.  A Declaration and Power of Attorney will be submitted at a later date pursuant to 37 CFR §§ 1.41, 1.53, together with a check for the "Total Filing Fee" calculated above and a surcharge under 37 CFR § 1.16(e).

<u>XXX</u>  The prior application is assigned of record to **DRUGTECH CORPORATION**, the Assignment being recorded on <u>March 16, 2000</u>, on Reel <u>010667</u>, Frame(s) <u>0850</u>.

_____  An original executed Declaration is enclosed.

<u>XXX</u>  Amend the specification by inserting before the first line the sentence:

--This application is a continuation application of U.S. patent application Serial No. 09/323,159, filed June 1, 1999, the entire contents of which are hereby incorporated by reference in their entirety.--

_____  Foreign priority under 35 U.S.C. § 119 of _____ application(s) _____, filed _____, is hereby claimed.  The certified priority paper(s):
_____  was/were filed in the parent case;
_____  is/are enclosed herewith;
_____  will be submitted at a later date.

<u>XXX</u>  The power of attorney in the prior application is to <u>Gary M. Nath, Reg. No. 26,965; Harold L. Novick, Reg. No. 26,011; Todd L. Juneau, Reg. No. 40,669; Lee C. Heiman, Reg. No. 41,827; Jerald L. Meyer, Reg. No. 41,194; and Joshua B. Goldberg, Reg. No. 44,126; Customer No. 20529.</u>

<u>XXX</u>  The power appears in the original papers in the prior application.

Page 3 of 4

Atty. Docket No. 232818Y

XXX   Address all future communications to:

     Gary M. Nath
     **NATH & ASSOCIATES PLLC**
     1030 15th Street, N.W.- 6th Floor
     Washington, D.C.  20005

XXX   If extensions of time under 37 CFR § 1.136 other than those
     provided herewith are required to prevent abandonment of the
     parent application, then such extensions of time are hereby
     petitioned to allow copendency of the parent and the present
     continuing application. The Commissioner is hereby authorized
     to charge fee deficiency under 37 CFR § 1.17, or credit any
     overpayment, to Deposit Account No. 14-0112.

XXX   The Commissioner is hereby authorized to charge any fee
     deficiency under 37 CFR §§ 1.16 and 1.17 which may be
     required, or credit any overpayment, to Deposit Account No.
     14-0112. A duplicate copy of this Form is enclosed.

               Respectfully submitted,

               **NATH & ASSOCIATES PLLC**

Date: _June 21, 2001_

               Gary M. Nath
               Reg. No. 26,965
               Joshua B. Goldberg
               Reg. No. 44,126
               Customer No. 20529

**NATH & ASSOCIATES**
1030 15th Street, NW - 6th Floor
Washington, D.C.  20005
Tel: (202) 775-8383
Fax: (202) 775-8396
GMN/JBG/TEH:ayd

Page 4 of 4

Attorney Docket No. 23818

NUTRITIONAL SUPPLEMENTS

Marc S. Hermelin
R. Saul Levinson
George Paradissis

Nath & Associates
1030 Fifteenth Street, N.W.
Sixth Floor
Washington, D.C.  20005
TEL: (202) 775-8383
FAX: (202) 775-8396

Attorney Docket No. 23818

NUTRITIONAL SUPPLEMENTS

<u>BACKGROUND OF THE INVENTION</u>

<u>Field of the Invention</u>

5    The present invention is directed to novel compositions containing fatty acids, in particular, linoleic acid and linolenic acid, for use by pregnant and/or lactating women to optimize infant neurological

10    development and provide improved nutritional support for women prior to, during and after lactation.


<u>Description of the Related Art</u>

At some time prior to the end of pregnancy,

15    pregnant women face the decision of whether or not to breast-feed their infants.  It is estimated that over 50% of all mothers choose to breast-feed their infants. *See The Merck Manual*, 185:1929-1931 (16th ed. 1992). Furthermore, the number of women deciding to breast-

20    feed appears to be on the increase, particularly in higher socioeconomic groups. *Id.* Most experts would agree that this increase is very desirable in view of the numerous recognized nutritional benefits for developing infants which accompany their consumption of

1

Attorney Docket No. 23818

human milk.  Because of the nutritional benefits for infants, many health care providers and dietitians believe breast-feeding is sufficiently important to warrant that every effort be made to breast-feed, even 5 if only for a short time.  *See* Whitney et al., *Understanding Nutrition,* 493-504 (6th ed. 1993).

Moreover, in addition to the nutritional benefits of breast-feeding, many women simply want to breast-feed their infants for emotional or psychological 10 reasons.  However, regardless of a woman's underlying reasons for breast-feeding, her nutritional status is implicated in the decision of whether to breast-feed her child.  For example, a nutritional deficiency in a woman may severely limit the quantity of breast milk 15 which is produced or, in some cases, entirely prevent lactation from occurring.

Generally speaking, the nutritional benefits of breast-feeding stem from the unique nutrient composition and protective factors present in breast 20 milk which promote infant health and development.  *Id.* at 494.  For example, breast milk generally contains all of the vitamins required for infant development,

2

Attorney Docket No. 23818

with the possible exception of vitamin D. *Id.* at 500. Further, breast milk is an abundant source of minerals and, more importantly, some minerals are present in breast milk in highly desirable ratios (e.g., the 2-to-

5    1 ratio of calcium to phosphorus in breast milk is ideal for the absorption of calcium). *Id.* Breast milk also contains invaluable immunological agents, including antiviral agents such as immunoglobulins, and antibacterial agents such as lactoferrin.

10    In addition to the above discussed vitamins, minerals and immunological agents, breast milk also contains various "energy nutrients". For example, breast milk contains lactose which is the carbohydrate present in breast milk and which facilitates calcium

15    absorption. *Id.* A relatively small amount of protein, primarily in the form of alpha-lactalbumin, is also present in breast milk, thus placing less stress on the infant's immature kidneys. *Id.* Breast milk additionally contains fat along with fat-digesting

20    enzymes. *Id.* Linoleic acid, a fatty acid, is found in large quantities in breast milk. *Id.*

The presence of fatty acids in breast milk is

3

Attorney Docket No. 23818

significant for various reasons, as described below. First, the body derives most of its energy from triglycerides, a molecule of glycerol with three fatty acids attached. The stored fatty acids support most of

5  life's activities when individual's are between meals or must go without food. While the body can make many fatty acids, it cannot make linoleic acid or linolenic acid. These two fatty acids are indispensable to body functions and therefore must be supplied through food.

10  Secondly, essential fatty acids are important for the developing brain, immunological system and cardiovascular system, and have some role to play in every organ of the body. Linoleic acid is the most important member of the omega-6 family of fatty acids.

15  The body uses linoleic acid to synthesize an important 20-carbon fatty acid, arachidonic acid, which helps maintain the structural integrity of cell membranes.

Linolenic acid is the most important member of the omega-3 family of fatty acids. The body requires this

20  fatty acid to make eicosapentaenoic acid (EPA) and docosahexaenoic acid (DHA). Many body tissues require EPA and DHA. DHA is especially important in the retina

4

Attorney Docket No. 23818

and in the cerebral cortex of the brain.  Half of the DHA in a fetus's body accumulates in the brain before birth, and half after birth, an indication of the importance of fatty acids to the fetus during pregnancy and then to the young infant during lactation.

5

Successful breast-feeding requires that the mother maintain good nutrition and adequate rest.  A good, nutritional diet is needed to support the stamina that nursing an infant requires.  Beyond this, however, a woman must consume a nutrient-rich diet to produce nutrient-rich milk.

10

A healthy nursing mother generally makes about 25 ounces of milk each day.  To produce this milk, the mother needs to consume 650 kcalories above what she would normally require for herself.  Woman are advised to eat about 500 kcalories worth of extra food and let the extra fat left over from pregnancy provide the rest.  Woman may not consume enough food for many reasons, including the desire to lose all of the weight gained during pregnancy.  But restricting food and energy in this fashion will result in breast milk which is lacking in nutrients, low quantities of breast milk

15

20

5

Attorney Docket No. 23818

or, in the worse case scenario, no breast milk at all.

According to the medical literature, a nursing mother should eat foods high in nutrients and drink plenty of fluid. Nutritional deprivation in the mother

5    generally reduces the quantity, more so than the quality, of the milk. So while woman can produce milk with sufficient protein, carbohydrate, fat and minerals even if their own intake is insufficient, the quality of the breast milk is maintained at the expense of the

10   mother's own nutrient repositories. Moreover, quantities of particular vitamins, such as B6, B12, A and D, in breast milk will actually decline in response to a inadequate intakes by the mother.

Infants have different nutritional needs than

15   those of children and adults. They require more fat and less protein than adults. Breast milk contains high concentrations of fat-digesting enzymes that allow for highly efficient fat absorption. Breast milk, as well as colostrum, contain the essential fatty acid

20   linoleic acid. *Understanding Nutrition, Whitney and Rolfe, 6th Ed., 136-40 (1993).*

Full term babies who are not fed enough linoleic

6

Attorney Docket No. 23818

acid suffer from dermatosis and growth failure. These
conditions are easily reversed when linoleic acid is
added to the infant's diet. Fatty acid deficiency in
a breast-feeding infant is a hazzard of long term low

5    fat parental dieting. *The Merck Manual, 16th Ed., 968
(1992).*

Methods of administering linolenic acid to
lactating females have been previously described.
Specifically, Horrobin, U.S. Patent No. 5,264,217,

10   discloses methods for increasing the total fat content
of milk, the essential fatty acid content of milk and
the flow of milk during lactation, or for preventing
or reducing the normal decrease in milk fat content
that occurs during prolonged lactation, by

15   administering gamma linolenic acid, dihomo-gamma-
linolenic acid or their mixture to a lactating female.

Other references disclose compositions and
methods that have been developed for achieving fat
enrichment of ruminant milk for consumption by humans.

20   In general, animal feed is supplemented with fatty
acids. In turn, the milk produced by the ruminants is
itself rich in fatty acids.

7

Attorney Docket No. 23818

Chalupa et al., U.S. Patent No. 5,004,728, describe a method for increasing milk yields in lactating ruminants. The ruminants are fed somatotropin and salts of long chain fatty acids. The fatty acids in the feed increases the level of long chain fatty acids in the milk produced by the ruminant. One long chain fatty acid suitable for this inventive subject matter is linoleic acid.

Nishimura et al., U.S. Patent No. 5,635,198, describe a granular agent comprised by an active core coated by certain fatty acids and oils to be administered to ruminants. This granular agent has a superior absorption rate and results in, among other benefits, efficient lactation in the ruminant.

Scott et al., U.S. Patent No. 3,925,560, describe a feed supplement for ruminants comprising fatty acids encapsulated with a protein-aldehyde reaction product. These fatty acid supplements, including linoleic acid, provide high energy feed supplements for ruminants. These supplements will result in the ruminate producing a milk very high in unsaturated fats.

Palmquist et al., U.S. Patent No. 4,642,317,

8

Attorney Docket No. 23818

describe a process for feeding ruminants fatty acids in the form of their calcium salts, which are added to feed.  This process would allow dairy cows to make milk high in fats, without depleting their own fatty

5    acid stores.

Richardson, U.S. Patent No. 5,143,737, describes a method for the modification of ruminant food so that the ruminant will produce a milk with modified fat. This method comprises a non-toxic food to be

10   surrounded by an acid-sensitive nontoxic crosslinking material.  Animals eating this composition will make milk with a higher level of unsaturated fats.

Furthermore, several prenatal supplements are available which provide pregnant women with varying

15   amounts of vitamins and minerals.  The *Physicians' Desk Reference* describes various vitamin and mineral supplements for use by pregnant women.  For example, Nestabs® CBF, prenatal formula, available from The Fielding Company, Maryland Heights, Missouri, contains

20   4,000 I.U. of vitamin A, 400 I.U. of vitamin D, 30 I.U. of vitamin E, 120 mg of vitamin C, 1 mg of folic acid, 3 mg of thiamine, 3 mg of riboflavin, 20 mg of

9

Attorney Docket No. 23818

niacinamide, 3 mg of pyridoxine, 8 mcg of vitamin $B_{12}$,
20 mg of calcium, 100 mcg of iodine, 15 mg of zinc,
and 50 mg of iron per dose.    NESTABS® CBF are
"expressly formulated for use during pregnancy and

5    lactation" and are available only in tablet form.    *See*
*Physicians' Desk Reference*, (53d Ed., 1999) 1011.

Materna® prenatal vitamin and mineral formula,
available from Lederle Laboratories, Pearl River, New
York, contains 5,000 I.U. of vitamin A, 400 I.U. of

10    vitamin D,  30 I.U. of vitamin E, 120 mg of vitamin C,
1 mg of folic acid, 3 mg of vitamin $B_1$, 3.4 mg of
vitamin $B_2$, 10 mg of vitamin $B_6$, 20 mg of niacinamide,
12 mcg of vitamin $B_{12}$,  30 mcg of biotin, 10 mg of
pantothenic acid, 200 mg of calcium, 150 mcg of

15    iodine, 27 mg of iron, 25 mg of magnesium, 2 mg of
copper, 25 mg of zinc, 25 mg of chromium, 25 mg of
molybdenum, 5 mg of manganese,  and 20 mcg of selenium
per dose.  Materna® is designed "provide vitamin and
minerals  supplementation  prior  to  conception,

20    throughout pregnancy and during the postnatal period
for both lactating and nonlactating mothers" and is
available in tablet form only.  *See Id.* at 1522-3.

Attorney Docket No. 23818

Enfamil® Natalins® RX multivitamin and multimineral supplements, available from Mead Johnson Nutritionals, Evansville, Indiana, provide 4000 I.U. of vitamin A, 80 mg of vitamin C, 400 I.U. of vitamin D, 15 I.U. of vitamin E, 1.5 mg of thiamin, 1.6 mg of riboflavin, 17 mg niacin, 4 mg of vitamin $B_6$, 1 mg of folic acid, 2.5 mcg of vitamin $B_{12}$, 30 mcg of biotin, 7 mg of pantothentic acid, 200 mg of calcium, 54 mg of iron, 25 mg of zinc, and 3 mg of copper per dose. Enfamil® Natalins® RX are "to supplement the diet during pregnancy of lactation" and are available only in tablet form. *See Id.* at 1692.

Prenate® Ultra™ prenatal vitamins, available from Sanofi Pharmaceuticals, New York, New York, contain 90 mg of elemental iron, 150 mcg of iodine, 200 mg of calcium, 2 mg of copper, 25 mg of zinc, 1 mg of folic acid, 2700 I.U. of vitamin A, 400 I.U. of vitamin $D_3$, 30 I.U. of vitamin E, 120 mg of vitamin C, 3 mg of vitamin $B_1$, 304 mg of vitamin $B_2$, 20 mg of vitamin $B_6$, 12 mcg of vitamin $B_{12}$, 20 mg of niacinamide, and 50 mg of docusate sodium per dose. Prenate® Ultra™ is "indicated for use in improving the nutritional status

11

Attorney Docket No. 23818

of women throughout pregnancy and in the postnatal period for both lactating and nonlactating mothers and is only available in tablet form. *See Id.* at 2802.

Niferex®-PN formula, available from Schwarz Pharma, Inc., Milwaukee, Wisconsin, contains 60 mg of iron, 1 mg of folic acid, 50 mg of vitamin C, 3 mcg of vitamin $B_{12}$, 4,000 I.U. of vitamin A, 400 I.U. of vitamin D, 2.43 mg of vitamin $B_1$, 3 mg of vitamin $B_2$, 1.64 mg of vitamin $B_6$, 10 mg of niacinamide, 125 mg of calcium, and 18 mg of zinc per dose. Niferex®-PN is "indicated for prevention and/or treatment of dietary vitamin and mineral deficiencies associated with pregnancy and lactation" and is only available in tablet form. *See Physicians' Desk Reference*, (53d Ed., 1999) 2916-7.

Niferex®-PN Forte formula, available from Schwarz Pharma, Inc., Milwaukee, Wisconsin, contains 60 mg of iron, 1 mg of folic acid, 50 mg of vitamin C, 3 mcg of vitamin $B_{12}$, 5,000 I.U. of vitamin A, 400 I.U. of vitamin D, 30 I.U. of vitamin E, 80 mg of vitamin C, 1 mg of folic acid, 3 mg of vitamin $B_1$, 3.4 mg of vitamin $B_2$, 4 mg of vitamin $B_6$, 20 mg of niacinamide,

12

Attorney Docket No. 23818

12 mcg of vitamin $B_{12}$, 250 mg of calcium, 200 mcg of iodine, 10 mg of magnesium, 2 mg of copper, and 25 mg of zinc per dose. Niferex®-PN is "indicated for prevention and/or treatment of dietary vitamin and mineral deficiencies associated with pregnancy and lactation" and is only available in tablet form. *See Id.* at 2917-8.

Advanced Formula Zenate® prenatal multivitamin/mineral supplement, available from Solvay Pharmaceuticals, Marietta, Georgia, contains 3,000 I.U. of vitamin A, 400 I.U. of vitamin D, 10 I.U. of vitamin E, 70 mg of vitamin C, 1 mg of folic acid, 1.5 mg of vitamin $B_1$, 1.6 mg of vitamin $B_2$, 17 mg of niacin, 2.2 mg of vitamin $B_6$, 2.2 of vitamin $B_{12}$, 200 mg of calcium, 175 mcg of iodine, 65 mg of iron, 100 mg of magnesium, and 15 mg of zinc per dose. Advanced Formula Zenate® is "a dietary adjunct in nutritional stress associated with periconception, pregnancy and lactation" and is only available in tablet form. *See Id.* at 3128.

Precare® prenatal multi-vitamin/mineral formula, available from UCB Pharma, Inc., Smyrna, Georgia,

13

Attorney Docket No. 23818

contains 50 mg of vitamin C, 250 mg of calcium, 40 mg of iron, 6 mcg of vitamin D, 3.5 mg of vitamin E, 2 mg of vitamin $B_6$, 1 mg of folic acid, 50 mg of magnesium, 15 mg of zinc and 2 mg of copper per dose. Precare®

5      is indicated to provide vitamin and mineral supplementation throughout pregnancy and during the postnatal period-for both lactating and nonlactating mothers and is available only in caplet form. *See Id.* at 3163.

10     Natafort® prenatal multivitamin, available from Warner Chilcott, Rockaway, New Jersey, contains 1,000 I.U. pf vitamin A, 400 I.U. of vitamin $D_3$, 11 I.U. of vitamin E, 120 mg of vitamin C, 1 mg of folic acid, 2 mg of thiamine mononitrate, 3 mg of riboflavin, 20 mg

15     of niacinamide, 10 mg of vitamin $B_6$, 12 mcg of vitamin $B_{12}$, and 60 mg of iron per dose. Natafort® is designed "to provide vitamin and mineral supplementation throughout pregnancy and during the postnatal period, for both the lactating and non-lactating mother" and

20     is only available in tablet form. *See Id.* at 3212.

However, none of the above formulations provide women with essential fatty acids in amounts and

14

Attorney Docket No. 23818

proportions necessary to optimize infant neurological development. Further, the prenatal nutritional supplements containing vitamins and minerals are entirely lacking in essential fatty acids. In the

5    case of the enriched ruminant milk, while this milk may be a good source of fatty acids for adults, ruminant milk is not recommended for infants because even supplemented formula cannot match the immunological benefits of breast milk.

10   Therefore, there remains a need for a nutritional formulation which optimizes infant neurological development. It is also desirable to have nutritional formulations which prevent a woman's stores of fatty acids from becoming depleted during lactation. There

15   is also a particular need for nutritional formulations which provide essential fatty acids in optimal ratios and amounts, along with required vitamins and minerals. Moreover, it is desirable to have formulations and methods which prepare a woman's body

20   for the stresses imposed by lactation.

15

Attorney Docket No. 23818

## SUMMARY OF THE INVENTION

The compositions of the present inventive subject matter overcome the deficiencies of currently-available nutritional supplements by providing

5  formulations which are specifically tailored for women during the period prior to and during lactation and which optimize infant neurological development while inhibiting depletion of a nursing mother's nutritional stores.  The present compositions contain a novel

10 combination of fatty acids in critical ratios and amounts, optionally in combination with various vitamins and minerals.

In one embodiment of the inventive subject matter, a composition comprises a first fatty acid

15 compound selected from the group consisting of linoleic acid, linolenic acid, a derivative thereof and a combination thereof in an amount ranging from about 10 mg to 100 mg; and a second fatty acid compound selected from the group consisting of a

20 docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof in an amount ranging from about 10

16

Attorney Docket No. 23818

mg to 100 mg; wherein the weight ratio of the first fatty acid compound to the second fatty acid compound is about 1:0.1 to 10.

5   In another embodiment of the inventive subject matter, a composition comprises a first fatty acid compound selected from the group consisting of linoleic acid, linolenic acid, a derivative thereof and a combination thereof in an amount ranging from 10 mg to 100 mg; a second fatty acid compound selected 10  from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof in an amount ranging from about 10 mg to 100 mg; a vitamin B6 compound or derivative thereof in a range 15  of about 20 mg to 125 mg; a folic acid compound or derivative thereof in a range of about 0.1 mg to 3 mg; and a calcium compound or derivative thereof in a range of about 100 mg to 1000 mg. The weight ratio of the first fatty acid compound to the second fatty acid 20  compound is about 1:0.1 to 10.

In a further embodiment of the inventive subject matter, a composition comprises a first fatty acid

17

Attorney Docket No. 23818

compound selected from the group consisting of
linoleic acid, linolenic acid, a derivative thereof
and a combination thereof in an amount ranging from 10
mg to 100 mg; a second fatty acid compound selected

5    from the group consisting of a docosahexaenoic acid
compound, an omega-3 fatty acid, and omega-2 fatty
acid, a derivative thereof and a combination thereof
in an amount ranging from about 10 mg to 100 mg; a
vitamin B6 compound or derivative thereof in a range

10   of about 20 mg to 125 mg; a folic acid compound or
derivative thereof in a range of about 0.1 mg to 3 mg;
a calcium compound or derivative thereof in a range of
about 100 mg to 1000 mg; a magnesium compound or
derivative thereof in a range of about 25 mg to 400

15   mg; a vitamin C compound or derivative thereof in a
range of 25 mg to 400 mg; and a vitamin E compound or
derivative thereof in a range of 10 mg to 400 mg.  The
weight ratio of the first fatty acid compound in the
composition to the second fatty acid compound in the

20   composition is about 1:0.1 to 10.

In a further embodiment of the inventive subject
matter, a composition for administration to a female

18

Attorney Docket No. 23818

mammal for enriching the milk of said female mammal to optimize neurological development of a neonate being nursed by the female mammal, which comprises about 10 mg to 1000 mg per 55 kg of said mammal's body weight

5    of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof; about 10 mg to 1000 mg of a second fatty acid compound selected from the

10    group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof; and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about

15    1:0.01 to 10.

