**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LANNETT COMPANY INC., <br><br> *Plaintiff*, <br><br> v. <br><br> KV PHARMACEUTICALS, DRUGTECH CORPORATION, and THER-RX CORPORATION, <br><br> *Defendants.* | Civil Action No. 08-338-JJF <br><br><br> **REDACTED PUBLIC VERSION** |
| KV PHARMACEUTICAL COMPANY, THER-RX CORP., and DRUGTECH CORP., <br><br> *Counterclaim-Plaintiffs,* <br><br> v. <br><br> LANNETT COMPANY, INC., <br><br> *Counterclaim-Defendant.* | |

---

**REPLY BRIEF IN FURTHER SUPPORT OF
COUNTERCLAIM-PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

*Of counsel:*
Richard L. DeLucia
Howard J. Shire
Elizabeth A. Gardner
Charles A. Weiss
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

DATED: June 24, 2008

Frederick L. Cottrell, III (#2555)
Chad M. Shandler (#3796)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street, P.O. Box 551
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
shandler@rlf.com
*Attorneys for Counterclaim-Plaintiffs*
*KV Pharmaceutical Company, Ther-Rx Corp.,*
*and Drugtech Corp.*

RLF1-3296059-1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

LEGAL ARGUMENT ..................................................................................................... 2

I.   Ther-Rx Is Likely to Succeed on the Merits of its Patent Claim ......................................... 2

     A.   Lannett Has Not Shown that the Dosages of Fatty Acids Required by
          the '666 Patent Are Taught By the Prior Art or Obvious to One of Skill in
          the Art ................................................................................................... 3

     B.   Lannett's Expert Has Misread and Misapplied its Principal Reference ................. 3

     C.   Lannett Has Failed To Consider the Claim as a Whole, and Uses the
          Asserted Claims as a Road Map To Pick-and-Choose Through the Prior
          Art ......................................................................................................... 4

     D.   Lannett Does Not Rebut the Substantial Evidence of Objective Indicia of
          Nonobviousness ....................................................................................... 5

II.  Ther-Rx Is Likely To Succeed on the Merits of its Claim for Trademark
     Infringement .................................................................................................... 5

III. **REDACTED**                                                                          ...... 11

IV.  The Balance of Hardships Tip Sharply in Favor of Ther-Rx, and the Pain Lannett
     Would Experience Due to a Recall Is Entirely Attributable to Its Decision To
     **REDACTED**  with Infringing Product Contemporaneously with Filing its
     Declaratory Judgment Action Instead of Waiting for a Few Weeks To See if a
     Preliminary Injunction Would Be Granted ............................................................. 13

V.   The Public Interest Strongly Favors Injunctive Relief, Including a Recall of
     Lannett's Demonstrably Inferior Infringing Product ................................................ 16

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

Century 21 Real Estate Corp. v. Lendingtree, Inc.,
  425 F.3d 211 (3d Cir. 2005)...................................................................... passim

Citizens Fin. Group, Inc. v. Citizens Nat. Bank,
  383 F.3d 110 (3d Cir. 2004)............................................................................ 16

Corning Glass Works v. Jeanette Glass Co.,
  308 F. Supp. 1321 (S.D.N.Y. 1970), aff'd, 432 F.2d 784 (2d Cir. 1970) ...................... 13

Demaco Corp. v. F. von Langsdoff Licensing Ltd.,
  851 F.2d 1387 (Fed. Cir. 1988).......................................................................... 5

F. Alderete Gen. Contractors, Inc. v. United States,
  715 F.2d 1476 (Fed. Cir. 1980).......................................................................... 12

Forest Labs., Inc. v. Ivax Pharms., Inc.,
  438 F. Supp. 2d 479 (D. Del. 2006), aff'd, 501 F.2d 1263 (Fed. Cir. 2007)...................... 5

G.D. Searle & Co. v. Hudson Pharmaceutical Corp.,
  715 F.2d 837 (3d Cir. 1983) ...................................................................... 10, 11

Gillett Co. v. S.C. Johnson & Son, Inc.,
  919 F.2d 720 (Fed. Cir. 1990)........................................................................... 4

Graham v. John Deere Co.,
  383 U.S. 1 (1966)........................................................................................ 5

Gucci America, Inc. v. Daffy's Inc.,
  354 F.3d 228 (3d Cir. 2003) ............................................................................ 12

Morgenstern Chem. Co. v. G.D. Searle & Co.,
  253 F.2d 390 (3d Cir. 1958) ............................................................................. 9

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,
  290 F.3d 578 (3d Cir. 2002)............................................................................ 13

