**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LANNETT COMPANY INC., | |
| *Plaintiff,* | |
| v. | Civil Action No. 08-338-JJF |
| KV PHARMACEUTICALS, DRUGTECH CORPORATION, and THER-RX CORPORATION, | |
| *Defendants.* | |
| KV PHARMACEUTICAL COMPANY, THER-RX CORP., and DRUGTECH CORP., | |
| *Counterclaim-Plaintiffs,* | |
| v. | |
| LANNETT COMPANY, INC., | |
| *Counterclaim-Defendant.* | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
LANNETT'S AMENDED COMPLAINT FOR LACK OF SUBJECT
MATTER JURISDICTION, FAILURE TO INCLUDE AN
INDISPENSABLE PARTY, AND FAILURE STATE A CLAIM**

*Of counsel*:
Richard L. DeLucia
Charles A. Weiss
Jeffrey S. Ginsberg
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

Dated: July 18, 2008

Frederick L. Cottrell, III (#2555)
Chad M. Shandler (#3796)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street, P.O. Box 551
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
shandler@rlf.com
*Attorneys for Defendants/Counterclaim-
Plaintiffs KV Pharmaceutical Company, Ther-
Rx Corp., and Drugtech Corp.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ iii

STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

SUMMARY OF ARGUMENT ....................................................................................................... 2

    1.    Counts 1-3 of Lannett's Amended Complaint Seeking Declaratory
           Judgment of Patent Invalidity and Unenforceability Should be Dismissed
           For Lack of Subject Matter Jurisdiction Because There was No Case or
           Controversy at the Time Suit was Filed ............................................................................ 2

    2.    Counts 1 and 2 of the Amended Complaint Concerning the '925 and '814
           Patents, Which are Owned by Non-party Albion, Should be Dismissed For
           Failure to Join an Indispensable Party ............................................................................. 2

    3.    Count 4 of the Amended Complaint Alleging Antitrust Violations Should
           be Dismissed for Failing to State a Claim Upon Which Relief May be
           Granted .............................................................................................................................. 3

    4.    Count 5 of the Amended Complaint Alleging Violation of Delaware's
           Deceptive Trade Practices Act Should be Dismissed for Failing to State a
           Claim Upon Which Relief May be Granted ..................................................................... 3

STATEMENT OF FACTS ............................................................................................................... 4

ARGUMENT ................................................................................................................................... 6

I.    Counts 1-3 Of Lannett's Amended Complaint Seeking Declaratory Judgment Of
       Patent Invalidity And Unenforceability Should Be Dismissed For Lack Of
       Subject Matter Jurisdiction Because There Was No Case Or Controversy At The
       Time Suit Was Filed ........................................................................................................ 6

II.    Counts 1 And 2 Of The Amended Complaint Concerning The '925 Patent
       And '814 Patent, Which Are Owned By Non-Party Albion, Should Be Dismissed
       For Failure To Join An Indispensable Party .................................................................. 10

    A.    Albion Would be Severely Prejudiced Were the Court to Rule That its
           Patents Were Invalid ....................................................................................................... 11

    B.    The Court Would be Unable to Lessen the Prejudice to Albion ............................. 11

C.    Lannett Would Have an Adequate Remedy if the Action Were Dismissed for Nonjoinder .................................................................................................. 11

III.    Count 4 Of The Amended Complaint Alleging Antitrust Violations Should Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted .............. 12

A.    Lannett's Antitrust Claim Should be Dismissed for Failing to Plead the Relevant Product Market ........................................................................................ 13

B.    Lannett's Antitrust Claim Should be Dismissed for Failing to Plead Facts Sufficient to Support a Walker Process Claim ...................................................... 13

IV.    Count 5 Of The Amended Complaint Alleging Violation Of Delaware's Deceptive Trade Practices Act Should Be Dismissed For Failing To State A Claim Upon Which Relief May Be Granted ...................................................................... 15

CONCLUSION ............................................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

B.V. Optische Industrie do Oude Delft, Oldelft N.V. v. Hologic, Inc.,
  909 F. Supp. 162 (S.D.N.Y. 1995) ........................................................................... 13

Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.,
  No. 2:05-CV-931, 2008 U.S. Dist. LEXIS 9323 (D. Utah Feb. 6, 2008) ..................... 8, 10

Bell Atl. Corp. v. Twombly,
  127 S. Ct. 1955 (2007) ........................................................................................... 12

Bridgelux, Inc. v. Cree, Inc.,
  No. C 06-6495, 2007 U.S. Dist. LEXIS 53137 (N.D. Cal. July 9, 2007) ........................ 9

Brotech Corp. v. White Eagle Int'l Techs. Group,
  No. 03-CV-232, 2003 U.S. Dist. LEXIS 21073 (E.D. Pa. Nov. 18, 2003) ...................... 13

Cent. Tools, Inc. v. Mitutoyo Corp.,
  381 F. Supp. 2d 71 (D.R.I. 2005) ............................................................................. 11

EMC Corp. v. Norand Corp.,
  89 F.3d 807 (Fed. Cir. 1996) ..................................................................................... 9

In re Netflix Antitrust Litig.,
  506 F. Supp. 2d 308 (N.D. Cal. 2007) ................................................................. 14, 16

In re Wellbutrin SR Antitrust Litig.,
  No. 04-5525, 2006 U.S. Dist. LEXIS 9687 (E.D. Pa. Mar. 9 2006) .............................. 15

Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,
  No. 07-589, 2008 U.S. Dist. LEXIS 53290 (D. Del. July 14, 2008) .......................... 7, 10

MedImmune, Inc. v. Genentech, Inc.,
  127 S. Ct. 764 (2007) ................................................................................... 6, 7, 8, 9

Monsanto Co. v. Syngenta Crop Prot., Inc.,
  No. 4:07-CV-543, 2008 U.S. Dist. LEXIS 7236 (E.D. Mo. Jan. 31, 2008) ..................... 8

Panavise Prods., Inc. v. Nat'l Prods., Inc.,
  No. CV 08-1300 ABC (C.D. Cal. May 30, 2008) ......................................................... 8

Pfizer Inc. v. Ranbaxy Labs., Ltd.,
  525 F. Supp. 2d 680 (D. Del. 2007) ........................................................................... 8

RLF1-3304212-1

Phillips v. Allegheny,
    515 F.3d 224 (3d Cir. 2008)..................................................................................... 12

Prasco, LLC v. Medicis Pharm. Corp.,
    No. 1:06cv313, 2007 U.S. Dis. LEXIS 48302 (S.D. Ohio July 3, 2007) .................. 7, 8, 9

Queen City Pizza, Inc. v. Domino's Pizza, Inc.,
    124 F.3d 430 (3d Cir. 1997)..................................................................................... 13

SanDisk Corp. v. STMicroelectronics, Inc.,
    480 F.3d 1372 (Fed. Cir. 2007)................................................................................... 7

Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.,
    204 F.3d 1368 (Fed. Cir. 2000)................................................................................. 16

Spectronics Corp. v. H.B. Fuller Co.,
    940 F.2d 631 (Fed. Cir. 1991)................................................................................... 10

Spectrum Sports, Inc. v. McQuillan,
    506 U.S. 447 (1993)................................................................................................. 12

Suprex Corp. v. Lee Scientific, Inc.,
    660 F.Supp. 89 (W.D. Pa. 1987)............................................................................... 11

Unitherm Food Sys. v. Swift-Eckrich, Inc.,
    375 F.3d 1341 (Fed. Cir. 2004), rev'd on other grounds 546 U.S. 394 (2006) .......... 13, 14

Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.,
    382 U.S. 172 (1965)........................................................................................... passim

