## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LANNETT COMPANY, INC., | : |
| Plaintiff | :    CIVIL ACTION<br>:    NO. 08-338 (JJF) |
| v. | : |
| KV PHARMACEUTICAL COMPANY,<br>THER-RX CORP., and DRUGTECH CORP., | : |
| Defendants | : |

| | |
|---|---|
| KV PHARMACEUTICAL COMPANY,<br>THER-RX CORP., and DRUGTECH CORP., | : |
| Counterclaim-Plaintiffs | : |
| v. | : |
| LANNETT COMPANY, INC., | : |
| Counterclaim-Defendant | : |

**OPENING BRIEF OF PLAINTIFF, LANNETT COMPANY, INC., IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS LANNETT'S AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, FAILURE TO INCLUDE AN INDISPENSABLE PARTY, AND FAILURE TO STATE A CLAIM**

FOX ROTHSCHILD LLP
Sophia Siddiqui, Esquire (No. 4914)
Gerard P. Norton, Esquire (*)
Alfred J. Monte, Jr., Esquire (*)
Jonathan R. Lagarenne, Esquire (*)
Joshua M. Hummel, Esquire (*)
Fox Rothschild LLP
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19801
(302) 622-4278
(302) 656-8920 (facsimile)
*Attorneys for Plaintiff,*
*Lannett Company, Inc.*

(*) Admitted Pro Hac Vice

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………...…………....iii

STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS…………………..……1

STATEMENT OF THE FACTS…………………………………………………….…….2

SUMMARY OF ARGUMENT…………………………………………………………4

ARGUMENT…………………………………………………………………….……6

I.    Lannett's Claims For Declaratory Judgment Must Not Be Dismissed On
      The Basis Of Lack Of Subject Matter Jurisdiction………………………………6

      A.    This Controversy Is Immediate And Real Because It Is Between
            Parties Having Adverse Legal Interests As To Whether Defendants'
            Patents Are Invalid And Whether Lannett Is Actively Engaging In
            Infringing Activity…………………………………………………..7

      B.    The Court Should Exercise Its Discretion To Adjudicate The
            Declaratory Judgment Action Because The Controversy Presented
            Is Precisely The Type Of Action The Declaratory Judgment Act
            Was Enacted To Ameliorate…………………………………………11

II.   Counts I And II Of The Amended Complaint Must Not Be Dismissed On
      The Basis Of Failure To Join An Indispensable Party……………………….....13

III.  Count IV Of The Amended Complaint And Lannett's Claims For Antitrust
      Violations Must Not Be Dismissed…………………………………………….13

      A.    Lannett Properly Pleads The Relevant Product Market………………13

      B.    Lannett States A Proper Claim As A Result Of Defendants'
            Fraudulent Enforcement Of Its Patents………………………….…..16

            1.    Lannett Has Shown Attempted Enforcement Of The
                  Fraudulently Obtained Patents…………………………….…17

            2.    Lannett Has Adequately Pled Antitrust Damages…………….18

            3.    Lannett Has Shown That The Defendants Present A Threat
                  To Competition……………………………………………….19

IV.   Lannett's Amended Complaint Properly Pleads A Claim For Relief Under
      The Delaware Deceptive Trade Practices Act……………………………….19

CONCLUSION…………………………………………………………………………….23

## TABLE OF AUTHORITIES

Cases

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)............................................8

Allen-Myland v. Int'l Business Mach. Corp., 33 F.3d 194, 201 (3d Cir. 1994)....................15

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).......................................16

Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1343-44 (Fed. Cir.
2007)..............................................................................................................9

Bernstein v. IDT Corp., 582 F.Supp. 1079, 1084 (D. Del. 1984)....................................16

BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir.
1993).............................................................................................................7

Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 307 (3d Cir. 2007).............................15

Capo, Inc. v. Dioptics Med. Prods., Inc., 387 F.3d 1352, 1355 (Fed. Cir. 2004)...................11

Cat Tech LLC v. Tubemaster, Inc., 528 F.3d 871, 879-80 (Fed. Cir. 2008)..............6, 7, 8, 11

Cryovac Inc. v. Pechiney Plastic Packaging, Inc., 430 F.Supp.2d 346, 359 (D. Del.
2006)..............................................................................................................20

Eastman Kodak Co. v. Image Technical Services, Inc., 112 S.Ct. 2072, 2091 (1992)..............15

Ethex Corp. and Ther-Rx v. First Horizon Pharmaceutical Corp.,
228 F.Supp.2d 1048 (E.D. Mo. 2002)......................................................................10

Geneva Pharm. Tech. Corp. v. Barr Laboratories, Inc., 396 F.3d 485, 496 (2d Cir.
2006)..............................................................................................................15

Goodyear Tire & Rubber, Co. v. Releasomers, Inc., 824 F.2d 953, 955-56 (Fed. Cir.
1987).............................................................................................................7

Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1331 (Fed. Cir. 1998)...........20

Hydril Co. LP v. Grant Prideco LP, 474 F.3d 1344, 1350 (Fed. Cir. 2007).........................17

In re Cardizem CD Antitrust Litigation, 105 F.Supp.2d 618, 681 (E.D. Mich. 2000)..............15

In re Netflix Antitrust Litigation, 506 F.Supp.2d 308 (N.D. Cal. 2007)...........................21

Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409-10 (3d Cir.
1991).................................................................................................16

Lang v. Pac. Marine & Supply Co., 895 F.2d 761, 764 (Fed. Cir.
1990)...................................................................................................7

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168,
113 S.Ct. 1160, 122 L.Ed. 2d 517 (1993)...............................................................16

Louisiana Wholesale Drug Co. Inc. v. Sanofi-Aventis, 2008 WL 169362, *7 (S.D. N.Y.
2008)...................................................................................................15

Marran v. Marran, 376 F.3d 143, 155 (3d Cir. 2004)..............................................15, 16

Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273
(1941)...................................................................................................6

MedImmune, Inc. v. Genentech, Inc., 127 S. Ct. 764, 771(2007)...................................6, 8

Microchip Tech. Inc. v. Chamberlain Group, Inc., 441 F.3d396, 943 (Fed. Cir.
2006)...................................................................................................9

Micron Tech., Inc. v. Mosaid Techs., Inc., 518 F.3d 897, 901-02 (Fed. Cir.
2008)................................................................................................9, 11

Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1358-59 (Fed. Cir. 1999)........20

Nami v. Fauver, 82 F.3d 63 (3d Cir. 1996).............................................................21

Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir.
2006)...................................................................................................15

Prasco, LLC v. Medicis Pharm. Corp., 2007 WL 1974951 (S.D. Ohio July 3, 2007).............10

<u>Public Affairs Assocs., Inc. v. Rickover</u>, 369 U.S. 111, 112 (1962)................................11

<u>Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.</u>, 363 F.3d 1361, 1379 (Fed. Cir. 2004)...................................................................................................................7

<u>Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.</u>, 482 F.3d 1330, 1339 (Fed. Cir. 2007)....................................................................................................................7

<u>Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.</u>, 375 F.3d 1341, 1355 (Fed. Cir. 2004)...................................................................................................................17

<u>Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.</u>, 382 U.S. 172, 174 (1965)...........17

