**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LANNETT COMPANY, INC.,                  :

                                        : CIVIL ACTION

                  Plaintiff,             : NO. 08-338 (JJF)

                                          :

        v.                              :

KV PHARMACEUTICAL COMPANY,              :
THER-RX CORP., and DRUGTECH CORP.,      :

                          :
                 Defendants.          :
                          :

KV PHARMACEUTICAL COMPANY,              :
THER-RX CORP., and DRUGTECH CORP.,      :

                          :
       Counterclaim-Plaintiffs,   :

        v.                              :

LANNETT COMPANY, INC.,                  :

       Counterclaim-Defendant.   :

**MOTION OF PLAINTIFF/COUNTERCLAIM-DEFENDANT LANNETT**
**COMPANY, INC., FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Plaintiff/Counterclaim-Defendant, Lannett Company, Inc. ("Lannett"), by and through its

attorneys, Fox Rothschild LLP, hereby moves for leave to file a Second Amended Complaint in the

above-captioned matter, and in support thereof states as follows:

1.     Lannett has prepared a Second Amended Complaint for the purposes of supplementing

facts related to the claims asserted in its First Amended Complaint, and adding causes of action against

Defendants/Counterclaim-Plaintiffs, KV Pharmaceutical Co., Drugtech Corp. and Ther-Rx Corp.

(collectively, the "KV Defendants"), which have arisen since the filing of Lannett's First Amended

Complaint on or about June 10, 2008. (A true and correct copy of Lannett's proposed Second Amended Complaint is attached hereto as Exhibit "A", and a copy of Lannett's Second Amended Complaint noting any additions and/or deletions is attached hereto as Exhibit "B").

2.    Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, a party may amend its pleading with leave of Court, which "should freely give leave when justice so requires." See also Johnson v. Geico Casualty Co., 516 F.Supp. 351, 355 (D.Del. 2007) ("leave should be freely granted unless there is an apparent reason for denying a request such as: undue delay, bad faith, dilatory motive, undue prejudice, or futility of the claims").

3.    There has been no undue delay with respect to Lannett's filing of the instant Motion to Amend or its proposed Second Amended Complaint.

4.    The filing of the attached Second Amended Complaint will not result in any prejudice to the KV Defendants.

5.    Justice requires that leave be granted to allow Lannett to file the attached Second Amended Complaint.

6.    The undersigned counsel has requested that counsel for the KV Defendants provide written consent for the filing of the Second Amended Complaint. However, counsel for the KV Defendants have failed and/or refused to provide such written consent for the filing of the Second Amended Complaint, and have also failed and/or refused to provide the undersigned counsel with a copy of any licensing agreement(s) between the KV Defendants and Albion Laboratories, Inc. and/or Albion International, Inc. ("Albion"), which may be relevant to three claims asserted by Lannett in the proposed Second Amended Complaint. (See Exhibit "A," at ¶¶ 108-132.)

**WHEREFORE**, Lannett respectfully requests that this Honorable Court grant leave to allow Lannett to file a Second Amended Complaint in the form attached hereto.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

/s/ Sophia Siddiqui
Sophia Siddiqui, Esquire (No. 4914)
Gerard P. Norton, Esquire (*)
Alfred J. Monte, Jr., Esquire (*)
Jonathan R. Lagarenne, Esquire (*)
Joshua M. Hummel, Esquire (*)
Fox Rothschild LLP
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19801
(302) 622-4278
(302) 656-8920 (facsimile)

*Attorneys for Plaintiff,*
*Lannett Company, Inc.*

(*) Admitted Pro Hac Vice

Date:  August 14, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2008, I caused two (2) copies of the foregoing documents to be served, one copy via CM/ECF and another copy via First Class Mail, postage prepaid, upon the following individuals:

Frederick L. Cottrell, III, Esquire
Chad M. Shandler, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street, P.O. Box 551
Wilmington, DE 19801

Richard L. DeLucia, Esquire
Elizabeth A. Gardner, Esquire
Charles A. Weiss, Esquire
Kenyon & Kenyon LLP
One Broadway
New York, NY 10004

/s/ Sophia Siddiqui
Sophia Siddiqui, Esquire (No. 4914)
Fox Rothschild LLP
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19801
(302) 622-4278
(302) 656-8920 (facsimile)

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

LANNETT COMPANY INC.,                    :
                                         :
                    Plaintiff,           :     Civil Action No. 08-338
                                         :
        v.                               :
                                         :
KV PHARMACEUTICALS,                      :
DRUGTECH CORPORATION, and                :
THER-RX CORPORATION,                     :
                                         :
                    Defendants.          :
                                         :
                                         :

## SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, Lannett Company, Inc. ("Lannett") brings this action against Defendants, KV Pharmaceuticals ("KV"), DrugTech Corporation ("DrugTech"), and Ther-Rx Corporation ("Ther-Rx") (collectively, the "KV Defendants"), and alleges as follows:

### PARTIES

1.      Plaintiff Lannett Company, Inc. is a Delaware corporation having its principal place of business at 9000 State Road, Philadelphia, PA 19136.

2.      Upon information and belief, Defendant KV Pharmaceuticals is a Delaware corporation having its principal place of business at 2503 South Hanley Road, St. Louis, MO 63144.

3.      Upon information and belief, Defendant DrugTech Corporation is a Delaware corporation having its principal place of business located at 300 Delaware Avenue, Suite 1270, Wilmington, DE 19801.  DrugTech is a wholly-owned subsidiary of KV Pharmaceuticals.  DrugTech owns the patents at issue and licenses the patents to KV Pharmaceuticals and Ther-Rx Corporation.

4.      Upon information and belief, Defendant Ther-Rx Corporation is a Missouri corporation having its principal place of business at 1 Corporate Woods Drive, Brigeton, MO 63044. Ther-RX is a wholly owned subsidiary of KV Pharmaceuticals responsible for marketing and selling the patented products at issue, and is a licensee of DrugTech Corporation.

## NATURE OF ACTION

5.      This is an action for a declaratory judgment of patent invalidity, non-infringement, unenforceability for inequitable conduct and unfair competition.  Lannett seeks a declaration that patents belonging to the KV Defendants, specifically, U.S. Patent No. 6,258,846 ("the '846 patent") , U.S. Patent No. 6,576,666 ("the '666 patent"), U.S. Patent No. 7,112,609 ("the '609 patent"), U.S. Patent No. 6,197,329 ("the '329 patent"),  and U.S. Patent No. 6,569,857 ("the '857 patent") (collectively the "KV Patents") are invalid and/or unenforceable. True and correct copies of the '846 patent, the '666 patent, the '609 patent, the '329 patent, and the '857 patent are attached hereto as Exhibits "1", "2", "3", "4" and "5" respectively.  Lannett also seeks a declaration that Lannett's nutritional dietary product - Multivitamin With Mineral Capsules - does not infringe upon the KV Patents and that the KV Defendants have engaged in unfair competition and deceptive trade practices in the marketplace by preventing Lannett and others from entering the market.

6.      This action is also brought under the Clayton Act, 15 U.S.C. §§ 15 and 25, as amended, and the Sherman Act, 15 U.S.C. §§ 1 and 2, where Defendants have asserted invalid or unenforceable patents in order to inhibit competition in the marketplace.

## JURISDICTION AND VENUE

7.      This action arises under the patent laws of the United States, Title 35 of the United States Code, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and state laws

2

regarding unfair competition and deceptive trade practices, 6 Del. C. § 2532.  This Court has

subject matter jurisdiction over count one (declaratory judgment of non-infringement ), count

two (declaratory judgment of invalidity), count three (inequitable conduct) and count four

(antitrust violations) pursuant to 28 U.S.C. §§ 1331, 1367, 1338 and 2201-2202, as claims arising

under the patent laws of the United States and the Declaratory Judgment Act.  The Court also has

subject matter jurisdiction over count five (deceptive trade practices) because count five forms

part of the same case or controversy as the claims contained in counts one through five.

Jurisdiction is also conferred by 28 U.S.C. § 1337, and the Clayton Act, as amended.  The Court

has supplemental jurisdiction over the state law claim of deceptive trade practices pursuant to 28

U.S.C. § 1367.

  8.  Based on information and belief, venue in this judicial district is proper under the

provisions of 28 U.S.C. §§ 1391(c) and 1400(b), where the Defendants KV and DrugTech are

Delaware corporations and Ther-Rx engages in significant business in, and derives significant

profit within, the State of Delaware.  The KV Defendants sell their PrimaCare One™ product

through various pharmacies within the State of Delaware and have significant annual sales in the

State of Delaware.