In yet another embodiment of the inventive subject matter, a composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-

20    fed by the woman, which comprises about 10 mg to 1000 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid

Attorney Docket No. 23818

compound, a derivative thereof and a combination thereof; about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid,

5 an omega-2 fatty acid, a derivative thereof and a combination thereof; and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.01 to 10.

The inventive subject matter also provides a

10 method for enriching the breast milk of a woman to optimize neurological development of her breast-fed infant, which comprises administering a first fatty acid compound to the woman during a period which begins at least at about the tenth week of pregnancy.

15 This first fatty acid compound is selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof. It also involves administering a second fatty acid compound to said woman during a

20 period which begins at least at about the tenth week of pregnancy. The second fatty acid is selected from the group consisting of docosahexaenoic acid compound,

20

Attorney Docket No. 23818

an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to the woman together with said first fatty acid compound. The

5   weight range of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

In another embodiment of the present inventive subject matter, a method for enriching the breast milk of a woman wishing to optimize or who is concerned

10  about the neurological development of the infant she breast-feeds comprises administering a first fatty acid compound in a range of about 10 mg to 100 mg to the woman during a period which begins at least at about the tenth week of pregnancy. This first fatty

15  acid compound is selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof. It also involves administering a second fatty acid compound to said woman during a period which begins at

20  least at about the tenth week of pregnancy in a range of 10 mg to 100 mg respectively for linoleic and linolenic acids. The second fatty acid is selected

21

Attorney Docket No. 23818

from the group consisting of docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to
5     the woman together with said first fatty acid compound. The weight range of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

        In a further embodiment of the inventive subject
10    matter, a method for enriching the breast milk of a woman to optimize the neurological development of the infant she breast-feeds comprises administering a first fatty acid compound to the woman during a period which begins at least at about the tenth week of
15    pregnancy and ends at the conclusion of breast-feeding or continues on as a nutritional supplement for the mother in a range of 10 mg to 100 mg. This first fatty acid compound is selected from the group consisting of a linoleic acid compound, a linolenic
20    acid compound, a derivative thereof and a combination thereof. It also involves administering a second fatty acid compound to said woman during a period

22

Attorney Docket No. 23818

which begins at least at about the tenth week of pregnancy. The second fatty acid is selected from the group consisting of docosahexaenoic acid compound, an omega-3 fatty acid, and omega-2 fatty acid, a

5    derivative thereof and a combination thereof, and said second fatty acid compound being provided to the woman together with said first fatty acid compound. It also involves administering a nutritional compound to said woman during a period which begins at least at about

10    the tenth week of pregnancy. This compound is selected from a group consisting of a vitamin compound, a biologically-acceptable mineral compound, a derivative thereof and a combination thereof, and said nutritional compound being administered together

15    with said first and said second fatty acid compounds. The weight range of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

In a further embodiment of the inventive subject matter, a method for enriching the to a female mammal

20    for enriching the milk of said female mammal to optimize neurological development of the neonate, which comprises: administering a first fatty acid

23

Attorney Docket No. 23818

compound to the woman during a period commencing at least at about the tenth week of pregnancy and terminating at the conclusion of breast-feeding, said first fatty acid compound being selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof; administering a second fatty acid compound to said woman during the period commencing at least at about the tenth week of pregnancy and terminating at the conclusion of breast-feeding, said second fatty acid compound being selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to the woman together with said first fatty acid compound; and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

In a further embodiment of the inventive subject matter, a method for enriching the milk of a female mammal to optimize neurological development of a

24

Attorney Docket No. 23818

neonate being nursed by the female mammal, which comprises administering a first fatty acid compound to the female mammal during a period commencing at least at about the tenth week of gestation, said first fatty

5      acid compound being selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof; administering a second fatty acid compound to said female mammal during the period commencing at

10     least at about the tenth week of gestation, said second fatty acid compound being selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof, and said

15     second fatty acid compound being provided to the female mammal together with said first fatty acid compound; and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

20

## DETAILED DESCRIPTION OF THE INVENTION

As used herein, "nutritional stores" refers to

25

Attorney Docket No. 23818

the levels of vitamins, minerals and other nutrients which will be available for use by the mother, developing embryo, fetus and newborn infant.

"Nutritional status" refers to the presence or absence of any nutrient deficiency, or in other words, the extent to which physiological nutrient demands are being satisfied such that deficiency is avoided.

"Optimize neurological development" refers to attainment of the highest degree of neurological development possible through natural processes without the use of any unnatural substances or procedures, such as drugs, surgery and the like.

"Biologically active substance" refers to any substance or substances comprising a drug, active therapeutic substance, metabolite, medicament, vitamin, or mineral, any substance used for treatment, prevention, diagnosis, cure or mitigation of disease or illness, any substance which affects anatomical structure or physiological function, or any substance which alters the impact of external influences on an animal, or metabolite thereof, and as used herein, encompasses the terms "active substance", "therapeutic

Attorney Docket No. 23818

substance", "agent", "active agent", "active therapeutic agent", "drug", "medication", "medicine", "medicant", and other such similar terms.

5   "Specific physiological needs" refers to the unique requirements for certain levels of certain nutrients by one class of persons, such as lactating women, pregnant women, etc., as distinguished from other classes.

"Biologically-acceptable" refers to being safe 10   for human consumption.

"Neonate" refers to the offspring of a female mammal that is nursed by said female mammal and has not yet been weaned.

The compositions of the present inventive subject 15   matter provide several specific new and unexpected benefits. First, the formulations ensure that both the mother and her infant or infants are provided with adequate energy during the period of lactation. Secondly, the formulations allow the mother to maintain adequate fatty acid stores for both her own 20   use and for incorporation into her breast milk as her supplies are depleted during lactation. Thirdly, the

27

Attorney Docket No. 23818

fatty acids optimize the neurological development of the infant consuming the breast milk. Fourthly, when administered prior to lactation," the present compositions prepare women for the increased physiological demands and stresses to be placed upon their bodies. Finally, the present compositions help women recover from pregnancy and lactation and prepare women for additional pregnancies and subsequent lactation.

5

Thus, the inventive subject matter provides a composition designed to be administered to a woman for the purpose of both enriching her breast milk for the benefit of her child and also to directly benefit the woman. In fact, in some cases, the formulations may allow a woman to breast-feed her infant where in the absence of taking the present composition breast-feeding would have been either unsafe or outright impossible. Infants consuming the enriched breast milk, as described herein, will experience optimal neurological development. Futher, the present composition will help a post-partum woman to recover from her pregnancy and labor quickly and efficiently

10

15

20

28

Attorney Docket No. 23818

by providing her with the fatty acids lost in pregnancy and lactation. In addition, the present composition will place a woman in optimal condition for an additional pregnancy and the lactation that

5   will follow by helping her increase her nutritional stores of critical nutritional compounds.

The present inventive subject matter is based, in part, on the discovery that when compositions having certain fatty acids, in certain amounts and

10   proportions to one another, are administered to women prior to and during lactation, infants who consume the breast milk of said women will achieve optimized neurological development. In particular, supplementing the mother's diet with certain fatty

15   acids for a period beginning at ten weeks after conception and either ending when lactation ceases or being continued as a supplement will not only optimize the neural development of the breast-feeding infant, but also ensure that the mother has adequate essential

20   fatty acids for her own use. The fatty acid supplement may also further contain vitamins and minerals to confer added health benefits to the infant

29

Attorney Docket No. 23818

and mother.  In addition to benefitting a breast-feeding human infant, the present invention can also benefit the offspring of non-human mammals that are nursed by their mothers.  The composition of the

5   present invention could be administered to a mammal in animal feed, pill form, or other appropriate dosage forms to such mammals.

   Without being limited by theory, the present compositions stimulate the production of breast milk

10  which is enriched with essential fatty acids in amounts which optimize infant neurological development.  These compositions achieve such enrichment of the breast milk through one or more natural biological pathways.  For example, the

15  arachidonic acid cascade may play a significant role in the enrichment of the breast milk.  Specifically, in the arachidonic acid cascade, linoleic acid is converted first to gamma-linolenic acid and then to further metabolites such as dihomo-gamma-linolenic

20  acid and arachidonic acid which are precursors of 1 and 2 series prostaglandin respectively, as shown in the outline below:

Attorney Docket No. 23818



5

10

15

The present composition contains at least two
fatty acid compounds.  The first fatty acid compound
is selected from the group consisting of a linoleic
acid compound, a linolenic acid compound, derivatives
thereof and combinations thereof.  The second fatty

20

31

Attorney Docket No. 23818

acid compound is selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid compound, an omega-2 fatty acid compound, derivatives thereof and combinations thereof. Moreover, when the

5    first fatty acid compound is linolenic acid or a derivative thereof and the second fatty acid compound is an omega-3 fatty acid, said omega-3 fatty acid is not linolenic acid or a derivative thereof. It is also preferred that when the first fatty acid compound

10   is linoleic acid or a derivative thereof and the second fatty acid compound is an omega-2 fatty acid, said omega-2 fatty acid is not linoleic acid or a derivative thereof.

The two fatty acid compounds are present in the

15   composition in critical proportions to one another. Preferably, the weight ratio of the first fatty acid to the second fatty acid is about 1:0.001 to 50. More preferably, the weight ratio of the first fatty acid compound to the second fatty acid compound is about

20   1:0.1 to 10. Even more preferably, the weight ratio of the first fatty acid compound to the second fatty acid compound is about 1:0.9 to 2.5. Most preferably,

32

Attorney Docket No. 23818

the weight ratio of the first fatty acid compound to
the second fatty acid compound is about 1:1 to 2.

The fatty acids of the present inventive subject
matter may be used as such or as biologically
5   acceptable and physiologically equivalent derivatives
as, for example, detailed later herein. Reference to
any of the fatty acids including reference in the
claims is to be taken as including reference to the
acids when in the form of such derivatives.
10  Equivalence is demonstrated by entry into the
biosynthetic pathways of the body as evidenced by
effects corresponding to those of the acids themselves
or their natural glyceride esters. Thus, indirect
identification of useful derivatives is by their
15  having the valuable effect in the body of the fatty
acid itself, but conversion, for example, of gamma-
linolenic acid to dihomo-gamma-linolenic acid and on
to arachidonic acid can be shown directly by gas
chromatographic analysis of concentrations in blood,
20  body fat, or other tissue by standard techniques, well
known to persons of ordinary skill in the art to which
the present inventive subject matter pertains.

33

Attorney Docket No. 23818

Derivatives of linoleic acid, as used in the present inventive subject matter, include, without limitation, salts of linoleic acid, alkaline salts of linoleic acid, esters of linoleic acid, and

5    combinations thereof. Derivatives of linolenic acid, as used in the present inventive subject matter, include, without limitation, salts of linolenic acid, alkaline salts of linolenic acid, esters of linoleic acid, and combinations thereof. The salts and

10   alkaline salts herein refer to those regularly used organic or inorganic salts which are acceptable for pharmaceutical use. Non-limiting exemplary linolenic acids include gamma-linoleic acid and dihomo-gamma-linolenic acid.

15       The fatty acids of the present inventive subject matter may be from any source, including, without limitation, natural or synthetic oils, fats, waxes or combinations thereof. Moreover, the fatty acids herein may be derived, without limitation, from non-

20   hydrogenated oils, partially hydrogenated oils, fully hydrogenated oils or combinations thereof. Non-limiting exemplary sources of fatty acids include seed

34

oil, fish or marine oil, canola oil, vegetable oil, safflower oil, sunflower oil, nasturtium seed oil, mustard seed oil, olive oil, sesame oil, soybean oil, corn oil, peanut oil, cottonseed oil, rice bran oil, babassu nut oil, palm oil, low erucic rapeseed oil, palm kernel oil, lupin oil, coconut oil, flaxseed oil, evening primrose oil, jojoba, tallow, beef tallow, butter, chicken fat, lard, dairy butterfat, shea butter or combinations thereof. Specific non-limiting exemplary fish or marine oil sources include shellfish oil, tuna oil, mackerel oil, salmon oil, menhaden, anchovy, herring, trout, sardines or combinations thereof. Preferably, the source of the fatty acids is fish or marine oil, soybean oil or flaxseed oil.

The present composition may optionally contain additional vitamins and biologically-acceptable minerals. Non-limiting exemplary vitamins and biologically acceptable minerals and their derivatives thereof for inclusion in the present compositions include vitamin A, B vitamins, vitamin C, vitamin D, vitamin E, vitamin K, folic acid, iron, calcium, magnesium, potassium, copper, chromium, zinc,

35

Attorney Docket No. 23818

molybdenum, iodine, boron, selenium, manganese, derivatives thereof or combinations thereof. These vitamins and minerals may be from any source or combination of sources, without limitation. Non-

5 limiting exemplary B vitamins include, without limitation, thiamine, niacinamide, pyridoxine, riboflavin, cyanocobalamin, biotin, pantothenic acid or combinations thereof.

When vitamin C is present in the composition of

10 the present inventive subject matter, it is preferably present in an amount ranging from about 10 mg to about 500 mg. More preferably, the vitamin C is present in an amount ranging from about 25 mg to about 400 mg. Even more preferably, the vitamin C is present an

15 immediate release form in an amount ranging from about 25 mg to about 50 mg. Most preferably, the vitamin C is present in a controlled release form in an amount ranging from about 250 mg to about 500 mg.

When vitamin E is present in the composition of

20 the present inventive subject matter, it is preferably present in an amount ranging from about 5 mg to about 500 mg. More preferably, the vitamin E is present in

36

09851581" 060401

Attorney Docket No. 23818

an amount ranging from about 10 mg to about 400 mg.
Even more preferably, the vitamin E is present in a
controlled release form in an amount ranging from
about 250 mg to about 400 mg.  Most preferably, the
5   vitamin E is present in an immediate release form in
an amount ranging from about 10 mg to about 50 mg.

Vitamin $B_6$ may also be present in the composition
of the present inventive subject matter.  Vitamin $B_6$ is
preferably present in an amount ranging from about 10
10   mg to about 200 mg.  More preferably, vitamin $B_2$ is
present in an amount ranging from about 20 mg to about
125 mg.  Even more preferably, vitamin B6 is present
in an immediate release form in an amount ranging from
20 mg to about 50 mg.  Most preferably, vitamin $B_6$ is
15   present in a controlled release form in an amount
ranging from 50 mg to about 125 mg.

Folic acid may also be incorporated into the
composition of the present inventive subject matter.
When folic acid is present in the composition, it is
20   preferably present in an amount ranging from about 0.1
mg to about 3 mg.  More preferably, folic acid is
present in an immediate release form in an amount

37

Attorney Docket No. 23818

ranging from about 0.1 mg to about 2 mg. Even more preferably, folic acid is present in a controlled release form in an amount ranging from about 1.5 mg to about 3 mg.

5        Calcium is preferably present in the composition of the present inventive subject matter in an amount ranging from about 100 mg to about 2,500 mg. More preferably, calcium is present in an amount ranging from about 100 mg to about 1,000 mg. Even more

10      preferably, calcium is present in an immediate release form in an amount ranging from about 100 mg to about 500 mg. Most preferably, calcium is present in a controlled release form in an amount ranging from about 500 mg to about 2,000 mg.

15      Magnesium is preferably present in the composition of the present inventive subject matter in an amount ranging from about 25 mg to about 400 mg. More preferably, magnesium is present in the composition of the present inventive subject matter in

20      an immediate release form in an amount ranging from about 25 mg to about 100 mg. Even more preferably, magnesium is present in the composition of the present

38

Attorney Docket No. 23818

inventive subject matter in a controlled release form in an amount ranging from about 100 mg to about 400 mg.

5     The composition of the present inventive subject matter may also include one or more biologically active substance. The biologically active substances incorporated into the present inventive subject matter are nonteratogenic to protect the unborn fetus. For example, without limitation, the biologically active 10 substance may be a lactogen compound, a derivative of a lactogen compound or combinations thereof. Derivatives of lactogen compounds include, without limitation, salts of lactogen compounds, alkaline salts of lactogen compounds, esters of lactogen 15 compounds and combinations thereof.

    Various additives may be incorporated into the present composition. Optional additives of the present composition include, without limitation, starches, sugars, fats, antioxidants, amino acids, 20 proteins, derivatives thereof or combinations thereof.

    It is also possible in the nutritional composition of the present inventive subject matter

39

Attorney Docket No. 23818

for the dosage form to combine various forms of release, which include, without limitation, immediate release, extended release, pulse release, variable release, controlled release, timed release, sustained

5   release, delayed release, long acting, and combinations thereof. The ability to obtain immediate release, extended release, pulse release, variable release, controlled release, timed release, sustained release, delayed release, long acting characteristics

10  and combinations thereof is performed using well known procedures and techniques available to the ordinary artisan.    Each of these specific techniques or procedures for obtaining the release characteristics does not constitute an inventive aspect of this

15  inventive subject matter all of which procedures are well known to those of ordinary skill in the art. As used herein, a 'controlled release form" means any form having at least one component formulated for controlled release.    As used herein, 'immediate

20  release form" means any form having all its components formulated for immediate release.

Any biologically-acceptable dosage form, and

Attorney Docket No. 23818

combinations thereof, are contemplated by the inventive subject matter. Examples of such dosage forms include, without limitation, chewable tablets, quick dissolve tablets, effervescent tablets,

5  reconstitutable powders, elixirs, liquids, solutions, suspensions, emulsions, tablets, multi-layer tablets, bi-layer tablets, capsules, soft gelatin capsules, hard gelatin capsules, caplets, lozenges, chewable lozenges, beads, powders, granules, particles,

10  microparticles, dispersible granules, cachets, douches, suppositories, creams, topicals, inhalants, aerosol inhalants, patches, particle inhalants, implants, depot implants, ingestibles, injectables, infusions, health bars, confections, animal feeds,

15  cereals, cereal coatings, foods, nutritive foods, functional foods and combinations thereof. The preparation of the above dosage forms are well known to persons of ordinary skill in the art.

The following procedures represent, without

20  limitation, of acceptable methods of preparing formulations falling within the scope of the inventive subject matter. For example, animal feed may be by

41

Attorney Docket No. 23818

methods well known to persons of ordinary skill in the art.  Animal feeds may be prepared by mixing the formulation with binding ingredients to form a plastic mass.  The mass is then extruded under high pressure

5    to form tubular (or "spaghetti-like") structures that are cut to pellet size and dried.

Quick dissolve tablets may be prepared, for example, without limitation, by mixing the formulation with agents such as sugars and cellulose derivatives,

10    which promote dissolution or disintegration of the resultant tablet after oral administration, usually within 30 seconds.

Cereal coatings may be prepared, for example, without limitation, by passing the cereal formulation,

15    after it has been formed into pellets, flakes, or other geometric shapes, under a precision spray coating device to deposit a film of active ingredients, plus excipients onto the surface of the formed elements.  The units thus treated are then

20    dried to form a cereal coating.

For example, health bars may be prepared, without limitation, by mixing the formulation plus excipients

42

Attorney Docket No. 23818

(e.g., binders, fillers, flavors, colors, etc.) to a plastic mass consistency. The mass is then either extended or molded to form "candy bar" shapes that are then dried or allowed to solidify to form the final

5    product.

Soft gel or soft gelatin capsules may be prepared, for example, without limitation, by dispersing the formulation in an appropriate vehicle (vegetable oils are commonly used) to form a high

10   viscosity mixture. This mixture is then encapsulated with a gelatin based film using technology and machinery known to those in the soft gel industry. The industrial units so formed are then dried to constant weight.

15   Chewable tablets, for example, without limitation, may be prepared by mixing the formulations with excipients designed to form a relatively soft, flavored, tablet dosage form that is intended to be chewed rather than swallowed. Conventional tablet

20   machinery and procedures, that is both direct compression and granulation, i.e., or slugging, before compression, can be utilized. Those individuals

43

Attorney Docket No. 23818

involved in pharmaceutical solid dosage form production are well versed in the processes and the machinery used as the chewable dosage form is a very common dosage form in the pharmaceutical industry.

5      Film coated tablets, for example, without limitation, may be prepared by coating tablets using techniques such as rotating pan coating methods or air suspension methods to deposit a contiguous film layer on a tablet. This procedure is often done to improve

10    the aesthetic appearance of tablets, but may also be done to improve the swallowing of tablets, or to mask an obnoxious odor or taste, or to improve to usual properties of an unsightly uncoated tablet.

Compressed tablets, for example, without

15    limitation, may be prepared by mixing the formulation with excipients intended to add binding qualities to disintegration qualities. The mixture is either directly compressed or granulated then compressed using methods and machinery quite well known to those

20    in the industry. The resultant compressed tablet dosage units are then packaged according to market need, i.e., unit dose, rolls, bulk bottles, blister

Attorney Docket No. 23818

packs, etc.

The present inventive subject matter contemplates nutritional compositions formulated for administration by any route, including without limitation, oral,

5    buccal, sublingual, rectal, parenteral, topical, inhalational, injectable and transdermal. The physicochemical properties of nutritional compositions, their formulations, and the routes of administration are important in absorption.

10   Absorption refers to the process of nutritional composition movement from the site of administration toward the systemic circulation. Most orally administered nutritional compositions are in the form of tablets or capsules primarily for convenience,

15   economy, stability, and patient acceptance. They must disintegrate and dissolve before absorption can occur. Using the present inventive subject matter with any of the above routes of administration or dosage forms is performed using well known procedures and techniques

20   available to the ordinary skilled artisan.

The present inventive subject matter contemplates the use of biologically-acceptable carriers which may

45

Attorney Docket No. 23818

be prepared from a wide range of materials. Without being limited thereto, such materials include diluents, binders and adhesives, lubricants, plasticizers, disintegrants, colorants, bulking

5 substances, flavorings, sweeteners and miscellaneous materials such as buffers and adsorbents in order to prepare a particular medicated composition.

Binders may be selected from a wide range of materials such as hydroxypropylmethylcellulose,

10 ethylcellulose, or other suitable cellulose derivatives, povidone, acrylic and methacrylic acid co-polymers, pharmaceutical glaze, gums, milk derivatives, such as whey, starches, and derivatives, as well as other conventional binders well known to

15 persons skilled in the art. Exemplary non-limiting solvents are water, ethanol, isopropyl alcohol, methylene chloride or mixtures and combinations thereof. Exemplary non-limiting bulking substances include sugar, lactose, gelatin, starch, and silicon

20 dioxide.