Perfect Fit Indus. v. Acme Quilting Co.,
  646 F.2d 800 (2d Cir. 1981)............................................................................ 12

Pharmacia Corp. v. Glaxosmithkline Consumer Healthcare,
  292 F. Supp. 2d 594 (D.N.J. 2003) .................................................................... 16

Playboy Enters. v. Welles, Inc.,
  279 F.3d 796 (9th Cir. 2002) ......................................................................... 7, 8

ii

Ricoh Co. v. Katun Corp.,
    Civ. No. 03-2612 (GEB), 2007 U.S. Dist. LEXIS 53287 (D.N.J. July 23, 2007) ............ 16

Ruiz v. A.B. Chance Co.,
    357 F.3d 1270 (Fed. Cir. 2004) .................................................................................... 4

Sanofi-Synthelabo v. Apotex, Inc.,
    470 F.3d 1368 (Fed. Cir. 2006) .................................................................................. 18

Syntex Labs., Inc. v. Norwich Pharmacal Co.,
    315 F. Supp. 45 (S.D.N.Y. 1970), aff'd, 437 F.2d 566 (2d Cir. 1971) ............................ 13

Upjohn Co. v. Riahom Corp.,
    641 F. Supp. 1209 (D. Del. 1986) .............................................................................. 12

Volkswagenwerk Aktiengesellschaft v. Church,
    411 F.2d 350 (9th Cir. 1969) ....................................................................................... 6

Zoller Labs., LLC v. NBTY, Inc.,
    111 Fed. Appx. 978 (10th Cir. 2004) ........................................................................... 9

## OTHER AUTHORITIES

6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
    § 31:49 (4th ed., Rel. 44, 12/2007) ........................................................................... 16

iii

## INTRODUCTION

Counterclaim-Plaintiffs (collectively, "Ther-Rx") respectfully submit this reply brief in support of their motion for a TRO and preliminary injunction against Lannett.

Ther-Rx has amply shown its entitlement to injunctive relief, and Lannett's opposition is woefully insufficient to negate that showing.  Importantly, Lannett:

- does not deny that its product infringes claims 1, 21, and 22 of the '666 patent;

- does not make a substantial showing of invalidity, but rather uses the claims of the '666 patent as a roadmap to pick-and-chose through the prior art in an effort to re-create various elements of the claims, and even then does not show that the claimed amounts of essential fatty acids were either found in the prior or obvious to a person of ordinary skill in the art;

- does not justify its use of the stylized PrimaCare ONE mark—complete with internal capitalization, partial italics script, the all-caps ONE, and striking red ink—completely encircling the top of its bottle;

- has no explanation for the leaky, misshapen, and fishy smelling gel caps of its *product, other than promising* "to take extensive discovery" of Ther-Rx concerning the provenance of its samples (the ones described in the Goedeke declaration were purchased by Ther-Rx from a pharmacy in St. Louis, and the ones described in the Vitali declaration were on the shelf at the pharmacy in Connecticut where Ms. Vitali works);

- 

### REDACTED

- offers no evidence to dispute or call into question Ther-Rx's detailed, specific, and credible showing of irreparable harm; and

- does not explain why—if a recall of its infringing product would be so painful—it **REDACTED** instead of (i) filing its declaratory judgment case several months ago or (ii) waiting for a reasonable period of time to see if it would be enjoined.

RLF1-3296059-1

The facts and law call for a TRO and preliminary injunction to restore the status quo prior to Lannett's reckless launch of its blatantly infringing knock-off of PrimaCare ONE.

## LEGAL ARGUMENT

### I.    Ther-Rx Is Likely to Succeed on the Merits of its Patent Claim

Ther-Rx's showing with respect to its claim for patent infringement goes far beyond the "likelihood of success" necessary at this stage of proceedings.

Most importantly, Lannett did not answer or contest Ther-Rx's showing of literal infringement of claims 1, 21, and 22 of the '666 patent, so infringement is plainly established.

With respect to validity, Lannett has seemingly abandoned the only defense pled with any facts in its Amended Complaint, *i.e.*, that the '609 patent (which is not the subject of this motion) is unenforceable for inequitable conduct. Now, Lannett whips up a melange of new references not identified in its Amended Complaint in an effort to find elements of the asserted '666 patent in the prior art. Its effort fails badly.