## Other Authorites

6 DEL. C. § 2532.................................................................................................... 15

15 U.S.C. § 1........................................................................................................ 12

15 U.S.C. § 2........................................................................................................ 12

Fed. R. Civ. P. 12(b)(1)...................................................................................... 1, 17

Fed. R. Civ. P. 12(b)(6)...................................................................................... 1, 17

Fed. R. Civ. P. 12(b)(7)................................................................................... 1, 10, 17

Fed. R. Civ. P. 19 (b)........................................................................................ 10, 11

Fed. R. Civ. P. 9(b)............................................................................................... 15

RLF1-3304212-1

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

Defendants KV Pharmaceutical Company, Ther-Rx Corporation ("Ther-Rx"), and Drugtech Corporation ("Drugtech") (collectively, "KV") respectfully submit this opening brief in support of their motion to dismiss plaintiff Lannett Company Inc.'s ("Lannett") Amended Complaint (D.I. 4) for (i) lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) (Counts 1, 2 and 3); (ii) failure to include an indispensable party pursuant to Fed. R. Civ. P. 12(b)(7) (Counts 1 and 2); and (iii) failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Counts 4 and 5).  KV also respectfully requests that the Court realign KV as plaintiff and Lannett as defendant.

Lannett's initial Complaint (D.I. 1) sought a declaratory judgment that three KV patents were invalid and unenforceable.  Its Amended Complaint (D.I. 4) added four more patents, two of which are owned by non-party Albion International, Inc. ("Albion").  Both the initial Complaint and the Amended Complaint further included inadequate and conclusory allegations that KV had violated the Sherman Act and the Delaware law of unfair competition.

KV counterclaimed against Lannett for patent infringement (with respect to three of the five patents owned by KV), trademark infringement, false advertising, and unfair competition (D.I. 5), and moved for a temporary restraining order and preliminary injunction (D.I. 6).  The Court heard oral argument on June 25, 2008, made rulings from the bench, and entered an Order compelling Lannett to take remedial action with respect to product in the hands of distributors (D.I. 57).

## SUMMARY OF ARGUMENT

1.  **Counts 1-3 of Lannett's Amended Complaint Seeking Declaratory Judgment of Patent Invalidity and Unenforceability Should be Dismissed For Lack of Subject Matter Jurisdiction Because There was No Case or Controversy at the Time Suit was Filed**

Just hours before Lannett filed the Complaint in this lawsuit, its outside counsel sent a

letter to KV demanding that KV agree to refrain from asserting any claim of patent infringement

against a multivitamin product that Lannett planned to launch. Prior to receiving Lannett's letter,

KV had never asserted the patents-in-suit against Lannett, threatened Lannett, or communicated

with Lannett concerning its patents. Indeed, prior to receiving the letter, KV had no knowledge

that Lannett was planning to launch a knock-off of KV's prescription prenatal supplement

PrimaCare ONE®.

Lannett's self-serving letter is inadequate to establish the constitutional requirement of a

case or controversy. To hold otherwise would mean every potential patent infringer could file

suit against any patent owner at any time by merely sending a letter like the one sent by Lannett,

even when the patent owner had no knowledge of the infringer's activities and had taken no steps

to enforce its patents.

2.  **Counts 1 and 2 of the Amended Complaint Concerning the '925 and '814 Patents, Which are Owned by Non-party Albion, Should be Dismissed For Failure to Join an Indispensable Party**

Two of the patents for which Lannett seeks declaratory judgment are not owned by KV,

but by third party Albion. KV has licensed these patents only in certain fields. By not granting

an exclusive license in all fields of use, Albion has retained substantial rights in its patents and

would be prejudiced if the Court ruled the patents invalid. Further, if the Court dismisses the

2

claims related to those patents, Lannett will still have an adequate remedy because, after receiving a demand letter from Lannett, Albion sued Lannett for infringement in Albion's home jurisdiction (Utah).

3.    **Count 4 of the Amended Complaint Alleging Antitrust Violations Should be Dismissed for Failing to State a Claim Upon Which Relief May be Granted**

Count 4 of Lannett's Amended Complaint attempts to put together a Sherman Act claim, but fails to define a relevant antitrust market and is deficient in its pleading of a <u>Walker Process</u> (or any other) antitrust claim.

Specifically, Lannett's description of the market as that for "the multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support" does not satisfy the requirement that the relevant product market include all products that are reasonably interchangeable. The claim also fails because (i) KV did not attempt to enforce any of the patents at issue against Lannett or any other party; (ii) Lannett did not plead antitrust damages, and (iii) KV owns patents other than the patent allegedly procured through fraud that Lannett asserts have prevented it and others from entering the market.

4.    **Count 5 of the Amended Complaint Alleging Violation of Delaware's Deceptive Trade Practices Act Should be Dismissed for Failing to State a Claim Upon Which Relief May be Granted**

Lannett bases its claim brought under Delaware Deceptive Trade Practices Act on KV's marking of its products with the '609 patent, which Lannett alleges KV knew or should have known was invalid and/or unenforceable. Even if Lannett could prove that allegation, it would not be entitled to relief as federal law preempts a state-law claim for unfair competition that, for all intents and purposes, is predicated on nothing more than KV's application for and subsequent

3

procurement of the '609 patent. Further, Lannett alleges that other patents prevent it from competing with KV's product. Moreover, Lannett's claim that KV's advertising of its PrimaCare ONE product as covered by the '609 patent interfered with Lannett's ability to compete with KV on the merits is belied by the fact that Lannett launched substantial commercial quantities of its multivitamin product.

## STATEMENT OF FACTS

As was developed in connection with KV's motion for a preliminary injunction and TRO, Lannett commenced this case without any grounds to seek a declaratory judgment concerning the patents.

The first and only communication between KV and Lannett concerning the subject matter of this case was a demand letter from Lannett's outside counsel that was sent (from KV's perspective) completely out of the blue. More specifically, a few hours before it filed the Complaint, Lannett's outside counsel sent KV a letter stating that Lannett was "launching into the marketplace a multivitamin with minerals capsule" and demanding that KV agree to refrain from asserting any claim of patent infringement against that product. See Exhibit F to Declaration of Scott E. Goedeke in Support of Motion for Temporary Restraining Order and Preliminary Injunction ("Goedeke Decl.") (D.I. 10).

Hours after sending the letter, Lannett filed its Complaint, which inter alia sought declaratory judgment of invalidity and unenforceability of U.S. Patents 6,258,846 ("the '846 patent"), 6,576,666 ("the '666 patent"), and 7,112,609 ("the '609 patent"). A few days later, Lannett filed an Amended Complaint that added four more patents: U.S. Patents 6,197,329

4

("the '329 patent"), 6,569,857 ("the '857 patent"), 5,516,925 ("the '925 patent"), and 6,716,814 ("the '814 patent"). Of these four patents, the latter two are not even owned by KV, but by non-party Albion.

Prior to Lannett's actions, KV had never asserted any of these patents against Lannett, threatened Lannett, or communicated with Lannett concerning these issues. Indeed, KV had no knowledge that Lannett was planning to launch a knock-off of KV's prescription prenatal supplement PrimaCare ONE® prior to receiving the letter from Lannett's outside counsel and getting sued later that day. See Goedeke Decl. ¶ 33. As set forth below, it follows that no controversy sufficient to support a claim for declaratory judgment existed at the time Lannett filed suit.