<u>Weiss v. York Hospital</u>, 745 F.2d 786, 825 (3d Cir. 1984)...........................................15

<u>Other Authorities</u>

6 Del. C. § 2532...........................................................................................1, 5, 19

15 U.S.C. § 2..........................................................................................1, 13

28 U.S.C. § 1404...............................................................................................12

35 U.S.C. § § 1-376......................................................................................19

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

Lannett filed this action on June 6, 2008, seeking a declaratory judgment, inter alia, that KV's patents are invalid and unenforceable, and that Lannett's Multivitamin with Minerals product does not infringe upon any such patents. Lannett has also brought claims under the Sherman Antitrust Act, 15 U.S.C. § 2, and under the Delaware Deceptive Trade Practices Act, 6 Del.C. §2532, because KV has engaged in unfair competition and deceptive trade practices in the marketplace by unlawfully preventing Lannett and others from entering the market. Lannett subsequently filed an Amended Complaint on June 10, 2008. On June 17, 2008, KV filed a Counterclaim as well as a Motion for Temporary Restraining Order, Early Preliminary Injunction Hearing and Preliminary Injunction, which proceeded to a hearing before the Court on June 25, 2008.

On July 18, 2008, KV filed the instant Motion to Dismiss Lannett's Amended Complaint for Lack of Subject Matter Jurisdiction, Failure to Include an Indispensable Party, and Failure to State a Claim (the "Motion to Dismiss"). For the reasons set forth herein, KV's Motion to Dismiss must be denied.

1

## STATEMENT OF THE FACTS

Since 1942, Lannett Company, Inc. ("Lannett") has been in the business of developing, manufacturing and marketing generic pharmaceutical products in tablet, capsule and oral liquid forms. Lannett, which has been a pioneer in the United States generic drug industry, is a Delaware corporation headquartered in Philadelphia, Pennsylvania. Lannett currently markets more than sixty (60) products, approximately forty (40) of which are produced in-house.

Lannett planned, developed and has marketed a "Multivitamin with Minerals" capsule, a multivitamin/mineral product containing omega-3 fatty acids for women pre- and post-conception, within the United States. Dietary multivitamin/mineral and omega-3 fatty acid supplements are prescribed by healthcare professionals throughout pregnancy and during the postnatal period for both lactating and non-lactating mothers, and throughout the childbearing years. Lannett's multivitamin is packaged in a white, plastic, screw-top bottle containing thirty (30) capsules.

The Defendants/Counterclaim-Plaintiffs in this case, KV Pharmaceuticals, DrugTech Corporation and Ther-Rx Corporation (collectively, "KV")[1], seek to prevent Lannett from marketing and selling its Multivitamin with Minerals. KV contends that it holds numerous patents that would prevent Lannett and other competitors from introducing a competitive multivitamin/mineral and omega-3 fatty acid supplementation products in competition with KV's product, PrimaCare® ONE. Specifically, KV contends that it holds the following patents: U.S. Patent No. 6,258,846 ("the '846 patent"), U.S. Patent No. 6,576,666 ("the '666 patent"), U.S. Patent No. 7,112,609 ("the '609 patent"), U.S. Patent No. 6,197,329 ("the '329 patent"), and

---

[1] DrugTech and Ther-Rx are wholly-owned subsidiaries of KV. DrugTech owns the patents at issue and licenses the patents to KV and Ther-Rx. For ease of reference, the Movants have referred to themselves collectively as "KV." (See Defendants' Opening Brief, at 1.) Therefore, for the sake of consistency, this brief will also refer to the Movants, in the collective, as "KV."

U.S. Patent No. 6,569,857 ("the '857 patent").  However, KV's Patents are invalid based upon prior art, pursuant to sections 102 and 103 of Title 35 of the United States Code.  In light of the invalidity and/or non-infringement of KV's patents, Lannett sought assurances from KV that it would not assert these patents and thereby block Lannett's entry into the market.  KV failed or refused to provide those requested assurances.

## SUMMARY OF ARGUMENT

First, KV's Motion to Dismiss Lannett's claims for declaratory judgment on the basis of lack of subject matter jurisdiction must be denied. As is set forth in Lannett's Amended Complaint, and as is evidenced by the counterclaims and motion for injunctive relief that have already been filed by KV in this case, there is an actual controversy between the parties as to the validity and enforceability of KV's patents and whether Lannett has infringed same. The actual controversy between the parties is immediate and real, and not merely hypothetical. Furthermore, the Court should exercise its jurisdiction to adjudicate this declaratory judgment action because the controversy between the parties is exactly the type of action that the Declaratory Judgment Act was designed to ameliorate.

Second, KV's Motion to Dismiss Counts I and II of the Amended Complaint for failure to join an indispensable party must be denied. The parties have stipulated to the dismissal of the claims asserted in the Amended Complaint to invalidate two patents owned by a third party, Albion International, Inc. As Lannett continues to assert its claims against the remaining patents owned by KV, Defendants' Motion to Dismiss on this point is moot.

Third, KV's Motion to Dismiss Count IV of the Amended Complaint for failure to state a claim for antitrust violations must be denied. KV contends that Lannett's claim under Section 2 of the Sherman Act is deficient because (1) Lannett does not plead the relevant product market; and (2) Lannett fails to plead facts sufficient to enforce a claim for enforcement of a patent procured through fraud. As is set forth fully in the Amended Complaint, however, Lannett clearly pleads the relevant product market as "the multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support." KV fails to state why the product market identified by Lannett is legally insufficient or incorrect. Furthermore, Lannett states a

4

proper claim as a result of Defendants' fraudulent enforcement of its patents. KV has clearly attempted to enforce its fraudulently obtained patents, as is evidenced by its failure to provide assurances that it would not block Lannett's entry into the market and its pursuit of counterclaims and motion for injunctive relief in this action. Lannett has also adequately pled antitrust damages because of the Defendants' anticompetitive conduct, as well as that Defendants present a threat to competition in the relevant market.

Finally, KV's Motion to Dismiss Count V of the Amended Complaint for failure to state a claim for violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532 ("DTPA"), must be denied. KV contends that the Lannett's claim under the DTPA is preempted by federal patent law and must be dismissed. However, there are no provisions in the federal patent law that expressly or implicitly require preemption of state law claims, such as Lannett's, for unfair competition. Indeed, Lannett's claim seeks relief of an entirely different nature, since Lannett's claim under the DTPA is based not simply on the invalidity of KV's patents, but on KV's representations and actions in the course of their business and in advertising. Thus, Lannett's claim is not preempted and Defendants' Motion to Dismiss must be denied.

## ARGUMENT

**I.    Lannett's Claims For Declaratory Judgment Must Not Be Dismissed On The Basis Of Lack Of Subject Matter Jurisdiction.**

KV's Motion asks the Court to hold that no controversy exists because KV, who has now counter-sued Lannett for patent infringement in furtherance of its aggressive litigation strategy to protect its premier product, did not have knowledge of Lannett's infringement prior to the filing of this action.  However, the Declaratory Judgment Act bestows on the Court the authority to declare the rights of the parties in this case since all the circumstances demonstrate that the parties' diverse legal interests create an actual controversy that the Court's declaration would resolve.  Contrary to KV's assertions, Lannett has not attempted to "run around" the case or controversy requirement, but rather, has proactively brought an actual controversy to the Court for resolution.  Where the requirements of an actual controversy are satisfied, a potential infringer has a right to file suit against the patent owner; this furthers justice and does not frustrate it, as KV suggests.