  9.  This Court also has jurisdiction over Lannett's claim for violation of the Delaware

Deceptive Trade Practices Act, 6 Del. C. § 2532, pursuant to 28 U.S.C. § 1338(b) because those

claims are joined with substantial and related claims under the Patent and Trademark Laws of the

United States.

## FACTUAL BACKGROUND

  10.  Lannett has plans to market its Multivitamin With Mineral Capsules, a

multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support,

3

within the United States.  Dietary multivitamin/mineral and omega-3 fatty acid supplements are

prescribed by healthcare professionals throughout pregnancy, during the postnatal period for

both lactating and non-lactating mothers, and throughout the childbearing years.

11.     The KV Patents prevent Lannett and other competitors from introducing their

competitive multivitamin/mineral and omega-3 fatty acid supplementation products in

competition with the KV Defendants' product, PrimaCare One™.  There is a reasonable

likelihood that the KV Defendants will assert a claim for patent infringement against Lannett

once its product, Multivitamin With Mineral Capsules, enters the marketplace.

12.     Lannett has a reasonable belief, based upon prior art and the patents' prosecution

histories, that the KV Patents are invalid, non-infringed and/or unenforceable.

13.     Lannett has informed the KV Defendants of its intent to market a product

arguably within the scope of the KV Patents.

14.     In light of the apparent invalidity and/or non-infringement of the KV Patents,

Lannett has sought assurances from the KV Defendants that they will not assert these patents to

block Lannett's entry into the market.  The KV Defendants have failed or refused to provide

such assurances.  Thus, an Article III case or controversy exists between Lannett and the KV

Defendants.

15.     The KV Defendants are motivated to maintain their market share, which is

comprised of noninfringed, invalid and/or unenforceable patents, to keep Lannett and other

competitors from entering the marketplace and to prevent the dilution of KV Defendants' market

share for dietary supplement multivitamin/mineral and omega-3 fatty acid products.

## COUNT ONE

### <u>Declaratory Judgment of Noninfringement</u>

16.     Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

17.     Upon information and belief, the '846 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on July 10, 2001 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly-owned subsidiary of KV Pharmaceuticals.

18.     Upon information and belief, the '666 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on June 10, 2003 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

19.     Upon information and belief, the '609 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on September 26, 2006 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

20.     Upon information and belief, the '329 patent issued to Marc S. Hermelin, Mitchell I. Kirschner, and R. Saul Levinson on March 6, 2001 is entitled Anti-nausea Compositions and Methods, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

21.     Upon information and belief, the '857 patent issued to Marc S. Hermelin and R. Saul Levinson on May 27, 2003 is entitled Dietary Supplements, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

22.     The KV Defendants have failed to comply with the requirements of Sections 102 and 103 of Title 35 of the United Stated Code, and other relevant sections of Title 35.

5

23.    Thus, Lannett has not infringed upon, and will not infringe upon the KV Patents, by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or importing such a product into the United States.

24.    Based on the foregoing, an actual and justiciable controversy exists between Lannett and the KV Defendants with respect to the KV Patents.

## COUNT TWO

### Declaratory Judgment of Invalidity

25.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

26.    Upon information and belief, the KV Patents are invalid based upon prior art and the patents' prosecution histories.

27.    The KV Patents are invalid for failure to comply with the requirements of sections 102 and 103 of Title 35 of the United States Code, and other relevant sections of Title 35.

28.    The KV Patents are invalid.  Thus, Lannett has not, is not and will not infringe upon the KV Patents by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or by importing such a product into the United States.

29.    The KV Patents are invalid.  Therefore, Lannett has not induced or contributed to, and is not inducing or contributing to, infringement of the KV Patents and will not induce or contribute to infringement of the KV patents by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or by importing such a product into the United States.

6

## COUNT THREE

### Inequitable Conduct

30.     Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

31.     Upon information and belief, the '609 patent, the '846 patent and the '666 patent are unenforceable based upon the KV Defendants' inequitable conduct and the patents' prior art and prosecution history.

32.     The '609 patent was filed on June 10, 2003, and issued on September 26, 2006.

33.     The '609 patent is a continuation-in-part of the '666 patent, which is a continuation-in-part of the '846 patent.  In other words, these three patents constitute a family of patents that claim the KV Defendants' product, PrimaCare One™.

34.     Defendants filed a continuation application for the '609 patent on December 26, 2004 as U.S. Application Serial No. 11/021,344 ("the '344 Continuation Application").  The '344 Continuation Application was filed almost two years before the issuance of the '609 patent on September 26, 2006, and more than one year after the filing date of the '609 patent on June 10, 2003.

35.     On July 12, 2005, Gary J. Connell, Esquire ("Mr. Connell") of Sheridan Ross, P.C., on behalf of an undisclosed client, filed a third-party submission with the United States Patent and Trademark Office ("USPTO") stating that European Patent Application EP 0 705 539 A2 ("the '539 Application"), which was published on April 10, 1996, is material to the patentability of the '344 Continuation Application.  A true and correct copy of the third-party submission is attached hereto as Exhibit 6.  The disclosure reveals that the KV Patents are invalid and/or unenforceable.

7

36.    Mr. Connell also mailed a copy of the third-party submission to counsel for the KV Defendants on July 12, 2005.  Thus, the KV Defendants and their counsel were aware that the '539 Application was prior art for the '344 Continuation Application.

37.    Mr. Connell's actions clearly demonstrate a desire on the part of his client to invalidate the KV Defendants' dietary supplement patents via an administrative procedure through the USPTO in order to enter the dietary supplement market dominated exclusively by the KV Defendants.

38.    This administrative proceeding has been pending before the USPTO since July 12, 2005, but a decision has not been issued.  However, the proceeding has prevented the continued prosecution of a fourth patent application for the KV Defendants' product, PrimaCare One™.  As a result, the KV Defendants have been able to maintain their market share and effectively prevent the entry of other competitors into the marketplace.

39.    On July 12, 2005, Mr. Connell mailed a copy of the third-party submission to counsel for the KV Defendants.  The '609 patent was issued on September 26, 2006.  Thus, the KV Defendants knew or should have known that the '539 Application was prior art to the '609 patent at least fourteen (14) months prior to issuance of the '609 patent.

40.    The '539 Application is material to the patentability of the '344 Continuation Application, and therefore it is also material to the patentability of the '609 patent.

41.    During the prosecution of the '609 patent, the KV Defendants, with knowledge of the '539 Application, did not disclose the reference to the USPTO as a prior art reference.

42.    On October 4, 2005, during the prosecution of the '609 patent, the KV Defendants responded to a Non-final Office Action from the USPTO.

8

43.    In its written response to the USPTO on October 4, 2005, the KV Defendants were aware of '539 Application but failed to disclose it as prior art. In fact, in their written response, the KV Defendants represented that the "pending claims 53-60 are patentable as written. A notice of allowance is thereby respectfully requested." See Written Response of the KV Defendants dated October 4, 2005 at p. 10, ¶ 3 attached hereto as Exhibit 7. Therefore, the KV Defendants asserted that the application was patentable with full knowledge that they had not disclosed the '539 Application to the USPTO.

44.    On February 21, 2006, USPTO Examiner Jennifer Kim and Primary Examiner Sheng Jun Wang conducted a personal interview of Sarah Vaz (Reg # 34,747), a representative for the KV Defendants, in furtherance of the prosecution of what would eventually issue as the '609 patent. During this interview, the KV Defendants were aware that the '539 Application was material prior art, but did not disclose the reference to the USPTO examiners.

45.    On March 10, 2006, the KV Defendants submitted an amendment after a Final Office Action to the USPTO in furtherance of the prosecution of what would eventually issue as the '609 patent. The KV Defendants again stated that the "application is in condition for allowance". See Amendment After Final Office Action at p. 4, ¶ 1 attached hereto as Exhibit 8. However, the KV Defendants knew that they had not disclosed the '539 Application to the USPTO Examiner as a material prior art reference to the patentability of the '609 patent.

46.    On June 13, 2006, the KV Defendants paid the issue fee to the USPTO in furtherance of the prosecution of what would eventually issue as the '609 patent.

47.    As previously alleged, the '846 patent and '666 patent were not issued until July 10, 2001, and June 10, 2003, respectively.

9

48.    The '539 Application, which was easily identifiable and locatable, was published on April 10, 1996, more than five (5) years before the '846 patent was issued and more than seven (7) years before the '666 patent was issued.

49.    The '539 Application is material to the patentability of the '846 patent and the '666 patent.

50.    During the prosecution of the '846 patent and the '666 patent, the KV Defendants submitted Information Disclosure Statements that did not include the '539 Application. The KV Defendants knew or should have known of the existence of the '539 Application, but did not disclose to the USPTO the reference of same as a prior art reference.