The plasticizers used in the dissolution modifying system are preferably previously dissolved

46

Attorney Docket No. 23818

in an organic solvent and added in solution form.
Preferred plasticizers may be selected from the group
consisting of diethyl phthalate, diethyl sebacate,
triethyl citrate, cronotic acid, propylene glycol,

5   butyl phthalate, dibutyl sebacate, caster oil and
mixtures thereof, without limitation. As is evident,
the plasticizers may be hydrophobic as well as
hydrophilic in nature. Water-insoluble hydrophobic
substances, such as diethyl phthalate, diethyl

10   sebacate and caster oil are used to delay the release
of water-soluble vitamins, such as vitamin $B_6$ and
vitamin C. In contrast, hydrophilic plasticizers are
used when water-insoluble vitamins are employed which
aid in dissolving the encapsulated film, making

15   channels in the surface, which aid in nutritional
composition release.

The composition of the present inventive subject
matter may be administered in a partial, i.e.,
fractional dose, one or more times during a 24 hour

20   period, a single dose during a 24 hour period of time,
a double dose during a 24 hour period of time, or more
than a double dose during a 24 hour period of time.

47

Attorney Docket No. 23818

Fractional, double or other multiple doses may be taken simultaneously or at different times during the 24 hour period.

5      The compositions of the present invention are intended for use by humans and other mammals. The dosages are adjusted according to body weight and thus may be set forth herein on a per body weight basis. For example, if the formula specifies a range of about 10-1000 mg for a 55 kg individual, that range would be

10     adjusted for a 35 kg individual to about 6.3-63 mg (e.g., the lower range limit= (35 kg/55 kg) *10mg =6.3 mg). Decimal amounts may be rounded to the nearest whole number. In the above manner the present compositions may thus be adapted to be suitable for

15     any individual, including any mammal, regardless of its size.

The present composition is adapted to meet the specific physiological needs of a breast-feeding mother. For example, the formulations may focus on

20     special nutritional needs of the mother that are not generally addressed in prenatal supplements, such as essential fatty acids, iron and calcium, without

48

Attorney Docket No. 23818

limitation. The iron and calcium, when present, are provided in amounts to optimize nutritional benefit to the mother, while minimizing unpleasant side effects which may accompany overly large doses. The

5 formulation can be further tailored based upon the specific needs, genetic predispositions or identified deficiencies of women. Moreover, the present composition can be used as one component of a prescribed therapy.

10 Biologically-acceptable calcium compounds include, but are not limited to, any of the well known calcium supplements, such as calcium carbonate, calcium sulfate, calcium oxide, calcium hydroxide, calcium apatite, calcium citrate-malate, bone meal,

15 oyster shell, calcium gluconate, calcium lactate, calcium phosphate, calcium levulinate, and the like.

Biologically-acceptable magnesium compounds which may be incorporated into the present inventive subject matter include, but are not limited to, magnesium

20 stearate, magnesium carbonate, magnesium oxide, magnesium hydroxide and magnesium sulfate.

The compositions of the inventive subject matter

49

Attorney Docket No. 23818

may be provided in a blister pack or other such pharmaceutical package, without limitation. Further, the compositions of the present inventive subject matter may further include or be accompanied by

5    indicia allowing women to identify the compositions as products for persons planning to or currently breast-feeding their infants. The indicia may further additionally include an indication of the above specified time periods for using said compositions.

10    The composition of the present inventive subject matter is preferably administered during a period commencing no later than at least the tenth week of pregnancy. More preferably, the composition is administered during a period of time commencing on

15    about the tenth week of pregnancy and continuing through to completion of breast-feeding or continuing on as a nutritional supplement for the mother.

The present inventive subject matter includes a method for enriching the breast milk of women to

20    optimize neurological development of infant's breast-fed by said women. The methods include administration of the present composition to women during a critical

50

Attorney Docket No. 2:

period. The critical period of administration is the period commencing at least at about the tenth week of pregnancy and terminating at the conclusion of breast-feeding or continuing on as a nutritional supplement

5    for the mother.

The present composition and method may increase lactogenesis or the quantity of breast milk produced during lactation. Further, the compositions and methods may prevent or at least minimize fatty acid

10   deficiency in lactating women. The quality of breast milk may also be improved by the compositions and methods. Moreover, the duration of the period of lactation may be extended by the present compositions and methods. Thus, women who would have difficulty

15   breast-feeding for more than four weeks after pregnancy when not taking the present composition, could breast-feed for more than four weeks after pregnancy when taking the present composition.

The foregoing is considered as illustrative only

20   of the principles of the inventive subject matter. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not

Attorney Docket No. 23818

desired to limit the inventive subject matter to the exact construction and operation shown and described, and accordingly all suitable modifications and equivalents may be resorted to, falling within the

5    scope of the inventive subject matter.

The following examples are illustrative of preferred embodiments of the inventive subject matter and are not to be construed as limiting the inventive subject matter thereto. All percentages are based on

10    the percent by weight of the final delivery system or formulation prepared unless otherwise indicated and all totals equal 100% by weight.

Attorney Docket No. 23818

**EXAMPLES**

Example 1

   The following formulations are used to prepare compositions for administration to women prior to and during lactation:

| Component (in mg unless otherwise indicated) | Formula I | Formula II | Formula III |
|---|---|---|---|
| Linoleic Acid | 10 | 100 | 20 |
| Linolenic Acid | 10 | 100 | 20 |
| Omega-3 Fatty Acid | 10 | 10 | 50 |
| Omega-2 Fatty Acid | - | - | 50 |
| Vitamin C | 25 | 400 | 700 |
| Vitamin E (I.U.) | 10 | 400 | 200 |
| Vitamin A (I.U.) | 2700 | 2700 | 2700 |
| Vitamin $D_3$ (I.U.) | 400 | 400 | 400 |
| Vitamin $B_6$ | 20 | 125 | 20 |
| Iron | 90 | 90 | 90 |
| Calcium | 2500 | 400 | 1000 |
| Microcrystalline Cellulose | 200 | 200 | 200 |
| Starch | 200 | 200 | 200 |
| Silicon Dioxide | 3 | 5 | 5 |
| Magnesium Stearate | 10 | 12 | 15 |

53

Attorney Docket No. 23818

Example 2

The following compositions are used to prepare controlled release products for administration to women prior to and during lactation:

| Component (in mg unless otherwise indicated) | Controlled Release Formula A | Controlled Release Formula B |
|---|---|---|
| Linoleic Acid | 20 | 20 |
| Linolenic Acid | 20 | 20 |
| Omega-3 Fatty Acid | 50 | 50 |
| Omega-2 Fatty Acid | 50 | 50 |
| Vitamin C | 250 | 400 |
| Vitamin E (I.U.) | 200 | 400 |
| Vitamin A (I.U.) | 2700 | - |
| Vitamin $D_3$ (I.U.) | 400 | - |
| Vitamin $B_6$ | 125* | 125* |
| Iron | 90* | - |
| Calcium | 500 | 100 |
| Microcrystalline Cellulose | 200 | 200 |
| Starch | 200 | 200 |
| Silicon Dioxide | 5 | 1 |
| Magnesium Stearate | 15 | 15 |
| Ethylcellulose | 60 | 60 |
| Folic Acid | - | 1 |
| Magnesium | - | 25 |

* formulated for controlled release

54

Attorney Docket No. 23818

Example 3

The following compositions are used to prepare products for administration to women prior to and during lactation:

| Component | IV | V | VI | VII | VIII | IX |
|---|---|---|---|---|---|---|
| Linoleic Acid | 10 | 100 | 20 | 10 | 100 | 20 |
| Linolenic Acid | 10 | 100 | 20 | 10 | 100 | 20 |
| Omega-3 Fatty Acid | 10 | 10 | 50 | 10 | 10 | 50 |
| Omega-2 Fatty Acid | - | - | 50 | - | - | 50 |
| Vitamin B6 | 20 | 125 | 20 | 20 | 125 | 20 |
| Folic Acid | 0.1 | 3 | 1 | 0.1 | 3 | 1 |
| Calcium | 100 | 400 | 1000 | 100 | 1000 | 1000 |
| Magnesium | - | - | - | 25 | 400 | 25 |
| Vitamin C | - | - | - | 25 | 400 | 400 |
| Vitamin E (I.U.) | - | - | - | 10 | 400 | 400 |
| Microcrystalline Cellulose | 100 | 100 | 200 | 100 | 100 | 100 |
| Starch | 100 | 100 | 200 | 100 | 100 | 100 |
| Silicon Dioxide | 0.3 | 0.7 | 1 | 0.3 | 1 | 1 |
| Magnesium Stearate | 3 | 7 | 15 | 3 | 15 | 15 |
| Lactose | 100 | - | - | 100 | - | - |
| Ethylcellulose | - | - | - | - | - | - |

The above components are in mg unless otherwise

55

Attorney Docket No. 23818

indicated.    Tablets    incorporating    the    above
formulations are prepared using conventional methods
and materials known in the pharmaceutical art.    The
resulting nutritional compositions were recovered and

5    stored for future use.


Example 4

A soft gelatin supplement may be prepared, by
first combining mineral oil and soybean oil in a first

10    vessel and blending it to form a uniform oil mixture,
heating the oil mixture to 45 degrees Celsius, and
then adding propylene glycol.    In a second vessel
preheated to 70 degrees Celsius, yellow beeswax and
soybean oil are added and blended until a uniform wax

15    mixture is formed.    The wax mixture is cooled to 35
degrees Celsius and then added to the oil mixture.    To
this combined oil and wax mixture, folic acid, vitamin
$B_6$, iron, magnesium, and calcium are then added and
blended together to form a uniform biologically active

20    mixture.    The mixture is then cooled to 30 degrees
Celsius to form a viscous biologically active core
composition, after which time the composition is ready

56

Attorney Docket No. 23818

for encapsulation in a soft gelatin shell.

A soft gelatin shell is prepared by heating purified water in a suitable vessel and then adding gelatin. This water gelatin mixture is mixed until

5 the gelatin is fully dissolved, and then glycerin, preservatives, one or more flavors, and one or more colorants are added. This gelatin mixture is blended well and cooled. The shells are then filled with the core composition and formed in accordance with soft

10 gelatin techniques commonly used and well known to persons of skill in the art.

The inventive subject matter being thus described, it will be apparent that the same may be

15 varied in many ways. Such variations are not to be regarded as a departure from the spirit and scope of the inventive subject matter, and all such modifications are intended to be within the scope of the appended claims.

57

Attorney Docket No. 23818

We claim:

1.  A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-
5    fed by the woman, which comprises:

about 10 mg to 1000 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination
10   thereof;

about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a
15   combination thereof; and

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.01 to 10.


20   2.  The composition of claim 1, wherein said composition additionally contains a vitamin compound or derivative thereof.

58

Attorney Docket No. 23818

3.    The composition of claim 2, wherein the vitamin compound is selected from the group consisting of a vitamin A compound, a B complex vitamin compound, a vitamin C compound, a vitamin D compound, a vitamin
5    E compound and combinations thereof.

4.    The composition of claim 3, wherein said vitamin C compound is present in said composition in an amount ranging from about 25 mg to 500 mg.

10

5.    The composition of claim 3, wherein said vitamin E compound is present in said composition in an amount ranging from about 10 mg to 400 mg.

15

6.    The composition of claim 1, wherein said composition additionally contains a biologically-acceptable mineral compound or derivative thereof.

7.    The composition of claim 1, wherein said
20    biologically-acceptable mineral compound is selected from the group consisting of calcium, magnesium, iron and combinations thereof.

59

Attorney Docket No. 23818

8.    The composition of claim 7, wherein the calcium is present in said composition in an amount of about 300 mg to 2500 mg.

9.    The composition of claim 1, wherein said composition additionally contains a biologically active substance.

10.   The composition of claim 9, wherein the biologically active substance is a lactogen compound or derivative thereof.

11.   The composition of claim 1, wherein said composition is administered during a period commencing no later than the tenth week of pregnancy.

12.   The composition of claim 1, wherein said composition is administered during a period of time commencing at least at about the tenth week of pregnancy.

13.   The composition of claim 1, wherein said

60

Attorney Docket No. 23818

composition is adapted to meet specific physiological
needs of a breast-feeding mother.

     14.   The composition of claim 1, wherein said
5    composition is in an oral dosage form.

     15.   The composition of claim 14, wherein said
oral dosage form is selected from the group consisting
of immediate release, extended release, pulsed
10   release, delayed release, controlled release and
combinations thereof.

     16.   The composition of claim 14, wherein said
oral dosage form is selected from the group consisting
15   of a chewable tablet, quick dissolve tablet, an
effervescent tablet, a hard gelatin capsule, a soft
gelatin capsule, reconstitutable particles,
microparticles, a suspension, an elixir, a caplet, a
fortified food, pudding, yogurts, gelatin, cereal and
20   combinations thereof.

     17.   The composition of claim 1, wherein said

61

Attorney Docket No. 23818

composition is administered once during a twenty four hour period of time.

18.    The composition of claim 1, wherein said composition is administered at least twice during a twenty four hour period of time.

19.    The composition of claim 1, wherein said composition increases lactogenesis.

10

20.    The composition of claim 1, wherein said composition increases the quantity of breast milk produced during lactation.

15

21.    The composition of claim 1, wherein said composition prevents deficiency of essential fatty acids in the woman.

22.    The composition of claim 1, wherein said composition is provided with indicia indicating a time period of use.

20

Attorney Docket No. 23818

23.   The composition of claim 22, wherein said time period of use is prior to, during and after lactation.

24.   The composition of claim 22, wherein said time period commences at about the tenth week of pregnancy.

25.   The composition of claim 1, wherein said composition extends the duration of the period of lactation.

26.   The composition of claim 1, wherein said composition improves quality of said breast milk.

27.   The composition of claim 1, wherein said composition achieves enrichment of said breast milk through a natural biological pathway.

28.   A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-

83

Attorney Docket No. 23818

fed by the woman, which comprises:

a)   about 10 mg to 100 mg of a first fatty acid compound selected from the group consisting of a fatty acid compound, a derivative thereof and a combination thereof;

b)   about 10 mg to 1000 mg of a second fatty acid compound for each compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof;

c)   about 20 mg to 125 mg of a vitamin $B_6$ compound or derivative thereof;

d)   about 0.1 mg to 3 mg of a folic acid compound or derivative thereof;

e)   about 100 mg to 2,000 mg of a calcium compound or derivative thereof; and

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

29.   A composition for administration to a woman for enriching the breast milk of said woman to

64

optimize neurological development of an infant breast-
fed by the woman, which comprises:

a)    about 10 mg to 100 mg of a first fatty acid
compound for each compound selected from the group
consisting of a linoleic acid compound, a linolenic
acid compound, a derivative thereof and a combination
thereof;

b)    about 10 mg to 100 mg of a second fatty acid
compound selected from the group consisting of a
10    docosahexaenoic acid compound, an omega-3 fatty acid,
an omega-2 fatty acid, a derivative thereof and a
combination thereof;

c)    about 20 mg to 125 mg of a vitamin $B_6$ compound
or derivative thereof;

15    d)    about 0.1 mg to 3 mg of a folic acid compound
or derivative thereof;

e)    about 100 mg to 2,000 mg of a calcium
compound or derivative thereof;

f)    about 25 mg to 400 mg of a magnesium compound
20    or derivative thereof;

g)    about 25 mg to 500 mg of a vitamin C compound
or derivative thereof;

65

Attorney Docket No. 23818

h) about 10 mg to 400 mg of a vitamin E compound or derivative thereof; and

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about

5    1:0.1 to 10.

30. A composition for administration to a female mammal for enriching the milk of said female mammal to optimize neurological development of a neonate being

10    nursed by the female mammal, which comprises:

about 10 mg to 1000 mg per 55 kg of said mammal's body weight of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, δ linolenic acid compound, a

15    derivative thereof and a combination thereof;

about 10 mg to 1000 mg per 55 kg of said mammal's body weight of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty

20    acid, a derivative thereof and a combination thereof; and

wherein the weight ratio of said first fatty acid

66

Attorney Docket No. 23818

compound to said second fatty acid compound is about 1:0.01 to 10.

31. A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-fed by the woman, which comprises:

about 10 mg to 1000 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a derivative thereof and a combination thereof;

about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof; and

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.01 to 10.

32. A method for enriching the breast milk of a woman to optimize neurological development of an

67

Attorney Docket No. 23818

infant breast-fed by said woman, which comprises:

administering a first fatty acid compound to the woman during a period commencing at least at about the tenth week of pregnancy and terminating at the conclusion of breast-feeding, said first fatty acid compound being selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof;

administering a second fatty acid compound to said woman during the period commencing at least at about the tenth week of pregnancy and terminating at the conclusion of breast-feeding, said second fatty acid compound being selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof, and said second fatty acid compound being provided to the woman together with said first fatty acid compound;

and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

68

Attorney Docket No. 23818

33. The method of claim 32, wherein said method additionally comprises providing a vitamin compound or derivative thereof to said woman together with said first and second fatty acid compounds.

5

34. The method of claim 33, wherein the vitamin compound is selected from the group consisting of a vitamin A compound, a B complex vitamin compound, a vitamin C compound, a vitamin D compound, a vitamin E
10  compound and combinations thereof.

35. The method of claim 34, wherein said vitamin C compound is present in said composition in an amount ranging from about 25 mg to 400 mg.

15

36. The method of claim 34, wherein said vitamin E compound is present in said composition in an amount ranging from about 10 mg to 400 mg.

20  37. The method of claim 32, wherein said method further comprises providing a biologically-acceptable mineral compound or derivative thereof to said woman

69

Attorney Docket No. 23818

together with said first and second fatty acid compounds.

38.    The method of claim 37, wherein said biologically-acceptable mineral compound is selected from the group consisting of calcium, magnesium, iron and combinations thereof.

39.    The method of claim 38, wherein the calcium is present in said composition in an amount of about 300 mg to 2500 mg.

40.    The method of claim 32, wherein said method further comprises providing to said woman a biologically active substance together with said first and second fatty acid compounds.

41.    The method of claim 40, wherein the biologically active substance is a lactogen compound or derivative thereof.

42.    The method of claim 32, wherein said method

70

Attorney Docket No. 23818

is adapted to meet specific physiological needs of a breast-feeding mother.

43.  The method of claim 32, wherein said first and second fatty acids are provided in an oral dosage form.

44.  The method of claim 43, wherein said oral dosage form is selected from the group consisting of immediate release, extended release, pulsed release, delayed release, controlled release and combinations thereof.

45.  The method of claim 43, wherein said oral dosage form is selected from the group consisting of a chewable tablet, quick dissolve tablet, an effervescent tablet, a hard gelatin capsule, a soft gelatin capsule, reconstitutable particles, microparticles, a suspension, an elixir, a caplet, a fortified food, pudding, yogurt, gelatin, cereal and combinations thereof.

71

Attorney Docket No. 23818

46.   The method of claim 32, wherein said first and second fatty acids are administered once during a twenty four hour period of time.

5        47.   The method of claim 32, wherein said first and second fatty acids are administered at least twice during a twenty four hour period of time.

48.   The method of claim 32, wherein said method
10   increases lactogenesis.

49.   The method of claim 32, wherein said method increases the quantity of breast milk produced during lactation.

15

50.   The method of claim 32, wherein said methods prevents deficiency of essential fatty acids in the woman.

20        51.   The method of claim 32, wherein said method further comprises providing indicia indicating a time period for administration of said first and second

72

Attorney Docket No. 23818

fatty acid compounds.

52. The method of claim 32, wherein said method extends the duration of the period of lactation.

5

53. A method for enriching the breast milk of a woman to optimize neurological development of an infant breast-fed by said woman, which comprises:

administering a first fatty acid compound to the

10    woman during a period commencing at least at about the tenth week of pregnancy, said first fatty acid compound being selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof and

15    provided in an amount of about 10 mg to 100 mg of a first fatty acid compound;

administering a second fatty acid compound to said woman during the period commencing at least at about the tenth week of pregnancy, said second fatty

20    acid compound being selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and

73

Attorney Docket No. 23818

a combination thereof and provided in an amount of about 10 mg to 100 mg, and said second fatty acid compound being administered together with said first fatty acid compound; and

5          wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

54. A method for enriching the breast milk of a
10   woman to optimize neurological development of an infant breast-fed by said woman, which comprises:

administering a first fatty acid compound to the woman during a period commencing at least at about the tenth week of pregnancy, said first fatty acid
15   compound being selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof and provided in an amount of about 10 mg to 100 mg;

administering a second fatty acid compound to
20   said woman during the period commencing at least at about the tenth week of pregnancy, said second fatty acid compound being selected from the group consisting

74

Attorney Docket No. 23818

of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof and provided in about 10 mg to 100 mg, said second fatty acid compound being

5    administered together with said first fatty acid compound;

administering a nutritional compound to said woman during the period commencing at least at about the tenth week of pregnancy, said nutritional compound

10    being selected from the group consisting of a vitamin compound, a biologically-acceptable mineral compound, a derivative thereof and a combination thereof, and said nutritional compound being administered together with said first and said second fatty acid compounds;

15    wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10.

55. A method for enriching the milk of a female

20    mammal to optimize neurological development of a neonate being nursed by the female mammal, which comprises:

75

Attorney Docket No. 23818

administering a first fatty acid compound to the female mammal during a period commencing at least at about the tenth week of gestation, said first fatty acid compound being selected from the group consisting

5    of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof;

administering a second fatty acid compound to said female mammal during the period commencing at

10   least at about the tenth week of gestation, said second fatty acid compound being selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof, and said

15   second fatty acid compound being provided to the female mammal together with said first fatty acid compound;

and wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is

20   about 1:0.1 to 10.

76

09/885 158

Attorney Docket No. 23818

<u>ABSTRACT OF THE DISCLOSURE</u>

The present disclosure relates to novel nutritional compositions containing linoleic acid and/or linolenic acid which optimize child neurological development and provide improved nutritional support for women prior to and during lactation. The nutritional compositions are intended for use by women to optimize infant neurological development and provide improved nutritional support for women prior to, during and after lactation.

77

Received: 5/28/99  3:51 PM;           314 645 6732 -> NATH   Associates;  Page 6

05/24/99  FRI 14:43 F   ! 643 6732             EV PHARMACEUT   :
06/25/99     14:15   NATH&ASSOCIATES - 1316645G732   :                           NO.621   @008

┌─────────────────────────────────────────────────────────────────────────────┐
│     DECLARATION FOR PATENT APPLICATION              Attorney Docket: 23818     │
│                                                     Page 1 of 2                │
└─────────────────────────────────────────────────────────────────────────────┘

As a below-named inventor(s), I/we hereby declare that:

   My/Our residence(s), post office address(es) and citizenship(s) is/are as stated below next to my/our name(s).