First, as shown in the Brittain Declaration that Ther-Rx submitted with its moving papers, Lannett's principal reference (the published EP '539 application) does not even hint at a dosage that provides the amounts of fatty acids claimed in the '666 patent. And even though Lannett knew of this failure from the Brittain Declaration, it still has no showing—not in the EP '539 application itself, not in its other references, and not in the knowledge of a person of ordinary skill in the art—that the claimed amounts of fatty acids were in the prior art or obvious.

Second, Lannett's expert Dr. Borenstein has misread and misapplied the EP '539 application in his declaration. Specifically, that reference does not teach any dosages, and even

2

at the dosages "arbitrarily" picked by Lannett's expert, the EP '539 application still fails to disclose or teach the claimed ranges of fatty acids recited in the claim of the '666 patent.

Third, Lannett's argument for obviousness is a clear example of using the asserted patent claims as a roadmap to pick-and-choose from the prior art the various elements of the asserted claims. Its hindsight-reconstruction approach is evident, for example, in selecting an amount of vitamin $B_6$ within the range of the asserted claims even though most of the prior art has far less.

Fourth, Lannett does not grapple with the secondary indicia of nonobviousness shown in Ther-Rx's moving papers. As the Court knows, these real-world factors can be the most important—and reliable—evidence on the issue of obviousness. They are plainly established here, and Lannett has nothing but attorney argument to answer them.

**A.    Lannett Has Not Shown that the Dosages of Fatty Acids Required by the '666 Patent Are Taught By the Prior Art or Obvious to One of Skill in the Art**

None of the references Lannett relies upon discloses or teaches the claim elements "about 10 mg to 100 mg of a first fatty acid compound" or "about 10 mg to 1000 mg of a second fatty acid compound." At best, the EP '539 application discloses the use of fatty acids, but not the claimed dosages. Lannett does not and cannot point to the knowledge of a person of ordinary skill in the art to fill in the gap of the claimed ranges of fatty acids recited in the '666 patent.

**B.    Lannett's Expert Has Misread and Misapplied its Principal Reference**

Lannett's expert Dr. Borenstein erroneously concludes that the EP '539 application teaches "proportions and ranges" of the two fatty acids recited in the '666 patent. While Dr. Borenstein points to a formulation from which the ratios of the fatty acids may be calculated, he

3

does not and cannot point to any specific range or dosage anywhere in that reference. As Ther-Rx's expert Dr. Brittain explained: "Nothing in EP '539 discloses dosages to be used in a supplement . . . . it certainly does not disclose a dosage of about 10 mg to 100 mg of a first fatty acid, or about 10 mg to 1000 mg of a second fatty acid . . . ." Brittain Decl. ¶ 39. Simply stated, there is nothing in EP '539 that discloses the claimed amounts of fatty acids.

Without a teaching or disclosure of the amount of fatty acids in the prior art, Lannett's expert "arbitrarily" picks a starting point of 10 g of formulation and conveniently obtains a dosage of 40 mg of linolenic acid – which he contends is within the claimed range of "about 10 mg to 100 mg of a first fatty acid compound." Lannett Br. at 10. It is not. What Dr. Borenstein's example shows is that with 10 g of formulation, there is 40 mg of linolenic acid and 156 mg of linoleic acid, or 196 mg of a "first fatty acid," much greater than the claimed range of "about 10 mg to 100 mg of a first fatty acid compound." Brittain Reply Decl. ¶ 9.

    **C.**    **Lannett Has Failed To Consider the Claim as a Whole, and Uses the Asserted Claims as a Road Map To Pick-and-Choose Through the Prior Art**

Lannett improperly uses hindsight to pick from the prior art in order to reconstruct the claimed composition taught in the '666 patent. Ruiz v. A.B. Chance Co., 357 F.3d 1270, 1275 (Fed. Cir. 2004) (cautioning that "hindsight reasoning, using the invention as a roadmap to find its prior art components, would discount the value of combining various existing features or principles in a new way to achieve a new result-often the very definition of invention"); Gillett Co. v. S.C. Johnson & Son, Inc., 919 F.2d 720, 724 (Fed. Cir. 1990) ("Focusing on the obviousness of substitutions and differences instead of on the invention as a whole is a legally improper way to simplify the often difficult determination of obviousness.").

4

As described above, Lannett relies on the EP '539 application's disclosure of ratios of fatty acids but ignores its ratios of vitamins and minerals in favor of the vitamins and minerals of WO '392. Neither Lannett nor its expert provides any explanation of combining EP '539 and WO '392 in this manner. Without such a showing, Lannett's obviousness analysis fails.