For its Sherman Act claim, Lannett alleges that KV "obtained and maintained monopoly power in the relevant market for the multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support . . . through acquisition and maintenance of [the] fraudulently-procured '609 patent, as well as [the] invalid '846 and '666 patents." Amended Complaint ¶¶ 57, 61. The basis for Lannett's allegation that the '609 patent was fraudulently procured (which is without merit) rests solely on a piece of prior art that was mailed to KV's counsel in connection with a different application by a lawyer representing an unknown client while the application for the '609 patent was pending. Id. at ¶¶ 38-55. Lannett claims this prior art is material to the patentability of the '609 patent and was knowingly withheld by KV's counsel. Id. Lannett does not, nor can it, allege that he (or anyone else) knew of this art during either the prosecution of the '846 patent or the '666 patent, both of which issued years earlier. See generally Opening Brief in Support of Counterclaim-Plaintiffs' Motion for Temporary

5

Restraining Order, Early Preliminary Injunction Hearing and Preliminary Injunction (D.I. 8) at 5-6 (discussing relationship of the patents).

With respect to the '846 and '666 patents, Lannett states that KV has "taken no steps to correct the defects" in these two patents, without any explanation as to what alleged specific defects exist or why KV would have an obligation to "correct" them.  Amended Complaint ¶ 59. Lannett does not allege that KV was aware of these mysterious "defects," nor is there any allegation that either the '846 patent or the '666 patent was procured through fraud.  Finally, there is no allegation that any of the other patents added in Lannett's Amended Complaint were procured through fraud.

## ARGUMENT

**I.    COUNTS 1-3 OF LANNETT'S AMENDED COMPLAINT SEEKING DECLARATORY JUDGMENT OF PATENT INVALIDITY AND UNENFORCEABILITY SHOULD BE DISMISSED FOR LACK OF  SUBJECT MATTER JURISDICTION BECAUSE THERE WAS NO CASE OR CONTROVERSY AT THE TIME SUIT WAS FILED**

The law does not permit a patent infringer to manufacture a "case or controversy" by sua sponte demanding that a patent owner agree to forego enforcement of its patent rights and then filing suit when the patent owner does not respond.  Although the requirements for declaratory judgment jurisdiction as they apply in the patent field were recently modified by the Supreme Court in MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771 (2007), neither that case nor any other precedent permits Lannett's attempted end-run around the "case or controversy" requirement.  Otherwise, every potential patent infringer could at its pleasure file suit against any patent owner at any time by the artifice of sending a letter like the one sent by Lannett, even

6

when (as here) the patent owner had no knowledge of the infringer's activities and had taken no steps (and made no threats) to enforce its patent rights.

The requirement that a declaratory judgment may not proceed absent an actual controversy is a constitutional mandate and was not eliminated by the MedImmune case, which held that a declaratory plaintiff must allege facts showing that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 127 S. Ct. at 771 (emphasis added).

As a result of the MedImmune decision, the Federal Circuit held that a declaratory judgment plaintiff need not necessarily demonstrate a "reasonable apprehension of suit" if the other requirements for a declaratory judgment were satisfied, such as immediacy and reality of the conflict. SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007). However, even after MedImmune, "'declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee.'" Innovative Therapies, Inc. v. Kinetic Concepts, Inc., No. 07-589, 2008 U.S. Dist. LEXIS 53290, at *18-24 (D. Del. July 14, 2008) (quoting SanDisk, 480 F.3d at 1380-81 (emphasis added)).

The facts of the present case are similar to those in Prasco, LLC v. Medicis Pharm. Corp., No. 1:06cv313, 2007 U.S. Dis. LEXIS 48302 (S.D. Ohio July 3, 2007). In that case, Medicis owned or licensed several patents covering a skin cleanser for people with acne. Prasco filed its declaratory judgment suit about six weeks before it launched a generic version of Medicis' patented product. Shortly after it filed suit, Prasco demanded that Medicis covenant that it would

7

not assert its patents, which Medicis did not provide. Prior to the decision in MedImmune, the court granted Medicis' motion to dismiss. After MedImmune issued, Prasco filed a motion to amend or alter the dismissal in view of the intervening change in law.

In denying the motion to amend, the court rejected Prasco's argument that a case or controversy existed based on the facts that Medicis had (i) listed the patents on its product; (ii) previously sued Prasco for patent infringement on a similar product; and (iii) not given Prasco a covenant not to sue. Id. at *9. In finding these facts insufficient, the court reasoned that "[w]hile Defendants have not conceded non-infringement, Prasco cannot point to any statements by Defendants indicating that Defendants take a position that Prasco's . . . product infringes the patents-in-suit." Id. at *10-11. Accordingly, because Prasco failed to meet the MedImmune standard of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment," Prasco's motion to alter or amend the court's dismissal was denied. Id. at *11. The principle of the Prasco case that a potential infringer cannot manufacture subject-matter jurisdiction based on a patent owner's silence is well-established.[1]

---

[1]    See Pfizer Inc. v. Ranbaxy Labs, Ltd., 525 F. Supp. 2d 680, 686-87 (D. Del. 2007) (rejecting argument that case or controversy is created by possibility that patent may reissue and be asserted); Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd., No. 2:05-CV-931, 2008 U.S. Dist. LEXIS 9323, at *6-8 (D. Utah Feb. 6, 2008) (holding declaratory judgment jurisdiction did not exist because patentee did not "affirmatively act" by notifying plaintiff of its patents without taking a position regarding infringement, and rejecting plaintiff's argument that subsequent infringement suit filed by patentee against plaintiff demonstrated a case or controversy at time declaratory judgment action was filed); Panavise Prods., Inc. v. Nat'l Prods., Inc., No. CV 08-1300 ABC at 4-5 (C.D. Cal. May 30, 2008) (attached hereto as Ex. A); Monsanto Co. v. Syngenta Crop Prot., Inc., No. 4:07-CV-543, 2008 U.S. Dist. LEXIS 7236, at *16-17 (E.D. Mo. Jan. 31, 2008) (holding that letter sent by patentee's in-house counsel informing plaintiff of patent and noting its concern that others not infringe its intellectual property did not establish "'a course of conduct that shows a preparedness and willingness to (continued...)

8

Like the situation in <u>Prasco</u>, the requirement of sufficient immediacy of a substantial

controversy was entirely lacking at the time Lannett filed its Amended Complaint. Indeed, prior

to the receipt of the letter and the filing of the Complaint, KV had no indication or notice that

Lannett was planning to introduce a knock-off of PrimaCare ONE, and certainly had not ever

threatened (or even communicated) with Lannett about this product or these patents.

Even if Lannett's conduct was sufficient to create an Article III case or controversy, the

Court has discretion to dismiss the declaratory judgment and should exercise that discretion in

the case at bar. <u>EMC Corp. v. Norand Corp.</u>, 89 F.3d 807, 810 (Fed. Cir. 1996) ("Even if there is

an actual controversy, the district court is not required to exercise declaratory judgment

jurisdiction, but has discretion to decline that jurisdiction."); <u>see also</u> <u>MedImmune</u>, 127 S. Ct. at

776. A holding that Lannett's actions were sufficient to compel KV to defend its patents (and

assert them by counterclaim to preserve its rights) at a time (and in a court) of Lannett's

choosing would mean that no patent owner is ever safe from a declaratory judgment action.

KV's decision to assert three of its patents by way of counterclaim in this Court does not change

the calculus and the desirability of preventing a proliferation of "unripe" lawsuits, many of

which would otherwise never be filed.

---

enforce its patent rights'") (citation omitted); <u>Bridgelux, Inc. v. Cree, Inc.</u>, No. C 06-6495, 2007
U.S. Dist. LEXIS 53137, at *14-24 (N.D. Cal. July 9, 2007) (finding plaintiff's allegation that
patentee had previously filed lawsuits on different patents and declaration by plaintiff's CEO that
its customers had been threatened was insufficient to establish jurisdiction because "[t]here is no
indication that anyone from [defendant company] ever specifically identified [the plaintiff] as
having infringed the [relevant] patents, even in complaints to third parties").