The Supreme Court recently held in MedImmune, Inc. v. Genentech, Inc. that the "actual controversy" requirement of the Declaratory Judgment Act refers to cases and controversies that are justiciable under Article III.  127 S. Ct. 764, 771 (2007).  The proper analysis is "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  MedImmune, 127 S. Ct. at 771, quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).  In the wake of MedImmune, the standard for establishing declaratory judgment jurisdiction boils down to whether, in light of all the circumstances, an Article III controversy exists.  See Cat Tech LLC v. Tubemaster, Inc., 528

6

F.3d 871, 879-80 (Fed. Cir. 2008); Teva Pharms. USA, Inc. v. Novartis Pharms. Corp., 482 F.3d

1330, 1339 (Fed. Cir. 2007).

> **A.    This Controversy Is Immediate And Real Because It Is Between Parties Having Adverse Legal Interests As To Whether Defendants' Patents Are Invalid And Whether Lannett Is Actively Engaging In Infringing Activity.**

As stated by the Supreme Court in MedImmune, a dispute must be immediate and real to

satisfy the requirements of justiciability.  See Cat Tech, 528 F.3d at 880, citing Lang v. Pac.

Marine & Supply Co., 895 F.2d 761, 764 (Fed. Cir. 1990).  As stated in KV's opening brief, "a

declaratory judgment plaintiff need not necessarily demonstrate a 'reasonable apprehension of

suit' if the other requirements for a declaratory judgment were satisfied, such as immediacy and

reality of the conflict."  (KV's Opening Brief, at 7.)  The requisite immediacy exists where a

declaratory judgment plaintiff has taken significant, concrete steps to conduct potentially

infringing activity or has engaged in "meaningful preparation to conduct potentially infringing

activity."  Cat Tech, 528 F.3d at 880-81.  "Meaningful preparation" exists even before a party

has engaged in the actual manufacture or sale of a potentially infringing product.  Cat Tech, 538

F.3d at 881; see also BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993)

(requiring "present activity which could constitute infringement or concrete steps taken with the

intent to conduct such activity"); Goodyear Tire & Rubber, Co. v. Releasomers, Inc., 824 F.2d

953, 955-56 (Fed. Cir. 1987) (requiring that the plaintiff "actually have either produced the

device or have prepared to produce that device").  The "reality" requirement concerns whether

the products at issue are substantially fixed and determinate at the time declaratory relief is

sought.  Cat Tech, 538 F.3d at 882 (citing Sierra Applied Scis., Inc. v. Advanced Energy Indus.,

Inc., 363 F.3d 1361, 1379 (Fed. Cir. 2004)).  A dispute is real and not hypothetical, and the

reality requirement is satisfied, where the declaratory judgment plaintiff's product has already

been produced or it is unlikely that substantial modifications will be made. <u>Cat Tech</u>, 538 F.3d at 882-83.

Lannett has satisfied the immediacy and reality requirements dictated by the Supreme Court. Not only has Lannett engaged in meaningful preparation, but it has already manufactured, imported, sold, and distributed the product for which it now seeks a declaration of non-infringement or invalidity with respect to certain of KV's patents, clearly rendering the dispute immediate. Lannett's same actions satisfy the reality requirement as well. The product at issue is in its final form and has already been produced. Therefore, the dispute is real and not hypothetical. Furthermore, prior to suit, Lannett sought assurances from KV that it would not assert its patents and thereby block Lannett's entry into the market. KV failed or refused to provide those requested assurances. This is certainly an immediate and real controversy between parties having adverse legal interests, which is bolstered by the fact that KV has counterclaimed for infringement of the patents on which Lannett seeks a declaratory judgment and has further pursued a motion seeking injunctive relief. The Court has authority to hear the declaratory judgment action because, at the very least, the conflict is immediate and real.

By relying on its assertions that it had not threatened Lannett and had no knowledge of Lannett's potential infringement, KV attempts to reincarnate the pre-<u>MedImmune</u> standard. According to the Supreme Court, the dispute must be "definite and concrete, touching the legal relations having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." <u>MedImmune</u>, 127 S. Ct. at 774 n.11, quoting <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240 (1937) (jurisdiction existed even though the very reason the insurer sought declaratory relief was that the insured had given no

indication that he would file suit).  The Supreme Court eliminated the requirement that a patentee

make an explicit threat or affirmative act that creates a reasonable apprehension of suit.  See

Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1343-44 (Fed. Cir. 2007).  An actual

threat is not required to create a controversy; rather, an actual controversy exists where there is

an "underlying legal cause of action that the declaratory defendant could have brought or

threatened to bring, if not for the fact that the declaratory plaintiff has preempted it." Id. at 1344,

quoting Microchip Tech. Inc. v. Chamberlain Group, Inc., 441 F.3d 936, 943 (Fed. Cir. 2006)

(internal quotations omitted).

      The Federal Circuit has recognized that where, as here, there is evidence that the

declaratory judgment defendant would sue the declaratory judgment plaintiff soon, maintaining

the declaratory judgment action is proper.  See Micron Tech., Inc. v. Mosaid Techs., Inc., 518

F.3d 897, 901-02 (Fed. Cir. 2008).  In Micron Tech., the declaratory judgment defendant filed an

infringement suit one day after the declaratory judgment action was filed, leading the Federal

Circuit to conclude that "the parties . . . are really just contesting the location and right to choose

the forum for their inevitable suit.  The Declaratory Judgment Act exists precisely for situations

such as this." Id.  A retaliatory infringement action coupled with the declaratory judgment

defendant's pattern of litigious conduct and aggressive enforcement is sufficient to confer

declaratory judgment jurisdiction.  See id. at 900-01.  Here, Lannett's active manufacturing,

importation, sale, and distribution of its product prior to the filing of the instant action is the

subject of an underlying legal cause of action that KV did *in fact* bring as a counterclaim in this

action.  Thus, as explained above, this controversy is immediate and real, not a hypothetical set

of facts.

KV has an established pattern of litigious conduct in intellectual property matters, which pattern has continued in this matter through KV's counterclaims and motion for injunctive relief. See, e.g., KV Pharmaceutical Co. v. KVK-Tech, Inc., U.S.D.C. E.D.Mo. Civil Action No. 4:07-cv-01951; KV Pharmaceutical Co. v. KVK-Tech, Inc., U.S.D.C. E.D.Mo. Civil Action No. 4:07-cv-01385; KV Pharmaceutical Co. v. Medecor Pharma, LLC, 354 F.Supp.2d 682 (E.D. La. 2003); Ethex Corp. and Ther-Rx v. First Horizon Pharmaceutical Corp., 228 F.Supp.2d 1048 (E.D. Mo. 2002). Lannett reasonably and correctly anticipated being sued for infringement by KV. Lannett's product at issue is a generic version of one of KV's premier products, and based on KV's history of litigation, it was reasonable to expect that KV would have opposed a generic product entering the market. KV's assertion that its lack of knowledge and threats precludes this Court from having jurisdiction over the declaratory judgment action is unfounded in the law. Through its counterclaims, KV has, at the very least, implicitly acknowledged an actual controversy and agreed to the forum. KV is doing no more than contesting who holds the title of "Plaintiff," which only feeds its aggressive enforcement strategy, as evidenced through Defendants' recent press releases touting that the instant litigation was "brought by KV against Lannett." (See July 23, 2008 Press Releases by KV Pharmaceutical Co., true and correct copies of which are attached hereto as Exhibit "A.")