51.    The KV Defendants had a duty of disclosure to reveal all prior art information material to patentability to the USPTO during the prosecution of the '609 patent, the '846 patent and the '666 patent.

52.    The duty of disclosure arises from case law and the Code of Federal Regulations governing patent procurement. See 37 C.F.R. §§ 1.56, 1.97 and 1.98.

53.    The duty to disclose information material to patentability exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. See 37 C.F.R. § 1.56.

54.    The Defendants made affirmative statements to the USPTO that the application to eventually issue as the '609 patent was patentable, while intentionally withholding the '539 Application, which was material to patentability of the '609 patent.

55.    The '609 patent, the '846 patent and the '666 patent are unenforceable. Therefore, Lannett has not infringed upon, and is not infringing upon any claims of the '609 patent, the '846 patent or the '666 patent and will not infringe upon any claims of these patents

10

by making, using, offering to sell or selling its Multivitamin With Mineral Capsules, or importing such a product into the United States.

56.

Moreover, Lannett has not induced or contributed to, and is not inducing or contributing to, the infringement of any claims of the '609 patent, '846 patent or '666 patent and will not induce or contribute to the infringement of any claims of these patents, by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or importing such a product into the United States.

## COUNT FOUR

### Anti-trust Violations

57.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

58.    The relevant product market is multivitamin/mineral products containing omega-3 fatty acids for prenatal and postnatal support, including all products that are reasonably interchangeable.

59.    The relevant geographic market is the United States of America.

60.    Upon information and belief, the KV Defendants have obtained and maintained monopoly power in the relevant product and geographic markets.

61.    The KV Defendants' conduct, as alleged herein, has had, and will continue to have, a substantial effect on interstate commerce.

62.    Upon information of belief, the KV Defendants knew or should have known that the KV Patents are invalid and/or unenforceable, in light of the '539 Application.

11

63.    The KV Defendants pursued issuance of the KV Patents with the USPTO and allowed the USPTO to issue the KV Patents despite knowledge of the existence of invalidating prior art.

64.    Furthermore, upon information and belief, the KV Defendants have not taken any steps to address the prior art issue in the pending '344 Continuation Application currently before the USPTO, despite the undeniable conclusion that there is a third party adversely affected by the pending application and the KV Patents.

65.    Defendants have obtained and maintained their market power through acquisition and maintenance of their fraudulently-procured, invalid and unenforceable '609 patent, '846 patent and '666 patent.

66.    In light of the apparent and undeniable invalidity of the '846 patent, the '666 patent and the '609 patent, Lannett has requested assurances from the KV Defendants that they will not assert their facially invalid patents to block Lannett's entry into the market. The KV Defendants have failed or refused to provide such assurances. Therefore, an Article III case or controversy exists between Lannett and the KV Defendants.

67.    As a result of the KV Defendants' anticompetitive conduct, Lannett stands to lose substantial sales of its Multivitamin With Mineral Capsules for prenatal and postnatal support. This injury is a competitive injury of the sort that the antitrust laws were intended to prevent because Lannett and the KV Defendants directly compete in the marketing and sale to end-users of multivitamin/mineral products containing omega-3 fatty acids. In addition, Lannett was forced to hire counsel and bring the instant action to obtain redress for the KV Defendants' unlawful and anticompetitive conduct.

68.     The KV Defendants have violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully obtaining and maintaining market power in the relevant market by use of threats to enforce patents that the KV Defendants knew were invalid and/or procured fraudulently.  Section 4 of the Clayton, 15 U.S.C. § 15(a), authorizes private suits for damages based upon violations of the Sherman Act.

69.     As the result of the KV Defendants' unlawful and anticompetitive conduct described above, Lannett has suffered and will continue to suffer economic injury.

### COUNT FIVE

### Violation of Deceptive Trade Practices Act

70.     Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

71.     In marketing and selling their product, the KV Defendants have included, and continue to include, a statement in their product information packaging that their product is covered by U.S. Patent Nos. 4,822,816 ("the '816 patent") and 5,070,085 ("the '085 patent").

72.     The '816 patent expired on or about April 10, 2007.

73.     The '085 patent expired on or about April 18, 2006.

74.     Upon information and belief, the KV Defendants knew or should have known that the '609 patent, the '846 patent, the '666 patent, the '816 patent and the '085 patent are invalid, expired and/or unenforceable, especially in light of the '539 Application.

75.     The KV Defendants have, and continue to represent, in the course of their business, that PrimaCare One™ is covered by the '609 patent, the '846 patent, the '666 patent, the '816 patent and the '085 patent, when the KV Defendants knew or should have known that these patents were invalid, expired and/or unenforceable.

13

76.     The KV Defendants have, and continue to advertise that PrimaCare One™ is covered by the '609 patent, the '846 patent, the '666 patent, the '816 patent and the '085 patent, when the KV Defendants knew or should have known that these patents were invalid, expired and/or unenforceable.

77.     The KV Defendants have acted in bad faith in the marketplace by publicizing the '609 Patent, the '846 patent, the '666 patent, the '816 patent and the '085 patent as valid.

78.     Upon information and belief, and in the course of their business, as alleged above, the KV Defendants' conduct violates 6 Del. C. § 2532.

79.     The KV Defendants' conduct violates 6 Del. C. § 2532 and unfairly interferes with Lannett's ability to compete with the KV Defendants on the merits of their products.

80.     Because the KV Defendants' conduct violates 6 Del. C. § 2532, Lannett has suffered and will continue to suffer economic injury.

**COUNT SIX**

**Commercial Disparagement**

81.     Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

82.     In June 2008, the KV Defendants caused a letter to be sent to numerous customers and/or potential customers of Lannett, which letter contained false and misleading statements of fact regarding Lannett's Multivitamin With Minerals product.  A true and correct copy of the June 2008 letter is attached hereto as Exhibit 9.

83.     The false and misleading statements contained in the aforementioned letter include, but are not necessarily limited to, the KV Defendants' assertion that "[t]he sources of

iron are...different" in the Lannett Multivitamin With Minerals product and the KV Defendants' product, PrimaCare® ONE.

84.    On or about June 19, 2008, the KV Defendants caused a second letter to be sent to numerous customers and/or potential customers of Lannett, which letter contained false and misleading statements of fact regarding Lannett's Multivitamin With Minerals product.  A true and correct copy of the June 19, 2008 letter is attached hereto as Exhibit 10.

85.    The false and misleading statements contained in the aforementioned letter include, but are not necessarily limited to, the KV Defendants' assertion and suggestion that Lannett's Multivitamin With Minerals product does not use "high quality, pharmaceutical grade fish oils" as a component of the manufacturing process.

86.    In July 2008, the KV Defendants caused a third letter to be sent to numerous customers and/or potential customers of Lannett, which letter contained false and misleading statements of fact regarding Lannett's Multivitamin With Minerals product.  A true and correct copy of the July 2008 letter is attached hereto as Exhibit 11.

87.    The false and misleading statements contained in the aforementioned letter include, but are not necessarily limited to, the KV Defendants' assertions and suggestions that Lannett's Multivitamin With Minerals product contains ferric iron rather than ferrous iron, and that the iron contained in Lannett's product is ten times less soluble than the iron contained in the KV Defendants' product, PrimaCare® ONE.

88.    Upon information and belief, the KV Defendants have made additional false and/or misleading statements to customers and/or potential customers of Lannett regarding Lannett's Multivitamin With Minerals product and/or Lannett generally.

15

89.    When the KV Defendants sent the aforementioned letters to the customers and/or potential customers of Lannett, the KV Defendants knew that their statements were false or, at a minimum, they acted in reckless disregard of the truth or falsity of their statements.

90.    When sending out the aforementioned letters, the KV Defendants intended or reasonably should have recognized that their publication of the misrepresentations made in said letters would cause Lannett's customers not to distribute and/or to discontinue any distribution of Lannett's Multivitamin With Minerals product, thereby causing pecuniary loss to Lannett.

91.    As a result of the misrepresentations made in the aforementioned letters, customers or potential customers of Lannett have declined to distribute and/or to continue to distribute Lannett's Multivitamin With Minerals product, thereby causing pecuniary loss to Lannett.

92.    As a result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

## COUNT SEVEN

### Tortious Interference With Contract

93.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

94.    As previously alleged, in June and July 2008, the KV Defendants sent out at least three (3) different letters to customers and/or potential customers of Lannett, which letters contained statements that were false and/or misleading about Lannett's Multivitamin With Minerals product.  See Exhibits 9, 10 and 11.

95.    Before the KV Defendants sent the aforementioned letters, Lannett had entered into contractual relationships with numerous distributors, who purchased various quantities of

16

Lannett's Multivitamin With Minerals product, for subsequent sale and distribution to consumers.