   I/We believe I/we am/are the original inventor, first and sole (if only one name is listed below) or the original, first and joint inventors (if plural names are listed below) of the subject matter which is claimed, and for which a patent is sought on the invention entitled:
                                       NUTRITIONAL SUPPLEMENTS

the specification of which: (check one)

      (X)  is attached hereto.

      ( )  was filed on_____, as Serial No. _____

           and was amended on _____ 19____ (if applicable).

   We hereby state that we have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

   We acknowledge the duty to disclose information which is material to the patentability of this application as defined by 37 CFR § 1.56.

   We hereby claim foreign priority benefits under 35 U.S.C. § 119 of any foreign application(s) for patent or inventor's certificate listed below, and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Applications:
                                                                      Priority Claimed
                                                                      ( )     ( )
   _____       _____       ___/___/___          Yes     No
   (Application No.)         (Country)          (Day/Month/Year Filed)

                                                                      ( )     ( )
   _____       _____       ___/___/___          Yes     No
   (Application No.)         (Country)          (Day/Month/Year Filed)

                                                                      ( )     ( )
   _____       _____       ___/___/___          Yes     No
   (Application No.)         (Country)          (Day/Month/Year Filed)

   We hereby appoint Gary M. Nath, Reg. No. 24,960; Harold L. Novick, Reg. No. 26,011; Suet M. Chong, Reg. No. 38,104; Todd L. Juneau, Reg. No. 40,669; Patricia M. Drost, Reg. No. 29,790; Lee C. Heiman, Reg. No. 41,827; Jerald L. Meyer, Reg. No. 41,194; Joshua B. Goldberg, Reg. No. P-44,126; David Milligan, Reg. No. 42,593; David R. Murphy, Reg. No. 22,761; Paul A. Sacher, Reg. No. 43,418 and Robert G. Lev, Reg. No. 30,200, as my attorneys to prosecute this application and transact all business in the U.S. Patent and Trademark Office connected therewith.

Direct Telephone Calls to:                        Send Correspondence to:
                                                      NATH & ASSOCIATES
                                                        Sixth Floor
           Gary M. Nath                            1030 Fifteenth Street, N.W.
          (202) 775-0303                          Washington, D.C. 20005  U.S.A.

   We hereby claim the benefit under 35 U.S.C. § 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by 35 U.S.C. § 112, first paragraph, I/we acknowledge the duty to disclose material information as defined in 37 CFR § 1.56 which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

   _____     _____    _____
   (U.S. Application Serial No.)  (U.S. Filing Date)   (Status--patented, pending, abandoned)

   _____     _____    _____
   (U.S. Application Serial No.)  (U.S. Filing Date)   (Status--patented, pending, abandoned)

05/28/99  FRI 14:33     14 645 6732     RV PHARMACEL     Associates: Page 7

NO. 521  007

| DECLARATION FOR PATENT APPLICATION | Attorney Docket: 2383H |
|---|---|
|  | Page 2 of 2 |

We hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements are made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001 and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Full name of sole or first inventor: Marc S. HERMELIN

Inventor's Signature  _Marc S. Hermelin_     Date _May 25, 1999_

Residence: 731 Bismark, Glendale, MO 63122

Country of Citizenship:  United States

Post Office Address: Same as residence

Full name of second inventor: R. Saul LEVINSON

Inventor's Signature  _R. Saul Levinson_     Date _5/25/99_

Residence: 17020 Kimwood Court, Chesterfield, MO 63005

Country of Citizenship:  United States

Post Office Address: Same as residence

Full name of third inventor: George PARADISSIS

Inventor's Signature  _George Paradissis_     Date _5/26/99_

Residence: 433 Meadow Green Place, St. Louis, MO 63111

Country of Citizenship:  United States

Post Office Address: Same as residence

Attorney Docket No. 2187.64

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Marc S. HERMELIN et al.

Serial No.:        Not yet assigned

Filed:        June 21, 2001

Title:        NUTRITIONAL SUPPLEMENTS

PRELIMINARY AMENDMENT

Commissioner for Patents
**BOX PA**
Washington, D.C. 20231

Sir:

Applicants file this Preliminary Amendment concurrently with the above-identified continuation patent application under 37 C.F.R. Section 1.53(b). Please enter this amendment before undertaking examination of this application.

Please amend the application as follows:

IN THE SPECIFICATION

Before line 1, on page 1, please insert:

--This application is a continuation application of U.S. patent application Serial No. 09/323,159, filed June 1, 1999, the entire contents of which are hereby incorporated by reference in their entirety.--

**PATENT**
Attorney Docket No. 23818Y

**IN THE CLAIMS**

Please cancel claims 32-55 without prejudice or disclaimer to the subject matter therein.

**REMARKS**

Upon entry of the above amendments, claims 1-31 are pending in the application. The amendments do not introduce new matter within the meaning of 35 U.S.C. §132. Accordingly, entry of the amendments is respectfully requested.

**CONCLUSION**

In view of the foregoing amendments and remarks, favorable action with early allowance of all pending claims is earnestly solicited.

The Examiner is welcome to telephone the undersigned attorney with any questions or comments.

Respectfully submitted,

**NATH & ASSOCIATES**

Gary M. Nath
Reg. No. 26,965
Joshua B. Goldberg
Reg. No. 44,126

Date: June 21, 2001

**NATH & ASSOCIATES PLLC**
1030 15th Street, N.W.
Sixth Floor
Washington, D.C. 20005
Tel: (202) 775-8383
Fax: (202) 775-8396
GMN:TEH:ayd



Attorney Docket: 2381-1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Marc S. HERMELIN et al.

Serial No.: 09/885,158

Filed:     June 21, 2001

For:     **NUTRITIONAL SUPPLEMENTS**

### TRANSMITTAL LETTER

Commissioner for Patents
Washington, D.C.  20231

Sir:

    Submitted herewith for filing in the U.S. Patent and Trademark
Office is the following:

    1)    Transmittal Letter;
    2)    Information Disclosure Statement Transmittal Letter;
    3)    Information Disclosure Statement;
    4)    Form PTO-1449; and
    5)    Copy of three (3) additional references.


    The Commissioner, in connection with this matter, is
specifically authorized to charge any required fee deficiency under
37 CFR §§ 1.16 or 1.17 to Deposit Account No. 14-0112.

                              Respectfully submitted,

                              **NATH & ASSOCIATES** PLLC

Date: _September 28, 2001_

**NATH & ASSOCIATES** PLLC          Gary M Nath
1030 Fifteenth Street, N.W.         Reg. No. 26,965
Sixth Floor                         Joshua B. Goldberg
Washington, D.C.  20005             Reg. No. 44,126
Tel:  (202) 775-8383
Fax:  (202) 775-8396
GMN/TEH:ayd

**BOX PATENT**
Attorney Docket: 23818-Y

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Marc S. HERMELIN et al.

Serial No.: 09/885,158

Filed:          June 21, 2001

For:      **NUTRITIONAL SUPPLEMENTS**

### INFORMATION DISCLOSURE STATEMENT TRANSMITTAL LETTER

Commissioner of Patents
Washington, D.C.   20231

SIR:

An Information Disclosure Statement is submitted herewith pursuant to 37 C.F.R. §1.97-1.98.  Please note the following particulars:

**[NOTE:** Only one of items a, b, c, and d must be checked.]
[ **XX**]  a. The enclosed statement is being filed within three months of the filing date of a national application, or within three months of the date of entry into the national stage as set forth in 37 C.F.R. §1.491 in an international application, or before the mailing date of a first Office Action on the merits, whichever event occurs last.

[    ]  b. The enclosed statement is being filed after a first action on the merits but before the mailing date of a final action under 37 C.F.R. §1.113, or a notice of allowance under 37 C.F.R. §1.311.

The enclosed statement is accompanied by [check one]:
[ ]  i. a certification in part (e) below as specified in 37 C.F.R. §1.97(e), or
[ ]  ii. a check in the amount of $_____ required by 37 C.F.R. §1.17(p).

[    ]  c. The enclosed statement is being filed after the mailing date of a final action under 37 C.F.R. §1.113, or a notice of allowance under 37 C.F.R. §1.311, but before payment of the issue fee.

PETITION:  It is requested that the information being submitted be considered.  [NOTE:  If box (c) is checked, the following two boxes must be checked.]

[    ] PETITION FEE:  A check for $130.00 required by 37 CFR §1.17(i)(1), is enclosed.
[    ] CERTIFICATION is attended to in box (e) below.

[   ] d.  The enc___d statement is being fil___ _ursuant to
         37 C.F.R. ⌐1.97(i), for placement in ⌐ne file.

[   ] e.  Certification [Check one]  [Certification is required
         only if box (b)(i) or box (c) is checked.]

    [   ]     I hereby certify that each item of information
             contained in the enclosed Information Disclosure
             Statement was cited in a communication from a
             foreign patent office in a counterpart foreign
             application not more than three months prior to the
             filing of this statement,

                        or

    [   ]     I hereby certify that no item of information in the
             enclosed Information Disclosure Statement herewith
             was cited in a communication from a foreign patent
             office in a counterpart foreign application, or, to
             my knowledge after making reasonable inquiry, was
             known to any individual designated in 37 C.F.R.
             §1.56(c) more than three months prior to the filing
             of this Information Disclosure Statement.

                        or

    [   ]     Appropriate certification is attached.


[ **XX** ] f.  If no check is enclosed and a fee is due in connection
         with this communication or if the check enclosed is
         insufficient, the Commissioner is authorized to charge
         any fee or additional fee due in connection with this
         communication to Deposit Account No. 14-0112.


                              Respectfully submitted,

                              **NATH & ASSOCIATES** ₚₗₗᵩ


Date: _September 28, 2001_           By: _____
                                         Gary M. Nath
                                         Reg. No. 26,965
                                         Joshua B. Goldberg
                                         Reg. No. 44,126


**NATH & ASSOCIATES** PLLC
1030 Fifteenth Street, N.W.,
Sixth Floor
Washington, D.C. 20005
Tel. (202) 775-8383
Fax. (202) 775-8396
GMN:TEH:eyd

Attorney Docket: 23518-Y

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of:

Marc S. HERMELIN et al.

Serial No.: 09/885,158

Filed:        June 21, 2001

For:        **NUTRITIONAL SUPPLEMENTS**
            (Continuation application of U.S. Patent Application
            Serial No. 09/323,159 filed on June 1, 1999)

**INFORMATION DISCLOSURE STATEMENT**

Commissioner for Patents
Washington, D.C. 20231

Sir:

    Pursuant to Applicants' duty of disclosure under 37 C.F.R.
§1.56 and 1.97-1.99, the documents listed on the attached Form PTO-
1449 are being brought to the attention of the Examiner in charge
of the captioned application. No fee is required for this
submission because it is submitted before the mailing date of the
first Office Action on the merits.

    This application is a continuation application under 37 CFR
1.53 of prior application Serial No. 09/323,159 filed June 1, 1999,
now U.S. Patent No. 6,258,846. The Examiner's attention is
respectfully directed to the art of record in the parent case.
Pursuant to 37 CFR 1.98(d) and MPEP 609(A)(2), copies of documents
being cited are not required to be submitted to the Patent and
Trademark Office if (1) previously cited and submitted in a parent
application and (2) the parent is clearly identified and relied
upon for an earlier filing date.

**PATENT**
Attorney Docket No. 23818-Y

If the Examiner would like an additional copy of any of the art made of record in connection with the parent to this application, Applicants would be happy to provide it in response to a telephonic request directed to the undersigned attorney.

Copies of the additional documents cited by the Examiner in the parent case are attached herewith with a completed Form PTO-1449.

The Examiner is respectfully requested to cite the documents listed on the attached Form PTO-1449 in the next Office Action. In so doing, the Examiner is respectfully requested to initial in the space adjacent to the listing of the documents on the Form PTO-1449, and return a copy of the initialed Form PTO-1449 with the next communication to Applicants, to confirm that the documents have been considered by the Examiner and made of record in this application.

If the Examiner has any questions or wishes to discuss this application, kindly telephone the undersigned attorney.

Respectfully submitted,

**NATH & ASSOCIATES PLLC**

Date: September 28, 2001

Gary M. Nath
Reg. No. 26,965
Joshua B. Goldberg
Reg. No. 44,126

NATH & ASSOCIATES PLLC
1030 Fifteenth Street, N.W.
Sixth Floor
Washington, D.C. 20005
Tel: (202) 775-8383
Fax: (202) 775-8396

2



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/885,158 | 06/21/2001 | Marc S. Hermelin | 23818Y | 5214 |

7590   12/17/2001

Gary M. Nath
NATH & ASSOCIATES PLLC
1030 15th Street, N.W. - 6th Floor
Washington, DC  20005

| EXAMINER |
|---|
| TRAVERS, RUSSELL S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 12/17/2001

Please find below and/or attached an Office communication concerning this application or proceeding.

| *Office Action Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 09/885,158 | Hermelin et al |
| | Examiner | Art Unit |
| | **Russell Travers** | **1617** |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE ____3____ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____

2a) ☐ This action is **FINAL.**    2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-31* _____ is/are pending in the application.

    4a) Of the above, claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) *1-31* _____ is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claims _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved  b) ☐ disapproved.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

13) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

  a) ☐ All  b) ☐ Some*  c) ☐ None of:

    1. ☐ Certified copies of the priority documents have been received.

    2. ☐ Certified copies of the priority documents have been received in Application No. _____

    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

  *See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

15) ☒ Notice of References Cited (PTO-892)

16) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)

17) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s). __2__

18) ☐ Interview Summary (PTO-413) Paper No(s). _____

19) ☐ Notice of Informal Patent Application (PTO-152)

20) ☐ Other: _____

Application/Control Number: 09/885,158

Page 2

Art Unit:

The information disclosure statement filed 9/28/01 has been received and entered into the file.

Claims 1-31 are presented for examination.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 1-31 are rejected under 35 U.S.C. § 103 as being unpatentable over Clark et al, Lucas et al, FDA and Alvarez et al.

Clark et al, Lucas et al, FDA and Alvarez et al teach essential fatty acids, vitamins, and minerals respectively as old and well known in combination with various pharmaceutical carriers and excipients in a dosage form. These nutrients, vitamins and minerals are taught as in formulating dietary supplements. Claims 1-31, and the primary references, differ as to:

1) the concomitant employment of these medicaments,

Application/Control Number: 09/885,158

Page 3

Art Unit:

2) administration levels of the medicaments, and

3) expected benefits derived from the instant compositions of matter.

It is generally considered prima facie obvious to combine two, or more compounds each of which is taught by the prior art to be useful for the same purpose, in order to form a composition which is to be used for the very same purpose. The idea for combining them flows logically from their having been used individually in the prior art. As shown by the recited teachings, the instant claims define nothing more than the concomitant use of conventional essential fatty acids, vitamins and minerals. It would follow that the recited claims define prima facie obvious subject matter. Cf. In re Kerhoven, 626 F.2d 848, 205 USPQ 1069 (CCPA 1980).

Determining the active ingredient dosage level required to effect optimal therapeutic benefit is well within the Skilled Artisan's purview and the benefits of achieving such maximization obvious, to said skilled artisan. The claims merely recite the obvious employment of old and well known active ingredients, carriers and excipients. Thus, the only issue presented in the instant application is the obviousness of the claimed nutritional mixture.

Applicant's attention is drawn to In re Dillon, 16 USPQ2nd 1897 at 1900 (CAFC 1990). The court sitting in banc ruled that the recitation of a new utility for an old and well known composition does not render that composition new. Thus, recitation of

Application/Control Number: 09/885,158

Page 4

Art Unit:

various intended benefits flowing from the use of the claimed composition fail to

distinguish these compositions over the cited prior art

    No  claims are allowed.

    Any inquiry concerning this communication should be directed to Russell

Travers at telephone number (703) 308-4603.

**Russell Travers**
**Primary Examiner**
**Art Unit 1617**

| Notice of References Cited | Applicant/Patent | Application/Control No. | |
|---|---|---|---|
| | Hermellin et al | 09/885,158 | |
| | Examiner | Art Unit | Page 1 of 1 |
| | Russell Travers | 1617 | |

**U.S. PATENT DOCUMENTS**

| | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY[1] | Name | Classification[2] | |
|---|---|---|---|---|---|---|
| A | | 4,753,926 | 6/1988 | Lucas et al | 514 | 2 |
| B | | | | | | |
| C | | | | | | |
| D | | | | | | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |
| L | | | | | | |
| M | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY[1] | Country | Name | Classification[2] |
|---|---|---|---|---|---|---|
| N | | | | | | |
| O | | | | | | |
| P | | | | | | |
| Q | | | | | | |
| R | | | | | | |
| S | | | | | | |
| T | | | | | | |

**NON-PATENT DOCUMENTS**

| | Include, as applicable: Author, Title, Date, Publisher, Edition or Volume, Pertinent Pages |
|---|---|
| U | Clark et al, 117CA:25288, 1992 |
| V | FDA (United States Food and Drug Administration), 104CA:4736, 1985 |
| W | Alvarez et al. 107CA:22135, 1986 |
| X | |

[1] A copy of this reference is not being furnished with this Office action.  See MPEP § 707.05(a).    [1] Dates in MM-YYYY format are publication dates.    [2] Classifications may be U.S. or foreign.

U. S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                        Notice of References Cited                        Part of Paper No. 3

Page **1** of **2**

**FORM PTO-1449**
**INFORMATION DISCLOSURE CITATION**

| Atty Docket 23818-Y | Serial No. 09/885,158 |
| --- | --- |
| Applicant Marc S. HERMELIN et al. | |
| Filing Date June 21, 2001 | |

### U.S. PATENT DOCUMENTS

| Examiner Initial | | Document Number | Issue Date | Name | Class | Sub-Class | Filing Date |
| --- | --- | --- | --- | --- | --- | --- | --- |
| ✓ | AA | 5,776,504 | 7/7/98 | McCarty | 424 | 682 | 11/6/95 |
| ✓ | AB | 5,744,161 | 4/28/98 | Majeed et al. | 424 | 764 | 10/30/95 |
| ✓ | AC | 5,635,198 | 6/3/97 | Nishimura et al. | 424 | 438 | 6/7/95 |
| ✓ | AD | 5,562,913 | 10/8/96 | Horrobin | 424 | 601 | 3/18/94 |
| ✓ | AE | 5,264,217 | 11/23/93 | Horrobin | 424 | 438 | 10/9/92 |
| ✓ | AF | 5,143,737 | 9/1/92 | Richardson | 426 | L | 10/15/90 |
| ✓ | AG | 5,004,728 | 4/2/91 | Chalupa et al. | 514 | 12 | 3/11/88 |
| ✓ | AH | 4,642,317 | 2/10/87 | Palmquist et al. | 514 | 588 | 1/3/84 |
| ✓ | AI | 3,925,560 | 12/9/75 | Scott et al. | 426 | 2 | 5/14/73 |
| | AJ | | | | | | |
| | AK | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | Document Number | Date | Country | Class | Sub-Class | Trans-lation |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | AL | | | | | | |
| | AM | | | | | | |

### OTHER (Including Author, Title, Date, Pertinent Pages, etc.)

| | | |
| --- | --- | --- |
| ✓ | AN | The Merck Manual 185: 968 (16th Ed. 1992). |
| ✓ | AO | The Merck Manual 185: 1929-1931 (16th Ed. 1992). |
| ✓ | AP | *Physician Desk Reference (PDR)*, 53rd Ed., 1011, 1999. |
| ✓ | AQ | *Physician Desk Reference (PDR)*, 53rd Ed., 1522-3, 1999. |
| ✓ | AR | *Physician Desk Reference (PDR)*, 53rd Ed., 1692, 1999. |
| ✓ | AS | *Physician Desk Reference (PDR)*, 53rd Ed., 2802, 1999. |
| ✓ | AT | *Physician Desk Reference (PDR)*, 53rd Ed., 2916-17, 1999. |

| Examiner | Date Considered 12/6/01 |
| --- | --- |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP § 609.
Draw line through citation if not in conformance and not considered.
Include copy of this form with next communication to Applicants.

RECEIVED OCT 0 3 2001
TECH CENTER 1600/2900

SEP 2 8 2001

Page **2 of 2**

FORM PTO-1449

**INFORMATION DISCLOSURE CITATION**

| Atty Docket 23818-Y | Serial No. 09/885,158 |
|---|---|
| Applicant  Marc S. HERMELIN et al. | |
| Filing Date  June 21, 2001 | |

### U.S. PATENT DOCUMENTS

| Examiner Initial | | Document Number | Issue Date | Name | Class | Sub-Class | Filing Date |
|---|---|---|---|---|---|---|---|
| | BA | | | | | | |
| | BB | | | | | | |
| | BC | | | | | | |
| | BD | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | Document Number | Date | Country | Class | Sub-Class | Trans-lation |
|---|---|---|---|---|---|---|---|
| | BE | | | | | | |
| | BF | | | | | | |

**OTHER** (Including Author, Title, Date, Pertinent Pages, etc.)

| | | |
|---|---|---|
| | BG | *Physician Desk Reference (PDR), 53rd Ed., 2917-18, 1999.* |
| | BH | *Physician Desk Reference (PDR), 53rd Ed., 3128, 1999.* |
| | BI | *Physician Desk Reference (PDR), 53rd Ed., 3163, 1999.* |
| | BJ | *Physician Desk Reference (PDR), 53rd Ed., 3212, 1999.* |
| | BK | Whitney, E. and Rolfes, S., *Understanding Nutrition, 6th Ed., 136-40, 1993.* |
| | BL | Whitney, E. and Rolfes, S., *Understanding Nutrition, 6th Ed., 493-504, 1993.* |
| | BM | |
| | BN | |
| | BO | |

| Examiner | Date Considered  12/6/01 |
|---|---|

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP § 609.
Draw line through citation if not in conformance and not considered.
Include copy of this form with next communication to Applicants.

Sent By: Nath & Associates PLLC;          202 775 8396;          Apr-15-02  3:39PM;          Page 2

RECEIVED

APR 2 6 2002

TECH CENTER 1600/2900
PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re U.S. Patent Application         )
                                      )
Marc S. Hermelin, et al.              )
                                      )
Serial No. 09/885,158                 )
                                      )         Atty. Dkt. 23818-Y
For: NUTRITIONAL SUPPLEMENT           )
                                      )

DECLARATION UNDER 37 C.F.R. 1.132

Commissioner for Patents
Washington, DC 20231

Sir:

        NOW COME the undersigned and declare that:

    1.  I, R. Saul Levinson, a citizen of the United States of
America, have a post office address of c/o KV Pharmaceutical
Company, 2503 South Hanley Road, St. Louis, Missouri, 63144.


    2. I hold a Ph.D. in Pharmaceutical Sciences conferred upon me
in 1972 by the University of Illinois.


    3.  I am a Vice President - Discovery Research for KV
Pharmaceutical Company, 2503 South Hanley Road, St. Louis, Missouri
63144.