### D.    Lannett Does Not Rebut the Substantial Evidence of Objective Indicia of Nonobviousness

Lannett has no meaningful answer to Ther-Rx's showing of commercial success and other objective indicia of nonobviousness. The best it can do is note that other prescription prenatal vitamins containing EFAs are also on the market, but this in no way diminishes the success of PrimaCare ONE with its unique blend of EFAs, vitamins, and minerals (all contained in a single capsules). The real-world evidence of the objective indicia of nonobviousness can be the most probative available Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966); Demaco Corp. v. F. von Langsdoff Licensing Ltd., 851 F.2d 1387, 1391 (Fed. Cir. 1988); Forest Labs., Inc. v. Ivax Pharms., Inc., 438 F. Supp. 2d 479, 494 (D. Del. 2006), aff'd, 501 F.3d 1263 (Fed. Cir. 2007).

## II.    Ther-Rx Is Likely To Succeed on the Merits of its Claim for Trademark Infringement

Lannett vainly tries to argue that its repeated and prominent use of the stylized PrimaCare ONE trademark somehow qualifies as nominative fair use. But nominative fair use requires, inter alia, that the defendant's use of the trademark at issue not seek to capitalize on consumer confusion. Century 21 Real Estate Corp. v. Lendingtree, Inc., 425 F.3d 211, 219 (3d Cir. 2005) (citing New Kids On The Block v. News America Publ'n, Inc., 971 F.2d 302, 307-08 (9th Cir. 1992)). The Ninth Circuit distinguished

5

"nominative" fair use from "classic" fair use, stating that if the alleged infringer's use of the trademark referred to something other than the mark owner's product, then the traditional fair use test should be applied. Century 21, 425 F.3d at 220 (citing New Kids, 971 F.2d at 306-307 (noting that a good example of nominative use was a case where Volkswagen could not prevent an automobile repair shop from using the VOLKSWAGEN marks because the shop used such marks to merely convey information about its services)).[1]  The New Kids Court ruled that nominative use should be understood as "involving a non-trademark use of a mark . . .":

> Such nominative use of a mark -- where the only word reasonably available to describe a particular thing is pressed into service -- lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does not imply sponsorship or endorsement by the trademark holder.

Century 21, 425 F.3d at 220 (quoting New Kids, 971 F.2d at 307).

The Third Circuit has explicitly adopted a test from the Ninth Circuit[2] to evaluate whether the alleged infringer's use of plaintiff's mark qualifies as a nominative fair use. Century 21, 425 F.3d 211, 222. Once the mark owner meets its burden of proving that confusion is likely, as Ther-Rx has, the burden shifts to Lannett to demonstrate that its repeated and prominent use of the PrimaCare ONE stylized mark is nonetheless fair. Id. Lannett falls woefully short. Under the Third Circuit's test, Lannett must show:

---

[1]    Volkswagenwerk Aktiengesellschaft v. Church, 411 F.2d 350 (9th Cir. 1969).
[2]    "Given the paucity of the case law on this subject from every court other than the Court of Appeals for the Ninth Circuit, and that Court's extensive study of this issue, [the Third Circuit] consider[ed] the opinions of that Court." Century 21, 425 F.3d at 219.

RLF1-3296059-1

(1)     its repeated and prominent use of the PrimaCare ONE mark is necessary to describe both Lannett's product and Ther-Rx's PrimaCare ONE;

(2)     Lannett only uses so much of the PrimaCare ONE mark as is necessary to describe Lannett's product; and,

(3)     Lannett's conduct or language reflects the true and accurate relationship between Ther-Rx and Lannett's product.  Id.

First, it is not necessary for Lannett to repeatedly and prominently use the PrimaCare ONE stylized mark on its bottle.  Lannett can freely and accurately describe its prenatal supplement without using the PrimaCare ONE mark, let alone in its well-known stylized format. Playboy Enters. v. Welles, Inc., 279 F.3d 796, 804 (9th Cir. 2002).   Applying this standard to Lannett's use at issue, pharmacists and consumers can easily and accurately identify Lannett's product and its attributes without repeated and prominent use of the PrimaCare ONE stylized mark.