9

For the foregoing reasons, Counts 1, 2, and 3 of the Amended Complaint seeking a declaratory judgment should be dismissed.[2]

## II.    COUNTS 1 AND 2 OF THE AMENDED COMPLAINT CONCERNING THE '925 PATENT AND '814 PATENT, WHICH ARE OWNED BY NON-PARTY ALBION, SHOULD BE DISMISSED FOR FAILURE TO JOIN AN INDISPENSABLE PARTY

Counts 1 and 2 of Lannett's Amended Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) for failure to join an indispensable party to the extent they seek a declaratory judgment with respect to the '925 patent and the '814 patent. Those patents are owned by Albion, which is not a party to the case but which—as the patent owner—is a necessary and indispensable party. See Fed. R. Civ. P. 19. Rule 19(b), which provides the basis for finding a party indispensable, states in pertinent part:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> (1) the extent to which a judgment rendered in the person's absence might prejudice that person . . .;
>
> (2) the extent to which any prejudice could be lessened or avoided ...;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

---

[2]     Lannett will not be left without a remedy should the Court grant the present motion. As the Court knows, KV counterclaimed for infringement of the '666 patent, '846 patent, and '609 patent, giving Lannett the opportunity to obtain an adjudication of those patents in this case. Of course, KV's filing of the counterclaim in no way establishes that an actual controversy existed at the time Lannett filed the Amended Complaint. See, e.g., Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 635 (Fed. Cir. 1991); Innovative Therapies, 2008 U.S. Dist. LEXIS 53290, at *24-29; Baker Hughes, 2008 U.S. Dist. LEXIS 9323, at *8.

Fed. R. Civ. P. 19(b). At least three of these factors weigh strongly in favor of dismissing Lannett's Amended Complaint.

### A.  Albion Would be Severely Prejudiced Were the Court to Rule That its Patents Were Invalid

While KV holds an exclusive license under the '925 and '814 patents, that license is limited to a particular field of use. Albion, the owner of those patents, retains substantial rights that would be impaired if the Court found the patents to be invalid. See, e.g., Cent. Tools, Inc. v. Mitutoyo Corp., 381 F. Supp. 2d 71, 76-80 (D.R.I. 2005); Suprex Corp. v. Lee Scientific, Inc., 660 F.Supp. 89, 93 (W.D. Pa. 1987).

### B.  The Court Would be Unable to Lessen the Prejudice to Albion

None of claims of the '925 and '814 patents is limited to the field that is licensed to KV. Accordingly, the Court could not limit a finding of invalidity to any of the claims in such a way so as not to prejudice Albion.

### C.  Lannett Would Have an Adequate Remedy if the Action Were Dismissed for Nonjoinder

After receiving yet another of Lannett's demand letters, Albion recently sued Lannett for infringement of the '925 patent and the '814 patent in the United States District Court for the District of Utah (which is where Albion is located). See Ex. B. Lannett may raise as defenses in that lawsuit its invalidity and noninfringement contentions with respect to the '925 and '814 patents. Thus, because Lannett's claims can be fully litigated in the suit brought by Albion, Lannett will not be left without a remedy if the Court dismisses the declaratory judgment claims related to those patents.

11

For the foregoing reasons, the Court should dismiss Counts 1 and 2 of the Amended Complaint insofar as they relate to the '925 and '814 patents.

## III.    COUNT 4 OF THE AMENDED COMPLAINT ALLEGING ANTITRUST VIOLATIONS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Count 4 of the Amended Complaint, which alleges that KV violated antitrust laws, should be dismissed because it fails to define a relevant product market and is deficient in its pleading of a Walker Process (or any other) antitrust claim.

To withstand a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements for the claim. Phillips v. Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).

In order to state a claim for attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, Lannett must allege (i) that KV has engaged in predatory or anticompetitive conduct, (ii) specific intent to monopolize the relevant market, and (iii) a dangerous probability of achieving monopoly power. Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993).[3]

---

[3]    Lannett asserts that its allegations of antitrust violations are brought under Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1. Amended Complaint ¶ 7. In order to adequately plead a violation of Section 1 of the Sherman Act, Lannett must provide facts to suggest that the alleged anticompetitive conduct stems from an agreement between KV, Ther-RX and/or Drugtech. See 15 U.S.C. § 1; Twombly, 127 S. Ct. at 1964-65. However, Lannett pled no such facts. In fact, the Amended Complaint is devoid of any count directed to a Section 1 violation. Accordingly, Lannett's claim of a violation of Section 1 of the Sherman Act, to the extent found in the Amended Complaint, should also be dismissed. See Twombly, 127 S. Ct. at 1964-65.

### A.    Lannett's Antitrust Claim Should be Dismissed for Failing to Plead the Relevant Product Market

In order to determine whether there is a dangerous probability of achieving monopoly power, it is necessary to define the relevant product market. B.V. Optische Industrie do Oude Delft, Oldelft N.V. v. Hologic, Inc., 909 F. Supp. 162, 171-72 (S.D.N.Y. 1995). Accordingly, failure to plead the relevant product market is a sufficient basis for dismissal of an antitrust claim. Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997); Brotech Corp. v. White Eagle Int'l Techs. Group, No. 03-CV-232, 2003 U.S. Dist. LEXIS 21073, at *13-16 (E.D. Pa. Nov. 18, 2003). Because a relevant market includes all products which are reasonably interchangeable,

> [w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.

Queen City Pizza, 124 F.3d at 436.

In the instant case, Lannett has failed to define any relevant market. Rather, Lannett simply states that "[u]pon information and belief, [KV has] obtained and maintained monopoly power in the relevant market for the multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support." Amended Complaint ¶ 57.

### B.    Lannett's Antitrust Claim Should be Dismissed for Failing to Plead Facts Sufficient to Support a Walker Process Claim

As a general rule, obtaining and enforcing patents cannot give rise to antitrust liability. Unitherm Food Sys. v. Swift-Eckrich, Inc., 375 F.3d 1341, 1356 (Fed. Cir. 2004), rev'd on other grounds 546 U.S. 394 (2006). An exception to this general rule arises when a patentee attempts

13

to enforce a patent obtained by fraud.  See id. (citing Walker Process Equip., Inc. v. Food Mach.

& Chem. Corp., 382 U.S. 172, 174 (1965)).  To establish a Walker Process claim under Section 2

of the Sherman Act, Lannett must demonstrate the following:

> (1) an attempted enforcement of a patent;
>
> (2) the patent issued as a result of fraud on the USPTO;
>
> (3) KVs' attempted enforcement threatened to lessen competition in a relevant antitrust market;
>
> (4) Lannett suffered antitrust damages, and
>
> (5) all other elements of an attempted monopolization claim are met.

Unitherm, 375 F.3d at 1355.

Lannett did not and cannot allege in its Amended Complaint that KV had ever attempted

to enforce any of the patents at issue against Lannett or any other party.  Accordingly, Lannett's

antitrust claim should be dismissed.  See, e.g., In re Netflix Antitrust Litig., 506 F. Supp. 2d 308,

317-19 (N.D. Cal. 2007) (dismissing Walker Process claim for failure to meet the enforcement

requirement because "[e]nforcement requires some affirmative act which is lacking in the

pleadings").