KV incorrectly relies on non-binding and non-analogous precedent for its argument that immediacy is lacking in this case. Contrary to KV's position, the facts of this case are significantly different from those of Prasco, LLC v. Medicis Pharm. Corp., 2007 WL 1974951 (S.D. Ohio July 3, 2007). In Prasco, as acknowledged by KV, the plaintiff filed its declaratory judgment action about six weeks before launching its generic product, thereby failing to satisfy the immediacy requirement of MedImmune. In the instant action, as discussed above, Lannett

had already imported, sold, and distributed its product at the time the declaratory judgment action was filed, satisfying both the immediacy and reality requirements. The alleged lack of knowledge and threats by KV are irrelevant, as any reasonable person would have expected KV to follow its established course of action of suing to maintain its market monopoly.

**B.     The Court Should Exercise Its Discretion To Adjudicate The Declaratory Judgment Action Because The Controversy Presented Is Precisely The Type Of Action The Declaratory Judgment Act Was Enacted To Ameliorate.**

As an Article III controversy clearly exists, the Court should exercise its discretion to decide the declaratory judgment action because resolving the case at bar will serve the objectives of the Declaratory Judgment Act. See Cat Tech, 538 F.3d at 883. "Even when jurisdiction is present, district courts retain some measure of discretion to decline to hear the case." Micron Tech., 518 F.3d at 902. Although a District Court's discretion under the Declaratory Judgment Act is broad, it is not absolute. Id. at 903, citing, inter alia, Capo, Inc. v. Dioptics Med. Prods., Inc., 387 F.3d 1352, 1355 (Fed. Cir. 2004), and Public Affairs Assocs., Inc. v. Rickover, 369 U.S. 111, 112 (1962) ("There must be well-founded reasons for declining to entertain a declaratory judgment action."). In deciding whether to exercise such discretion, "dismissal is rarely proper" when hearing the case would "serve the objectives for which the Declaratory Judgment Act was created." Micron Tech., 518 F.3d at 902, quoting Capo, 387 F.3d at 1355.

A plaintiff need not "bet the farm" by "making an '*in terrorem*' choice between a growing potential liability... and abandoning its [product]," nor "risk treble damages before seeking a declaration of its actively contested legal rights." Cat Tech, 538 F.3d at 883 (internal quotations and citations omitted). Declaratory judgment jurisdiction should be exercised "to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." Goodyear, 824 F.2d at 956). As previously discussed, Lannett presently manufactures, imports, sells, and distributes the product for which it now seeks a declaration of non-

11

infringement or invalidity. Lannett recognizes that in this case KV has counterclaimed for patent infringement and Lannett may raise defenses of non-infringement and invalidity. However, to decline to hear the declaratory judgment action merely because defendant has counterclaimed is ultimately holding that a potential infringer must wait to be sued in order to establish a justiciable controversy, which is clearly inconsistent with Supreme Court and Federal Circuit precedent. KV's counterclaim is affirmation that a controversy of sufficient immediacy and reality exists, and adjudication of the declaratory judgment action will resolve the controversy.

The Federal Circuit has recognized that, in light of the more lenient standard for declaratory judgment jurisdiction post-MedImmune, competing declaratory judgment actions and infringement actions may be filed within relatively short time frames. Micron Tech., 518 F.3d at 903-04. Considering this reality, the Federal Circuit advised: "Instead of relying solely on considerations such as tenuousness of jurisdiction, broadness of case, and degree of vestment, . . . or automatically going with the first filed action, the more appropriate analysis takes account of the convenience factors under 28 U.S.C. § 1404(a)," which essentially mirror the determination of whether a District Court may decline to hear a case. Id. at 904. Therefore, "when the discretionary determination is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under § 1404(a)." Id.

Here, clearly there is no issue of convenience, and KV has not filed a motion to transfer. Defendants KV Pharmaceuticals and Drugtech, like Lannett, are Delaware corporations. Additionally, and more importantly, Defendants have already chosen to assert their infringement claims and motion for injunctive relief in this Court. Because there is certainly a live controversy, as evidenced by Lannett's Amended Complaint and Defendants' infringement

counterclaims, and because there is no issue of convenience, Lannett respectfully submits that the Court should not decline to hear this declaratory judgment action.

**II.    Counts I And II Of The Amended Complaint Must Not Be Dismissed On The Basis Of Failure To Join An Indispensable Party.**

The parties have stipulated to the dismissal of those claims of Lannett's Amended Complaint that seek to invalidate the patents owned by Albion, specifically, U.S. Patent Nos. 5,516,925 (the "'925 Patent") and 6,716,814 (the "'814 Patent"). Lannett continues to assert its remaining claims, including a request for declaratory judgment as to the non-infringement and invalidity of the remaining patents identified in Counts I and II of the Amended Complaint, namely, the '846 Patent, the '666 Patent, the '609 Patent, the '329 Patent, and the '857 Patent. Accordingly, Defendants' Motion to Dismiss on this point is moot and should be denied.

**III.    Count IV Of The Amended Complaint And Lannett's Claims For Antitrust Violations Must Not Be Dismissed.**

Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize...any part of the trade or commerce among the several states." 15 U.S.C. § 2. In seeking to dismiss Lannett's claim under the Sherman Act, KV argues that the Amended Complaint (1) fails to plead the relevant product market, and (2) fails to plead facts sufficient to support a claim for enforcement of a patent procured through fraud. Both of KV's arguments fail and, accordingly, Defendants' Motion to Dismiss must be denied.

**A.    Lannett Properly Pleads The Relevant Product Market.**

KV contends that Lannett's antitrust claim should be dismissed because the Amended Complaint allegedly fails to define the relevant product market.[2] However, Lannett plainly

---

[2] KV does not take issue with Lannett's identification of the United States as the relevant *geographic* market for the product. (See Amended Complaint, at ¶ 57.)

alleges that the relevant market as "the multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support." (Amended Complaint, at ¶ 57.)

KV contends that the relevant market identified by Lannett must include all products that are reasonably interchangeable. However, KV does not identify why the market identified by Lannett is insufficiently narrow (or broad). Indeed, Lannett has properly stated the scope of the relevant market. As an initial matter, it is important to note that Lannett has produced a Multivitamin With Minerals product that is the reasonably equivalent generic version of KV's branded product, PrimaCare® ONE. However, Lannett has not simply defined the market as including only PrimaCare® ONE and its generic equivalents. Rather, Lannett has defined the relevant product market to include any prenatal or postnatal multivitamins containing Omega-3 fatty acids. The market should not consist of all multivitamins or even all prenatal/postnatal multivitamins, since not all such multivitamins contain the same ingredients found in the parties' products, including a supplement of Omega-3 fatty acids such as DHA or EPA. Thus, it would be improper to include in the relevant market products that contain one or more, but less than all, of the vitamins and minerals found in the parties' products. If the relevant market were so broadly defined, the market could include virtually all vitamin products, which clearly are not reasonably interchangeable with or substitutes for the parties' products. Further, as both KV's and Lannett's products were developed specifically for pregnant or breastfeeding women, the relevant product market has been appropriately defined as the market for multivitamins used "for prenatal and postnatal support."