96.     As a direct and proximate result of the aforementioned letters sent by the KV Defendants, several customers of Lannett have rescinded and/or terminated their agreements to purchase and/or distribute Lannett's Multivitamin With Minerals product, thereby causing pecuniary loss to Lannett.

97.     The KV Defendants knew about Lannett's contractual relationships and acted purposefully and with a specific intention to harm Lannett by interfering with same.

98.     As a result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

99.     The KV Defendants acted without permission or justification in interfering with Lannett's contractual relationships with its customers.

100.    It is believed and, therefore, averred that the interference by the KV Defendants with Lannett's contractual relationships was willful and malicious and was carried out with a specific intent to injure Lannett in conducting its business, such that would entitle Lannett to punitive damages.

### COUNT EIGHT

#### Tortious Interference With Prospective Contractual Relationships

101.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

102.    As of June 2008, Lannett was promoting its Multivitamin With Minerals product for sale, and was about to enter into contracts with numerous additional distributors, who were to

17

purchase various quantities of Lannett's Multivitamin With Minerals product, for subsequent sale and distribution to consumers

103.    As previously alleged, in June and July 2008, the KV Defendants sent out at least three (3) different letters to customers and/or potential customers of Lannett, which letters contained statements that were false and/or misleading about Lannett's Multivitamin With Minerals product.  See Exhibits 9, 10 and 11.

104.    As a direct and proximate result of the aforementioned letters sent by the KV Defendants, several potential customers of Lannett have declined to purchase and/or distribute Lannett's Multivitamin With Minerals product, thereby causing pecuniary loss to Lannett.

105.    The KV Defendants knew about Lannett's prospective contractual relationships and acted purposefully and with a specific intention to harm Lannett by interfering with same.

106.    As a result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

107.    The KV Defendants acted without permission or justification in interfering with Lannett's prospective contractual relationships with its customers.

108.    It is believed and, therefore, averred that the interference by the KV Defendants with Lannett's prospective contractual relationships was willful and malicious and was carried out with a specific intent to injure Lannett in conducting its business, such that would entitle Lannett to punitive damages.

## COUNT NINE

### Tortious Interference With Contract

109.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragaphs of this Complaint.

18

110.    In 2007, Lannett purchased from Albion Laboratories, Inc. and Albion International, Inc. ("Albion") certain quantities of chelated iron, which Albion sells under the name Ferrochel®, for use as a source of iron in Lannett's "Multivitamin with Minerals" product.

111.    After learning of Lannett's efforts to produce and market its "Multivitamin with Minerals" product, the KV Defendants contacted Lannett's suppliers, including Albion, for the sole purpose of interrupting and cutting off Lannett's relationships with its suppliers so that Lannett could not obtain the ingredients necessary to manufacture its competing product.

112.    As a direct and proximate result of the KV Defendants' actions, Albion has demanded that Lannett return to Albion all quantities of its chelated iron product Ferrochel® which Lannett previously purchased from Albion, and which had already been integrated into the Lannett "Multivitamin with Minerals" products that were manufactured and/or distributed.

113.    The KV Defendants knew about Lannett's contractual relationship with Albion, its supplier, and acted purposefully and with a specific intention to harm Lannett by interfering with same.

114.    As a direct and proximate result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

115.    The KV Defendants acted without permission or justification in interfering with Lannett's contractual relationship with Albion.

116.    It is believed, and therefore averred, that the interference by the KV Defendants with Lannett's contractual relationship was willful and malicious and was carried out with a specific intent to injure Lannett in conducting its business, such that would entitle Lannett to punitive damages.

19

## COUNT TEN

### Tortious Interference With Prospective Contractual Relationship

117.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragaphs of this Complaint.

118.    Had it not been for the improper actions of the KV Defendants, as set forth above, Lannett would have continued to have a contractual and business relationship with Albion for the purchase of Ferrochel® chelated iron for use as a source of iron in Lannett's "Multivitamin with Minerals" product.

119.    As previously alleged, after learning of Lannett's efforts to produce and market its "Multivitamin with Minerals" product, the KV Defendants contacted Lannett's suppliers, including Albion, for the sole purpose of interrupting and cutting off Lannett's relationships with its suppliers so that Lannett could not obtain the ingredients necessary to manufacture its competing product.

120.    As a direct and proximate result of the KV Defendants' actions, Albion has not only refused to continue to supply Lannett with its chelated iron product Ferrochel®, it has refused altogether to sell or supply any of its iron products to Lannett.

121.    The KV Defendants knew about Lannett's prospective continued business relationship with Albion, and acted purposefully and with a specific intention to harm Lannett by interfering with same.

122.    As a direct and proximate result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

123.    The KV Defendants acted without permission or justification in interfering with Lannett's prospective business relationship with Albion.

20

124.   It is believed, and therefore averred, that the interference by the KV Defendants with Lannett's prospective business relationship was willful and malicious and was carried out with a specific intent to injure Lannett in conducting its business, such that would entitle Lannett to punitive damages.

### COUNT ELEVEN

### Anti-trust Violations

125.   Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

126.   As previously alleged, the KV Defendants have obtained and maintained monopoly power in the relevant product market, which is multivitamin/mineral products containing omega-3 fatty acids for prenatal and postnatal support, including all products that are reasonably interchangeable.

127.   As previously alleged, the KV Defendants have also obtained and maintained monopoly power in the relevant geographic market, which is the United States of America.

128.   The KV Defendants' conduct, as alleged herein, has had, and will continue to have, a substantial effect on interstate commerce.

129.   Upon information of belief, the KV Defendants knew of Lannett's contract and prospective continued business relationship with Albion, for the purchase of Ferrochel® chelated iron for use as a source of iron in Lannett's "Multivitamin with Minerals" product.

130.   The KV Defendants have maintained and are continuing to attempt to maintain their market power by obstructing and interfering with Lannett's relationships with its suppliers, including but not limited to Albion, so that Lannett will be unable to manufacture and/or market its competing product.

21

131.    As a result of the KV Defendants' anticompetitive conduct, Lannett stands to lose substantial sales of its product.

132.    The KV Defendants have violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully maintaining or attempting to maintain market power in the relevant market by interfering with Lannett's relationships with its suppliers.

133.    As the result of the KV Defendants' unlawful and anticompetitive conduct described above, Lannett has suffered and will continue to suffer economic injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court order the following relief:

A.    Declare that the Multivitamin With Mineral Capsules sold by Lannett Company Inc. does not infringe upon the claims of the '846 patent, the '666 patent, the '609 patent, the '329 patent, and the '857 patent;

B.    Declare that the claims of the '846 patent, the '666 patent, the '609 patent, the '329 patent and the '857 patent issued to the KV Defendants are invalid;

C.    Declare that the claims of the '609 patent, the '846 patent and the '666 patent issued to the KV Defendants are unenforceable;

D.    Award monetary damages resulting from the KV Defendants' unlawful acts as set forth herein, in an amount to be proven at trial, together with interest from the date of accrual thereof;

E.    Award Lannett punitive damages, in an amount sufficient to punish the KV Defendants for their egregious and intentional misconduct and to deter them and others from engaging in similar misconduct;

22

F.    Award Lannett treble damages pursuant to 15 U.S.C. § 15 and 6 <u>Del. C.</u> §2533(c);

G.    Award Lannett attorneys' fees and costs with respect to its antitrust claims pursuant to 15 U.S.C. § 15, and with respect to its claim pursuant to the Delaware Deceptive Trade Practices Act, 6 <u>Del. C.</u> § 2533(b);

H.    Enter a permanent injunction pursuant to 15 U.S.C. § 26, prohibiting the KV Defendants from restraining trade in violation of Section 2 of the Sherman Act, 15 U.S.C. §2;

I.    Enter a permanent injunction pursuant to 6 <u>Del. C.</u> § 2533(a), prohibiting the KV Defendants from committing deceptive trade practices in violation of the 6 <u>Del. C.</u> §2532; and

J.    Award such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Lannett hereby demands a trial by jury on all issues.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

By:    ___*/s/ Sophia Siddiqui*_____
          Sophia Siddiqui, Esquire (#4914)
          Gerard P. Norton, Esquire (*)
          Alfred J. Monte, Jr., Esquire (*)
          Jonathan R. Lagarenne, Esquire (*)
          Ross J. Oehler, Esquire (*)
          Citizens Bank Center
          919 N. Market Street, Suite 1300
          Wilmington, DE  19801
          (302) 622-4278
          (302) 656-8920
          ssiddiqui@foxrothschild.com

23

Attorneys for Plaintiff
Lannett Company, Inc.