    4. I have worked as a Vice President - Discovery Research for
KV Pharmaceutical Company since 1991.

5. during my employment as a Vice President - Discovery Research with KV Pharmaceutical Company, I have been involved in technology that relates to the development, manufacture, and production of various pharmaceutical products including the nutritional supplement which is disclosed and claimed in the captioned application.

6. I have reviewed and analyzed the references cited by the Examiner against the presently claimed invention. Specifically, these references are Clark et al., 117CA:25288, 1992; Lucas et al., U.S. Patent No. 4,753,926; FDA (104CA:4736); and Alvarez et al., 107CA:22135, 1986. These references teach that various omega 3 and omega 6 fatty acids are essential and can be incorporated into several types of pharmaceutical formulations. However, the references fail to teach compositions containing both omega 3 and omega 6 fatty acids and precursors to these fatty acids in a specific ratio to augment and improve the bioavailability of omega 3 and omega 6 fatty acids to a patient.

7. The Clark et al. reference is directed to a comparison of the fatty acid composition of erythrocyte total lipids (i.e. lipids contained in infant tissue) of three groups of 10 week old infants. Group A infants were fed an infant formula with a high ratio (19:1) of linoleic acid (LA) (14%) to alpha-linolenic acid (ALA) (0.7%).

Sent By: Nath & Associates PLLC;          202 775 8396;        Apr-15-02  3:40PM;        Page 4

Group B infants were fed an infant formula with a reduced ratio (4:1) of LA (13%) to ALA (3.3%).  Group C infants were fed an infant formula with an even lower ratio (3:1) of LA (3.5%) to ALA (1.1%).  The results for the infants of Groups A-C were compared with breast-fed infants.  It was determined that the tissue of infants fed LA to ALA ratios of below 4:1 was found to have low arachidonic acid levels.  Further, the tissue of infants included in each of Groups A-C was found to have docosahexaenoic acid levels below those of the breast fed infants.

8.    The Clark et al. reference fails to teach the administration of both the precursors of omega 3 and omega 6 fatty acids (i.e. LA and ALA) and the omega 3 and omega 6 fatty acids themselves (i.e. arachidonic acid and docosahexaenoic acid) in the same composition to augment and improve the bioavalability of omega 3 and omega 6 fatty acids to a patient.  Clark et al. only disclose formulas which include LA and ALA without any other fatty acids.  Additionally, Clark et al. are chiefly concerned with the ratio of LA to ALA, both of which are first fatty acids according to the presently claimed invention.  In contrast, the presently claimed invention recites a specific ratio for first fatty acid to second fatty acid which is not taught by Clark et al.  Clark et al. suggest a teaching away from the use of precursors, because the administration of doses in excess of a 4:1 ratio of LA and ALA

resulted in low arachidonic acid and docosahexaenoic acid levels.

9.   The Lucas et al. reference is directed to infant food formulas.  The formula includes vitamins B2, B6, C, D, E, A, B1, B12,  and  K,  as  well  as  calcium,  folic  acid,  niacinamide, pantothenic  acid,  biotin,  copper,  zinc,  taurine,  carnitine,  and phosphorus.   Lucas et al. solely disclose the inclusion of fat generally in the embodied formulations as a source of essential fatty acids.  Lucas et al. do not teach or suggest the use of any specific  fatty  acids  and  fatty  acid  precursors  to  augment  and improve the bioavailability of omega 3 and omega 6 fatty acids to an infant.

10.   FDA is directed towards nutritional requirements for infant formula.  Guidelines for iron, calcium, phosphorus, iodine and potassium are given.  FDA does not teach or suggest the use of fatty acids and fatty acid precursors in any form to augment and improve the bioavailability of omega 3 and omega 6 fatty acids to an infant.

11.   The Alvarez et al. reference is directed to a comparison of  the  nutritional  profiles  of  several  infant  formulas  with national  guidelines.   The  formulas  were  tested  for  amounts  of protein,  fat,  lactose,  calcium,  magnesium,  sodium,  phosphorous,

potassium, iron, and zinc.  The study determined that of the formulas tested, 65% contained phosphorous in amounts exceeding national guidelines, while iron and zinc were found to be deficient in 37.5% of the samples.  Alvarez et al. do not teach or suggest the use of fatty acids and fatty acid precursors in any form to augment and improve the bioavailability of omega 3 and omega 6 fatty acids to an infant.

12.    In contrast, the presently claimed nutritional supplements are formulated for administration to women in order to enrich breast milk and optimize neurological development of the breast feeding infant.  Accordingly, the present supplements are comprised of a first and second fatty acid.  The first fatty acid may be linoleic or linolenic acid or combinations or derivatives thereof.  The second fatty acid may be docosahexaenoic acid, an omega 3 or omega 2 acid or combinations or derivatives thereof. The ratio of the first fatty acid to second fatty acid is 1:0.01 to 10.  Since linolenic acid is a precursor to docosahexaenoic acid and eicosapentanoic acid, and linoleic acid is a precursor to arachadonic acid, the instant compositions provide both specific fatty acids as well as precursors to these specific fatty acids to the body.  As such, the specific fatty acids (i.e. docosahexaenoic acid, etc.) are made immediately available to the body, while the precursors to these fatty acids (i.e. linolenic acid, linoleic

acid, etc.) require biotransformation by the body prior to
utilization.   The use of these precursors in addition to
docosahexaenoic acid, eicosapentanoic acid and/or arachadonic acid
in the present formulations augment and improve the availability of
the omega 3 and omega 6 fatty acids to the body.

13.  I do not consider the references cited by the Examiner to
be significantly related to the presently claimed invention so as
to render it obvious.   In particular, the Examiner relies on the
references to show that fatty acids, vitamins and minerals in
various combinations and dosage forms are old and well known in the
art.   However, of the references, only Clark et al. teach the use
of specific fatty acids in nutritional supplementation, and this
reference does not teach or suggest the use of precursors to these
fatty acids in concomitant use with the fatty acids to provide both
a continuous and an immediate bioavailable source of fatty acids.
Clark et al. merely disclose that reduced levels of docosahexaenoic
acid are observed in infants fed a high ratio of linoleic acid to
alpha-linolenic acid.   Further, Clark et al. do not disclose the
use of both specific fatty acids and precursors to these fatty
acids in a specific ratio to provide both a continuous and an
immediate bioavailable supply of fatty acids.   In contrast, the
presently claimed compositions provide for both a continuous and an
immediate bioavailable source of fatty acids by including both

specific fatty acids and their fatty acid precursors in concomitant use.

14. In particular, the instant supplement contains at least one of linolenic acid, a precursor to docosahexaenoic acid and eicosapentanoic acid, and linoleic acid, a precursor to arachadonic acid. Both linolenic and linoleic acids are converted by the body into their respective acids. Docosahexaenoic acid, eicosapentanoic acid and/or arachadonic acid are also included in the present formulations as immediate sources of essential fatty acids available to the body. In contrast, the references cited by the Examiner relate to infant formulations and nutrition in general, rather than the presently claimed precursor and fatty acid supplements, which are specifically formulated to provide both continuous and immediate bioavailability of fatty acids. Accordingly, the references do not teach or suggest that it would be possible to prepare formulations having or exhibiting this increased and continuous bioavailability of fatty acids through the use of both fatty acids and their fatty acid precursors. Clearly, the cited references, taken either alone or in combination, are unrelated to the instant compositions which use both specific fatty acids and their fatty acid precursors simultaneously.

15. I consider the references cited by the Examiner to be

directed to independent and distinct products in comparison to that encompassed by the presently pending claims. A person of ordinary skill in the art would not have an expectation of success in producing an immediately bioavailable nutritional supplement of precursors and fatty acids which provides continuous availability of the fatty acids, as contended by the Examiner.

16. All statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application or any parent issuing thereon. Further, declarant saith not.

17. WITNESS my signature below on the indicated dates.

April 15, 2002
Date

R. Saul Levinson

Attorney Docket No. ~~RESPONSE~~

RECEIVED

APR 26 2002

TECH CENTER 1600/2900

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of:

Mark S. HERMELIN et al.

Serial No.: 09/885,158

Filed:        June 21, 2001

For:        **NUTRITIONAL SUPPLEMENTS**

OIPE JCR1
APR 17 2002
PATENT & TRADEMARK

**PETITION FOR EXTENSION OF TIME UNDER 37 CFR § 1.136**

Commissioner for Patents
Washington, D.C. 20231

Sir:

    Pursuant to 37 CFR §§ 1.17 and 1.136, Applicant(s) hereby petition(s) for an extension of time as follows:

XX   **One**-month extension of time to respond to the Final Official

      Action dated December 17, 2001 ($110.00 fee).

XX   A check for the above-indicated amount is enclosed ($110.00).

    If extensions of time under 37 CFR § 1.136, other than those provided herewith, are required to allow consideration of papers accompanying this Petition, then such extensions of time are hereby petitioned. The Commissioner is specifically authorized to charge any fee deficiency or credit any overpayment under 37 CFR §§ 1.16 or 1.17 to Deposit Account No. 14-0112.

04/18/2002 NGEBREM1 00000084 09885158
01 FC:115              110.00 OP

Respectfully submitted,

**NATH & ASSOCIATES** PLLC

Date: _April 17, 2002_

**NATH & ASSOCIATES** PLLC
1030 Fifteenth Street, N.W.
Sixth Floor
Washington, D.C. 20005
Tel: (202) 775-8383
Fax: (202) 775-8396

Gary M. Nath
Reg. No. 26,965



RECEIVED
BOX RESPONSE
APR 26 2002
TECH CENTER 1600/2900

Attorney Docket No. 2268-0002

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Mark S. HERMELIN et al.

Serial No.:    09/885,158

Filed:        June 21, 2001

For:          **NUTRITIONAL SUPPLEMENTS**

**TRANSMITTAL LETTER**

Commissioner of Patents
Washington, D.C. 20231

Sir:

Submitted herewith for filing in the U.S. Patent and Trademark Office is the following:

(1)  Transmittal Letter;
(2)  Response to Official Action;
(3)  Declaration under 37 C.F.R. 1.132;
(4)  Petition for One-month Extension of Time; and
(5)  Check No. 16561 in the amount of $ 110.00.

Respectfully submitted,

**NATH & ASSOCIATES** PLLC

By: _____
Gary M. Nath
Registration No. 26,965

Date: April 17, 2002
**NATH & ASSOCIATES PLLC**
1030th 15TH Street, NW - 6th Floor
Washington, D.C. 20005

Attorney Docket No. 238__

**RECEIVED**
APR 2 6
TECH CENTER 1600/2900

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Marc S. Hermelin et al.                    Examiner: Russell Travers

Serial No.:    09/885,158                  Group Art Unit: 1617

Filing Date:   June 21, 2001

For:           **NUTRITIONAL SUPPLEMENTS**

<u>RESPONSE AND AMENDMENT</u>

Commissioner for Patents
**BOX RESPONSE**
Washington, D.C.  20231

Sir:

    This is in response to the Office Action dated December 17, 2001. The three month shortened statutory period for response was set to expire March 17, 2002.  Accordingly, a petition for a one month extension of time is filed with this Response.

    In view of the following remarks and attached Declaration, applicants respectfully request that the Examiner reconsider and withdraw the outstanding rejections, and allow all claims pending in this application.

<u>REMARKS</u>

    Claims 1-31 are pending in the application.

**PATENT**
Attorney Docket No. 23818-Y

### 1. Rejection of claims 1 - 31

### under 35 U.S.C. §103(a)

Claims 1-31 are rejected under 35 U.S.C. §103(a), as being unpatentable over Clark et al., Lucas et al., FDA and Alvarez et al. In the Office Action, the Examiner states:

> Clark et al, Lucas et al, FDA and Alvarez et al teach essential fatty acids, vitamins, and minerals respectively as old and well known in combination with various pharmaceutical carriers and excipients in a dosage form. These nutrients, vitamins and minerals are taught as in formulating dietary supplements. Claims 1-31, and the primary references, differ as to: 1) the concomitant employment of these medicaments, 2) administration levels of the medicaments, and 3) expected benefits derived from the instant compositions of matter.

> It is generally considered <u>prima facie</u> obvious to combine two, or more compounds each of which is taught by the prior art to be useful for the same purpose, in order to form a composition which is to be used for the very same purpose. The idea for combining them flows logically from their having been used individually in the prior art. As shown by the recited teachings, the instant claims define nothing more than the concomitant use of conventional essential fatty acids, vitamins and minerals. It would follow that the recited claims define <u>prima facie</u> obvious subject matter. Cf. <u>In re Kerhoven</u>, 626 F.2d 848, 205 USPQ 1069 (CCPA 1980).
> Determining the active ingredient dosage level required to effect optimal therapeutic benefit is well within the Skilled Artisan's purview and the benefits of achieving such maximization obvious, to said skilled artisan. The claims merely recite the obvious employment of old and well known active ingredients, carriers and excipients. Thus, the only issue presented in the instant application is the obviousness of the claimed nutritional mixture.

> Applicant's attention is drawn to <u>In re Dillon</u>, 16 USPQ2nd 1897 at 1900 (CAFC 1990). The court sitting <u>in banc</u> ruled that the recitation of a new utility for an old and well known composition does not render that composition new. Thus, recitation of various intended benefits flowing from the use of the claimed composition fail to distinguish these compositions over the cited prior art.

-2-

**PATENT**
Attorney Docket No. 23818-Y

Applicants respectfully traverse the Examiner's rejection.  To establish a *prima facie* case, the PTO must satisfy three requirements. First, the prior art relied upon, coupled with the knowledge generally available in the art at the time of the invention, must contain some suggestion or incentive that would have motivated the skilled artisan to modify a reference.  *In re Fine*, 837 F.2d 1071, 1074, 5 U.S.P.Q.2d 1596, 1598 (Fed. Cir. 1988).  Second the proposed modification of the prior art must have had a reasonable expectation of success, determined from the vantage point of the skilled artisan at the time the invention was made.  *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1209, 18 U.S.P.Q.2d 1016, 1023 (Fed. Cir. 1991).  Lastly, the prior art reference must teach or suggest all the limitations of the claims.  *In re Wilson*, 424 F.2d 1382, 1385, 165 U.S.P.Q. 494, 496 (C.C.P.A. 1970).

## a. The present invention.

The presently claimed invention is directed to nutritional supplements formulated for administration to women in order to enrich breast milk and optimize neurological development of the breast feeding infant.  The present supplements are comprised of a first and second fatty acid.  The first fatty acid may be linoleic or linolenic acid or combinations or derivatives thereof.  The second fatty acid may be docosahexaenoic acid, an omega 3 or omega 2 acid or combinations or derivitives thereof.  The ratio of the first fatty

PATENT
Attorney Docket No. 23818-Y

acid to second fatty acid is 1:0.01 to 10. Since linolenic acid is a precursor to docosahexaenoic acid and eicosapentanoic acid, and linoleic acid is a precursor to arachadonic acid, the instant compositions provide both particular fatty acids as well as precursors to these particular fatty acids to the body. As such, the particular fatty acids (i.e. docosahexaenoic acid, etc.) are made immediately available to the body, while the precursors to these fatty acids (i.e. linolenic acid, linoleic acid, etc.) require biotransformation by the body prior to utilization. The use of these precursors in addition to the docosahexaenoic acid, eicosapentanoic acid and/or arachadonic acid in the present formulations augment and improve the introduction of the omega 3 and omega 6 fatty acids to the body.

### b. Cited references.

#### Clark et al., 117CA:25288, 1992

In contrast, Clark et al. is directed to a comparison of the fatty acid composition of erythrocyte total lipids (i.e. lipids contained in infant tissue) of three groups of 10 week old infants to 10 week old breast fed infants. Group A infants were fed a formula with a 19:1 ratio of linoleic acid (14%) to alpha-linolenic acid (0.7%). Group B infants were fed a formula with a 4:1 ratio of linoleic acid (13%) to alpha-linolenic acid (3.3%). Group C infants were fed a formula with a 3:1 ratio of linoleic acid (3.5%) to alpha-

-4-

PATENT
Attorney Docket No. 23818-Y

linolenic acid (1.1%).  Clark et al. disclose that the tissue of infants fed linoleic acid to alpha-linolenic acid ratios of below 4:1 was found to have low arachidonic acid levels.  Further, the tissue of infants included in each of Groups A-C was found to have docosahexaenoic acid levels below those in the tissue of the breast fed infants.

The Clark et al. reference fails to teach the administration of both the precursors of omega 3 and omega 6 fatty acids (i.e. linoleic acid and alpha-linolenic acid) and the omega 3 and omega 6 fatty acids themselves (i.e. arachidonic acid and docosahexaenoic acid) in the same composition to augment and improve the bioavalability of omega 3 and omega 6 fatty acids to a patient.  Clark et al. only disclose formulas which include linoleic acid and alpha-linolenic acid without any other fatty acids.  Additionally, Clark et al. are chiefly concerned with the ratio of linoleic acid to alpha-linolenic acid, both of which are first fatty acids according to the presently claimed invention.  In contrast, the presently claimed invention recites a specific ratio for first fatty acid to second fatty acid which is not taught by Clark et al.  Clark et al. suggest a teaching away from the use of precursors, because the administration of doses in excess of a 4:1 ratio of linoleic and alpha-linolenic acids resulted in low arachidonic acid and docosahexaenoic acid levels.

-5-

**PATENT**
Attorney Docket No. 23818-Y

### Lucas et al., U.S. Patent No. 4,753,926

Lucas et al. teach infant food formulas, which include vitamins B2, B6, C, D, E, A, B1, B12, and K, as well as calcium, folic acid, niacinamide, pantothenic acid, biotin, copper, zinc, taurine, carnitine, and phosphorus. Lucas et al. solely disclose the inclusion of fat generally in the embodied formulations as a source of essential fatty acids. See column 6, lines 51-57. Lucas et al. do not teach or suggest the use of any specific fatty acids and fatty acid precursors to augment and improve the bioavailability of omega 3 and omega 6 fatty acids to an infant.

### FDA (104CA:4736)

FDA is directed to the nutritional requirements for infant formula. Guidelines for iron, calcium, phosphorus, iodine and potassium are given. FDA does not teach or suggest the use of fatty acids and fatty acid precursors in any form to augment and improve the bioavailability of omega 3 and omega 6 fatty acids to an infant. FDA does not teach or suggest nutritional requirements for any fatty acids.

### Alvarez et al., 107CA:22135

Alvarez et al. is directed to a comparison of the nutritional profiles of infant formulas as compared to national guidelines. The

-6-

PATENT
Attorney Docket No. 23818-Y

formulas were tested for amounts of protein, fat, lactose, calcium, magnesium, sodium, phosphorous, potassium, iron, and zinc. The study determined that of the formulas tested, 65% contained phosphorous in amounts exceeding national guidelines, while iron and zinc were found to be deficient in 37.5% of the samples. Alvarez et al. does not teach or suggest the use of fatty acids and fatty acid precursors in any form to augment and improve the bioavailability of omega 3 and omega 6 fatty acids to an infant.

**c. Differences between present invention and the cited references.**

Applicants respectfully maintain that a prima facie case of obviousness has not been met.

The formulas of Clark et al. do not provide both immediate and continuous bioavailable sources of fatty acids via the administration of both fatty acids and precursors to these fatty acids in the same composition, as presently claimed by applicants. Rather, Clark et al. is specifically limited to examining the effect on the fatty acid content of infant blood of various formula ratios of linoleic acid to alpha-linolenic acid. See, in this regard, page 152, column 2, lines 1-4 of Clark et al., which clearly state that "These results demonstrate that the plasma levels and erythrocytes of term infants fed formulas containing a fat blend with a high ratios of linoleic

PATENT
Attorney Docket No. 23818-Y

acid to alpha-linolenic acid are as susceptible to reduction of DHA levels as has been reported in preterm infants." Further, Clark et al. teaches away from the presently claimed invention and discloses that "dietary linoleic acid has limitations in providing a source of arachodonic acid." See page 157, column 2, lines 10-14. Nowhere does the cited reference disclose compositions providing both an immediate and a continuous bioavailable source of fatty acids via the administration of both fatty acids and precursors to these fatty acids.    In addition to this claimed distinction, the attached Declaration clearly indicates that the cited reference lacks this teaching or suggestion.

Additionally, the presently pending claims require a specific ratio between a specific fatty acid (second fatty acid) and the precursor to this fatty acid (first fatty acid). Clark et al. provide no teaching or suggestion in this regard. The only ratios disclosed by Clark et al. relate to the ratio of linoleic acid to alpha-linolenic acid, which are both first fatty acids according to the presently claimed invention.

Thus, a person of ordinary skill in the art would have had no motivation or incentive to modify the teaching of Clark et al. to arrive at the presently claimed invention. Clark et al. do not in any way teach or suggest the presently claimed fatty acid formulations. As shown above, the cited reference does not teach each and every

PATENT
Attorney Docket No. 23818-Y

element of the presently claimed invention as required by *In re Wilson*. In particular, the reference does not disclose fatty acid compositions effective for attaining both immediate and continuous bioavailability via the simultaneous administration of both fatty acids and precursors to these fatty acids in a specific ratio. Therefore, the presently claimed invention is non-obvious over the cited reference.

Lucas et al. do not remedy these deficiencies. This reference is directed to an infant food which includes vitamins B2, B6, C, D, E, A, B1, B12, and K, as well as calcium, folic acid, niacinamide, pantothenic acid, biotin, copper, zinc, taurine, carnitine, and phosphorus. Lucas et al. do not discuss specific fatty acids and fatty acid precursors for use in dietary supplementation, i.e., the use of fatty acids or fatty acid precursors to augment and improve the bioavailability of omega 3 and omega 6 fatty acids. Lucas et al. merely disclose the use of fat generally as a source of fatty acids.

In contrast, as shown in the attached Declaration, the presently claimed formulations are directed to a combination of specific fatty acids and precursors to these fatty acids in a specific ratio which provides for both continuous and immediate bioavailability. Therefore, a person of ordinary skill in the art would have had no motivation to modify the formulations disclosed by Clark et al. in view of the foods of Lucas et al. to arrive at the presently claimed

-9-

**PATENT**
Attorney Docket No. 23818-Y

invention.   Accordingly, the presently claimed invention is not obvious in view of the prior art.

The FDA reference does not remedy these deficiencies.   This reference discloses the nutritional requirements for iron, calcium, phosphorus, iodine and potassium in infant formula.   FDA does not teach or suggest the use of both specific fatty acids and precursors to these fatty acids to augment and improve the bioavailability of omega 3 and omega 6 fatty acids.   Furthermore, FDA does not teach or suggest nutritional requirements for any fatty acids.