The second prong of the nominative use analysis focuses on the amount of the PrimaCare ONE mark that is used on Lannett's product, and whether this amount is appropriate.  Century 21 at 229-230.  ("the proper focus under this prong is on whether only so much of plaintiff's mark as is reasonably necessary to identify plaintiff's product or service has been used by defendant"). The Third Circuit notes that "[c]onsideration should be given at this stage to the manner in which the mark is portrayed.  For example, did the defendant use plaintiff's distinctive lettering when using the plaintiff's mark or did the defendant . . . simply use block letters . . . ." Id.  Lannett uses the same distinctive lettering as the PrimaCare ONE mark.  Indeed, this use is so prominent that the PrimaCare ONE mark functions impermissibly as a source-identifying mark.  It is the

7

most prominent mark on the Lannett bottle, and may be the <u>only</u> source-identifying mark once the pharmacy's label is applied. Vitali Reply Dec. ¶3; Weiss Reply Decl. Exhibit Q. Lannett's claim that the pharmacy label will obscure the three PrimaCare ONE marks on the top of its bottle is incorrect. As can be seen from photographs of three Lannett bottles with pharmacy labels, the PrimaCare ONE stylized mark is not covered, and indeed is the most prominent part of the labeling that remains visible once the pharmacy label is applied. Weiss Reply Decl. Ex. Q; <u>see also</u> Vitali Decl. ¶ 18; Vitali Reply Decl. ¶¶ 8-9. Unlike the examples of Stuart's brand name prenatal supplements and corresponding store brand versions, the PrimaCare ONE stylized mark impermissibly dominates the Lannett bottle. Weiss Reply Decl. Ex. P. Plus, unlike the well-known store brand logos, such as Target Corporation's famous bull's eye design, attached as Exhibit P, the Lannett mark is small and in any event could be covered by the pharmacy's label. Weiss Decl. Ex. Q; <u>see also</u> Vitali Decl. ¶ 18; Vitali Reply Decl. ¶¶ 8-9.

Lannett's repeated use of the stylized PrimaCare ONE mark around the top of the bottle also militates against a finding of fair use. <u>Playboy Enters. v. Welles, Inc.</u>, 279 F.3d 796, 804 (9th Cir. 2002).

The third prong of this analysis focuses on whether Lannett's conduct or language reflects the true and accurate relationship between Lannett and PrimaCare ONE. <u>Century 21</u>, 425 F.3d at 230. Here, a pregnant woman, who submits a prescription for PrimaCare ONE to her pharmacist and subsequently receives Lannett's product with the PrimaCare ONE stylized mark as the most prominent, and perhaps only, visible source-identifying mark, is likely to conclude, at minimum, that an affiliation exists on some level, or Lannett has authorization to use the PrimaCare ONE stylized mark. Lannett's use of the text "[c]ompare to the active ingredients in"

8

is miniature and much less readable than Lannett's slavish copy of the PrimaCare ONE stylized mark in bold red lettering. Lannett tries to hide this fact by nowhere in its papers mentioning that the "compare to" language is so much smaller.

This miniscule "compare to" language does not effectively negate an inaccurate implication of authorization, sponsorship, or endorsement. Id. at 231. The Third Circuit has explicitly instructed that courts should evaluate "what more [Lannett] could have done to prevent an improper inference regarding the relationship." Id.

Lannett's conduct clearly reveals an improper intent to affirmatively cause consumer confusion:

Why does it use the stylized version of the PrimaCare ONE mark?

Why does it use this mark three times on its bottle?

Why is the "compare to" language so much less prominent than PrimaCare ONE?

Why is PrimaCare ONE the most prominent trademark on the Lannett bottle?

Tellingly, Lannett does not answer any of these questions.

Lannett bears the burden of showing that its use of the stylized PrimaCare ONE mark is fair under all three factors. But Lannett has not and cannot prevail on any of these factors. Accordingly, Lannett's unauthorized use of the stylized PrimaCare ONE mark is infringing.

None of the cases Lannett cites for the proposition that "use of another's trademark in comparative advertising is permissible" (Lannett's Response Brief at 18) addresses the use of a

9

plaintiff's mark in connection with prescription drugs and its attendant public health concerns.[3]

Of the five comparative advertising cases Lannett cites, only <u>Zoller Labs., LLC v. NBTY, Inc.</u>,

111 Fed. Appx. 978 (10th Cir. 2004) and <u>G.D. Searle & Co. v. Hudson Pharmaceutical Corp.</u>,

715 F.2d 837, 841 (3d Cir. 1983) concern any supplements: an OTC weight loss dietary

supplement and an OTC laxative, respectively.  In both <u>Zoller</u> and <u>G.D. Searle</u>, consumers had

the opportunity at the point of purchase to compare and inspect the packaging of the brand name

product and the defendants' product.  Here, both PrimaCare ONE and Lannett's product are

available only with a prescription.  As a result, a pregnant woman who hands a prescription for

PrimaCare ONE to a pharmacist or staff person at the pharmacy counter does not have an

opportunity to compare the products once she receives the Lannett product.  While Lannett

attempts to spin Ther-Rx's trademark infringement claim as a false advertising claim, the heart

of the dispute is Lannett's intentional infringement of the PrimaCare ONE stylized mark on its

bottle.