Further, Lannett has not pled that it has suffered antitrust damages.  Lannett's only claim

of harm is its conclusory allegation that KV has prevented "Lannett and others from entering the

market" (Amended Complaint ¶ 5), which must be disregarded as inconsistent with the

indisputable fact established by Lannett's own statements that it launched very substantial

commercial quantities of its product.  See Declaration of Kevin R. Smith in Opposition to

14

Motion for Preliminary Injunction and Temporary Restraining Order Decl. ("Smith Decl.") (D.I. 25) ¶¶ 14, 19.

Further still, since Lannett alleged that only <u>one</u> of the KV patents (the '609 patent) was procured through fraud, even if it were able to prove that fact (which it cannot), there are nevertheless other patents that Lannett itself says prevented it and others from entering the market. <u>See</u> Amended Complaint ¶ 5.[4] Accordingly, there can be no expectation that Lannett will be able to prove that the existence of the '609 patent lessened competition in a relevant antitrust market.

In view of the foregoing, Lannett's antitrust claim should be dismissed.

## IV. COUNT 5 OF THE AMENDED COMPLAINT ALLEGING VIOLATION OF DELAWARE'S DECEPTIVE TRADE PRACTICES ACT SHOULD BE DISMISSED FOR FAILING TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Count 5 of the Amended Complaint, brought under Delaware's Deceptive Trade Practices Act, 6 DEL. C. § 2532, is based on Lannett's allegation that KV "ha[s], and continue[s] to advertise that PrimaCare ONE™ is covered by the '609 patent, when [KV] knew or should

---

[4]      Of course, even if accepted, Lannett's claim of inequitable conduct with respect to the '609 patent is still short of the common law fraud required for a <u>Walker Process</u> claim. Lannett also alleges that KV obtained market power "through acquisition and maintenance of their ... invalid '846 and '666 patents." Amended Complaint ¶ 61. Even if the '846 and '666 patents were invalid (which they are not), the acquisition and maintenance of these patents cannot support a claim of violation of Section 2 of the Sherman Act, which requires <u>fraud</u> on the PTO. <u>See</u> <u>Walker Process</u>, 382 U.S. at 174. Indeed, Lannett makes no claim that either of these patents was procured by fraud and, therefore, has failed to plead such an allegation with sufficient particularity so as to satisfy the requirements of Fed. R. Civ. P. 9(b). <u>See, e.g.,</u> <u>In re Wellbutrin SR Antitrust Litig.</u>, No. 04-5525, 2006 U.S. Dist. LEXIS 9687, at *35-36 (E.D. Pa. Mar. 9 2006) (dismissing a <u>Walker Process</u> claim for failure to comply with the Third Circuit's pleading requirements for fraud, which require "enough particularity to 'place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral behavior'") (citation omitted).

15

have known that this patent was invalid and/or unenforceable." Amended Complaint ¶ 69. Even if Lannett could prove such allegations were true, Lannett's claim should be dismissed because federal law preempts a state-law claim for unfair competition that, for all intents and purposes, is predicated on nothing more than KV's application for and subsequent procurement of the '609 patent. Netflix, 506 F. Supp. 2d at 319-20 (citing Semiconductor Energy Lab. Co. v. Samsung Elecs. Co., 204 F.3d 1368, 1382 (Fed. Cir. 2000)).

Further, Lannett alleges that, in addition to the '609 patent, the existence of other patents prevents Lannett from competing with KV. Moreover, Lannett's claim that KV's advertising of PrimaCare One as being covered by the '609 patent "unfairly interfere[d] with Lannett's ability to compete [with KV] on the merits of [its] products"(Amended Complaint ¶ 71) is belied by the fact that Lannett launched and distributed substantial commercial quantities of its product that found its way to distributors and retailers. See Smith Decl. ¶¶ 14, 19.

Accordingly, Lannett will not be able to prove any injury, economic or otherwise, and its claim for violation of Delaware's Deceptive Trade Practices Act should be dismissed for failure to state a claim upon which relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6).

16

## CONCLUSION

For the reasons stated above, KV respectfully requests that the Court grant its motion to dismiss Counts 1, 2 and 3 of Lannett's Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); Counts 1 and 2 (with respect to the '925 and '824 patents) for failure to include an indispensable party pursuant to Fed. R. Civ. P. 12(b)(7); and Counts 4 and 5 for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). KV further requests that the Court realign KV as plaintiff and Lannett as defendant in connection with KV's pending Counterclaim.

_____
Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Chad M. Shandler (#3796)
shandler@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street, P.O. Box 551
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
shandler@rlf.com

*Of counsel:*

Richard L. DeLucia
Charles A. Weiss
Jeffrey S. Ginsberg
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200

*Attorneys for Defendants/Counterclaim-
Plaintiffs KV Pharmaceutical Company, Ther-
Rx Corp., and Drugtech Corp.*

Dated: July 18, 2008

17

## CERTIFICATE OF SERVICE

I hereby certify that on July 18, 2008, I caused to be served by hand delivery the

foregoing document and electronically filed the same with the Clerk of Court using

CM/ECF which will send notification of such filing(s) to the following:

Sophia Siddiqui
Fox Rothschild LLP
919 Market Street, Suite 1300
P. O. Box 2323
Wilmington, DE   19899-2323

I hereby certify that on July 18, 2008, I sent by Electronic Mail the foregoing

document to the following non-registered participants:

Ross J. Oehler
Alfred J. Monte
Fox Rothschild LLP
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA  19422

Chad M. Shandler (#3796)
shandler@rlf.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

O                                           JS - 6

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1300 ABC (JWJx) | | Date | May 30, 2008 |
|---|---|---|---|---|
| Title | Panavise Products, Inc. v. National Products, Inc. | | | |

| Present: The Honorable | Audrey B. Collins | |
|---|---|---|
| Daphne Alex | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:**     MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (In Chambers)

Pending before the Court is Defendant National Products, Inc.'s ("Defendant's") Motion To Dismiss for Lack of Subject Matter Jurisdiction ("Motion"), filed on April 28, 2008. Plaintiff Panavise Products, Inc. ("Plaintiff") filed a timely Opposition, and Defendant filed a timely Reply. The Court found this motion appropriate for determination without oral argument and took the matter under submission. See Fed. R. Civ. Pro. 78; Local Rule 7-15. Upon consideration of the materials submitted by the parties and the case file, the Court **GRANTS** Defendant's Motion and **DISMISSES** Plaintiff's Complaint for the reasons stated below.

## I. BACKGROUND

In this action for declaratory judgment, Plaintiff seeks a declaration that its product, the 811 series device, does not infringe Defendant's patent number 6,666,420 (the '420 patent). Plaintiff also contends that the '420 patent is invalid and unenforceable.

Defendant moves to dismiss the case for lack of subject matter jurisdiction, contending that no Article III case or controversy exists in this case because (1) the Complaint alleges no (and there had in fact been no) pre-suit communications between the parties, (2) Defendant did not know of the existence of Plaintiff's 811 series device before this suit was filed, and (3) Defendant has not even seen the 811 series device. These facts were presented in the Declaration of Jeffrey Carnevali, Defendant's president, and are not disputed. Defendant contends that, given the complete absence of any affirmative conduct by Defendant suggesting to Plaintiff that its device may be infringing Defendant's '420 patent, there is no case or controversy. Plaintiff opposes.[1]

---

[1] Plaintiff argues that Defendant did not comply with Local Rule 7-3 because it conducted the conference of counsel three days, rather than five days, before filing the Motion. Defendant candidly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O                                                    JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1300 ABC (JWJx) | Date | May 30, 2008 |
|---|---|---|---|
| Title | Panavise Products, Inc. v. National Products, Inc. | | |

## II. LEGAL STANDARDS

**A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A motion to dismiss pursuant to Rule 12(b)(1) raises the question of a federal court's subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  A Rule 12(b)(1) motion may attack either the allegations of a complaint as insufficient to confer upon the court subject matter jurisdiction (a "facial" challenge), or may attack the existence of subject matter jurisdiction in fact (a "speaking" motion).  See Thornhill Publishing Co., Inc. v. General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979); see also Trentacosta v. Frontier Pacific Aircraft Industries, Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (discussing the differing evidentiary standards).