Notably, KV does not proffer its own relevant product market, nor does it expressly disagree with the market identified by Lannett. Although KV may ultimately contend that the relevant product market differs from that alleged by Lannett (a position that KV has not yet

14

taken), it is not proper to litigate that issue at this stage of the proceedings. The definition of the

relevant product market is a question of fact to be determined by a jury. Weiss v. York Hospital,

745 F.2d 786, 825 (3d Cir. 1984), cert. denied, 105 S.Ct. 1777 (1985). See also Allen-Myland v.

Int'l Business Mach. Corp., 33 F.3d 194, 201 (3d Cir. 1994) (following bench trial, district court

broadened scope of relevant product market proposed by plaintiff). Thus, the determination of

whether there are additional products that are "reasonably interchangeable" with the defendant's

product "involves questions of fact not properly addressed in a Rule 12(b)(6) motion to dismiss.

In re Cardizem CD Antitrust Litigation, 105 F.Supp.2d 618, 681 (E.D. Mich. 2000), citing

Eastman Kodak Co. v. Image Technical Services, Inc., 112 S.Ct. 2072, 2091 (1992) ("The proper

market definition in this case can be determined only after a factual inquiry into the 'commercial

realities' faced by consumers."). See also Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 307

(3d Cir. 2007) (noting the "scope of the market is a question of fact"); Louisiana Wholesale Drug

Co. Inc. v. Sanofi-Aventis, 2008 WL 169362, *7 (S.D. N.Y. 2008), citing Geneva Pharm. Tech.

Corp. v. Barr Laboratories, Inc., 396 F.3d 485, 496 (2d Cir. 2006) (holding drug company

alleged potentially viable market when defining market as brand drug Arava and its generic

equivalents and noting that issues surrounding definition of appropriate relevant market cannot

be decided on motion to dismiss).

    KV's attack of the relevant product market identified by Lannett is premature. The

question presented on a motion to dismiss pursuant to Rule 12(b)(6) is whether the plaintiff

would be able to prevail if it is able to prove all of its allegations. Petruska v. Gannon Univ., 462

F.3d 294, 302 (3d Cir. 2006). Hence, "[a] motion to dismiss for failure to state a claim may be

granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them

in the light most favorable to the plaintiff, plaintiff is still not entitled to relief." Marran v.

15

Marran, 376 F.3d 143, 155 (3d Cir. 2004). Furthermore, courts have observed that motions to dismiss in antitrust cases should be granted very sparingly and that the plaintiff should be given ample opportunity for discovery, particularly where the proof is largely in the hands of the defendants. Bernstein v. IDT Corp., 582 F.Supp. 1079, 1084 (D. Del. 1984). KV is unable to establish that Lannett's Amended Complaint fails to state a claim upon which relief may be granted.

In addition, the Amended Complaint provides sufficient notice of its claims to allow KV to prepare a reasonable defense. Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff only to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has consistently emphasized that the Rules were intended to set up a liberal system of "notice pleading." See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed. 2d 517 (1993). Lannett's Amended Complaint provides KV with sufficient notice concerning its claims. Accordingly, KV's Motion to Dismiss must be denied. In the alternative, to the extent that the Court determines that the Amended Complaint does not adequately plead the relevant product market, Lannett respectfully requests leave to further amend its pleading.

## B.  Lannett States A Proper Claim As A Result Of Defendants' Fraudulent Enforcement Of Its Patents.

To survive the instant motion to dismiss, Lannett's claims of antitrust violations need provide "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). All factual allegations within the complaint must be accepted as true and construed in a light most favorable to the plaintiff, and the burden of proof is upon the defendants to show that no claim has been adequately stated. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409-10 (3d Cir. 1991).

16

Walker Process antitrust claims are premised on the abuse of a patent right. See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp., 382 U.S. 172, 174 (1965). "Federal Circuit law governs all antitrust claims premised on the abuse of a patent right." Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 375 F.3d 1341, 1355 (Fed. Cir. 2004). Under Federal Circuit law, a five prong test is used to establish a Walker Process claim. KV claims that three of these of these five prongs have not been met: 1) enforcement of the fraudulently obtained patents, 2) a suffering of antitrust damages, and 3) a threat to competition in the relevant antitrust market. Because Lannett's Amended Complaint has made factual allegations plausible on its face to support each and every prong of a Walker Process antitrust claim, the 12(b)(6) motion to dismiss Count Four of the Amended Complaint should be denied.

### 1.    Lannett Has Shown Attempted Enforcement Of The Fraudulently Obtained Patents.

Both within the Amended Complaint, and as a matter of Federal Circuit law, Lannett has shown attempted enforcement of the fraudulently obtained patent. For example, the Amended Complaint alleges that Lannett sought assurances from the defendants that the facially invalid patents, including the '609 Patent, would not be used to block Lannett's entry into the market. The defendants failed or refused to provide such assurances. (Amended Complaint, at ¶ 62.) Lannett reasonably interpreted this silence as a threat to enforce the patents, a view well-taken given the counterclaims for patent infringement subsequently brought by the defendants. Threats to enforce a patent are sufficient to establish "attempted enforcement" under a Walker Process claim. See Hydril Co. LP v. Grant Prideco LP, 474 F.3d 1344, 1350 (Fed. Cir. 2007). Furthermore, KV's efforts to enforce the '609 Patent has moved beyond mere threats, as is evidenced by pursuit of its Counterclaims and motion for injunctive relief. The Amended

Complaint thus adequately pleads an attempted enforcement of the fraudulently obtained '609 Patent.

Additionally, when a <u>Walker Process</u> claim is brought before this Court in a Declaratory Judgment Action, as in the instant case,

> the standards...developed for determining jurisdiction in a Declaratory Judgment Action of patent invalidity also define the minimum level of "enforcement" necessary to expose the patentee to a <u>Walker Process</u> claim for attempted monopolization.

<u>Unitherm</u>, 375 F.3d at 1358. Consequently, if this Court finds that it has jurisdiction to hear the instant suit, then as a matter of law Lannett has shown attempted enforcement of the fraudulently obtained patents.

### 2.    Lannett Has Adequately Pled Antitrust Damages.

KV contends that this Court should disregard as "inconsistent" Lannett's assertions that KV's anticompetitive actions have prevented Lannett from entering the market, since Lannett has, in fact, launched commercial quantities of its product. Under this logic, any entity that manages to launch a product, if only a brief period, cannot then be heard to complain that it is being prevented from entering into the relevant market, despite what may be enormous anticompetitive pressures within that market. Such reasoning eviscerates the vary harms that the Sherman Act was designed to ameliorate. Lannett has entered the market despite, and in the face of, the strong anticompetitive pressures that the fraudulently obtained '609 Patent presents and brings the instant suit to relieve itself of these pressures.