(*) Admitted *Pro Hac Vice*

Date: August 14, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

LANNETT COMPANY INC.,                    :
                                         :
                    Plaintiff,           :      Civil Action No. 08-338
                                         :
        v.                               :
                                         :
KV PHARMACEUTICALS,                      :
DRUGTECH CORPORATION, and                :
THER-RX CORPORATION,                     :
                                         :
                    Defendants.          :
                                         :
_____  :
                                         :

<u>**SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY**</u>

Plaintiff, Lannett Company, Inc. ("Lannett") brings this action against Defendants, KV

Pharmaceuticals ("KV"), DrugTech Corporation ("DrugTech"), and Ther-Rx Corporation

("Ther-Rx") (collectively, the "KV Defendants"), and alleges as follows:

<u>**PARTIES**</u>

1.      Plaintiff Lannett Company, Inc. is a Delaware corporation having its principal

place of business at 9000 State Road, Philadelphia, PA 19136.

2.      Upon information and belief, Defendant KV Pharmaceuticals is a Delaware

corporation having its principal place of business at 2503 South Hanley Road, St. Louis, MO

63144.

3.      Upon information and belief, Defendant DrugTech Corporation is a Delaware

corporation having its principal place of business located at 300 Delaware Avenue, Suite 1270,

Wilmington, DE 19801.  DrugTech is a wholly-owned subsidiary of KV Pharmaceuticals.

DrugTech owns the patents at issue and licenses the patents to KV Pharmaceuticals and Ther-Rx

Corporation.

LN1 928178v2 08/14/08

4.    Upon information and belief, Defendant Ther-Rx Corporation is a Missouri corporation having its principal place of business at 1 Corporate Woods Drive, Brigeton, MO 63044.  Ther-RX is a wholly owned subsidiary of KV Pharmaceuticals responsible for marketing and selling the patented products at issue, and is a licensee of DrugTech Corporation.

## NATURE OF ACTION

5.    This is an action for a declaratory judgment of patent invalidity, non-infringement, unenforceability for inequitable conduct and unfair competition.  Lannett seeks a declaration that patents belonging to the KV Defendants, specifically, U.S. Patent No. 6,258,846 ("the '846 patent") , U.S. Patent No. 6,576,666 ("the '666 patent"), U.S. Patent No. 7,112,609 ("the '609 patent"), U.S. Patent No. 6,197,329 ("the '329 patent"),  and U.S. Patent No. 6,569,857 ("the '857 patent") (collectively the "KV Patents") are invalid and/or unenforceable. True and correct copies of the '846 patent, the '666 patent, the '609 patent, the '329 patent, and the '857 patent are attached hereto as Exhibits "1", "2", "3", "4" and "5" respectively.  Lannett also seeks a declaration that Lannett's nutritional dietary product - Multivitamin With Mineral Capsules - does not infringe upon the KV Patents and that the KV Defendants have engaged in unfair competition and deceptive trade practices in the marketplace by preventing Lannett and others from entering the market.

6.Lannett seeks a declaration that patents licensed to the KV Defendants, specifically, U.S. Patent No. 5,516,925 ("the '925 patent"),  and U.S. Patent No. 6,716,814 ("the '814 patent") are not infringed and/or invalid.  True and correct copies of the '925 patent and the '814 patent are attached hereto as Exhibits "6" and "7" respectively.

Formatted: Bullets and Numbering

2

7.6.    This action is also brought under the Clayton Act, 15 U.S.C. §§ 15 and 25, as amended, and the Sherman Act, 15 U.S.C. §§ 1 and 2, where Defendants have asserted invalid or unenforceable patents in order to inhibit competition in the marketplace.

## JURISDICTION AND VENUE

8.7.    This action arises under the patent laws of the United States, Title 35 of the United States Code, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and state laws regarding unfair competition and deceptive trade practices, 6 Del. C. § 2532.  This Court has subject matter jurisdiction over count one (declaratory judgment of non-infringement ), count two (declaratory judgment of invalidity), count three (inequitable conduct) and count four (antitrust violations) pursuant to 28 U.S.C. §§ 1331, 1367, 1338 and 2201-2202, as claims arising under the patent laws of the United States and the Declaratory Judgment Act.  The Court also has subject matter jurisdiction over count five (deceptive trade practices) because count five forms part of the same case or controversy as the claims contained in counts one through five. Jurisdiction is also conferred by 28 U.S.C. § 1337, and the Clayton Act, as amended.  The Court has supplemental jurisdiction over the state law claim of deceptive trade practices pursuant to 28 U.S.C. § 1367.

9.8.    Based on information and belief, venue in this judicial district is proper under the provisions of 28 U.S.C. §§ 1391(c) and 1400(b), where the Defendants KV and DrugTech are Delaware corporations and Ther-Rx engages in significant business in, and derives significant profit within, the State of Delaware.  The KV Defendants sell their PrimaCare One™ product through various pharmacies within the State of Delaware and have significant annual sales in the State of Delaware.

10.9.    This Court also has jurisdiction over Lannett's claim for violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. § 2532, pursuant to 28 U.S.C. § 1338(b) because those

3

claims are joined with substantial and related claims under the Patent and Trademark Laws of the United States.

## FACTUAL BACKGROUND

Formatted: Bullets and Numbering

11.10.  Lannett has plans to market its Multivitamin With Mineral Capsules, a multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support, within the United States.  Dietary multivitamin/mineral and omega-3 fatty acid supplements are prescribed by healthcare professionals throughout pregnancy, during the postnatal period for both lactating and non-lactating mothers, and throughout the childbearing years.

12.11.  The KV Patents, the '925 patent and the '814 patent prevent Lannett and other competitors from introducing their competitive multivitamin/mineral and omega-3 fatty acid supplementation products in competition with the KV Defendants' product, PrimaCare One™.  There is a reasonable likelihood that the KV Defendants will assert a claim for patent infringement against Lannett once its product, Multivitamin With Mineral Capsules, enters the marketplace.

13.12.  Lannett has a reasonable belief, based upon prior art and the patents' prosecution histories, that the KV Patents, the '925 patent and the '814 patent are invalid, non-infringed and/or unenforceable.

14.13.  Lannett has informed the KV Defendants of its intent to market a product arguably within the scope of the KV Patents, the '925 patent and the '814 patent.

15.14.  In light of the apparent invalidity and/or non-infringement of the KV Patents, the '925 patent and the '814 patent, Lannett has sought assurances from the KV Defendants that they will not assert these patents to block Lannett's entry into the market.  The KV Defendants have failed or refused to provide such assurances.  Thus, an Article III case or controversy exists between Lannett and the KV Defendants.

4

~~16.~~15.  The KV Defendants are motivated to maintain their market share, which is comprised of noninfringed, invalid and/or unenforceable patents, to keep Lannett and other competitors from entering the marketplace and to prevent the dilution of KV Defendants' market share for dietary supplement multivitamin/mineral and omega-3 fatty acid products.

### COUNT ONE

### Declaratory Judgment of Noninfringement

~~17.~~16.  Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

**Formatted:** Bullets and Numbering

~~18.~~17.  Upon information and belief, the '846 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on July 10, 2001 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly-owned subsidiary of KV Pharmaceuticals.

~~19.~~18.  Upon information and belief, the '666 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on June 10, 2003 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

~~20.~~19.  Upon information and belief, the '609 patent issued to Marc S. Hermelin, R. Saul Levinson and George Paradissis on September 26, 2006 is entitled Nutritional Supplements, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

~~21.~~20.  Upon information and belief, the '329 patent issued to Marc S. Hermelin, Mitchell I. Kirschner, and R. Saul Levinson on March 6, 2001 is entitled Anti-nausea Compositions and Methods, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

5

22.21. Upon information and belief, the '857 patent issued to Marc S. Hermelin and R. Saul Levinson on May 27, 2003 is entitled Dietary Supplements, and is assigned to DrugTech, a wholly owned subsidiary of KV Pharmaceuticals.

23.Upon information and belief, the '925 patent issued to Mark Pedersen and H. DeWayne Ashmead on May 14, 1996 is entitled Amino Acid Chelates Having Improved Platability, is assigned to Albion International, Inc., and is licensed to KV Pharmaceuticals for use in PrimaCare One™.

24.Upon information and belief, the '814 patent issued to Clayton Ericson and H. DeWayne Ashmead on April 6, 2004 is entitled Enhancing Solubility of Iron Amino Acid Chelates and Iron Proteinates, is assigned to Albion International, Inc., and is licensed to KV Pharmaceuticals for use in PrimaCare One™.