In contrast, as shown in the attached Declaration, the presently claimed formulations are directed to a combination of specific fatty acids and precursors to these fatty acids in a specific ratio which provides   for   both   continuous   and   immediate   bioavailability. Therefore, a person of ordinary skill in the art would have had no motivation to modify the formulations disclosed by Clark et al. in view of the nutritional requirements of the FDA to arrive at the presently claimed invention.   Accordingly, the presently claimed invention is not obvious in view of the prior art.

Alvarez et al do not remedy these deficiencies.   This reference is directed to a comparison of the nutritional profiles of several infant formulas with national guidelines.  Specifically, the formulas were tested for content of protein, fat, lactose, calcium, magnesium, sodium, phosphorous, potassium, iron, and zinc.   Alvarez et al. does

**PATENT**
Attorney Docket No. 23818-Y

not teach or suggest the use of both specific fatty acids and precursors to these fatty acids to augment and improve the bioavailability of omega 3 and omega 6 fatty acids to an infant. Furthermore, Alvarez et al. do not teach or suggest nutritional requirements for any fatty acids.

In contrast, as shown in the attached Declaration, the presently claimed formulations are directed to a combination of specific fatty acids and precursors to these fatty acids in a specific ratio which provides for both continuous and immediate bioavailability. Therefore, a person of ordinary skill in the art would have had no motivation to modify the formulations disclosed by Clark et al. in view of the comparison data of Alvarez et al. to arrive at the presently claimed invention. Accordingly, the presently claimed invention is not obvious in view of the prior art.

Thus, a person of ordinary skill in the art would have had no motivation or incentive to modify the teaching of Clark et al., in view of the teachings of the FDA, Lucas et al. and Alvarez et al. references, to arrive at the presently claimed invention. The references cited by the Examiner, taken alone or in combination, do not disclose each and every claim limitation as required by *In re Wilson*. Clark et al. do not in any way teach or suggest the presently claimed formulations for increased bioavailability of fatty acids. The remaining references, as shown above, do not remedy this

**PATENT**
Attorney Docket No. 23818-Y

deficiency. Therefore, the presently claimed invention is non-obvious over the cited references.

Further, applicants respectfully traverse the Examiner's statement that "Determining the active ingredient dosage level required to effect optimal therapeutic benefit is well within the Skilled Artisan's purview and the benefits of achieving such maximization obvious, to said skilled artisan." As evidenced by the primary reference, Clark et al., the determination of which fatty acids are to be included in a formula and in what combinations, amounts, and ratios is a complex question under continued investigation. See page 156, column 2, lines 1-15, which discusses the varied, and often non-correlating, profiles produced by different formulations. Therefore, it would not be within the purview of one skilled in the art to determine the active ingredient dosage level required to effect optimal therapeutic benefit. Nor would the benefits of achieving such maximization be obvious to one of skill in the art.

Accordingly, applicants respectfully request the Examiner to reconsider and withdraw the present rejection and allow all pending claims 1-31 presented herein.

## REQUEST FOR INTERVIEW

Applicants respectfully request the Examiner to grant an

-12-

**PATENT**
Attorney Docket No. 23818-Y

interview in this case.

### CONCLUSION

Based upon the above remarks, the presently claimed subject matter is believed to be novel and patentably distinguishable over the references of record. The Examiner is therefore respectfully requested to reconsider and withdraw the rejections of claims 1-31 and allow all pending claims presented herein for reconsideration. Favorable action with an early allowance of the claims pending in this application is earnestly solicited.

The Examiner is welcomed to telephone the undersigned attorney if he has any questions or comments.

Respectfully submitted,

**NATH & ASSOCIATES** PLLC

Date: _April 17, 2002_

Gary M. Nath
Reg. No. 26,965

**NATH & ASSOCIATES** PLLC
1030 Fifteenth Street, N.W.
Sixth Floor
Washington, D.C. 20005
Tel: (202) 775-8383
Fax: (202) 775-8396

GMN:TEH

-13-



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/885,158 | 06/21/2001 | Marc S. Hermelin | 23818Y | 5214 |

7590          07/02/2002

Gary M. Nath
NATH & ASSOCIATES PLLC
1030 15th Street, N.W. - 6th Floor
Washington, DC  20005

| EXAMINER |
|---|
| TRAVERS, RUSSELL S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 07/02/2002

Please find below and/or attached an Office communication concerning this application or proceeding.

| ***Office Action Summary*** | Application No. 09/885,158 | Applicant(s) Hermellin et al | |
|---|---|---|---|
| | Examiner **Russell Travers** | Art Unit **1617** | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE ___3___ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136 (a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C.§ 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on _Apr 17, 2002_

2a) ☒ This action is **FINAL**.    2b) ☐ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) _1-31_ is/are pending in the application.

    4a) Of the above, claim(s) _____ is/are withdrawn from consideration.

5) ☒ Claim(s) _29_ is/are allowed.

6) ☒ Claim(s) _1-28, 30, and 31_ is/are rejected.

7) ☐ Claim(s) _____ is/are objected to.

8) ☐ Claims _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☐ The drawing(s) filed on _____ is/are a) ☐ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved b) ☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All b) ☐ Some* c) ☐ None of:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

    *See the attached detailed Office action for a list of the certified copies not received.

14) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

    a) ☐ The translation of the foreign language provisional application has been received.

15) ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 120 and/or 121.

**Attachment(s)**

| 1) ☐ Notice of References Cited (PTO-892) | 4) ☐ Interview Summary (PTO-413) Paper No(s). _____ |
|---|---|
| 2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948) | 5) ☐ Notice of Informal Patent Application (PTO-152) |
| 3) ☐ Information Disclosure Statement(s) (PTO-1449) Paper No(s). _____ | 6) ☐ Other: _____ |

U. S. Patent and Trademark Office
PTO-326 (Rev. 04-01)          Office Action Summary          Part of Paper No. 8

Application/Control Number: 09/885,158                                    Page 2

Art Unit:

The rebuttal arguments presented 4/17/02 has been received and entered into the file.

Claims 1-31 are presented for examination.

The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

Claims 1-28 and 30-31 are rejected under 35 U.S.C. § 103 as being unpatentable over Clark et al, Lucas et al, FDA and Alvarez et al.

Clark et al, Lucas et al, FDA and Alvarez et al teach essential fatty acids, vitamins, and minerals respectively as old and well known in combination with various pharmaceutical carriers and excipients in a dosage form. These nutrients, vitamins and minerals are taught as in formulating dietary supplements. Claims 1-28 and 30-31, and the primary references, differ as to:

1) the concomitant employment of these medicaments,

Application/Control Number: 09/885,158                    Page 3

Art Unit:


2) administration levels of the medicaments, and

3) expected benefits derived from the instant compositions of matter.

It is generally considered prima facie obvious to combine two, or more

compounds each of which is taught by the prior art to be useful for the same purpose,

in order to form a composition which is to be used for the very same purpose. The idea

for combining them flows logically from their having been used individually in the prior

art. As shown by the recited teachings, the instant claims define nothing more than the

concomitant use of conventional essential fatty acids, vitamins and minerals. It would

follow that the recited claims define prima facie obvious subject matter. Cf. In re

Kerhoven, 626 F.2d 848, 205 USPQ 1069 (CCPA 1980).

Determining the active ingredient dosage level required to effect optimal

therapeutic benefit is well within the Skilled Artisan's purview and the benefits of

achieving such maximization obvious, to said skilled artisan. The claims merely recite

the obvious employment of old and well known active ingredients, carriers and

excipients. Thus, the only issue presented in the instant application is the obviousness

of the claimed nutritional mixture.

Applicant's attention is drawn to In re Dillon, 16 USPQ2nd 1897 at 1900 (CAFC

1990). The court sitting in banc ruled that the recitation of a new utility for an old and

well known composition does not render that composition new. Thus, recitation of

Application/Control Number: 09/885,158                                    Page 4

Art Unit:

various intended benefits flowing from the use of the claimed composition fail to

distinguish these compositions over the cited prior art

## RESPONSE TO ARGUMENTS

Applicant's arguments filed April 17, 2002 have been fully considered but they

are not deemed to be persuasive.   Clark et al, Lucas et al, FDA and Alvarez et al teach

essential fatty acids, vitamins, and minerals respectively as old and well known in

combination with various pharmaceutical carriers and excipients in a dosage form.

Examiner agrees with the argument set forth in paragraph 7 of paper 5; reciting the

Clark et al teaching of EFA's at ratios herein claimed for improving infant nutrition.

Clark et al taught EFA ratios residing in the 1:0.01 to 1:10 ratio claimed herein.  To

combine vitamins, or mineral supplements to the nutritional supplements taught by

Clark et al would have been obvious to the skilled artisan at the time of invention.

Possessing the Examiner cited prior art the skilled artisan would have been motivated

to employ the nutritional supplements herein claimed to improve infant nutrition, and

enjoyed a reasonable expectation of success.

Examiner notes those rebuttal arguments based on physiological effects flowing

from, and residing in the compositions as claimed.  A composition of matter and those

properties inherently possessed by these compositions fail to patently distinguish

otherwise obvious subject matter.

Application/Control Number: 09/885,158

Page 5

Art Unit:

Claim 29 is allowable.

**THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a).  The practice of automatically extending the shortened statutory period an additional month upon the filing of a timely first response to a final rejection has been discontinued by the Office.  See 1021 TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

Any inquiry concerning this communication should be directed to Russell Travers at telephone number (703) 308-4603.

Russell Travers
**Primary Examiner**
**Art Unit 1617**



Attorney Docket No. 23818X

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Mark S. HERMELIN et al.

Serial No.: 09/885,158

Filed:      June 21, 2001

For:        **NUTRITIONAL SUPPLEMENTS**

<u>**PETITION FOR EXTENSION OF TIME UNDER 37 CFR § 1.136**</u>

Commissioner for Patents
Washington, D.C. 20231

Sir:

 Pursuant to 37 CFR §§ 1.17 and 1.136, Applicant(s) hereby petition(s) for an extension of time as follows:

**XX** **One**-month extension of time to respond to the Final Official

  Action dated July 2, 2002 ($110.00 fee).

**XX** A check for the above-indicated amount is enclosed ($110.00).

 If extensions of time under 37 CFR § 1.136, other than those provided herewith, are required to allow consideration of papers accompanying this Petition, then such extensions of time are hereby petitioned. The Commissioner is specifically authorized to charge any fee deficiency or credit any overpayment under 37 CFR §§ 1.16 or 1.17 to Deposit Account No. 14-0112.

Respectfully submitted,

**NATH & ASSOCIATES** PLLC

Date: November 1, 2002
**NATH & ASSOCIATES** PLLC
1030 Fifteenth Street, N.W.
Sixth Floor
Washington, D.C.  20005
Tel:  (202) 775-8383
Fax:  (202) 775-8396

Gary M. Nath
Reg. No. 26,965
Joshua B. Goldberg
Reg. No. 44,126
Customer No. 20529



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 09/885158 | | | |

| EXAMINER |
|---|
| |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | 9 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) _Tanya Hoders_  (3) _Russell Travers (PTO)_

(2) _Joshua Goldberg_  (4) _____

Date of Interview _10/8/02_

Type: ☐Telephonic  ☑ Personal (copy is given to ☐ applicant ☑ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☑ No. If yes, brief description: _____

Agreement ☐ was reached with respect to some or all of the claims in question. ☑ was not reached.

Claims discussed: _all Claims_

Identification of prior art discussed: _All prior art_

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _Applicant will_ _supply Examiner with full copy of references. Exam would favorably consider claims directed to limit to those sudden motion previously specific physically effects_

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

☑1. It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph below has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1-7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ 2. Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the substance of the interview unless box 1 above is also checked.

Examiner's Signature

PTOL-413 (REV. 2-93)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

*Gary M. Nath* (DC, MD)
*Harold L. Novick* (DC, MD)
*Todd L. Juneau* (DC, R)
*Ross A. Epstein* (DC)
*Marvin C. Berkowitz* (MD)

*Irwin A. Lavine* (DC), Retired
*Donald M. Sandler* (MD), Retired*

*Patent, Trademark and Copyright Cases
Unfair Competition, Trade Secrets,
Licensing and Litigation*

*Practice limited to Matters and Proceedings before
Federal Courts and Agencies; not Admitted in DC*

**NATH & ASSOCIATES** PLLC
*Attorneys at Law*
1030 Fifteenth Street, N.W.
Sixth Floor
Washington, D.C. 20005-1503

TELEPHONE (202) 775-8383
(202) 775-9393

FACSIMILE (202) 775-8396
(202) 822-9409

E-MAIL: IP@NATHLAW.COM
WEB: WWW.NATHLAW.COM

*Michelle L. Hortlander* (DC)
*Lee C. Heiman* (DC)
*Jerald L. Meyer* (DC)
*Tanya E. Harkins* (DC)
*Joshua B. Goldberg* (DC, MD)
*Tyra W. Kurtz* (DC)
*Sheldon M. McGee* (DC)
*Alvin E. Tanenholtz* **
*François A. Pelaez PhD* **

** Registered Patent Agent; not Admitted in DC
++ Limited Rep. at USPTO

## REQUEST FOR

## CONTINUED EXAMINATION (RCE)

## TRANSMITTAL

Commissioner of Patents
**Box RCE**
Washington, D.C. 20231

        Application No.   09/885,158
        Filing Date:     June 21, 2001
        Title:           **NUTRITIONAL SUPPLEMENTS**
        Inventors:       Marc S. HERMELIN et al.
        Group Art Unit:  1617
        Examiner:        R. Travers
        Atty Docket No.: 23818Y

Sir:

    This is a Request for Continued Examination (RCE) under 37 C.F.R § 1.114 of the above-identified application.

    *Note: 37 C.F.R. § 1.114 is effective on May 29, 2000. If the above-identified application was filed prior to May 29, 2000, applicant may wish to consider filing a continued prosecution application (CPA) under 37 C.F.R. § 1.53(d) (PTO/SB/29) instead of a RCE to be eligible for the patent term adjustment provisions of the AIPA. See Changes to Application Examination and Provisional Application and Provisional Application Practice, Final Rule 65 Fed.Reg. 50092 9Aug. 16, 2000); Interim Rule, 65 Fed. Reg. 14865 (mar. 20, 2000), 1233 Off.Gaz. Pat. Office 47 (Apr. 11, 2000), which established RCE pratice.*

Atty. Docket No.: 23818Y
Page 2 of 2

| 1. | Submission required under 37 C.F.R. § 1.114 |

  a. ___ Previously submitted

    i. _____Consider the amendments(s)/reply under 37 C.F.R.§ 1.116 previously filed on _____.

    ii. _____Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____.

    ii. _____Other_____.

  b. **X** Enclosed

    i. **X** Amendment/Reply

    ii. _____Affidavit(s)/Declaration(s)

    iii. _____Information Disclosure Statement(IDS)

    iv. _____Other _____

| 2. Miscellaneous |

  a._____Suspension of action on the above-identified application is requested under 37 C.F.R. § 1.103(c) for a period of _____ months.(Period of suspension shall not exceed 3 months; Fee under 37 C.F.R. § 1.17(i) **required**)

  b._____Other _____.

| 3. Fees |

(The RCE fee under 37 C.F.R. § 1.17(e) is required by 37 C.F.R. § 1.114 when the RCE is filed)

  a. **X** The Director is hereby authorized to charge the following fees, charge any fee deficiencies or credit any overpayments, to Deposit Acct. No. 14-0112 .

    i. **X** RCE fee of $ 740.00 required under 37 C.F.R. § 1.17 (e) is enclosed.

    ii. _____Extension of time fee (37 C.F.R. §§ 1.136 and 1.17)

    iii. _____Other _____.

Respectfully submitted,

**NATH & ASSOCIATES** PLLC

Gary M. Nath
Registration No. 26,965
Joshua B. Goldberg
Registration No. 44,126
Customer No. 20529

Date: November 1, 2002
**NATH & ASSOCIATES** PLLC
1030 15ᵀᴴ Street NW – 6ᵗʰ Floor
Washington, D.C. 20005
GMN/JBG/ayd

*Rce/1617*

BOX AF

Attorney Docket No.   23818Y

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Re Application of:

Mark S. HERMELIN et al.                Examiner: R. Travers

Serial No.:  09/885,158               Art Unit: 1617

Filed:        June 21, 2001

For:          **NUTRITIONAL SUPPLEMENTS**

**TRANSMITTAL LETTER**

Commissioner of Patents
Washington, D.C. 20231

Sir:
      Submitted herewith for filing in the U.S. Patent and Trademark
Office is the following:

(1)    Transmittal Letter;
(2)    Response to Final Official Action;
(3)    Appendix A;
(4)    Appendix B;
(5)    Full copies of 2 cited references;
(6)    Request for Continued Examination;
(7)    Petition for One-month Extension of Time;
(8)    Check No. 17632  in the amount of $110.00 for EOT; and
(9)    Check No. 17633  in the amount of $740.00 for RCE.

                              Respectfully submitted,

                              **NATH & ASSOCIATES PLLC**


                        By: _____
                              Gary M. Nath
                              Registration No. 26,965
                              Joshua B. Goldberg
                              Registration No. 44,126
                              Customer No. 20529

Date: November 1, 2002
**NATH & ASSOCIATES PLLC**
1030th 15th Street, NW – 6th Floor
Washington, D.C. 20005



**PATENT**

Attorney Docket No. 23818-X

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Marc S. Hermelin et al.                    Examiner: R. Travers

Serial No.:   09/885,158                   Art Unit: 1617

Filing Date:   June 21, 2001

For:         **NUTRITIONAL SUPPLEMENTS**

**RESPONSE AND AMENDMENT**

Commissioner for Patents
**BOX AF**
Washington, D.C.  20231

Sir:

    This is in response to the Final Office Action dated July 2, 2002.  The three month shortened statutory period for response was set to expire October 2, 2002.  Accordingly, a Petition for One-Month Extension of Time is attached hereto extending the period for reply to November 2, 2002.

    In view of the following amendments and remarks, applicants respectfully request the Examiner to reconsider and withdraw the outstanding rejections and allow all claims pending in this application.

    Please amend the application as follows.

**IN THE CLAIMS**

    Please cancel claims 1-8, 28, and 30-31, amend claims 9, 11-14, 17-22, 25-27, and 29, and add new claims 56-58 as submitted in Appendices A and B submitted herewith.  Appendix A is a marked-up

USSN 09/885,158
HERMELIN et al.

copy of the amended claims and Appendix B is a clean copy of the amended claims.

### REMARKS

Applicants thank the Examiner for the interview conducted on October 8, 2002 regarding the claims of the captioned application. Applicants have amended the claims in accordance with the Examiner's suggestions during the interview. Claims 9-27, 29, and 56-58 are currently pending in the present application. The claims have been amended in the expectation that the amendments will place this application in condition for allowance. The amendments do not introduce new matter within the meaning of 35 U.S.C. § 132. Basis for these amendments can be found in the original specification on page 17, lines 4-20; page 19, lines 8-9; page 20, lines 2-3; page 37, lines 8-12; page 52, line 14; and page 63, line 20 to page 64, line 19. Accordingly, entry of the amendments is respectfully requested.

### 1. Rejection of Claims 1-28 and 30-31 under 35 U.S.C. §103(a)

The Official Action states that claims 1-28 and 30-31 are rejected under 35 U.S.C. § 103(a) as being obvious over Clark et al., Lucas et al., FDA, and Alvarez et al.

As the basis of this rejection, the Office Action states:

Claims 1-28 and 30-31 are rejected under 35 U.S.C. § 103 as being unpatentable over Clark et al, Lucas et al, FDA and Alvarez et al.

-2-

USSN 09/985,158
HERMELIN et al.

Clark et al, Lucas et al, FDA and Alvarez et al teach essential fatty acids, vitamins, and minerals respectively as old and well known in combination with various pharmaceutical carriers and excipients in a dosage form.  These nutrients, vitamins and minerals are taught as in formulating dietary supplements.  Claims 1-28 and 30-31, and the primary references differ as to:

   1)   the concomitant employment of these medicaments,

   2)   administration levels of the medicaments, and

   3)   expected benefits derived from the instant compositions of matter.

It is generally considered prima facie obvious to combine two, or more compounds each of which is taught by the prior art to be useful for the same purpose, in order to form a composition which is to be used for the very same purpose.  The idea for combining them flows logically from their having been used individually in the prior art.  As shown by the recited teachings, the instant claims define nothing more than the concomitant use of conventional essential fatty acids, vitamins and minerals.  It would follow that the recited claims define prima facie obvious subject matter. Cf. In re Kerhoven, 626 F.2d 848, 205 USPQ 1069 (CCPA 1980).

Determining the active ingredient dosage level required to effect optimal therapeutic benefit is well within the Skilled Artisan's purview and the benefits of achieving such maximization obvious, to said skilled artisan.  The claims merely recite the obvious employment of old and well known active ingredients, carriers and excipients.  Thus, the only issue presented in the instant application is the obviousness of the claimed nutritional mixture. Applicant's attention is drawn to In re Dillon, 16 USPQ2nd 1897 at 1900 (CAFC 1990).  The court sitting in banc ruled that the recitation of a new utility for an old and well known composition does not render that composition new.  Thus, recitation of various intended benefits flowing from the use of the claimed composition fail to distinguish these compositions over the cited prior art.

Applicant's arguments filed April 17, 2002 have been fully considered but they are not deemed to be persuasive.  Clark et al, Lucas et al, FDA and Alvarez et al teach essential fatty acids, vitamins, and minerals respectively as old and well known in combination with various pharmaceutical carriers and excipients in a dosage form.  Examiner agrees with the argument set forth

-3-

USSN 09/885,158
HERMELIN et al.

in paragraph 7 of paper 5; reciting the Clark et al teaching of EFA's at ratios herein claimed for improved infant nutrition. Clark et al taught EFA ratios residing in the 1:0.01 to 1:10 ratio claimed herein. To combine vitamins, or mineral supplements to the nutritional supplements taught by Clark et al would have been obvious to the skilled artisan at the time of invention. Possessing the Examiner cited prior art the skilled artisan would have been motivated to employ the nutritional supplements herein claimed to improve infant nutrition, and enjoyed a reasonable expectation of success.
Examiner notes those rebuttal arguments based on physiological effects flowing from, and residing in the compositions as claimed. A composition of matter and those properties inherently possessed by these compositions fail to patently distinguish otherwise obvious subject matter.

Applicants respectfully traverse the Examiner's rejection. The references of record do not teach or suggest applicants' inventive subject matter as a whole as recited in the claims. The Examiner has failed to establish a *prima facie* case of obviousness against the presently rejected claims.