Lannett cites <u>G.D. Searle</u>, 715 F.2d 837 at 841, for the proposition that "[t]he use of a

competitor's trademark for purposes of comparative advertising is not trademark infringement so

long as it does not contain misrepresentations or create a reasonable likelihood that purchasers

will be confused as to the source, identity, or sponsorship of the advertiser's product." (Internal

citations omitted.)  However, Lannett fails to recognize that the court in Searle in fact **affirmed**

the district court's injunction that prohibited Hudson from using product packaging that was

confusingly similar to Searle's packaging.  In finding for Searle, the district court held:

---

[3]      "Prevention of confusion and mistakes in medicines is too vital to be trifled with"
because "[c]onfusion in such products can have serious consequences for the patient." <u>Morgenstern</u>
<u>Chem. Co. v. G.D. Searle & Co.</u>, 253 F.2d 390, 393 (3d Cir. 1958).

10

[i]n sum, the similarity in the packaging of the products, <u>the distinctive eye-catching display of the METAMUCIL mark</u> in white letters contrasted against the only shaded portion of the contained, the absence of any reference of Searle's ownership rights in its trademark, and the overall presentation of the new REGACILIUM container point to the inevitable conclusion that there is in fact and in law a substantial likelihood that consumers will be confused and will purchase REGACILIUM thinking that they are buying a cheaper version of the product manufactured by the same company that manufactures METAMUCIL .... Furthermore, based on the evidence presented subsequent to the hearing in connection with the temporary restraining order, I find that Hudson *intended to create consumer confusion* in designing and marketing the new contained. Hudson intended to promote the sale of REGACILIUM by encouraging the public to identify the source of its product with METAMUCIL and to thereby capitalize on the good will embodied in the METAMUCIL mark.

<u>Searle</u>, 715 F.2d at 839-40, quoting the Joint Appendix, 470-71 (emphasis added).

Like Hudson, *Lannett intended to create consumer confusion and its bottle was designed in a manner to encourage women into wrongly believing that Lannett's product is PrimaCare ONE.*  For example, Lannett intentionally copied unique and the distinctive (among prenatal vitamin products) color of the deep purple PrimaCare ONE gel caps, further compounding the likelihood of confusion.  Goedeke Decl., Ex. G.  Lannett's calculated use of the stylized PrimaCare ONE mark is likely to cause confusion among women who believe that they are getting the trusted brand PrimaCare ONE instead of the inferior Lannett knock-off, which smells strongly of fish and has a substantially lower amount of DHA.  Goedeke Decl. ¶¶ 57-59.

# REDACTED

11

**REDACTED**          Indeed, Lannett's only response is to hurl insults at Ther-Rx for the enviable market position that is enjoyed by PrimaCare ONE, as if developing a market-leading product that is protected by patents (which were previously respected by potential competitors) is a <u>bad</u> thing that somehow disqualifies Ther-Rx from seeking equitable relief. It is particularly ironic that Lannett, which singled out PrimaCare ONE as its first foray into the world of generic prescription prenatal vitamins and clearly covets that product's top-ranking position in the U.S. market, would complain about the commercial success that Ther-Rx has enjoyed with PrimaCare ONE.

Lannett's appeal to the "status quo" in opposition to Ther-Rx's request for a recall misses the point. The status quo is not a          **REDACTED**          with Lannett's knock-off, but the one in which PrimaCare ONE holds its rightfully earned position as the top-selling prescription prenatal vitamin in the United States. <u>F. Alderete Gen. Contractors, Inc. v. United States</u>, 715 F.2d 1476, 1480 (Fed. Cir. 1980). In considering the propriety of a recall of infringing products, the Third Circuit evaluates the following factors:

1)    The degree to which the infringement was intentional or willful;

2)    Whether the risk of confusion to the public and injury to the mark owner is greater than the burden of the recall to the infringer; and

3)    Whether the infringing activity poses a substantial risk of danger to the public.

<u>Gucci America, Inc. v. Daffy's Inc.</u>, 354 F.3d 228 (3d Cir. 2003); <u>Upjohn Co. v. Riahom Corp.</u>, 641 F. Supp. 1209, 1227-28 (D. Del. 1986) (granting recall in conjunction with preliminary injunction relief); <u>see also</u> <u>Perfect Fit Indus. v. Acme Quilting Co.</u>, 646 F.2d 800, 807 (2d Cir.