For a facial challenge, all allegations of material fact are taken as true and construed in the light most favorable to a nonmoving party.  When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the allegations in the complaint, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact.  See Thornhill, 594 F.2d at 733; Trentacosta, 813 F.2d at 1558 (so long as the jurisdictional issue is "separable," court may resolve disputed issues of fact on motion).

The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction (e.g., the plaintiff, or the defendant in a case that has been removed to federal court).  See Sopcak v. Northern Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995).  A court presumes lack of jurisdiction until shown otherwise.  See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).

**B.    Subject Matter Jurisdiction Under the Declaratory Judgment Act**

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction...any court of the United States, upon filing of an appropriate pleading, may declare the right and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  "The 'actual controversy' requirement of the Declaratory Judgment Act is rooted in Article III of the Constitution, which provides for federal jurisdiction over only 'cases and controversies'."  Sandisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1378 (Fed. Cir. 2007).

admits the technical violation and states it was accidental.  It is apparent that there was no substantive violation of the Local Rule.  Under these circumstances, the Court will not deny the motion for non-compliance with Local Rule 7-3.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

O                                                   JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1300 ABC (JWJx) | Date | May 30, 2008 |
|----------|------------------------|------|--------------|
| Title | Panavise Products, Inc. v. National Products, Inc. | | |

In the patent dispute context, the Court of Appeals for the Federal Circuit originally employed a two-part test to determine whether a declaratory judgment plaintiff fulfilled the case or controversy requirement. The test "first considers whether conduct by the patentee creates reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and second examines whether conduct by the declaratory judgment plaintiff amounts to infringing activity or demonstrates concrete steps taken with the intent to conduct such activity." Id. at 1379. See also Sony Electronics, Inc. v. Guardian Media Techs., Ltd., 497 F.3d 1271, 1283 (Fed. Cir. 2007.)

Recently, in MedImmune, the Supreme Court eliminated the first prong of this test. Id. at 1380. The Court held that a petitioner holding a license for a patent is not required to break the license agreement before seeking declaratory judgment that the underlying patent is invalid, unenforceable, or not infringed. MedImmune, Inc., v. Genentech, Inc., 127 U.S. 764, 777 (2007). The Court determined that the "reasonable apprehension of suit" prong of the test conflicted with previous case law conferring jurisdiction over claims brought by declaratory judgment plaintiffs not facing a potential lawsuit. Id. at 774. Specifically, in Aetna Life Insurance and Maryland Casualty, the court found that declaratory judgment actions brought by the insurer presented an Article III case or controversy, even though the insureds had not given any indication that they intended to file a lawsuit. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239(1937); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 271-273 (1941).

The Supreme Court then explained that, based on this prior case law, an Article III case or controversy exists when "the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgement." MedImmune, 127 S.Ct. 771 (citing Maryland Casualty, 312 U.S. 270, 273 (1941)). The Court elaborated that "the dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interest'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id at 771. Therefore, a declaratory judgment plaintiff need not "destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business, before seeking declaration of its actively contested legal rights...." Id. at 775.

In Sandisk, the Federal Circuit analyzed MedImmune and confirmed that MedImmune rejected its old test for an Article III "case or controversy". The Federal Circuit declared that "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in a position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." Sandisk, 480 F.3d at 1381. Applying that rule to the facts before it, the Federal Circuit held that, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where the party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." Id.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

O                                            JS - 6

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-1300 ABC (JWJx) | Date | May 30, 2008 |
|---|---|---|---|

| Title | Panavise Products, Inc. v. National Products, Inc. |
|---|---|

## III.  DISCUSSION

As indicated above, Plaintiff proffers no facts or evidence disputing Defendant's averment that there have been no pre-suit communications between the parties, that Defendant did not know of Plaintiff's 811 series device before this suit was filed, and still has never even seen Plaintiff's device, let alone examine it to determine whether it potentially infringes Defendant's '420 patent.  Plaintiff urges that the Declaration of its president, Gary Richter, refutes these aspects of Plaintiff's declaration.  Specifically, Richter states that both Plaintiff and Defendant were in attendance at a January 2008 trade show in Las Vegas where Plaintiff ran a booth displaying its products, including the 811 series device, and that some of Plaintiff's competitors visited Plaintiff's booth.  (Richter Decl. ¶¶ 7-9.)  Based on these assertions, Plaintiff insinuates that Defendant could well have seen the 811 series device.

First, the conclusion that Plaintiff suggests is mere speculation: Plaintiff has presented no evidence that Defendant actually saw the 811 series device.  Without such evidence, Defendant's denial of knowledge is uncontested.  Indeed, Plaintiff primarily relies on the allegations of its Complaint, and reliance on mere allegations is insufficient to show the existence of subject matter jurisdiction when that jurisdiction is subject to a factual challenge.  See Safe Air v. Meyer, 373 F.3d 1035 , 1039 (9th Cir. 2004) (in resolving a motion that presents a factual attack concerning jurisdiction, "the district court may review evidence beyond the complaint without converting th emotion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations"); Savage v. Glendale Union High Sch. Distr. No. 205, 3453 F.3d 1036, 1039 n.2 (9th Cir. 2003) ("the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.")

Plaintiff also contends, however,  that the post-MedImmune standard does not require an affirmative act by the defendant to provide a basis for a declaratory judgment suit; rather, it is a totality of the circumstances test.  Plaintiff contends that the allegations of its Complaint satisfy this test.  Those allegations relate to Plaintiff's mere awareness that the parties are competitors, that Plaintiff and Defendant sell similar devices, that Defendant has sued others for infringement of the '420 patent and thus apparently diligently enforces its patent rights, and that Plaintiff professes a wholly self-generated concern that its 811 series device potentially infringes Defendant's '420 patent.

Having reviewed the case law, it is clear that no case or controversy can exist in a patent action for declaratory relief in the absence of an act by the defendant.  For example, in Sandisk, the court stated that  "*declaratory judgment jurisdiction generally will not arise* merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, *without some affirmative act by the patentee.*"  Sandisk, 480 F.3d at 1380-1381 (emphasis added).  That is exactly the situation here: Plaintiff merely learned that Defendant owns a patent and is concerned that its own device may infringe Defendant's patent, but Defendant has taken no affirmative act in relation to Plaintiff's device; indeed, Defendant did not know of Plaintiff's device and has yet to see it.  Sandisk further states that "Article III jurisdiction *may* be met *where the patentee takes a position*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

O

JS - 6

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-1300 ABC (JWJx) | | Date | May 30, 2008 |
|---|---|---|---|---|
| Title | Panavise Products, Inc. v. National Products, Inc. | | | |

that puts the declaratory judgment plaintiff in a position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do," id. (emphasis added), thereby reinforcing the notion that no case or controversy can exist where the defendant has taken no position. It is undisputed that Defendant has taken no position with respect to Plaintiff and/or the 811 series device.

That Defendant has sued other unrelated persons for infringement of the '420 patent does not constitute action toward this plaintiff and the 811 series device, and therefore does not contribute to the existence of a case or controversy between these parties   Without Defendant even knowing about Plaintiff's device, it is not apparent that the parties have "adverse legal interest[s]" and that the dispute is "definite and concrete." Rather, Plaintiff is seeking what MedImmune forbids: "an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 127 S.Ct. at 77. Indeed, the cases Plaintiff cites in support of its position all involve a defendant communicating with the plaintiff about plaintiff's device. Plaintiff has directed the Court to no case in which a case or controversy was found in the absence of any act by the defendant directed toward the plaintiff and/or plaintiff's device.