Further, KV's assertion that Lannett has not pled suffering of antitrust damages, or their discounting of the damages actually pled, is simply incorrect. Beyond pleading that Lannett has been prevented from entering the market, Lannett has stated that, due to the Defendants' anticompetitive conduct, Lannett stands to lose substantial sales of its multivitamin product, and

further that Lannett has been forced to hire counsel to seek redress for the Defendants' unlawful and anticompetitive conduct.  (Amended Complaint, at ¶ 63.)  Each of these is a harm brought about directly by the defendants' anticompetitive behavior, for which the <u>Walker Process</u> claim seeks redress.  Antitrust damages have therefore clearly been pled.

### 3.    Lannett Has Shown That The Defendants Present A Threat To Competition.

KV argues that beyond the fraudulently obtained '609 Patent, Defendants own other patents that prevent entry into the relevant market, and hence "there can be no expectation that Lannett will be able to prove that the existence of the '609 Patent lessened competition in a relevant antitrust market."  (Defendants' Opening Brief, at 15.)  KV points to no law, however, that would support the proposition that a patentee may wield as a sword a fraudulently obtained patent while hiding behind the shield of other patents.  To the contrary, the case law makes it clear that the anticompetitive use of *any* patent is sufficient to sustain an action under Section 2 of the Sherman Act.  <u>See</u> <u>Walker Process</u>, 382 U.S. at 174.  That the Defendants have other patents that may or may not have been fraudulently obtained is irrelevant to the issue that the '609 Patent itself presents a serious threat to competition.  Lannett has therefore adequately pled a threat to competition in the relevant antitrust market.

## IV.    <u>Lannett's Amended Complaint Properly Pleads A Claim For Relief Under The Delaware Deceptive Trade Practices Act.</u>

KV moves to dismiss Count V of the Amended Complaint and Lannett's claim for relief pursuant to the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532 ("DTPA"), on the basis that Lannett's state law claim is allegedly preempted by federal patent law.  However, the federal patent law contains no explicit preemption of state law claims for unfair competition or deceptive trade practices.  <u>See</u> 35 U.S.C. §§ 1-376.  "[I]t is presumed that Congress does not

19

'cavalierly' preempt state law causes of action, for 'the States are independent sovereigns in our federal system.'" Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1331 (Fed. Cir. 1998), overruled on other grounds, Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1358-59 (Fed. Cir. 1999). Thus, "there is no field preemption of state unfair competition claims that rely on a substantial question of federal patent law." Cryovac Inc. v. Pechiney Plastic Packaging, Inc., 430 F.Supp.2d 346, 359 (D. Del. 2006), quoting Hunter Douglas, supra.

KV's argument that Lannett's DTPA claim must be dismissed because it is predicated on nothing more than KV's application for and procurement of the '609 Patent, is both factually and legally incorrect. Lannett's DTPA claim is based not on KV's conduct within or directed towards the Patent and Trademark Office, but on KV's conduct directed towards the consuming public in the marketplace. The Amended Complaint plainly avers that although Defendants knew or should have known about the invalidity and/or unenforceability of the '609 Patent, *they have represented, and continue to represent, in the course of their business and in their advertising*, that PrimaCare® ONE is nevertheless covered by the '609 Patent. (Amended Complaint, at ¶¶ 68-69.) Thus, Lannett's claim pursuant to the DTPA is not simply a repetition of its claims for declaratory judgment on the issue of patent invalidity. Rather, Lannett's claim is based on KV's deceptive and bad faith trade practices in promoting and advertising its invalid and unenforceable patent. As the court observed in Hunter Douglas, "there is no reason to believe that the clear and manifest purpose of Congress was for federal patent law to occupy exclusively the field pertaining to state unfair competition law," which "regulates conduct in a different field," specifically, "allegedly tortious conduct in the marketplace." 153 F.3d at 1333-34. Hence, Lannett's DTPA claim is not preempted by federal patent law.

Further, as mentioned in the case of <u>In re Netflix Antitrust Litigation</u>, cited by KV, "[t]ort claims under state law are not preempted by federal patent law where they include additional elements not found in federal patent law claims." 506 F.Supp.2d 308, 319 (N.D. Cal. 2007). Under the DTPA, "[a] person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person…engages in any…conduct which…creates a likelihood of confusion or of misunderstanding." 6 Del.C. § 2532(a). By contrast, in seeking to declare KV's patent invalid and unenforceable, there is no requirement that Lannett prove that the Defendants "created a likelihood of confusion or of misunderstanding" in the minds of consumers. Therefore, since there are additional elements inherent in a claim pursuant to the DTPA, such claims are not preempted under federal patent law.

Finally, KV's argument that Lannett's DTPA claim must be dismissed because Lannett allegedly will be unable to ***prove*** injury is clearly improper at this stage in the proceedings. When considering a motion to dismiss for failure to state a claim, the court should "not inquire into whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996). In addition, KV's argument that the distribution of Lannett's product renders Lannett unable to prove its claim based on Defendants' advertisement of PrimaCare® ONE as being covered by the '609 Patent, is simply incorrect. KV's argument improperly assumes that Lannett's attempts at distributing its product has been successful and it further ignores the considerable delays in production and marketing that KV's wrongful conduct has caused. Perhaps more importantly, KV's argument fails to consider the effect that Defendants' *continued* representations concerning the validity of its patents have had on the consuming public. In sum, viewing the allegations of the Amended Complaint in a light most favorable to Lannett, it is clear that the Amended Complaint

adequately pleads damages and a violation of the Delaware Deceptive Trade Practices Act.

Accordingly, KV's Motion to Dismiss must be denied.

## CONCLUSION

For all of the foregoing reasons, the Motion of Defendants/Counterclaim-Plaintiffs, KV Pharmaceutical Company, Ther-Rx Corp. and Drugtech Corp. to Dismiss Lannett's Amended Complaint for Lack of Subject Matter Jurisdiction, Failure to Include an Indispensable Party, and Failure to State a Claim, must be denied.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

/s/  Sophia Siddiqui
Sophia Siddiqui, Esquire (No. 4914)
Gerard P. Norton, Esquire
Alfred J. Monte, Jr., Esquire
Jonathan R. Lagarenne, Esquire
Joshua M. Hummel, Esquire
Fox Rothschild LLP
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19801
(302) 622-4278
(302) 656-8920 (facsimile)

*Attorneys for Plaintiff,*
*Lannett Company, Inc.*

Date:  August 1, 2008

# EXHIBIT A

Home / Markets / Industries / Health Care
**FOX TRANSLATOR ▼**

Wednesday, July 23, 2008

# Court Orders Lannett to Notify Distributors Its Packaging Violates PrimaCare Trademark Rights

Recommend                                                                                           Email this Sto

Comtex                                                                                              Digg It     Stun

ST. LOUIS, July 23, 2008 /PRNewswire-FirstCall via COMTEX/ ----Decision Affirms KV's Intellectual Property
Rights at Early Stage of Infringement Case

KV Pharmaceutical Company (NYSE: KVa/KVb), today announced a favorable court decision related to litigation
brought by KV against Lannett Company, Inc. for infringement of KV's PrimaCare ONE(R) trademark and for
patent infringement.