25.22. The KV Defendants have failed to comply with the requirements of Sections 102 and 103 of Title 35 of the United Stated Code, and other relevant sections of Title 35.

26.23. Thus, Lannett has not infringed upon, and will not infringe upon the KV Patents, the '925 patent and '814 patent by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or importing such a product into the United States.

27.24. Based on the foregoing, an actual and justiciable controversy exists between Lannett and the KV Defendants with respect to the KV Patents, the '925 patent and the '814 patent.

**COUNT TWO**

**Declaratory Judgment of Invalidity**

28.25. Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

**Formatted:** Bullets and Numbering

6

29.26.  Upon information and belief, the KV Patents are invalid based upon prior art and the patents' prosecution histories.

30.27.  The KV Patents are invalid for failure to comply with the requirements of sections 102 and 103 of Title 35 of the United States Code, and other relevant sections of Title 35.

31.28.  The KV Patents are invalid.  Thus, Lannett has not, is not and will not infringe upon the KV Patents by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or by importing such a product into the United States.

32.29.  The KV Patents are invalid.  Therefore, Lannett has not induced or contributed to, and is not inducing or contributing to, infringement of the KV Patents and will not induce or contribute to infringement of the KV patents by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or by importing such a product into the United States.

## COUNT THREE

### Inequitable Conduct

33.30.  Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

34.31.  Upon information and belief, the '609 patent, the '846 patent and the '666 patent are is unenforceable based upon the KV Defendants' inequitable conduct and the patents's prior art and prosecution history.

35.32.  The '609 patent was filed on June 10, 2003, and issued on September 26, 2006.

36.33.  The '609 patent is a continuation-in-part of the '666 patent, which is a continuation-in-part of the '846 patent.  In other words, these three patents constitute a family of patents that claim the KV Defendants' product, PrimaCare One™.

7

37.34. Defendants filed a continuation application for the '609 patent on December 26, 2004 as U.S. Application Serial No. 11/021,344 ("the '344 Continuation Application"). The '344 Continuation Application was filed almost two years before the issuance of the '609 patent on September 26, 2006, and more than one year after the filing date of the '609 patent on June 10, 2003.

38.35. On July 12, 2005, Gary J. Connell, Esquire ("Mr. Connell") of Sheridan Ross, P.C., on behalf of an undisclosed client, filed a third-party submission with the United States Patent and Trademark Office ("USPTO") stating that European Patent Application EP 0 705 539 A2 ("the '539 Application"), which was published on April 10, 1996, is material to the patentability of the '344 Continuation Application. A true and correct copy of the third-party submission is attached hereto as Exhibit 86. The disclosure reveals that the KV Patents are invalid and/or unenforceable.

39.36. Mr. Connell also mailed a copy of the third-party submission to counsel for the KV Defendants on July 12, 2005. Thus, the KV Defendants and their counsel were aware that the '539 Application was prior art for the '344 Continuation Application.

40.37. Mr. Connell's actions clearly demonstrate a desire on the part of his client to invalidate the KV Defendants' dietary supplement patents via an administrative procedure through the USPTO in order to enter the dietary supplement market dominated exclusively by the KV Defendants.

41.38. This administrative proceeding has been pending before the USPTO since July 12, 2005, but a decision has not been issued. However, the proceeding has prevented the continued prosecution of a fourth patent application for the KV Defendants' product, PrimaCare One™. As a result, the KV Defendants have been able to maintain their market share and effectively prevent the entry of other competitors into the marketplace.

8

42.39.  On July 12, 2005, Mr. Connell mailed a copy of the third-party submission to counsel for the KV Defendants.  The '609 patent was issued on September 26, 2006.  Thus, the KV Defendants knew or should have known that the '539 Application was prior art to the '609 patent about at least fourteen (14) months prior to issuance of the '609 patent.

43.40.  The '539 Application is material to the patentability of the '344 Continuation Application, and therefore it is also material to the patentability of the '609 patent.

44.41.  During the prosecution of the '609 patent, the KV Defendants, with knowledge of the '539 Application, did not disclose the reference to the USPTO as a prior art reference.

45.42.  On October 4, 2005, during the prosecution of the '609 patent, the KV Defendants responded to a Non-final Office Action from the USPTO.

46.43.  In its written response to the USPTO on October 4, 2005, the KV Defendants were aware of '539 Application but failed to disclose it as prior art.  In fact, in their written response, the KV Defendants represented that the "pending claims 53-60 are patentable as written.  A notice of allowance is thereby respectfully requested."  See Written Response of the KV Defendants dated October 4, 2005 at p. 10, ¶ 3 attached hereto as Exhibit 97.  Therefore, the KV Defendants asserted that the application was patentable with full knowledge that they had not disclosed the '539 Application to the USPTO.

47.44.  On February 21, 2006, USPTO Examiner Jennifer Kim and Primary Examiner Sheng Jun Wang conducted a personal interview of Sarah Vaz (Reg # 34,747), a representative for the KV Defendants, in furtherance of the prosecution of what would eventually issue as the '609 patent.  During this interview, the KV Defendants were aware that the '539 Application was material prior art, but did not disclose the reference to the USPTO examiners.

48.45.  On March 10, 2006, the KV Defendants submitted an amendment after a Final Office Action to the USPTO in furtherance of the prosecution of what would eventually issue as

9

the '609 patent. The KV Defendants again stated that the "application is in condition for allowance". See Amendment After Final Office Action at p. 4, ¶ 1 attached hereto as Exhibit 10 8. However, the KV Defendants knew that they had not disclosed the '539 Application to the USPTO Examiner as a material prior art reference to the patentability of the '609 patent.

49.46.  On June 13, 2006, the KV Defendants paid the issue fee to the USPTO in furtherance of the prosecution of what would eventually issue as the '609 patent.

47.  As previously alleged, the '846 patent and '666 patent were not issued until July 10, 2001, and June 10, 2003, respectively.

48.  The '539 Application, which was easily identifiable and locatable, was published on April 10, 1996, more than five (5) years before the '846 patent was issued and more than seven (7) years before the '666 patent was issued.

49.  The '539 Application is material to the patentability of the '846 patent and the '666 patent.

50.  During the prosecution of the '846 patent and the '666 patent, the KV Defendants submitted Information Disclosure Statements that did not include the '539 Application. The KV Defendants knew or should have known of the existence of the '539 Application, but did not disclose to the USPTO the reference of same as a prior art reference.

50.51.  The KV Defendants, however, had a duty of disclosure to reveal all prior art information material to patentability to the USPTO during the prosecution of the '609 patent, the '846 patent and the '666 patent.

51.52.  The duty of disclosure arises from case law and the Code of Federal Regulations governing patent procurement. See 37 C.F.R. §§ 1.56, 1.97 and 1.98.

10

52.53. The duty to disclose information material to patentability exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. See 37 C.F.R. § 1.56.

53.54. The Defendants made affirmative statements to the USPTO that the application to eventually issue as the '609 patent was patentable, while intentionally withholding the '539 Application, which was material to patentability of the '609 patent.

55.    The '609 patent, the '846 patent and the '666 patent is are unenforceable. Therefore, Lannett has not infringed upon, and is not infringing upon any claims of the '609 patent, the '846 patent or the '666 patent and will not infringe upon any claims of this these patents by making, using, offering to sell or selling its Multivitamin With Mineral Capsules, or importing such a product into the United States.

56.

56.——Moreover, Lannett has not induced or contributed to, and is not inducing or contributing to, the infringement of any claims of the '609 patent, '846 patent or '666 patent and will not induce or contribute to the infringement of any claims of this these patents, by making, using, offering to sell or selling its Multivitamin With Mineral Capsules in the United States, or importing such a product into the United States.

**Formatted:** Indent: Left: 0", First line: 0.5", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Tab after: 0.75" + Indent at: 0.5", Tabs: 0.5", List tab + Not at 0.75"

## COUNT FOUR

### Anti-Ttrust Violations

**Formatted:** Bullets and Numbering

56.57. Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

11

58.    The relevant product market is multivitamin/mineral products containing omega-3 fatty acids for prenatal and postnatal support, including all products that are reasonably interchangeable.

59.    The relevant geographic market is the United States of America.

~~57.~~60.  Upon information and belief, the KV Defendants have obtained and maintained monopoly power in the relevant product and geographic markets. ~~market for the multivitamin/mineral product containing omega-3 fatty acids for prenatal and postnatal support. The relevant geographic market for this product is the United States.~~

61.    The KV Defendants' conduct, as alleged herein, has had, and will continue to have, a substantial effect on interstate commerce.

62.    Upon information of belief, the KV Defendants knew or should have known that the KV Patents are invalid and/or unenforceable, in light of the '539 Application.