To establish a *prima facie* case, the PTO must satisfy three requirements. First, the prior art relied upon, coupled with the knowledge generally available in the art at the time of the invention, must contain some suggestion or incentive that would have motivated the skilled artisan to modify a reference. *In re Fine*, 837 F.2d 1071, 1074, 5 U.S.P.Q.2d 1596, 1598 (Fed. Cir. 1988). Second the proposed modification of the prior art must have had a reasonable expectation of success, determined from the vantage point of the skilled artisan at the time the invention was

USSN 09/885,158
HERMELIN et al.

made.  *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200, 1209, 18

U.S.P.Q.2d 1016, 1023 (Fed. Cir. 1991).  Lastly, the prior art

reference must teach or suggest all the limitations of the claims.

*In re Wilson*, 424 F.2d 1382, 1385, 165 U.S.P.Q. 494, 496 (C.C.P.A.

1970).

Applicants thank the Examiner for the interview conducted on

October 8, 2002 regarding the claims of the captioned application.

As discussed during the interview, applicants have amended claim 29

to further refine the claimed composition so as to fully protect

the present inventive subject matter.  Further, in accordance with

the Examiner's suggestions, applicants have canceled independent

claims 1 and 28, amended the dependent claims thereof to depend

from pending claim 29, and further amended claim 29 to indicate

specific pharmacologic and therapeutic effects provided by

compositions containing the claimed weight ratio of first fatty

acid to second fatty acid.  As discussed during the interview, the

presently pending claims are unobvious over the cited art of

record.  Lastly, applicants submit herewith full copies of the

Clark et al., FDA, and Alvarez et al. references for the Examiner's

perusal as requested.

**a. The present invention.**

As discussed during the interview, the presently claimed

invention is directed to nutritional supplements formulated for

administration to women in order to enrich breast milk and optimize

USSN 09/885,158
HERMELIN et al.

neurological development of the breast feeding infant.    The
presently claimed compositions are comprised of both a first fatty
acid compound and a second fatty acid compound as essential
components.    The claimed first fatty acid compound may be linoleic
acid, linolenic acid, or combinations or derivatives thereof.    The
claimed second fatty acid may be docosahexaenoic acid, an omega-3
fatty acid, an omega-2 fatty acid, or combinations or derivatives
thereof.    The ratio of the first fatty acid to the second fatty
acid is 1:0.01 to 10.    This ratio is essential to ensure the
enrichment of the woman's breast milk so as to optimize the
neurological development of an infant breast-fed by the woman.

Linolenic acid is a biological precursor to docosahexaenoic
acid and eicosapentanoic acid, while linoleic acid is a biological
precursor to arachadonic acid.    Accordingly, the instant
compositions provide both particular fatty acids, as well as the
biological precursors to these particular fatty acids.    As such,
the particular fatty acids (i.e. docosahexaenoic acid, etc.) are
made immediately available to the body, while the precursors to
these fatty acids (i.e. linolenic acid, linoleic acid, etc.)
require biotransformation by the body prior to utilization, thereby
providing a constant source of the particular fatty acids to the
body.    The use of these precursors in addition to the
docosahexaenoic acid, eicosapentanoic, acid and/or arachadonic acid

USSN 09/885,158
HERMELIN et al.

in the present formulations augment and improve the introduction of
the omega-3 and omega-2 fatty acids to the body.


### b. Cited references.

*Clark et al., 117CA:25288, 1992*

In contrast, the full Clark et al. reference is directed to a
comparison of the fatty acid composition of erythrocyte total
lipids (i.e. lipids contained in infant tissue) of three groups of
10 week old infants to 10 week old breast fed infants.  Group A
infants were fed a formula with a 19:1 ratio of linoleic acid (LA)
(14%) to alpha-linolenic acid (ALA) (0.7%).  Group B infants were
fed a formula with a 4:1 ratio of LA (13%) to ALA (3.3%).  Group C
infants were fed a formula with a 3:1 ratio of LA (3.5%) to ALA
(1.1%).  Clark et al. disclose that the tissue of infants fed LA to
ALA ratios of below 4:1 was found to have low arachidonic acid (AA)
levels.  Further, the tissue of infants included in each of Groups
A-C was found to have docosahexaenoic acid (DHA) levels below those
in the tissue of the breast fed infants.

As discussed during the interview, the full Clark et al.
reference fails to teach compositions containing both the
precursors of omega-3 and omega-2 fatty acids (i.e. LA and ALA) and
the omega-3 and omega-2 fatty acids themselves (i.e. AA and DHA).
In fact, Clark et al. do not teach any compositions containing the
omega-3 and omega-2 fatty acids themselves.  Instead, each of

-7-

USSN 09/885,158
HERMELIN et al.

Formulae A-C disclosed by Clark et al. contain LA and ALA as the only fatty acids present. (See Table I, page S152). Additionally, Clark et al. are chiefly concerned with the ratio of LA to ALA, both of which are first fatty acids according to the presently claimed invention. In contrast, the presently claimed invention recites a specific ratio for first fatty acid (i.e. LA and ALA) to second fatty acid (i.e. AA and DHA). This ratio is essential to ensure the enrichment of the woman's breast milk so as to optimize the neurological development of an infant breast-fed by the woman. Since Clark et al. do not teach any compositions containing the claimed second fatty acid, it is impossible for Clark et al. to disclose the claimed ratio of first fatty acid to second fatty acid.

### Lucas et al., U.S. Patent No. 4,753,926

As discussed during the interview, Lucas et al. teach infant food formulae, which include vitamins $B_2$, $B_6$, C, D, E, A, $B_1$, $B_{12}$, and K, as well as calcium, folic acid, niacinamide, pantothenic acid, biotin, copper, zinc, taurine, carnitine, and phosphorus in specifically defined amounts. Lucas et al. solely disclose the inclusion of fat generally in the embodied formulations as a source of essential fatty acids. See column 6, lines 51-57. However, Lucas et al. do not teach or suggest the inclusion of any specific

USSN 09/885,150
HERMELIN et al.

fatty acids and fatty acid precursors in the disclosed compositions.

### FDA (104CA:4736)

As discussed during the interview, FDA is directed to the nutritional requirements for infant formula. Guidelines for iron, calcium, phosphorus, iodine and potassium are given. FDA does not in any way teach or suggest the use of fatty acids and fatty acid precursors in any form. Further, FDA does not teach or suggest nutritional requirements for any fatty acids.

### Alvarez et al., 107CA:22135

As discussed during the interview, Alvarez et al. is directed to a comparison of the nutritional profiles of infant formulae as compared to national guidelines. The formulae were tested for amounts of protein, fat, lactose, calcium, magnesium, sodium, phosphorous, potassium, iron, and zinc. The study determined that of the formulae tested, 65% contained phosphorous in amounts exceeding national guidelines, while iron and zinc were found to be deficient in 37.5% of the samples. Alvarez et al. do not teach or suggest the inclusion of any specific fatty acids and fatty acid precursors in the disclosed compositions. Further, Alvarez et al. do not teach or suggest nutritional requirements for any fatty acids.

USSN 09/885,158
HERMELIN et al.

### c. Differences between present invention and the cited references

Applicants respectfully maintain that a *prima facie* case of obviousness has not been met, as asserted during the interview with the Examiner.

As suggested by the Examiner, applicants have canceled independent claims 1 and 28. Further, while applicants have amended claim 29 to further refine the claimed composition so as to fully protect the present inventive subject matter, applicants have also amended claim 29 to indicate that the recited weight ratio of first fatty acid to second fatty acid is critical to providing the specific pharmacologic and therapeutic effect of enriching the woman's breast milk so as to optimize neurological development of an infant breast-fed by the woman. Lastly, applicants have amended the claims so that claims 9-27 now depend from claim 29 rather than claim 1 as discussed.

The presently pending claims are unobvious over the references cited by the Examiner. In particular, pending claim 29 requires as the first two essential components:

a) about 10 mg to 100 mg of a first fatty acid compound selected from the group consisting of LA, ALA, a derivative thereof, and a combination thereof; and

b) about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of DHA, an omega-3

-10-

USSN 09/885,158
HERMELIN et al.

fatty acid, an omega-2 fatty acid, a derivative thereof

and a combination thereof;

wherein the weight ratio of said first fatty acid compound to said

second fatty acid compound is about 1:0.1 to 10, said weight ratio

specifically formulated to enrich the woman's breast milk so as to

optimize neurological development of an infant breast-fed by the

woman.

Accordingly, the presently pending claims require both an

immediate and a continuous bioavailable source of fatty acids via

the administration of both fatty acids (component 2) and precursors

to these fatty acids (component 1). The references cited by the

Examiner, taken alone or in combination, do not disclose

compositions containing both of these essential components.

In particular, Clark et al. teaches compositions of Formulae

A-C which contain LA and ALA as the only fatty acid components. See

Table 1.   Clark et al. disclose that administration of these

compositions to infants results in the presence of AA and DHA in

infant plasma and erythrocytes. See, in this regard, page 152,

column 2, lines 1-4, which clearly states, "These results

demonstrate that the plasma levels and erythrocytes of term infants

fed formulas containing a fat blend with a high ratios of linoleic

acid to alpha-linolenic acid are as susceptible to reduction of DHA

levels as has been reported in preterm infants." However, nowhere

do Clark et al. disclose the incorporation of AA, DHA, or any other

USSN 09/885,158
HERMELIN et al.

omega-3 or omega-2 fatty acids into the compositions themselves, as required by the presently claimed invention; instead, the Clark et al. compositions contain only the precursors to AA and DHA (i.e. LA and ALA) rather than a combination of the precursors to these fatty acids and the fatty acids themselves. Further, the Declaration filed on April 17, 2002 clearly indicates that the cited reference lacks this teaching or suggestion.

Additionally, the presently pending claims require a specific weight ratio of first fatty acid to second fatty acid. This ratio is essential for augmenting and improving the bioavailability of omega-3 and omega-2 fatty acids to the infant via the woman's breast milk, as discussed in the Declaration filed on April 17, 2002. A composition containing amounts of first and second fatty acids which fall outside the weight ratio of 1:0.1 to 10 would not be effective for enriching a woman's breast milk so as to optimize neurological development of an infant breast-fed by the woman. Since Clark et al. do not disclose any compositions containing the second fatty acid of the present claims, it is impossible for Clark et al. to disclose the required ratio of first fatty acid to second fatty acid. Lucas et al., FDA, and Alvarez et al. do not remedy these deficiencies.

As stated above in section b, none of Lucas et al., FDA, and Alvarez et al. in any way disclose compositions which contain DHA, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof

USSN 09/885,158
HERMELIN et al.

or a combination thereof, as required by the presently pending claims. Since none of the references disclose any compositions containing the second fatty acid of the present claims, it is impossible for the references, taken alone or in combination, to disclose the essential ratio of first fatty acid to second fatty acid required by the presently pending claims.

Accordingly, the references cited by the Examiner, taken alone or in combination, do not teach each and every limitation of presently pending claim 1 (i.e. compositions containing the second fatty compound, as well as compositions having amounts of the first and second fatty acid components in the essential weight ratio) as required by *In re Wilson*. Therefore, the presently claimed invention is unobvious over the combination of references cited by the Examiner.

Further, the Examiner's statement,"The claims merely recite the obvious employment of old and well known active ingredients, carriers and excipients," incorrectly interprets the disclosure of the cited reference. As shown above, none of the cited references disclose the inclusion of a second fatty acid compound as defined by the presently pending claims. Accordingly, the presently pending claims do more than recite the obvious employment of old and well known active ingredients; rather, the claimed compositions include an essential second fatty acid component. The Examiner has failed to show that the essential second fatty acid components were

-13-

USSN 09/885,158
HERMELIN et al.

previously known to be used in any way as active ingredients, carriers, or excipients in compositions.

Further, applicants respectfully traverse the Examiner's statement that, "Determining the active ingredient dosage level required to effect optimal therapeutic benefit is well within the Skilled Artisan's purview and the benefits of achieving such maximization obvious, to said skilled artisan." As evidenced by the primary reference, Clark et al., the determination of which fatty acids and fatty acid combinations are to be included in a formula and in what amounts and ratios are complex questions under continued investigation. See page 156, column 2, lines 1-15, which discusses the varied, and often non-correlating, profiles produced by different formulations. Therefore, it would not be within the purview of one skilled in the art to determine the active ingredient dosage level required to effect optimal therapeutic benefit. Nor would the benefits of achieving such maximization be obvious to one of skill in the art.

Accordingly, applicants respectfully request the Examiner to reconsider and withdraw the rejection of pending claims 9-27, 29, and 56-58.


## CONCLUSION

Based upon the above remarks, the presently claimed subject matter is believed to be novel and patentably distinguishable over

USSN 09/885,158
HERMELIN et al.

the references of record.  The Examiner is therefore respectfully requested to reconsider and withdraw the outstanding rejection and allow all pending claims 9-27, 29, and 56-58 presented herein for reconsideration.  Favorable action with an early allowance of the claims pending in this application is earnestly solicited.

The Examiner is welcomed to telephone the undersigned attorney if he has any questions or comments.

Respectfully submitted,

**NATH & ASSOCIATES PLLC**

Date: _November 1, 2002_

**NATH & ASSOCIATES** PLLC
1030 Fifteenth Street, N.W.
Sixth Floor
Washington, D.C.  20005
Tel:  (202) 775-8383
Fax:  (202) 775-8396

GMN:TEH

Gary M. Nath
Reg. No. 26,965
Joshua B. Goldberg
Reg. No. 44,126
Customer No. 20529

-15-

PATENT
Attorney Docket No. 23818-Y

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

Marc S. Hermelin et al.                    Examiner: R. Travers

Serial No.:    09/885,158                   Art Unit: 1617

Filing Date:   June 21, 2001

For:        **NUTRITIONAL SUPPLEMENTS**

<u>**APPENDIX A**</u>

Please cancel claims 1-8, 28, and 30-31, amend the following claims 9, 11-14, 17-22, 25-27, and 29, and add new claims 56-58 as indicated in the following marked up copy of the claims.

9.  (Once Amended) The composition of claim [1] <u>29</u>, wherein said composition additionally contains a biologically active substance.

11. (Once Amended) The composition of claim [1] <u>29</u>, wherein said composition is administered during a period commencing no later than the tenth week of pregnancy.

12. (Once Amended) The composition of claim [1] <u>29</u>, wherein said composition is administered during a period of time commencing at least at about the tenth week of pregnancy.

USSN 09/885,158
HERMELIN et al.
APPENDIX A

13. (Once Amended) The composition of claim [1] 29, wherein said composition is adapted to meet specific physiological needs of a breast-feeding mother.

14. (Once Amended) The composition of claim [1] 29, wherein said composition is in an oral dosage form.

17. (Once Amended) The composition of claim [1] 29, wherein said composition is administered once during a twenty four hour period of time.

18. (Once Amended) The composition of claim [1] 29, wherein said composition is administered at least twice during a twenty four hour period of time.

19. (Once Amended) The composition of claim [1] 29, wherein said composition increases lactogenesis.

20. (Once Amended) The composition of claim [1] 29, wherein said composition increases the quantity of breast milk produced during lactation.

2

USSN 09/885,159
HERMELIN et al.
APPENDIX A

21. (Once Amended) The composition of claim [1] 29, wherein said composition prevents deficiency of essential fatty acids in the woman.

22. (Once Amended) The composition of claim [1] 29, wherein said composition is provided with indicia indicating a time period of use.

25. (Once Amended) The composition of claim [1] 29, wherein said composition extends the duration of the period of lactation.

26. (Once Amended) The composition of claim [1] 29, wherein said composition improves quality of said breast milk.

27. (Once Amended) The composition of claim [1] 29, wherein said composition achieves enrichment of said breast milk through a natural biological pathway.

29. (Once Amended) A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-fed by the woman, which comprises:

3

USSN 09/885,158
HERMELIN et al.
APPENDIX A

a) about 10 mg to 100 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof;

b) about 10 mg to [100] 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof;

c) about [20] 10 mg to 125 mg of a vitamin $B_6$ compound or derivative thereof;

d) about 0.1 mg to 3 mg of a folic acid compound or derivative thereof;

e) about 100 mg to 2,000 mg of a calcium compound or derivative thereof;

[f) about 25 mg to 400 mg of a magnesium compound or derivative thereof;

g)] f) about 25 mg to 500 mg of a vitamin C compound or derivative thereof;

[h)] g) about 10 mg to 400 mg of a vitamin E compound or derivative thereof; and

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10, said weight

4

USSN 09/885,158
HERMELIN et al.
APPENDIX A

ratio specifically formulated to enrich the breast milk of the
woman to optimize neurological development of an infant breast-fed
by the woman.

Please add the following new claims.

56. (New) The composition of claim 29, additionally comprising
a vitamin compound selected from the group consisting of a vitamin
A compound, a B complex vitamin compound, a vitamin D compound, and
combinations thereof.

57. (New) The composition of claim 29, further comprising a
biologically-acceptable mineral compound which is iron.

58. (New) A composition for administration to a woman for
enriching the breast milk of said woman to optimize neurological
development of an infant breast-fed by the woman, which comprises:

a) about 10 mg to about 100 mg of a first fatty acid compound
for each compound selected from the group consisting of a linoleic
acid compound, a linolenic acid compound, a derivative thereof and
a combination thereof;

b) about 10 mg to about 1000 mg of a second fatty acid
compound for each compound selected from the group consisting of a

5

USSN 09/885,158
HERMELIN et al.
APPENDIX A

docosahexaenoic acid compound, an omega-3 fatty acid compound, an omega-2 fatty acid compound, a derivative thereof and a combination thereof;

c) a vitamin compound selected from the group consisting of about 10 mg to about 200 mg of a vitamin $B_6$ compound or derivative thereof, about 0.1 mg to about 3 mg of a folic acid compound or derivative thereof, about 25 mg to about 500 mg of a vitamin C compound or derivative thereof, about 10 mg to about 400 mg of a vitamin E compound or derivative thereof, and combinations thereof; and

d) a biologically acceptable mineral compound which is selected from the group consisting of about 100 mg to about 2000 mg of a calcium compound or derivative thereof, about 25 mg to about 400 mg of a magnesium compound or derivative thereof, and combinations thereof;

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10, said weight ratio specifically formulated to enrich the breast milk of the woman to optimize neurological development of an infant breast-fed by the woman.

**PATENT**
Attorney Docket No. 23818-Y

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of:

Marc S. Hermelin et al.                    Examiner: R. Travers

Serial No.:   09/885,158                   Art Unit: 1617

Filing Date:  June 21, 2001

For:          **NUTRITIONAL SUPPLEMENTS**

**APPENDIX B**

Please cancel claims 1-8, 28, and 30-31, amend the following claims 9, 11-14, 17-22, 25-27, and 29, and add new claims 56-58 as indicated in the following clean copy of the claims.



9. (Once Amended) The composition of claim 28, wherein said composition additionally contains a biologically active substance.

4. (Once Amended) The composition of claim 28, wherein said composition is administered during a period commencing no later than the tenth week of pregnancy.

5. (Once Amended) The composition of claim 28, wherein said composition is administered during a period of time commencing at least at about the tenth week of pregnancy.

6. (Once Amended) The composition of claim 28, wherein said

USSN 09/885,158
HERMELIN et al.
APPENDIX B

composition is adapted to meet specific physiological needs of a breast-feeding mother.

24. (Once Amended) The composition of claim 28, wherein said composition is in an oral dosage form.

27. (Once Amended) The composition of claim 28, wherein said composition is administered once during a twenty four hour period of time.

18. (Once Amended) The composition of claim 28, wherein said composition is administered at least twice during a twenty four hour period of time.

19. (Once Amended) The composition of claim 28, wherein said composition increases lactogenesis.

20. (Once Amended) The composition of claim 28, wherein said composition increases the quantity of breast milk produced during lactation.

21. (Once Amended) The composition of claim 28, wherein said composition prevents deficiency of essential fatty acids in the

2

USSN 09/885,158
HERMELIN et al.
APPENDIX B

woman.

*15*

~~22~~. (Once Amended) The composition of claim ~~26~~ *1*, wherein said composition is provided with indicia indicating a time period of use.

*B4 18*

~~23~~. (Once Amended) The composition of claim ~~26~~ *1*, wherein said composition extends the duration of the period of lactation.

*19*

~~26~~. (Once Amended) The composition of claim ~~29~~ *1*, wherein said composition improves quality of said breast milk.

*20*

~~21~~. (Once Amended) The composition of claim ~~26~~ *1*, wherein said composition achieves enrichment of said breast milk through a natural biological pathway.

~~28~~. (Once Amended) A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-fed by the woman, which comprises:

a) about 10 mg to 100 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a

3

USSN 09/885,158
HERMELIN et al.
APPENDIX B

combination thereof;

b) about 10 mg to 1000 mg of a second fatty acid compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid, an omega-2 fatty acid, a derivative thereof and a combination thereof;

c) about 10 mg to 125 mg of a vitamin $B_6$ compound or derivative thereof;

d) about 0.1 mg to 3 mg of a folic acid compound or derivative thereof;

e) about 100 mg to 2,000 mg of a calcium compound or derivative thereof;

f) about 25 mg to 500 mg of a vitamin C compound or derivative thereof;

g) about 10 mg to 400 mg of a vitamin E compound or derivative thereof; and

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10, said weight ratio specifically formulated to enrich the breast milk of the woman to optimize neurological development of an infant breast-fed by the woman.

Please add the following new claims.

4

USSN 09/985,158
HERMELIN et al.
APPENDIX B

26. (New) The composition of claim 25, additionally comprising a vitamin compound selected from the group consisting of a vitamin A compound, a B complex vitamin compound, a vitamin D compound, and combinations thereof.

27. (New) The composition of claim 26, further comprising a biologically-acceptable mineral compound which is iron.

28. (New) A composition for administration to a woman for enriching the breast milk of said woman to optimize neurological development of an infant breast-fed by the woman, which comprises:

a) about 10 mg to about 100 mg of a first fatty acid compound for each compound selected from the group consisting of a linoleic acid compound, a linolenic acid compound, a derivative thereof and a combination thereof;

b) about 10 mg to about 1000 mg of a second fatty acid compound for each compound selected from the group consisting of a docosahexaenoic acid compound, an omega-3 fatty acid compound, an omega-2 fatty acid compound, a derivative thereof and a combination thereof;

c) a vitamin compound selected from the group consisting of about 10 mg to about 200 mg of a vitamin $B_6$ compound or derivative thereof, about 0.1 mg to about 3 mg of a folic acid compound or

5

USSN 09/885,158
HERMELIN et al.
APPENDIX B

derivative thereof, about 25 mg to about 500 mg of a vitamin C compound or derivative thereof, about 10 mg to about 400 mg of a vitamin E compound or derivative thereof, and combinations thereof; and

d) a biologically acceptable mineral compound which is selected from the group consisting of about 100 mg to about 2000 mg of a calcium compound or derivative thereof, about 25 mg to about 400 mg of a magnesium compound or derivative thereof, and combinations thereof;

wherein the weight ratio of said first fatty acid compound to said second fatty acid compound is about 1:0.1 to 10, said weight ratio specifically formulated to enrich the breast milk of the woman to optimize neurological development of an infant breast-fed by the woman.



| *Notice of Allowability* | Application No. 09/885,158 | Applicant(s) Hermelin et al |
|---|---|---|
| | Examiner R.S. Travers J.D., Ph.D. | Art Unit 1617 |

**--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *11/01/02*.

2. ☒ The allowed claim(s) is/are *9-27, 29, and 56-58*.