12

1981) (weighing the first two factors in decision to order recall). Here, Lannett's infringement was willful, the risk of confusion is high, and the Lannett product is inferior to PrimaCare ONE.[4]

With respect to its ability to satisfy a large money judgment, Lannett states only that it disputes Ther-Rx's estimate of the magnitude of a damages award, and proffers no evidence that it would be able to satisfy a judgment of even half the amount estimated by Ther-Rx.

## IV. The Balance of Hardships Tip Sharply in Favor of Ther-Rx, and the Pain Lannett Would Experience Due to a Recall Is Entirely Attributable to Its Decision To **REDACTED** with Infringing Product Contemporaneously with Filing its Declaratory Judgment Action Instead of Waiting for a Few Weeks To See if a Preliminary Injunction Would Be Granted

With respect to irreparable harm and the balance of equities, Lannett devotes most of its argument to opposing a recall, seemingly recognizing the inevitability of an injunction against continued sales. To be sure, a recall is painful for any company. But the pain to Lannett is entirely of its own choosing. For this reason, Lannett's protestations of harm from a recall should be given little or no weight. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 596 (3d Cir. 2002) (noting that "the injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself").

Stated bluntly, Lannett is trying to game the Court. Its letter threatening a declaratory judgment suit if Ther-Rx refused to disclaim its patent rights was sent mere hours before Lannett filed its complaint. Lannett does not allege that it ever communicated with Ther-Rx beforehand,

---

[4]     Lannett's "predicament is of [its] own making." Syntex Labs., Inc. v. Norwich Pharmacal Co., 315 F. Supp. 45, 57 (S.D.N.Y. 1970), aff'd, 437 F.2d 566 (2d Cir. 1971). Indeed, given "the probable outcome of this action, this is a loss which [defendants] may justifiably be called upon to bear." Corning Glass Works v. Jeanette Glass Co., 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), aff'd, 432 F.2d 784 (2d Cir. 1970).

RLF1-3296059-1

and indeed Ther-Rx was unaware of Lannett's activities.  Goedeke Decl. ¶ 33.  Nor, despite the statement in its letter to the effect that Ther-Rx had a pattern of using its patents to quash competition, id. Exh. F, can Lannett allege that Ther-Rx has ever asserted these (or any other) patents in recent memory.

Lannett was never threatened by Ther-Rx but clearly knew it infringed the Ther-Rx patents (hence the failure to contest infringement in opposition to this motion).

# REDACTED

And, as noted in Ther-Rx's opening papers, the label and package insert of Lannett's infringing product show revision dates of January and February 2008.  Ther-Rx Br. at 36.  Why, if a recall would be so painful and suit by Ther-Rx was expected, did Lannett wait until the eve of launch to file its declaratory judgment complaint when it plainly had the intent and capability to commercialize its product at least six months ago?

# REDACTED

Yet, when Lannett wrote its letter

14

to Ther-Rx on June 6, the product was seemingly not on the market.

**REDACTED**                                  —it is plain that Lannett

set out to                    with its infringing product before Ther-Rx could react, thereby

writing the script to cry out that a recall would change the "status quo" and cause terrible pain.  If

a recall would be so painful and suit by Ther-Rx was expected, why did Lannett (i) wait until

now to file its declaratory judgment complaint instead of filing suit several months ago when it

was already in the midst of full-blown commercial production, and (ii) **REDACTED** with

infringing product instead of waiting a few weeks to see if an injunction would be granted?

As noted above, Lannett has no answer to the detailed and specific showing of irreparable

harm made by Ther-Rx in its opening papers.  Its own showing, by contrast, is vague and

conclusory.

**REDACTED**

Nor does Mr. Smith explain why the market for a generic

version of PrimaCare ONE would be compromised in the future if a recall is ordered now.

Indeed, Lannett's entire attempt to demonstrate irreparable harm is exactly the type of imprecise

and generalized argument that is insufficient to support a finding.

Finally, Lannett's arguments that Ther-Rx (i) confuses its own customers with the

packaging of PrimaCare ONE, and (ii) is tainted by unclean hands are completely without merit.

With respect to the packaging, Lannett erroneously conflates PrimaCare ONE with the earlier

PrimaCare product, which is packaged differently because it has a different dosing regimen.

15

Goedeke Reply Decl. ¶ 8.  It also ignores the difference between physician sample packs and commercial packaging sold for retail distribution.  Id. ¶ 7.