The absence of any communication or conduct by Defendant towards Plaintiff about the 811 series device is dispositive of the jurisdictional question: there is no actual case or controversy upon which the Court's subject matter jurisdiction may rest. The Court need not reach the remaining arguments presented in the Motion.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion and hereby **DISMISSES** Plaintiff's Complaint for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer   DA

Mark M. Bettilyon (4798)
Arthur B. Berger (6490)
Robert O. Rice (6639)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, UT  84145-0385
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543

*Attorneys for Plaintiffs*

RECEIVED CLERK

2008 JUL -3  P 6: 3 1

U.S. DISTRICT COURT
DISTRICT OF UTAH

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ALBION LABORATORIES, INC., a Utah corporation, and ALBION INTERNATIONAL, INC., a Utah corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LANNETT COMPANY, INC., a Pennsylvania corporation,<br><br>Defendant. | COMPLAINT<br><br>Case: 2:08cv00515<br>Assigned To : Benson, Dee<br>Assign. Date : 7/7/2008<br>Description: Albion Laboratories et al v. Lannett Company |

Plaintiffs Albion Laboratories, Inc., and Albion International, Inc., allege and complain

of Defendant Lannett Company, Inc. ("Lannett"), as follows:

### PARTIES

1.     Plaintiff Albion Laboratories, Inc., is a Utah corporation and Plaintiff Albion

International, Inc., is a Nevada corporation, both of which have their principal place of business

in Clearfield, Utah, and are collectively referred to herein as "Albion."

2.     Lannett is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

4.     This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because these claims are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.     This Court further has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 on the grounds that Albion and Lannett are citizens of different states and the amount in controversy exceeds $75,000.

6.     On information and belief, this Court has personal jurisdiction over Lannett because it manufactures, sells, and offers to sell products, directly or indirectly, to residents of the State of Utah, and/or has directed its activities at Utah residents, and/or has otherwise transacted or done business in this state, and has caused tortious injury in this state.

7.     On information and belief, venue is proper in this district and division pursuant to 28 U.S.C. § 1391(a)-(c).

**GENERAL ALLEGATIONS**

(Albion)

8.     Albion manufactures and distributes high-quality mineral products for human, plant, and animal consumption.

9.      Albion owns U.S. Patent 5,516,925 (the "'925 Patent") and U.S. Patent 6,716,814 (the "'814 Patent") (collectively, the "Patents").

10.     The Patents are valid and enforceable.

11.     Ferrous bis-glycinate is one of Albion's most important products, which Albion sells under the trademark FERROCHEL.

12.     Albion has used the mark FERROCHEL in commerce in connection with its chelated iron since at least as early as April 20, 1993.

13.     Albion's FERROCHEL iron is sold world-wide and has been used, among other things, for food fortification, as a dietary supplement, and as a source of iron in the over-the-counter and prescription pharmaceutical markets.

14.     FERROCHEL is an inherently distinctive mark for use with chelated iron.

15.     In addition, the FERROCHEL mark has acquired distinctiveness prior to the acts of Lannett complained of herein.  As a result of Albion's extensive sales, advertising, and promotion of its FERROCHEL iron, and through favorable industry and consumer acceptance and recognition, the relevant consuming public and trade have come to recognize FERROCHEL iron as emanating from a single source, namely Albion.

16.     The FERROCHEL mark is incontestable under 15 U.S.C. § 1065.

17.     Under 15 U.S.C. § 1115(b), Albion's registration of the FERROCHEL mark is conclusive evidence of the validity of the mark, of Albion's ownership of the mark, and of Albion's exclusive right to use the mark in commerce in connection with the goods listed in the registration.

(Lannett)

18.     Lannett holds itself out as a manufacturer of generic pharmaceutical drugs and markets its products primarily to drug wholesalers, retail drug chains, repackagers, distributors, and government agencies.

19.     In 2007, Lannett obtained a small amount of Albion-manufactured FERROCHEL iron.

20.     Lannett was not authorized to incorporate FERROCHEL iron into commercially available products.

21.     Nevertheless, without authorization from Albion, Lannett incorporated FERROCHEL iron into Lannett's Multivitamin with Minerals product and/or other prenatal products and introduced the resulting products into the stream of commerce for public use.

22.     Also without authorization from Albion, Lannett used Albion's trademark FERROCHEL in connection with Lannett's products.

23.     On or about July 1, 2008, Lannett transmitted a letter to Albion demanding that Albion provide all product specifications for FERROCHEL including comparative data supporting certain representations Lannett alleged Albion made.

24.     Lannett provided no legal basis for its demand that Albion provide such information.

25.     Nonetheless, if Albion declined to respond overnight, Lannett threatened to refer the matter to legal counsel for immediate action.

First Claim For Relief
(Patent Infringement)

26.     Albion realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

27.     Lannett manufactures, uses, sells, and offers to sell, products that infringe the Patents, such as Lannett's Multivitamin with Minerals product.

28.     Lannett has actual and/or constructive knowledge of the Patents but despite such knowledge Lannett has and continues to willfully infringe the Patents.

29.     Lannett's acts of patent infringement have caused Albion actual damages in an amount to be proven at trial. Such damages should be trebled as allowed by 35 U.S.C. § 284.

30.     This is an exceptional case pursuant to 35 U.S.C. § 285, and Albion is therefore entitled to recover its attorney fees from Lannett.

31.     Pursuant to 35 U.S.C. § 284, Albion is also entitled to recover its costs of suit.

32.     Albion is being irreparably harmed by Lannett's infringement of the Patents, and Albion has no adequate remedy at law. Albion is therefore entitled to preliminary and permanent injunctive relief barring Lannett from engaging in further acts violative of 35 U.S.C. § 271.

Second Claim For Relief
(Infringement of Federally Registered Trademark)

33.     Albion realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

34.     Albion is the owner of the federally registered trademark FERROCHEL, under which Albion sells ferrous bis-glycinate chelate.

35.     Without Albion's authorization, Lannett has offered to sell and sold goods making unauthorized use of the FERROCHEL mark, which is likely to cause confusion, mistake, or to deceive the purchasing public as to the source or origin of such goods, and is likely to cause the purchasing public to wrongly believe that such goods are sponsored by, affiliated with, or otherwise associated with Albion.

36.     Lannett's actions constitute infringement of Albion's federally registered FERROCHEL mark in violation of 15 U.S.C. § 1114(1).

37.     Lannett's conduct is without authorization from Albion and has been undertaken with prior and continuing knowledge of Albion's prior use of, superior rights in, and federal registration of the mark FERROCHEL.

38.     On information and belief, Lannett's use in commerce of Albion's FERROCHEL mark is done with the intent to deceive and confuse the public and Lannett's trademark infringement is willful.

39.     Lannett's acts of trademark infringement have caused Albion actual damages in an amount to be proven at trial.  Such damages should be trebled as allowed by 15 U.S.C. § 1117(a).

40.     Albion is further entitled to recover Lannett's profits, the amount of which is currently unknown by Albion, and which amount should be trebled as allowed by 15 U.S.C. § 1117(a).

41.     This is an exceptional case pursuant to 15 U.S.C. § 1117(a), and Albion is therefore entitled to recover its attorney fees from Lannett.

42.     Pursuant to 15 U.S.C. § 1117(a), Albion is also entitled to recover its costs of suit.

990474

43.     Albion is being irreparably harmed by Lannett's use of the FERROCHEL mark, and Albion has no adequate remedy at law.  Albion is therefore entitled to preliminary and permanent injunctive relief barring Lannett from engaging in further acts violative of 15 U.S.C. § 1114(1).