On July 17, 2008, the United States District Court for the District of Delaware issued an order requiring Lannett to
contact its distributors in writing and advise them of the Court's ruling that the bottles of Lannett's prenatal vitamin
that Lannett shipped to them infringe KV's PrimaCare ONE(R) trademark. The Court has also ordered Lannett to
provide its distributors with material adequate to cover KV's PrimaCare ONE(R) trademark on each bottle of
Lannett's prenatal vitamins.

These developments follow a hearing on June 25, 2008, at which the Court instructed Lannett to develop new packaging to avoid the issuance
the hearing, Lannett agreed not to distribute any more bottles of its prenatal vitamin until the infringing label had been corrected. The Court ag
expedited trial on the other claims in KV's suit that relate to Lannett infringing KV's patents. This trial is expected to take place as early as Janu

"We are pleased with this decision," stated Marc S. Hermelin, KV's Chairman of the Board and Chief Executive Officer. "We are committed to |
products and brands, and will continue to aggressively defend the PrimaCare ONE(R) trademark and patents. We strive to meet the needs of |
innovative, cost-effective, quality products, and this commitment requires an investment in innovation that our nation's patent laws serve to pro

About KV Pharmaceutical Company

KV Pharmaceutical Company is a fully integrated specialty pharmaceutical company that develops, manufactures, markets and acquires techn
and generic/non-branded prescription pharmaceutical products. The Company markets its technology-distinguished products through ETHEX
in pharmaceuticals that compete with branded products, and Ther-Rx Corporation, its branded prescription pharmaceutical subsidiary.

For further information about KV Pharmaceutical Company, please visit the Company's corporate website at www.kvpharmaceutical.com.

Safe Harbor

The information in this release may contain various forward-looking statements within the meaning of the United States Private Securities Litig
("PSLRA") and which may be based on or include assumptions concerning KV's operations, future results and prospects. Such statements ma
words like "plans", "expect", "aim", "believe", "projects", "anticipates", "commit", "intend", "estimate", "will", "should", "could" and other expressi
and trends.

All statements that address expectations or projections about the future, including without limitation, statements about the launch or commerci
vitamin product, actions by the court in the litigation with Lannett, or the Company's strategy for growth, product development, product launche
approvals, market position, market share increases, acquisitions, revenues, expenditures and other financial results, are forward-looking statei

All forward-looking statements are based on current expectations and are subject to risk and uncertainties. In connection with the "safe harbor'
following cautionary statements identifying important economic, competitive, judicial, political and technology factors, which among others, cou
events to differ materially from those set forth or implied by the forward-looking statements and related assumptions.

Such factors include (but are not limited to) the following: (1) changes in the current and future business environment, including interest rates a
spending; (2) the difficulty of predicting FDA approvals, including timing, and that any period of exclusivity may not be realized; (3) acceptance

Court Orders Lannett to Notify Distributors Its Packaging Violates PrimaCare ONE(R) Trademark Right...   Page 2 of 2

pharmaceutical products; (4) the impact of competitive products and pricing, including as a result of so-called authorized-generic drugs; (5) new launch, including the possibility that any product launch may be delayed or that product acceptance may be less than anticipated; (6) reliance the availability of raw materials and/or products manufactured for the Company under contract manufacturing arrangements with third parties; including regulatory agency and judicial actions and changes in applicable law or regulations; (9) fluctuations in revenues; (10) the difficulty of regulatory approval, including timing; (11) the difficulty of predicting the pattern of inventory movements by the Company's customers; (12) the response to the Company's sales, marketing and strategic efforts; (13) risks that the Company may not ultimately prevail in litigation, including property rights by actual or potential competitors; (14) actions by the Securities and Exchange Commission and the Internal Revenue Service stock option grants and accounting practices; (15) the Company's success in litigation with Lannett Company Inc. concerning its prenatal vitam detailed from time-to-time in the Company's filings with the Securities and Exchange Commission.

This discussion is by no means exhaustive, but is designed to highlight important factors that may impact the Company's outlook. We are unde of the forward-looking statements after the date of this release.

SOURCE KV Pharmaceutical Company

http://www.kvpharmaceutical.com
Copyright (C) 2008 PR Newswire. All
  rights reserved

**PEOPLE ALSO READ...**

Back to Square One: Dow Rebounds 266
BlackBerrys Be Damned: Can You Do Business Without Them?
Bennigan's, Steak &amp; Ale Forced to Shut Down
Case of the Mondays: Dow Plunges 239
Report: Airlines to Close Lounges Worldwide

HOME  |  VIDEO  |  MARKETS  |  PERSONAL FINANCE  |  MY MONEY  |  OUR TEAM  |  RSS FEEDS  |  MOBILE  |  CONTACT US

Advertise with us. Jobs at FOX Business Network.

Terms of use. Privacy Statement. For FOXBusiness.com technical issues write to foxbusinessonline@foxbusiness.com; for all other feedback, write to fee
This material may not be published, broadcast, rewritten, or redistributed. 2008 FOX News Network, LLC. All rights reserved.

SmartMoney.com © 2008 SmartMoney. SmartMoney is a joint venture between Dow Jones & Company, Inc. and Hearst SM Partnership. All Rights Reserved. All qu
quotes provided by Interactive Data Managed Solutions. Historical prices and fundamental data provided by Hemscott, Inc. Mutual fund data provided by Lipper. Mutu
close. Earnings estimates provided by Zacks Investment Research. Insider trading data provided by Thomson Financial. Upgrades and downgrades pr

# REUTERS    THOMSON REUTERS

LATEST NEWS ◄► U.S. COMBAT DEATHS IN IRAQ PLUNGE IN JULY                                  Decision A



**Reuters Widgets**
Get the latest news,
videos, pictures and
more on your site!
**Download**

You are here:   Home > News > Article

# Court Orders Lannett to Notify Distributors Its Packaging Violates PrimaCare ONE(R)...

Wed Jul 23, 2008 9:27am EDT

Email |   Print |   Share|   Reprints |   Single Page |   Recommend (0)                              [-] Text [+]

EDITOR'S CHOI



MOST POPULAI

| **Articles** | Vid

1.  **New Yo**
    **end of**

2.  Southern l
    law

3.  U.S. food |

4.  Jerry Lewi:

5.  Angry, late
    crash

6.  Columbus
    Vinci

7.  Bin Laden
    trial

8.  Earthquak

9.  L.A. subur

10. Alaska Sei
    gifts |   '

Most Popular

**New York Pr**
**Winner**

**Bearing Witne:**
Reuters award-
piece, reflecting
reporting the wa

Watch now

**Reuters.com:**   Help and Contact Us |   Advertise With Us |   Mobile |   Newsletters |   RSS 🔊 |   Interactive TV |   Labs |   Reuters in Second Life |   Archiv

**Thomson Reuters Corporate:**   Copyright |   Disclaimer |   Privacy |   Professional Products |   Professional Products Support |   About Thomson Reuters

**International Editions:**   Africa |   Arabic |   Argentina |   Brazil |   Canada |   China |   France |   Germany |   India |   Italy |   Japan |   Latin America |   Mexic

Court Orders Lannett to Notify Distributors Its Packaging Violates PrimaCare
ONE(R) Trademark Rights

Decision Affirms KV's Intellectual Property Rights at Early Stage of
Infringement Case

ST. LOUIS, July 23 /PRNewswire-FirstCall/ -- KV Pharmaceutical Company (NYSE:
KVa/KVb), today announced a favorable court decision related to litigation
brought by KV against Lannett Company, Inc. for infringement of KV's PrimaCare
ONE(R) trademark and for patent infringement.