~~59.~~63.  The KV Defendants pursued issuance of the ~~'609 patent~~KV Patents with the USPTO and allowed the USPTO to issue the ~~'609 patent~~KV Patents despite knowledge of the existence of invalidating prior art. ~~Moreover, the KV Defendants have taken no steps to correct defects in the '846 patent and the '666 patent.~~

~~60.~~64.  Furthermore, upon information and belief, the KV Defendants have not taken any steps to address the prior art issue in the pending '344 Continuation Application currently before the USPTO, despite the undeniable conclusion that there is a third party adversely affected by the pending application and the KV Patents.

~~61.~~65.  Defendants have obtained and maintained their market power through acquisition and maintenance of their fraudulently-procured, invalid and unenforceable '609 patent, ~~as well as their invalid~~ '846 patent and '666 patents.

12

62.66. In light of the apparent and undeniable invalidity of the '846 patent, the '666 patent and the '609 patent, Lannett has requested assurances from the KV Defendants that they will not assert their facially invalid patents to block Lannett's entry into the market. The KV Defendants have failed or refused to provide such assurances. Therefore, an Article III case or controversy exists between Lannett and the KV Defendants.

63.67. As a result of the KV Defendants' anticompetitive conduct, Lannett stands to lose substantial sales of its Multivitamin With Mineral Capsules for prenatal and postnatal support. This injury is a competitive injury of the sort that the antitrust laws were intended to prevent because Lannett and the KV Defendants directly compete in the marketing and sale to end-users of multivitamin/mineral products containing omega-3 fatty acids. In addition, Lannett was forced to hire counsel and bring the instant action to obtain redress for the KV Defendants' unlawful and anticompetitive conduct.

64.68. The KV Defendants have violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully obtaining and maintaining market power in the relevant market by use of threats to enforce patents that the KV Defendants knew were invalid and/or procured fraudulently. Section 4 of the Clayton, 15 U.S.C. § 15(a), authorizes private suits for damages based upon violations of the Sherman Act.

65.69. As the result of the KV Defendants' unlawful and anticompetitive conduct described above, Lannett has suffered and will continue to suffer economic injury.

## COUNT FIVE

### Violation of Deceptive Trade Practices Act

66.70. Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

13

71.   In marketing and selling their product, the KV Defendants have included, and continue to include, a statement in their product information packaging that their product is covered by U.S. Patent Nos. 4,822,816 ("the '816 patent") and 5,070,085 ("the '085 patent").

72.   The '816 patent expired on or about April 10, 2007.

73.   The '085 patent expired on or about April 18, 2006.

74.   Upon information and belief, the KV Defendants knew or should have known that the '609 patent, the '846 patent, the '666 patent, the '816 patent and the '085 patent is are invalid, expired and/or unenforceable, especially in light of the '539 Application.

68.75.   The KV Defendants have, and continue to represent, in the course of their business, that PrimaCare One™ is covered by the '609 patent, the '846 patent, the '666 patent, the '816 patent and the '085 patent, when the KV Defendants knew or should have known that this these patents was were invalid, expired and/or unenforceable.

69.76.   The KV Defendants have, and continue to advertise that PrimaCare One™ is covered by the '609 patent, the '846 patent, the '666 patent, the '816 patent and the '085 patent, when the KV Defendants knew or should have known that this these patents was were invalid, expired and/or -unenforceable.

77.   The KV Defendants have acted in bad faith in the marketplace by publicizing the '609 Patent, the '846 patent, the '666 patent, the '816 patent and the '085 patent as valid.

70.78.   Upon information and belief, and in the course of their business, as alleged above, the KV Defendants' conduct violates 6 Del. C. § 2532.

71.79.   The KV Defendants' conduct violates 6 Del. C. § 2532 and unfairly interferes with Lannett's ability to compete with the KV Defendants on the merits of their products.

72.80.   Because the KV Defendants' conduct violates 6 Del. C. § 2532, Lannett has suffered and will continue to suffer economic injury.

14

## COUNT SIX

### Commercial Disparagement

**Formatted:** Bullets and Numbering

81.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

82.    In June 2008, the KV Defendants caused a letter to be sent to numerous customers and/or potential customers of Lannett, which letter contained false and misleading statements of fact regarding Lannett's Multivitamin With Minerals product. A true and correct copy of the June 2008 letter is attached hereto as Exhibit 9.

83.    The false and misleading statements contained in the aforementioned letter include, but are not necessarily limited to, the KV Defendants' assertion that "[t]he sources of iron are…different" in the Lannett Multivitamin With Minerals product and the KV Defendants' product, PrimaCare® ONE.

84.    On or about June 19, 2008, the KV Defendants caused a second letter to be sent to numerous customers and/or potential customers of Lannett, which letter contained false and misleading statements of fact regarding Lannett's Multivitamin With Minerals product. A true and correct copy of the June 19, 2008 letter is attached hereto as Exhibit 10.

85.    The false and misleading statements contained in the aforementioned letter include, but are not necessarily limited to, the KV Defendants' assertion and suggestion that Lannett's Multivitamin With Minerals product does not use "high quality, pharmaceutical grade fish oils" as a component of the manufacturing process.

86.    In July 2008, the KV Defendants caused a third letter to be sent to numerous customers and/or potential customers of Lannett, which letter contained false and misleading statements of fact regarding Lannett's Multivitamin With Minerals product. A true and correct copy of the July 2008 letter is attached hereto as Exhibit 11.

15

87.    The false and misleading statements contained in the aforementioned letter include, but are not necessarily limited to, the KV Defendants' assertions and suggestions that Lannett's Multivitamin With Minerals product contains ferric iron rather than ferrous iron, and that the iron contained in Lannett's product is ten times less soluble than the iron contained in the KV Defendants' product, PrimaCare® ONE.

88.    Upon information and belief, the KV Defendants have made additional false and/or misleading statements to customers and/or potential customers of Lannett regarding Lannett's Multivitamin With Minerals product and/or Lannett generally.

89.    When the KV Defendants sent the aforementioned letters to the customers and/or potential customers of Lannett, the KV Defendants knew that their statements were false or, at a minimum, they acted in reckless disregard of the truth or falsity of their statements.

90.    When sending out the aforementioned letters, the KV Defendants intended or reasonably should have recognized that their publication of the misrepresentations made in said letters would cause Lannett's customers not to distribute and/or to discontinue any distribution of Lannett's Multivitamin With Minerals product, thereby causing pecuniary loss to Lannett.

91.    As a result of the misrepresentations made in the aforementioned letters, customers or potential customers of Lannett have declined to distribute and/or to continue to distribute Lannett's Multivitamin With Minerals product, thereby causing pecuniary loss to Lannett.

92.    As a result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

## COUNT SEVEN

### Tortious Interference With Contract

16

Formatted: Bullets and Numbering

93.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

94.    As previously alleged, in June and July 2008, the KV Defendants sent out at least three (3) different letters to customers and/or potential customers of Lannett, which letters contained statements that were false and/or misleading about Lannett's Multivitamin With Minerals product.   See Exhibits 9, 10 and 11.

95.    Before the KV Defendants sent the aforementioned letters, Lannett had entered into contractual relationships with numerous distributors, who purchased various quantities of Lannett's Multivitamin With Minerals product, for subsequent sale and distribution to consumers.

96.    As a direct and proximate result of the aforementioned letters sent by the KV Defendants, several customers of Lannett have rescinded and/or terminated their agreements to purchase and/or distribute Lannett's Multivitamin With Minerals product, thereby causing pecuniary loss to Lannett.

97.    The KV Defendants knew about Lannett's contractual relationships and acted purposefully and with a specific intention to harm Lannett by interfering with same.

98.    As a result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

99.    The KV Defendants acted without permission or justification in interfering with Lannett's contractual relationships with its customers.

100.    It is believed and, therefore, averred that the interference by the KV Defendants with Lannett's contractual relationships was willful and malicious and was carried out with a specific intent to injure Lannett in conducting its business, such that would entitle Lannett to punitive damages.

## COUNT EIGHT

### Tortious Interference With Prospective Contractual Relationships

101.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

102.    As of June 2008, Lannett was promoting its Multivitamin With Minerals product for sale, and was about to enter into contracts with numerous additional distributors, who were to purchase various quantities of Lannett's Multivitamin With Minerals product, for subsequent sale and distribution to consumers

103.    As previously alleged, in June and July 2008, the KV Defendants sent out at least three (3) different letters to customers and/or potential customers of Lannett, which letters contained statements that were false and/or misleading about Lannett's Multivitamin With Minerals product.  See Exhibits 9, 10 and 11.