3. ☐ The drawings filed on _____ are accepted by the Examiner.

4. ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).
   a) ☐ All   b) ☐ Some*   c) ☐ None   of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   *Certified copies not received: _____

5. ☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).
   (a) ☐ The translation of the foreign language provisional application has been received.

6. ☒ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

7. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

8. ☐ CORRECTED DRAWINGS must be submitted.
   (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review (PTO-948) attached
      1) ☐ hereto  or  2) ☐ to Paper No. _____.
   (b) ☐ including changes required by the proposed drawing correction filed _____, which has been approved by the examiner.
   (c) ☐ including changes required by the attached Examiner's Amendment/Comment or in the Office action of Paper No. _____.

   Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the top margin (not the back) of each sheet. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.

9. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1 ☐ Notice of References Cited (PTO-892)
2 ☐ Notice of Informal Patent Application (PTO-152)
3 ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
4 ☐ Interview Summary (PTO-413), Paper No. _____.
5 ☐ Information Disclosure Statement(s) (PTO-1449), Paper No(s). _____
6 ☐ Examiner's Amendment/Comment
7 ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
8 ☒ Examiner's Statement of Reasons for Allowance
9 ☐ Other

R.S. TRAVERS J.D., PH.D.
PRIMARY EXAMINER
ART UNIT 1617

U.S. Patent and Trademark Office
PTO-37 (Rev. 04-01)     Notice of Allowability     Part of Paper No. 12

Application/Control Number: 09/885,158                                    Page 2

Art Unit:

## REASONS FOR ALLOWANCE

The amendment , rebuttal arguments and request for continuing examination filed November 1, 2002 have been received and entered into the file.

Arguments regarding the unobvious nature of the claimed compositions are convincing.   In view of the presented amendments, Examiner embraces the presented rebuttal argument; it would not be obvious for the skilled artisan to employ the claimed compounds concomitantly and expect the therapeutic effect herein claimed.

The skilled artisan would not expect the claimed compounds to produce the illustrated  pharmacological effect, claimed herein.

Applicant's amendments distance the instant claims from the prior art compositions.   An exhaustive literature search failed to produce any reference to the claimed compounds for the use herein claimed.  Although compounds claimed by Applicant, reside in the prior, the prior art use fails to state, or suggest those claimed compounds in the amounts, or ratios herein claimed.  No suggestion resides in the prior art for optimizing the herein claimed ingredients in the manner claimed.

Any inquiry concerning this communication should be directed to Russell Travers at telephone number (703) 308-4603.

RUSSELL TRAVERS
PRIMARY EXAMINER
GROUP 1200

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

## NOTICE OF ALLOWANCE AND FEE(S) DUE

7590       01/28/2003

Gary M. Nath
NATH & ASSOCIATES PLLC
1030 15th Street, N.W. - 6th Floor
Washington, DC 20005

| EXAMINER |
| --- |
| TRAVERS, RUSSELL S |

| ART UNIT | CLASS-SUBCLASS |
| --- | --- |
| 1617 | 514-560000 |

DATE MAILED: 01/28/2003

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 09/885,158 | 06/21/2001 | Marc S. Hermelin | 23818Y | 5214 |

TITLE OF INVENTION: NUTRITIONAL SUPPLEMENTS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- |
| nonprovisional | NO | $1300 | $300 | $1600 | 04/28/2003 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS** FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. **THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE REFLECTS A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE APPLIED IN THIS APPLICATION. THE PTOL-85B (OR AN EQUIVALENT) MUST BE RETURNED WITHIN THIS PERIOD EVEN IF NO FEE IS DUE OR THE APPLICATION WILL BE REGARDED AS ABANDONED.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is the same, pay the TOTAL FEE(S) DUE shown above.

B. If the status is changed, pay the PUBLICATION FEE (if required) and twice the amount of the ISSUE FEE shown above and notify the United States Patent and Trademark Office of the change in status, or

If the SMALL ENTITY is shown as NO:

A. Pay TOTAL FEE(S) DUE shown above, or

B. If applicant claimed SMALL ENTITY status before, or is now claiming SMALL ENTITY status, check the box below and enclose the PUBLICATION FEE and 1/2 the ISSUE FEE shown above.

☐ Applicant claims SMALL ENTITY status. See 37 CFR 1.27.

II. PART B - FEE(S) TRANSMITTAL should be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). Even if the fee(s) have already been paid, Part B - Fee(s) Transmittal should be completed and returned. If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 4

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: <u>Mail</u>  Box ISSUE FEE
Commissioner for Patents
Washington, D.C. 20231
<u>Fax</u>  (703)746-4000

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

7590    01/28/2003

Gary M. Nath
NATH & ASSOCIATES PLLC
1030 15th Street, N.W. - 6th Floor
Washington, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above, or being facsimile transmitted to the USPTO, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/885,158 | 06/21/2001 | Marc S. Hermelin | 23818Y | 5214 |

TITLE OF INVENTION: NUTRITIONAL SUPPLEMENTS

| APPLN. TYPE | SMALL ENTITY | ISSUE FEE | PUBLICATION FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|
| nonprovisional | NO | $1300 | $300 | $1600 | 04/28/2003 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| TRAVERS, RUSSELL S | 1617 | 514-560000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required.

2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the USPTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                          (B) RESIDENCE: (CITY and STATE or COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent)  ☐ individual  ☐ corporation or other private group entity  ☐ government

4a. The following fee(s) are enclosed:

☐ Issue Fee
☐ Publication Fee
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s):

☐ A check in the amount of the fee(s) is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The Commissioner is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

Commissioner for Patents is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.

(Authorized Signature)                          (Date)

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

TRANSMIT THIS FORM WITH FEE(S)

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004. OMB 0651-0033    U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/885,158 | 06/21/2001 | Marc S. Hermelin | 23818Y | 5214 |

7590 01/28/2003

Gary M. Nath
NATH & ASSOCIATES PLLC
1030 15th Street, N.W. - 6th Floor
Washington, DC 20005

| EXAMINER |
|---|
| TRAVERS, RUSSELL S |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 01/28/2003

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (application filed on or after May 29, 2000)

The patent term adjustment to date is 0 days. If the issue fee is paid on the date that is three months after the mailing date of this notice and the patent issues on the Tuesday before the date that is 28 weeks (six and a half months) after the mailing date of this notice, the term adjustment will be 0 days.

If a continued prosecution application (CPA) was filed in the above-identified application, the filing date that determines patent term adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) system. (http://pair.uspto.gov)

Any questions regarding the patent term extension or adjustment determination should be directed to the Office of Patent Legal Administration at (703)305-1383.

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/885,158 | 06/21/2001 | Marc S. Hermelin | 23818Y | 5214 |

| | | EXAMINER |
|---|---|---|
| 7590 | 01/28/2003 | TRAVERS, RUSSELL S |

Gary M. Nath
NATH & ASSOCIATES PLLC
1030 15th Street, N.W. - 6th Floor
Washington, DC 20005
UNITED STATES

| ART UNIT | PAPER NUMBER |
|---|---|
| 1617 | |

DATE MAILED: 01/28/2003

### Notice of Fee Increase on January 1, 2003

If a reply to a "Notice of Allowance and Fee(s) Due" is filed in the Office on or after January 1, 2003, then the amount due will be higher than that set forth in the "Notice of Allowance and Fee(s) Due" since there will be an increase in fees effective on January 1, 2003. See Revision of Patent and Trademark Fees for Fiscal Year 2003; Final Rule, 67 Fed. Reg. 70847, 70849 (November 27, 2002).

The current fee schedule is accessible from: http://www.uspto.gov/main/howtofees.htm.

If the issue fee paid is the amount shown on the "Notice of Allowance and Fee(s) Due," but not the correct amount in view of the fee increase, a "Notice to Pay Balance of Issue Fee" will be mailed to applicant. In order to avoid processing delays associated with mailing of a "Notice to Pay Balance of Issue Fee," if the response to the Notice of Allowance and Fee(s) due form is to be filed on or after January 1, 2003 (or mailed with a certificate of mailing on or after January 1, 2003), the issue fee paid should be the fee that is required at the time the fee is paid. If the issue fee was previously paid, and the response to the "Notice of Allowance and Fee(s) Due" includes a request to apply a previously-paid issue fee to the issue fee now due, then the difference between the issue fee amount at the time the response is filed and the previously paid issue fee should be paid. See Manual of Patent Examining Procedure, Section 1308.01 (Eighth Edition, August 2001).

Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at (703) 305-8283.

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004.



## PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s) to: **Mail**   **Box ISSUE FEE**
Commissioner for Patents
Washington, D.C. 20231
**Fax**   **(703)746-4000**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

7390    01/28/2003

Gary M. Nath
NATH & ASSOCIATES PLLC
1030 15th Street, N.W. - 6th Floor
Washington, DC 20005

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above, or being facsimile transmitted to the USPTO, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/885,158 | 06/21/2001 | Marc S. Hermelin | 23818Y | 5214 |

TITLE OF INVENTION: NUTRITIONAL SUPPLEMENTS

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363). | 2. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. | Nath & Associates PLLC |
|---|---|---|
| ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached. | | 1 _____ |
| ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. Use of a Customer Number is required. | | 2  Gary M. Nath |
| | | 3 _____ |

data

3. ☐ Advance Order - # of Copies _____ **10**

3. ☐ The Commissioner is hereby authorized by charge the required fee(s), or credit any overpayment, to Deposit Account Number **74-0112** (enclose an extra copy of this form).

Commissioner for Patents is requested to apply the Issue Fee and Publication Fee (if any) or to re-apply any previously paid issue fee to the application identified above.

| (Authorized Signature) | (Date) |
|---|---|
| _Gary M. Nath_    Gary M. Nath | 04/28/2003 |

Reg. No. 26,965

NOTE: The Issue Fee and Publication Fee (if required) will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the United States Patent and Trademark Office.

This collection of information is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, Washington, DC 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, Washington, DC 20231.

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**TRANSMIT THIS FORM WITH FEE(S)**

PTOL-85 (REV. 04-02) Approved for use through 01/31/2004. OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

06/25/2001 DTESSEM1 00000019 09885158

01 FC:101          710.00 OP
02 FC:103          198.00 OP
03 FC:102          160.00 OP

PTO-1556
(5/87)
*U.S. GPO: 2000-468-987/39595

| PATENT APPLICATION FEE DETERMINATION RECORD | Application or Docket Number |
|---|---|
| Effective October 1, 2000 | |

## CLAIMS AS FILED - PART I

| | (Column 1) | (Column 2) |
|---|---|---|
| TOTAL CLAIMS | 31 | |
| FOR | NUMBER FILED | NUMBER EXTRA |
| TOTAL CHARGEABLE CLAIMS | 31 minus 20= | *11 |
| INDEPENDENT CLAIMS | 5 minus 3 = | *2 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | ☐ |

| SMALL ENTITY TYPE ☐ | | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|
| RATE | FEE | | | RATE | FEE |
| BASIC FEE | 355.00 | | OR | BASIC FEE | 710.00 |
| X$ 9= | | | OR | X$18= | 198 |
| X40= | -- | | OR | X80= | 160 |
| +135= | | | OR | +270= | |
| TOTAL | | | OR | TOTAL | 1068 |

* If the difference in column 1 is less than zero, enter "0" in column 2

## CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | (Column 1) | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|
| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| Total | * | Minus | ** | = | X$ 9= | | OR | X$18= | |
| Independent | * | Minus | *** | = | X40= | | OR | X80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +135= | | OR | +270= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | (Column 1) | (Column 2) | (Column 3) | | | OR | | |
|---|---|---|---|---|---|---|---|---|
| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| Total | * | Minus | ** | = | X$ 9= | | OR | X$18= | |
| Independent | * | Minus | *** | = | X40= | | OR | X80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +135= | | OR | +270= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | (Column 1) | (Column 2) | (Column 3) | | | OR | | |
|---|---|---|---|---|---|---|---|---|
| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | | RATE | ADDI-TIONAL FEE |
| Total | * | Minus | ** | = | X$ 9= | | OR | X$18= | |
| Independent | * | Minus | *** | = | X40= | | OR | X80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM ☐ | | | | +135= | | OR | +270= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

# CLAIMS ONLY

| SERIAL NO. | FILING DATE |
|---|---|
| O9885158 | |

APPLICANT(S)

## CLAIMS

| | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | | | * | | * | | * | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. | | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | ı | | | | | | 51 | | | | | | |
| 2 | | ı | | | | | 52 | | | | | | |
| 3 | | ı | | | | | 53 | | | | | | |
| 4 | | ı | | | | | 54 | | | | | | |
| 5 | | ı | | | | | 55 | | | | | | |
| 6 | | ı | | | | | 56 | | | | | | |
| 7 | | ı | | | | | 57 | | | | | | |
| 8 | ı | | | | | | 58 | | | | | | |
| 9 | | ı | | | | | 59 | | | | | | |
| 10 | | | | | | | 60 | | | | | | |
| 11 | | ı | | | | | 61 | | | | | | |
| 12 | | ı | | | | | 62 | | | | | | |
| 13 | | ı | | | | | 63 | | | | | | |
| 14 | | ı | | | | | 64 | | | | | | |
| 15 | | ı | | | | | 65 | | | | | | |
| 16 | | ı | | | | | 66 | | | | | | |
| 17 | | ı | | | | | 67 | | | | | | |
| 18 | | ı | | | | | 68 | | | | | | |
| 19 | | ı | | | | | 69 | | | | | | |
| 20 | | | | | | | 70 | | | | | | |
| 21 | | | | | | | 71 | | | | | | |
| 22 | | ı | | | | | 72 | | | | | | |
| 23 | | ı | | | | | 73 | | | | | | |
| 24 | | ı | | | | | 74 | | | | | | |
| 25 | | ı | | | | | 75 | | | | | | |
| 26 | | ı | | | | | 76 | | | | | | |
| 27 | | | | | | | 77 | | | | | | |
| 28 | ı | | | | | | 78 | | | | | | |
| 29 | ı | | | | | | 79 | | | | | | |
| 30 | ı | | | | | | 80 | | | | | | |
| 31 | ı | | | | | | 81 | | | | | | |
| 32 | | | | | | | 82 | | | | | | |
| 33 | | | | | | | 83 | | | | | | |
| 34 | | | | | | | 84 | | | | | | |
| 35 | | | | | | | 85 | | | | | | |
| 36 | | | | | | | 86 | | | | | | |
| 37 | | | | | | | 87 | | | | | | |
| 38 | | | | | | | 88 | | | | | | |
| 39 | | | | | | | 89 | | | | | | |
| 40 | | | | | | | 90 | | | | | | |
| 41 | | | | | | | 91 | | | | | | |
| 42 | | | | | | | 92 | | | | | | |
| 43 | | | | | | | 93 | | | | | | |
| 44 | | | | | | | 94 | | | | | | |
| 45 | | | | | | | 95 | | | | | | |
| 46 | | | | | | | 96 | | | | | | |
| 47 | | | | | | | 97 | | | | | | |
| 48 | | | | | | | 98 | | | | | | |
| 49 | | | | | | | 99 | | | | | | |
| 50 | | | | | | | 100 | | | | | | |
| TOTAL IND. | 5 | | | | | | TOTAL IND. | | | | | | |
| TOTAL DEP. | 26 | | | | | | TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | 31 | | | | | | TOTAL CLAIMS | | | | | | |

*MAY BE USED FOR ADDITIONAL CLAIMS OR ADMENDMENTS

FORM PTO-2022 (1-98)

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

*U.S. GPO: 1998-443-593/89152

ISSUE SLIP STAPLE AREA (for additional cross references)

| POSITION | INITIALS | ID NO. | DATE |
|---|---|---|---|
| FEE DETERMINATION | Daniel | | 06-22-01 |
| O.I.P.E. CLASSIFIER | | | |
| FORMALITY REVIEW | YG | 956 | 07/11/01 |
| RESPONSE FORMALITY REVIEW | | | |
| | | | |

## INDEX OF CLAIMS

| | | | |
|---|---|---|---|
| ✔ | ...................... Rejected | N | ...................... Non-elected |
| = | ...................... Allowed | I | ...................... Interference |
| — | (Through numeral)... Canceled | A | ...................... Appeal |
| ÷ | ...................... Restricted | O | ...................... Objected |

If more than 150 claims or 10 actions
staple additional sheet here

(LEFT INSIDE)



## SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 514 | 560 | 12/6/01 | ⊃ |
| 514 | 345 | | |
| 514 | 249 | | |
| 514 | 474 | | |
| 514 | 458 | | |

*(Update coverage)*

## SEARCH NOTES
**(INCLUDING SEARCH STRATEGY)**

STN+West
Compound+
method
deft for
Engl

| | Date | Exmr. |
|-------|------|-------|
| | 12/4/01 | ⊃ |

### INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 514 | 560 | 1/23/03 | ⊃ |
| | 345 | | |
| | 249 | | |
| | 474 | | |
| | 458 | | |

(RIGHT OUTSIDE)

**Siddiqui, Sophia**

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Tuesday, June 24, 2008 5:46 PM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:08-cv-00338-JJF Lannett Company Inc. v. KV Pharmaceuticals et al Motion for Leave to Appear Pro Hac Vice |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered by Siddiqui, Sophia on 6/24/2008 at 5:46 PM EDT and filed on 6/24/2008

| | |
|---|---|
| **Case Name:** | Lannett Company Inc. v. KV Pharmaceuticals et al |
| **Case Number:** | 1:08-cv-338 |
| **Filer:** | Lannett Company Inc. |
| **Document Number:** | 41 |

**Docket Text:**
**MOTION for Pro Hac Vice Appearance of Attorney Gerard P. Norton - filed by Lannett Company Inc.. (Attachments: # (1) Text of Proposed Order Granting Motion, # (2) Certification by Counsel to be Admitted Pro Hac Vice, # (3) Certificate of Service) (Siddiqui, Sophia)**

**1:08-cv-338 Notice has been electronically mailed to:**

Frederick L. Cottrell , III    cottrell@rlf.com, bartell@rlf.com, cathers@rlf.com, garvey@rlf.com

Anne Shea Gaza    gaza@rlf.com, bartell@rlf.com, garvey@rlf.com

Chad Michael Shandler    shandler@rlf.com, pstewart@rlf.com

Sophia Siddiqui    ssiddiqui@foxrothschild.com

**1:08-cv-338 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/24/2008] [FileNumber=588362-0]
[3cb460dc61ca1f5108dba076c7e4dc2ac9d9c65c0e9fec856a4d652a386bd52b4ba4
a051c4cf26bd350e98360ca623319a5f28556ee8f95f532b1eb0e9a627f4]]
**Document description:**Text of Proposed Order Granting Motion
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/24/2008] [FileNumber=588362-1]
[0b554f0141c379f76d6211ec950fc9eba721b7f4b91740f44d2a39d60c422c0fd3e5
38ca1b162605972159d850564398ab2b1239877792dda6313a08c801ce33]]
**Document description:** Certification by Counsel to be Admitted Pro Hac Vice
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/24/2008] [FileNumber=588362-2]
[3453be9fe789c71063e5acb55b3f25ae13ea9e04eef2f74906487ca8aaf2dc9f6cfc
58a252dbf1fdb3f1ad652a836a10306e6b53f496df57c5a9ca60c776da57]]
**Document description:** Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/24/2008] [FileNumber=588362-3]
[57499bb6dbd5f37c102137809cfdd7dc7313988db3a8797523671019c3b9673588e2
d780ca0ed5fa0fdb7f1da7537118c88342f4d9413887eb1e9a6189c094f5]]

## Siddiqui, Sophia

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Tuesday, June 24, 2008 5:43 PM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:08-cv-00338-JJF Lannett Company Inc. v. KV Pharmaceuticals et al Motion for Leave to Appear Pro Hac Vice |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered by Siddiqui, Sophia on 6/24/2008 at 5:42 PM EDT and filed on 6/24/2008

| | |
|---|---|
| **Case Name:** | Lannett Company Inc. v. KV Pharmaceuticals et al |
| **Case Number:** | 1:08-cv-338 |
| **Filer:** | Lannett Company Inc. |
| **Document Number:** | 40 |

**Docket Text:**
**MOTION for Pro Hac Vice Appearance of Attorney Jonathan R. Lagarenne - filed by Lannett Company Inc.. (Attachments: # (1) Text of Proposed Order Order Granting Motion, # (2) Certification By Counsel to be Admitted Pro Hac Vice, # (3) Certificate of Service)(Siddiqui, Sophia)**

**1:08-cv-338 Notice has been electronically mailed to:**

Frederick L. Cottrell , III   cottrell@rlf.com, bartell@rlf.com, cathers@rlf.com, garvey@rlf.com

Anne Shea Gaza   gaza@rlf.com, bartell@rlf.com, garvey@rlf.com

Chad Michael Shandler   shandler@rlf.com, pstewart@rlf.com

Sophia Siddiqui   ssiddiqui@foxrothschild.com

**1:08-cv-338 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/24/2008] [FileNumber=588356-0]
[6682506a58fb5c7834409f5853782d9d5edaf1e7b71c9ad3464486d0165d8f4096de
dbee60f9d51f734f9876e7c3ce32eb6c2770929b6b09ead0a7ac799bb911]]
**Document description:** Text of Proposed Order Order Granting Motion
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/24/2008] [FileNumber=588356-1]
[c9ce8e939891c0f9496b179151563b14663460bfa3ffcddb68116ae33a0275a44118
427e1631343ce07c284bbf0ba6d7c8048b9ce15eb9a87cb8de1ad87b8ba1]]
**Document description:** Certification By Counsel to be Admitted Pro Hac Vice
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/24/2008] [FileNumber=588356-2]
[1e06725faba6f6bda67200fd24bb0a74a329ccbe1fdcb78ddf1507e6d1df7c69e1af
23382bed7c3d755d2885ff284db8047356e1e4e341cb6e688798c7e489f7]]
**Document description:** Certificate of Service
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/24/2008] [FileNumber=588356-3]
[aa7e153015515b085f22f8082f2b3935f7bc4892dfcdaec67df071ea0c1643a82ce6
a489a6ac5d3983291eb6ec1955b220c6b302442dfcb8012b759bd12b0629]]