Lannett's "unclean hands" argument can only be seen a sign of desperation.  Even at face value, Lannett's allegations are not close to the level of conduct required for invocation of this equitable principle.  Citizens Fin. Group, Inc. v. Citizens Nat. Bank, 383 F.3d 110, 129 (3d Cir. 2004) (requiring "clear, convincing evidence of 'egregious' misconduct" to invoke the doctrine, and that the evidence must be "unequivocal").  Nor, for that matter, is the complained-of conduct by Ther-Rx "immediately related" to the relief sought, as also required for this doctrine to come into play.  Pharmacia Corp. v. Glaxosmithkline Consumer Healthcare, 292 F. Supp. 2d 594, 610 (D.N.J. 2003).  This is equally true in patent and trademark cases. 6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:49 at 31-120 (4th ed., Rel. 44, 12/2007); Ricoh Co. v. Katun Corp., Civ. No. 03-2612 (GEB), 2007 U.S. Dist. LEXIS 53287, at *48-49 (D.N.J. July 23, 2007).

## V.    The Public Interest Strongly Favors Injunctive Relief, Including a Recall of Lannett's Demonstrably Inferior Infringing Product

Lannett has no real answer to Ther-Rx's showing that the Lannett product is (i) plainly inferior to PrimaCare ONE in the quality of manufacture, and (ii) different than PrimaCare ONE with respect to the amounts of DHA and EPA.

# REDACTED

Further—unlike Ther-Rx's declarants Mr. Goedeke and Ms. Vitali—

16

neither Mr. Sabo nor Mr. Smith state that they themselves sampled bottles of Lannett's product for odor or leakage.  Accordingly, the showing made by Ther-Rx that the Lannett product is of inferior quality stands unrebutted.[5]

# REDACTED

Third, Lannett's appeal to the public interest in affordable medicine rings hollow.

# REDACTED
Smith Decl. ¶ 14.

In any event, the balance between (i) encouraging innovation by protection of patent rights and (ii) getting the cheapest product capable of manufacture, has been calibrated by

---

[5]     Lannett's only response is its promise to "take extensive discovery" concerning the source of samples inspected by Ther-Rx.  Br. at 23-24.  As set forth in the reply declarations of Mr. Goedeke and Ms. Vitali, the samples at issue were (i) purchased by Ther-Rx from a pharmacy in St. Louis with respect to those inspected by Mr. Goedeke, and (ii) on the shelf at a retail pharmacy in Connecticut with respect to those inspected by Ms. Vitali.  In no way were the samples tampered with or altered in order to make them smell or leak.  Goedeke Reply Decl. ¶¶ 2-3; Vitali Reply Decl. ¶ 8; Weiss Reply Decl. ¶ 4-5.

17

Congress in favor of enforcing legitimate patent rights in order to promote the long-term goal of

fostering research and development of new medicines and other socially important products.

Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1383-84 (Fed. Cir. 2006).

18

## CONCLUSION

For the reasons stated above, the Court should restrain and enjoin Lannett from infringing the '666 patent and the PrimaCare marks by selling or distributing its infringing product, and order Lannett to recall such quantities of its infringing product that are already in the marketplace.


*Of counsel:*

Richard L. DeLucia
Howard J. Shire
Elizabeth A. Gardner
Charles A. Weiss
KENYON & KENYON LLP
One Broadway
New York, NY  10004
(212) 425-7200

*/s/ Chad M. Shandler*
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Chad M. Shandler (#3796)
shandler@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street, P.O. Box 551
Wilmington, DE  19801
(302) 651-7700
cottrell@rlf.com
shandler@rlf.com

*Attorneys for Counterclaim-Plaintiffs
KV Pharmaceutical Company, Ther-Rx Corp.,
and Drugtech Corp.*

Dated:  June 24, 2008

19

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2008, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Sophia Siddiqui
Fox Rothschild LLP
919 Market Street, Suite 1300
P. O. Box 2323
Wilmington, DE  19899-2323

I hereby certify that on June 24, 2008, I sent by Electronic Mail the foregoing document to the following non-registered participants:

Samuel H. Israel
Gerard P. Norton
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia,. PA  19103

Chad M. Shandler (#3796)
shandler@rlf.com

RLF1-3293973-1

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2008, I caused to be served by hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Sophia Siddiqui
Fox Rothschild LLP
919 Market Street, Suite 1300
P. O. Box 2323
Wilmington, DE   19899-2323

I hereby certify that on July 1, 2008, I sent by Electronic Mail the foregoing document to the following non-registered participants:

Samuel H. Israel
Gerard P. Norton
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia,. PA   19103

Chad M. Shandler (#3796)
shandler@rlf.com