## Third Claim for Relief
### (Federal Unfair Competition)

44.     Albion realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

45.     Albion is the owner and senior user of the FERROCHEL mark, which is inherently distinctive and/or has acquired distinctiveness, and was used in interstate commerce before the acts of Lannett complained of herein.

46.     Lannett's unauthorized use of the FERROCHEL mark thus falsely suggests a connection, association with, or authorization by, Albion.

47.     Use of this mark is likely to deceive or confuse consumers into believing that Lannett, or the goods of Lannett, have an affiliation or connection with Albion, or are sponsored or approved by Albion, or are otherwise associated with or are permitted by Albion.

48.     Through the actions complained of herein, Lannett has made and is making false, deceptive, and misleading statements constituting false designation of origin, false and misleading representation, and false advertising made in and in connection with interstate commerce.

49.     Lannett's actions thus violate 15 U.S.C. § 1125(a).

990474                             7

50. Lannett's acts of trademark infringement have caused Albion actual damages in an amount to be proven at trial. Such damages should be trebled as allowed by 15 U.S.C. § 1117(a).

51. Albion is further entitled to recover Lannett's profits, the amount of which is currently unknown by Albion, and which amount should be trebled as allowed by 15 U.S.C. § 1117(a).

52. This is an exceptional case pursuant to 15 U.S.C. § 1117(a), and Albion is therefore entitled to recover its attorney fees from Lannett.

53. Pursuant to 15 U.S.C. § 1117(a), Albion is also entitled to recover its costs of suit.

54. Albion is being irreparably harmed by Lannett's unauthorized use of the FERROCHEL marks, and Albion has no adequate remedy at law. Albion is therefore entitled to preliminary and permanent injunctive relief barring Lannett from engaging in further acts violative of 15 U.S.C. § 1125(a).

### Fourth Claim for Relief
(Infringement of Common Law Trademark)

55. Albion realleges and incorporates by this reference the preceding paragraphs of the Complaint as if fully set forth herein.

56. Albion owns and enjoys common law rights in the FERROCHEL mark, which rights are superior to any rights of Lannett in this mark. This mark is inherently distinctive and/or has acquired distinctiveness prior to the acts of Lannett complained of herein.

57. Lannett's use of the FERROCHEL mark falsely suggests a connection or association with, or authorization by, Lannett, and is a use in commerce that is likely to cause

990474                                          8

confusion and mistake and to deceive consumers as to the source, origin, approval, sponsorship, and/or affiliation of the goods offered by Lannett and those offered by Albion.

58.     Lannett's actions have caused Albion damages in an amount to be proven at trial.

59.     Albion is entitled to an award of exemplary and punitive damages against

Lannett.

60.     Albion is being irreparably harmed by Lannett's unauthorized use of this mark and has no adequate remedy at law. Albion is therefore entitled to preliminary and permanent injunctive relief barring Lannett from infringing Albion's mark.

### Fifth Claim for Relief
(Unfair Competition, Deceptive Advertising, and Unfair Trade Practices under Utah Law)

61.     Albion realleges and incorporates by this reference the preceding paragraphs of this Complaint as if fully set forth herein.

62.     Through its unauthorized use of Albion's marks as described above, Lannett is engaged in making false and deceptive statements concerning the source, origin, or affiliation of its goods, and is using Albion's FERROCHEL mark to unfairly benefit from the mark and the goodwill therein.

63.     Thus, Lannett's actions with regard to using the FERROCHEL mark constitutes unfair competition, deceptive advertising, and unfair trade practices proscribed by the common law of the State of Utah.

64.     Lannett's actions have caused Albion damages in an amount to be proven at trial.

65.     Albion is entitled to an award of exemplary and punitive damages against

Lannett.

66.     Albion is also entitled to preliminary and permanent injunctive relief barring the

Lannett from engaging in further acts of unfair competition, deceptive advertising, and unfair

trade practices.

## Sixth Claim For Relief
### (Declaratory Relief)

67.     Albion realleges and incorporates by this reference the preceding paragraphs of

the Complaint as if fully set forth herein.

68.     There is an existing controversy between Lannett and Albion concerning

Lannett's unauthorized use of FERROCHEL iron in violation of Albion's property, trademark,

and patent rights.

69.     Albion did not promise to supply, nor is it obligated to supply, any FERROCHEL

iron to Lannett in the future.

70.     Albion has no obligation to provide information concerning its products to

Lannett or any other obligations to Lannett.

71.     Albion is entitled to a declaration of the parties' rights as follows:

a.      Albion need not provide the product specifications, technical support, and

other information Lannett demanded in its July 1, 2008 letter to Albion; and

b.      Albion need not supply FERROCHEL iron to Lannett.

## REQUEST FOR RELIEF

WHEREFORE, Albion respectfully prays for the following relief:

1.      That Lannett, its officers, directors, members, agents, servants, employees,

representatives, attorneys, related companies, successors, assigns, and all others in active concert

or participation with Lannett, be preliminarily and then permanently enjoined from:

990474                                      10

     a.     Infringing one or more claims of the Patents;

     b.     Manufacturing, selling, or offering to sell all products developed in whole or in part that infringe, or which when used infringe, one or more of the claims of the Patents, including, but not limited to Lannett's Multivitamin with Minerals product, and ordering the impoundment and destruction of all products developed in whole or in part by Lannett that infringe, or when used infringe, one or more claims of the Patents;

     c.     Directly or indirectly using in commerce, reproducing, manufacturing, importing, exporting, advertising, displaying, providing, selling, offering for sale, or distributing any goods or services whatsoever in connection with, or that contain, the FERROCHEL mark and including any words, designations, trademarks, service marks, emblems, symbols, terminology, or insignia that are similar thereto, in any style or media whatsoever, including as an internet domain name or as HTML code for an internet website in any manner, such as the title or keyword portions of a metatag, a sponsored link, or otherwise; and

     d.     Unfairly competing with Albion in any manner whatsoever.

2.     That Lannett be directed to file with the Court and serve on Albion within thirty days after the service of any injunction order, a report in writing, under oath, setting forth in detail the manner and form in which Lannett has complied with the injunction.

3.     For an order that Lannett promulgate advertising to correct and/or prevent any consumer confusion, false associations, or false representations it has created or made in the marketplace, and/or compensate Albion for the advertising and other expenditures necessary to dispel any such consumer confusion, false associations, or false representations.

990474

11

4.     For an order that Lannett cancel all pending orders for any products that were or are the subject of Lannett's wrongful acts.

5.     For a declaration that:

a.     Albion need not provide the product specifications, technical support, and other information to Lannett; and

b.     Albion need not supply FERROCHEL iron to Lannett.

6.     That Albion be awarded judgment for three times its actual damages, in an amount to be determined at trial.

7.     That Lannett account to Albion for Lannett's profits arising from the acts complained of herein, and that Albion be awarded treble Lannett's profits, in accordance with the accounting demanded.

8.     That Albion be awarded pre- and postjudgment interest.

9.     That Albion be awarded its costs of suit, including reasonable expenses and attorneys fees.

10.    That Albion be awarded exemplary and punitive damages.

11.    That Albion be awarded such other and further relief as the Court deems just and proper.

DATED this ____ day of July, 2008.

RAY QUINNEY & NEBEKER P.C.

Mark M. Bettilyon
Arthur B. Berger
Robert O. Rice

*Attorneys for Plaintiffs*

990474

12

Plaintiff's Address:

101 North Main Street
Clearfield, Utah 84108

.