On July 17, 2008, the United States District Court for the District of
Delaware issued an order requiring Lannett to contact its distributors in
writing and advise them of the Court's ruling that the bottles of Lannett's
prenatal vitamin that Lannett shipped to them infringe KV's PrimaCare ONE(R)
trademark. The Court has also ordered Lannett to provide its distributors with
material adequate to cover KV's PrimaCare ONE(R) trademark on each bottle of
Lannett's prenatal vitamins.

These developments follow a hearing on June 25, 2008, at which the Court
instructed Lannett to develop new packaging to avoid the issuance of a
restraining order. During the hearing, Lannett agreed not to distribute any
more bottles of its prenatal vitamin until the infringing label had been
corrected.  The Court agreed at the hearing to an expedited trial on the other
claims in KV's suit that relate to Lannett infringing KV's patents.  This
trial is expected to take place as early as January 2009.

"We are pleased with this decision," stated Marc S. Hermelin, KV's Chairman of
the Board and Chief Executive Officer.  "We are committed to protecting the
integrity of our products and brands, and will continue to aggressively defend
the PrimaCare ONE(R) trademark and patents. We strive to meet the needs of
patients we serve with innovative, cost-effective, quality products, and this
commitment requires an investment in innovation that our nation's patent laws
serve to protect."

About KV Pharmaceutical Company
KV Pharmaceutical Company is a fully integrated specialty pharmaceutical
company that develops, manufactures, markets and acquires
technology-distinguished branded and generic/non-branded prescription
pharmaceutical products.  The Company markets its technology-distinguished
products through ETHEX Corporation, a national leader in pharmaceuticals that
compete with branded products, and Ther-Rx Corporation, its branded
prescription pharmaceutical subsidiary.

For further information about KV Pharmaceutical Company, please visit the
Company's corporate website at www.kvpharmaceutical.com.

Safe Harbor
The information in this release may contain various forward-looking statements
within the meaning of the United States Private Securities Litigation Reform
Act of 1995 ("PSLRA") and which may be based on or include assumptions
concerning KV's operations, future results and prospects.  Such statements may
be identified by the use of words like "plans", "expect", "aim", "believe",
"projects", "anticipates", "commit", "intend", "estimate", "will", "should",
"could" and other expressions that indicate future events and trends.

All statements that address expectations or projections about the future,
including without limitation, statements about the launch or commercial sale
of Lannett's prenatal vitamin product, actions by the court in the litigation
with Lannett, or the Company's strategy for growth, product development,
product launches, regulatory filings or approvals, market position, market
share increases, acquisitions, revenues, expenditures and other financial
results, are forward-looking statements.

All forward-looking statements are based on current expectations and are
subject to risk and uncertainties.  In connection with the "safe harbor"
provisions, KV provides the following cautionary statements identifying
important economic, competitive, judicial, political and technology factors,

Court Orders Lannett to Notify Distributors Its Packaging Violates PrimaCare ONE(R)... | Reuters     Page 3 of 3

© Thomson Reuters 2008 All rights reserved

**SHARE:**    Del.icio.us      Digg      Mixx      My Web      Facebook      Newsvine

---

**GLOBAL MARKETS NEWS**

Researchers find 3 new genes for schizophrenia
PREVIEW-Pressure mounts on Motorola as it loses share to LG
UPDATE 2-Chile 1st-half fiscal surplus 4.0 pct of GDP
UPDATE 3-Avon 2nd-qtr profit more than doubles; stock soars
More Global Markets News...

**PRESS RELEASE NEWS**

Discover Lessons From Canada on Storing Spent Nuclear Fuel & High-Level Radioactive...
CORRECTION: MagMinerals Potash Corp. Update
ONN Sidewinder Video Report: High Volatility In Chesapeake Energy
More Press Release News...

**ALSO ON REUTERS**

  

Scrabulous cuts off users as          Sufi men and women attend          Traditionally popular Brazilian
Hasbro spells lawsuit                  the Mawlid religious festival        feijoada dish becomes luxury

---

**Reuters.com:**   Help and Contact Us  |  Advertise With Us  |  Mobile  |  Newsletters  |  RSS 🔊  |  Interactive TV  |  Labs  |  Reuters in Second Life  |  Archiv

**Thomson Reuters Corporate:**   Copyright  |  Disclaimer  |  Privacy  |  Professional Products  |  Professional Products Support  |  About Thomson Reuters

**International Editions:**  Africa  |  Arabic  |  Argentina  |  Brazil  |  Canada  |  China  |  France  |  Germany  |  India  |  Italy  |  Japan  |  Latin America  |  Mexic
United States

Thomson Reuters is the world's largest international multimedia news agency, providing investing news, world news, business news, technology news, headline news, smal
stock market, and mutual funds information available on Reuters.com, video, mobile, and interactive television platforms. Thomson Reuters journalists are subject to an Edit
and disclosure of relevant interests.

NYSE and AMEX quotes delayed by at least 20 minutes. Nasdaq delayed by at least 15 minutes. For a complete list of exchanges and delays, please click here.

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2008, I caused two (2) copies of the foregoing documents to be served, one copy via CM/ECF and another copy via First Class Mail, postage prepaid, upon the following individuals:

Frederick L. Cottrell, III, Esquire
Chad M. Shandler, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street, P.O. Box 551
Wilmington, DE 19801

Richard L. DeLucia, Esquire
Elizabeth A. Gardner, Esquire
Charles A. Weiss, Esquire
Kenyon & Kenyon LLP
One Broadway
New York, NY 10004

/s/ Sophia Siddiqui
Sophia Siddiqui, Esquire (No. 4914)
Fox Rothschild LLP
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19801
(302) 622-4278
(302) 656-8920 (facsimile)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LANNETT COMPANY, INC.,

                Plaintiff

      v.

KV PHARMACEUTICAL COMPANY,
THER-RX CORP., and DRUGTECH CORP.,

                Defendants
_____

KV PHARMACEUTICAL COMPANY,
THER-RX CORP., and DRUGTECH CORP.,

            Counterclaim-Plaintiffs

      v.

LANNETT COMPANY, INC.,

            Counterclaim-Defendant

:
:  CIVIL ACTION
:  NO. 08-338 (JJF)
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**ORDER**

AND NOW, this _____ day of _____, 2008, upon consideration of Defendants' Motion to Dismiss Lannett's Amended Complaint for Lack of Subject Matter Jurisdiction, Failure to Include an Indispensable Party, and Failure to State a Claim, the Response of Plaintiff Lannett Company, Inc. thereto, and the briefs of the parties thereon, it is HEREBY ORDERED that the aforesaid Motion to Dismiss is DENIED.

BY THE COURT:

_____
Joseph J. Farnan, Jr., J.