104.    As a direct and proximate result of the aforementioned letters sent by the KV Defendants, several potential customers of Lannett have declined to purchase and/or distribute Lannett's Multivitamin With Minerals product, thereby causing pecuniary loss to Lannett.

105.    The KV Defendants knew about Lannett's prospective contractual relationships and acted purposefully and with a specific intention to harm Lannett by interfering with same.

106.    As a result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

107.    The KV Defendants acted without permission or justification in interfering with Lannett's prospective contractual relationships with its customers.

108.    It is believed and, therefore, averred that the interference by the KV Defendants with Lannett's prospective contractual relationships was willful and malicious and was carried

18

out with a specific intent to injure Lannett in conducting its business, such that would entitle Lannett to punitive damages.

## COUNT NINE

### Tortious Interference With Contract

109.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragaphs of this Complaint.

110.    In 2007, Lannett purchased from Albion Laboratories, Inc. and Albion International, Inc. ("Albion") certain quantities of chelated iron, which Albion sells under the name Ferrochel®, for use as a source of iron in Lannett's "Multivitamin with Minerals" product.

111.    After learning of Lannett's efforts to produce and market its "Multivitamin with Minerals" product, the KV Defendants contacted Lannett's suppliers, including Albion, for the sole purpose of interrupting and cutting off Lannett's relationships with its suppliers so that Lannett could not obtain the ingredients necessary to manufacture its competing product.

112.    As a direct and proximate result of the KV Defendants' actions, Albion has demanded that Lannett return to Albion all quantities of its chelated iron product Ferrochel® which Lannett previously purchased from Albion, and which had already been integrated into the Lannett "Multivitamin with Minerals" products that were manufactured and/or distributed.

113.    The KV Defendants knew about Lannett's contractual relationship with Albion, its supplier, and acted purposefully and with a specific intention to harm Lannett by interfering with same.

114.    As a direct and proximate result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

115.    The KV Defendants acted without permission or justification in interfering with Lannett's contractual relationship with Albion.

19

116.   It is believed, and therefore averred, that the interference by the KV Defendants with Lannett's contractual relationship was willful and malicious and was carried out with a specific intent to injure Lannett in conducting its business, such that would entitle Lannett to punitive damages.

## COUNT TEN

### Tortious Interference With Prospective Contractual Relationship

117.   Lannett repeats, re-alleges and incorporates the allegations in all preceding paragaphs of this Complaint.

118.   Had it not been for the improper actions of the KV Defendants, as set forth above, Lannett would have continued to have a contractual and business relationship with Albion for the purchase of Ferrochel® chelated iron for use as a source of iron in Lannett's "Multivitamin with Minerals" product.

119.   As previously alleged, after learning of Lannett's efforts to produce and market its "Multivitamin with Minerals" product, the KV Defendants contacted Lannett's suppliers, including Albion, for the sole purpose of interrupting and cutting off Lannett's relationships with its suppliers so that Lannett could not obtain the ingredients necessary to manufacture its competing product.

120.   As a direct and proximate result of the KV Defendants' actions, Albion has not only refused to continue to supply Lannett with its chelated iron product Ferrochel®, it has refused altogether to sell or supply any of its iron products to Lannett.

121.   The KV Defendants knew about Lannett's prospective continued business relationship with Albion, and acted purposefully and with a specific intention to harm Lannett by interfering with same.

20

122.    As a direct and proximate result of the conduct of the KV Defendants, Lannett has suffered and will continue to suffer economic injury.

123.    The KV Defendants acted without permission or justification in interfering with Lannett's prospective business relationship with Albion.

124.    It is believed, and therefore averred, that the interference by the KV Defendants with Lannett's prospective business relationship was willful and malicious and was carried out with a specific intent to injure Lannett in conducting its business, such that would entitle Lannett to punitive damages.

### COUNT ELEVEN

### Anti-trust Violations

125.    Lannett repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

126.    As previously alleged, the KV Defendants have obtained and maintained monopoly power in the relevant product market, which is multivitamin/mineral products containing omega-3 fatty acids for prenatal and postnatal support, including all products that are reasonably interchangeable.

127.    As previously alleged, the KV Defendants have also obtained and maintained monopoly power in the relevant geographic market, which is the United States of America.

128.    The KV Defendants' conduct, as alleged herein, has had, and will continue to have, a substantial effect on interstate commerce.

129.    Upon information of belief, the KV Defendants knew of Lannett's contract and prospective continued business relationship with Albion, for the purchase of Ferrochel® chelated iron for use as a source of iron in Lannett's "Multivitamin with Minerals" product.

21

130.    The KV Defendants have maintained and are continuing to attempt to maintain their market power by obstructing and interfering with Lannett's relationships with its suppliers, including but not limited to Albion, so that Lannett will be unable to manufacture and/or market its competing product.

131.    As a result of the KV Defendants' anticompetitive conduct, Lannett stands to lose substantial sales of its product.

132.    The KV Defendants have violated Section 2 of the Sherman Act, 15 U.S.C. § 2, by unlawfully maintaining or attempting to maintain market power in the relevant market by interfering with Lannett's relationships with its suppliers.

133.    As the result of the KV Defendants' unlawful and anticompetitive conduct described above, Lannett has suffered and will continue to suffer economic injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court order the following relief:

A.    Declare that the Multivitamin With Mineral Capsules sold by Lannett Company Inc. does not infringe upon the claims of the '846 patent, the '666 patent, the '609 patent, the '925 patent, the '329 patent, and the '857 patent, and the '814 patent;

B.    Declare that the claims of the '846 patent, the '666 patent, the '609 patent, the '329 patent and the '857 patent issued to the KV Defendants are invalid;

C.    Declare that the claims of the '609 patent, the '846 patent and the '666 patent issued to the KV Defendants are unenforceable;    and

D.    Award monetary damages resulting from the KV Defendants' unlawful acts as set forth herein, in an amount to be proven at trial, together with interest from the date of accrual thereof;

22

E.   Award Lannett punitive damages, in an amount sufficient to punish the KV Defendants for their egregious and intentional misconduct and to deter them and others from engaging in similar misconduct;

F.   Award Lannett treble damages pursuant to 15 U.S.C. § 15 and 6 Del. C. §2533(c);

G.   Award Lannett attorneys' fees and costs with respect to its antitrust claims pursuant to 15 U.S.C. § 15, and with respect to its claim pursuant to the Delaware Deceptive Trade Practices Act, 6 Del. C. -§ 2533(b);

H.   Enter a permanent injunction pursuant to 15 U.S.C. § 26, prohibiting the KV Defendants from restraining trade in violation of Section 2 of the Sherman Act, 15 U.S.C. §2;

I.   Enter a permanent injunction pursuant to 6 Del. C. § 2533(a), prohibiting the KV Defendants from committing deceptive trade practices in violation of the 6 Del. C. §2532; and

J.   Award such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Lannett hereby demands a trial by jury on all issues.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

By:    /s/ *Sophia Siddiqui*

Sophia Siddiqui, Esquire (#4914)
Gerard P. Norton, Esquire (*)
Alfred J. Monte, Jr., Esquire (*)
Jonathan R. Lagarenne, Esquire (*)
Ross J. Oehler, Esquire (*)

23

Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE  19801
(302) 622-4278
(302) 656-8920
ssiddiqui@foxrothschild.com

Of Counsel
Alfred J. Monte, Jr. Esquire
Ross J. Oehler, Esquire
Fox Rothschild LLP
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422-3001
(610) 397-6500
(610) 397-0450

Attorneys for Plaintiff
Lannett Company, Inc.

(*) Admitted *Pro Hac Vice*                     Formatted: Font: Italic

Date: June 10, 2008          August 14, 2008

24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LANNETT COMPANY, INC.,                      :
                                            :    CIVIL ACTION
                Plaintiff            :    NO. 08-338 (JJF)
                                            :
     v.                                   :
                                            :
KV PHARMACEUTICAL COMPANY,                  :
THER-RX CORP., and DRUGTECH CORP.,          :
                                            :
                Defendants           :
_____     :
                                            :
KV PHARMACEUTICAL COMPANY,                  :
THER-RX CORP., and DRUGTECH CORP.,          :
                                            :
           Counterclaim-Plaintiffs   :
                                            :
     v.                                   :
                                            :
LANNETT COMPANY, INC.,                      :
                                            :
           Counterclaim-Defendant    :

## ORDER

AND NOW, this _____ day of _____, 2008, upon consideration of the Motion of

Plaintiff/Counterclaim-Defendant Lannett Company, Inc. to File a Second Amended Complaint, it is

HEREBY ORDERED that the aforesaid Motion is GRANTED.

                          BY THE COURT:

                          _____
                          The Honorable Joseph J. Farnan, Jr., J.