**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

LANNETT COMPANY, INC.,

Plaintiff,

v.

KV PHARMACEUTICAL COMPANY, THER-RX CORP., and DRUGTECH CORP.,

Defendants.

---

KV PHARMACEUTICAL COMPANY, THER-RX CORP., and DRUGTECH CORP.,

Counterclaim-Plaintiffs,

v.

LANNETT COMPANY, INC.,

Counterclaim-Defendant.

CIVIL ACTION NO. 08-338 (JJF)

# MEMORANDUM OF LAW IN SUPPORT OF COUNTERCLAIM-DEFENDANT LANNETT COMPANY INC.'s MOTION TO STRIKE COUNTERCLAIM-PLAINTIFFS' CLAIM FOR PERMANENT INJUNCTION

**FOX ROTHSCHILD LLP**

Sophia Siddiqui, Esq. (No. 4914)
James L. Griffith, Esq. (*)
Alfred J. Monte, Jr., Esq. (*)
Jonathan R. Lagarenne, Esq. (*)
Joshua M. Hummel, Esq. (*)
Eric E. Reed, Esquire (*)
919 N. Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 622-4278
Facsimile: (302) 656-8920
*Attorneys for Plaintiff/Counterclaim-Defendant Lannett Company, Inc.*

(*) Admitted *Pro Hac Vice*

**TABLE OF CONTENTS**

RELEVANT BACKGROUND ........ 1

A. KV'S Counterclaim ........ 1

B. KV' Claim for Injunctive Relief ........ 2

C. The Wholesale Removal of KV's PrimaCareONE Product From the Market For Reasons Having Nothing to Do with Lannett ........ 2

ARGUMENT ........ 3

POINT I ........ 3

A. KV Cannot Show Irreparable Harm Where There Is No Evidence That Any Infringing Product With The Allegedly Improper Labeling Remains On The Market and Where Any Purported Damages Are Recoverable Monetarily ........ 5

B. KV Cannot Show Irreparable Harm Because It No Longer Sells Its PrimaCareONE Product ........ 5

CONCLUSION ........ 8

# TABLE OF AUTHORITIES

## Cases

Adams v. Freedom Forge Corp., 204 F.3d 475, 484-85 (3d Cir. 2000) .......... 4
eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392-394 (2006) .......... 3
Foster v. American Machine & Foundry Co., 492 F.2d 1317 (2d Cir. 1974) .......... 6
IMX, Inc. v. Lendingtree, LLC, 2005 U.S. Dist. LEXIS 33179 (D.Del. 2005) .......... 5
Polymer Technologies, 103 F.3d at 974 .......... 5
Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970, 974 (Fed. Cir. 1996) .......... 4
Reebok Int'l Ltd. v. Baker, Inc., 32 F.3d 1552 (Fed. Cir. 1994) .......... 6
Reebok Int'l Ltd. V. Baker, Inc., 32 F.3d 1552 (Fed. Cir. 1994) .......... 4
Roper Corp. v. Litton Systems, Inc., 757 F.2d 1266, 1273 (Fed. Cir. 1985) .......... 5
Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001) .......... 3
Shields, 254 F.3d at 482 .......... 6

Counterclaim-Defendant Lannett Company, Inc. ("Lannett") moves the Court to issue an Order striking the claim for permanent injunction asserted by Counterclaim-Plaintiffs KV Pharmaceutical Company, Ther-RX Corporation and DrugTech Corporation (collectively "KV"). In support of its motion, Lannett states the following:

## RELEVANT BACKGROUND

### A.   KV'S Counterclaim

KV's counterclaim placed one Lannett product at issue: Lannett's Multivitamin With Mineral Capsules ("MwM Product"). See Counterclaim, ¶ 12.

KV claims that Lannett violated KV's patent in selling the generic equivalent of KV's PrimaCareONE product. Id., ¶¶ 48-65. KV also claims that Lannett violated KV's trademark and engaged in false advertising and unfair competition by making the following statement on bottle of Lannett's generic: "Compare to the active ingredients in PrimaCareONE * Registered Trademark of Ther-Rx Corp." Id., ¶¶ 34-46, 66-81.

Following the hearing on KV's Motion for Temporary Restraining Order, Lannett agreed not to use the language that KV alleged was improper. Moreover, Lannett recalled shipments sent to distributors, and roughly 82% of such shipments were returned. For those bottles not returned, Lannett agreed to provide new labels to customers who had already purchased MwM (with content agreed to by KV). Lannett fully complied with its commitments and the Court's July 17, 2008 Order.

There is no evidence that Lannett would again use the language that KV alleged was improper.

**B. KV' Claim for Injunctive Relief**

In its Counterclaim, KV sought a variety of preliminary and permanent injunctive relief. See Counterclaim, Prayer for Relief, ¶¶ B, F(1)-(6). Most notably, KV sought a preliminary and permanent injunction restraining Lannett from allegedly infringing on KV's patents, from using the PrimaCare® Marks, from marketing its product as a generic version of PrimaCare One®, and from using any other mark or phrase suggesting that Lannett's products was associated with, endorsed by, or had any relationship with KV. Id.

The premise of all of these claims for preliminary and permanent injunctive relief was, according to KV, that Lannett's alleged improper actions in marketing and selling a generic version of PrimaCare and PrimaCare One would "continue to" cause them and their PrimaCare Marks irreparable harm or damage unless Lannett is "enjoined by this Court." Id., ¶ 47, ¶ 53 (First Cause of Action), ¶ 59 (Second), ¶ 65 (Third), ¶ 71 (Fourth), ¶ 76 (Fifth) & ¶ 81 (Sixth).

In their motion seeking a temporary restraining order, KV repeatedly asserted that the "irreparable harm" that it would suffer was that the continued marketing and sales of Lannett's generic product "will destroy the market for PrimaCareONE" and would "damage the value and reputation of the PrimaCareONE product," thereby deterring consumers from buying the product. See Opening Brief in Support of Counterclaim-Plaintiffs' Motion for Temporary Restraining Order, Early Preliminary Injunction Hearing and Preliminary Injunction, at p. 31, 33 ("KV TRO Brief"); see also id. at pp. 7-8.

**C. The Wholesale Removal of KV's PrimaCareONE Product From the Market For Reasons Having Nothing to Do with Lannett**

In the culmination of a series of Food and Drug Administration ("FDA")-directed product recalls and cessation of sales and marketing activities attributable to KV's manufacturing quality issues, on February 3, 2009, KV announced the recall of prescription prenatal vitamin products,

including PrimaCare ONE and PrimaCare. KV recalled and ceased sales of what it has described as its flagship products "because the products may have been manufactured under conditions that did not sufficiently comply with current Good Manufacturing Practice (cGMP)." The recall posting from the FDA web site is attached as Exhibit A, and may be found at http://www.fda.gov/oc/po/firmrecalls/therrx02_09.html.

The recall notice also states that "This recall is being conducted with the knowledge of the U.S. Food and Drug Administration (FDA). At this time, the Company is unable to determine when distribution of these products will resume." Id.

In other words, the complete recall of KV's PrimaCareONE product due to manufacturing defects has effectively destroyed the market for PrimaCareONE, and the continued marketing and sales of Lannett's generic would have no impact on the market for PrimaCareONE.

## ARGUMENT

## POINT I

## THIS COURT SHOULD STRIKE KV'S CLAIM FOR PERMANENT INJUNCTIVE RELIEF

When deciding whether to issue a permanent injunction, a court considers four factors: "(1) whether the moving party has shown actual success on the merits; (2) whether denial of injunctive relief will result in irreparable harm to the moving party; (3) whether granting of the permanent injunction will result in even greater harm to the defendant; and (4) whether the injunction serves the public interest." Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001). This test applies to the application of permanent injunctive relief in all suits where a party is requesting an injunction, including those that arise under the Patent Act. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392-394 (2006) ("We hold only that the decision whether

to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards.").

"The irreparable harm requirement is met if the plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages." Adams v. Freedom Forge Corp., 204 F.3d 475, 484-85 (3d Cir. 2000) (citations omitted). Loss of income alone does not constitute irreparable harm, since the nature of the remedy is "purely economic in nature and thus compensable in money." Id.

If either the plaintiff ceases selling the allegedly infringed-upon product, or the defendant ceases selling the infringing product, that may show the absence of irreparable harm. See Polymer Technologies, Inc. v. Bridwell, 103 F.3d 970, 974 (Fed. Cir. 1996) (no irreparable harm where "the non-movant has or will soon cease the allegedly infringing activities"); Reebok Int'l Ltd. V. Baker, Inc., 32 F.3d 1552 (Fed. Cir. 1994) (no irreparable harm "once the patentee stops making and advertising its product embodying the patent and its distributors have nearly ceased selling any").

Here, KV cannot establish irreparable harm for two reasons. First, Lannett has committed not to use the language that KV claimed violated the Lanham Act, and has in fact not used that language, thereby mooting the claim for injunctive relief, and any damages KV purportedly suffered as a result of the alleged patent violation are fully recoverable monetarily.

Second, KV has ceased the sale of its PrimaCareONE product, thus negating the possibility of any harm, never mind irreparable harm, allegedly resulting from the continued sale of Lannett's product.

**A. <u>KV Cannot Show Irreparable Harm Where There Is No Evidence That Any Infringing Product With The Allegedly Improper Labeling Remains On The Market and Where Any Purported Damages Are Recoverable Monetarily</u>**

The basis for KV's Lanham Act claims rests entirely on Lannett's reference to PrimaCareONE on the bottle of Lannett's generic product.[1] Yet Lannett has already agreed to stop using the challenged label, has accepted the return of the vast majority of the bottles and has distributed new labels to cover the labels of the product still in circulation.

Given that Lannett has "cease[d] the allegedly infringing activities," a permanent injunction is "unnecessary." <u>See</u> <u>Polymer Technologies</u>, 103 F.3d at 974; <u>see also</u> <u>IMX, Inc. v. Lendingtree, LLC</u>, 2005 U.S. Dist. LEXIS 33179 (D.Del. 2005). At most, KV can claim to a fear of future non-infringement, but that is insufficient for an injunction to issue. <u>See</u> <u>Roper Corp. v. Litton Systems, Inc.</u>, 757 F.2d 1266, 1273 (Fed. Cir. 1985).

As to KV's patent claims, KV has suffered no irreparable harm because its damages are fully compensable monetarily. KV's own expert, Richard T. Rapp, purported to calculate such monetary damages, an admission that monetary relief is available. As to KV's patent claims, therefore, KV cannot show irreparable harm.

**B. <u>KV Cannot Show Irreparable Harm Because It No Longer Sells Its PrimaCareONE Product</u>**

Moreover, KV's purported irreparable harm – the loss of PrimaCareONE's sales and market position – does not exist (to the extent it ever existed) because KV's PrimaCareONE product no longer has any sales or market share, having been taken completely off the market for the foreseeable future. Thus, the absence of an injunction would cause no harm (never mind

[1] KV also refers to Lannett's reference on the product insert that its vitamin C component for Multivitamin with Minerals could be compared to Ester-C, but it is unclear whether KV actually asserts claims as to this issue. To the extent that it does, Lannett is filing a separate motion to preclude evidence as to Ester-C because KV does not own or hold an exclusive license to the mark and has no evidence of damages resulting from Lannett's alleged use of the Ester-C mark.

irreparable harm) to KV because the marketing and sales of Lannett's generic product[2] is taking no sales and market share away from KV. In other words, with or without an injunction, KV's sales of PrimaCareONE remains the same -- zero. As a result, KV cannot establish any irreparable harm required for the issuance of injunctive relief.

Some courts addressing the irreparable harm element have found it significant if the party seeking injunctive relief no longer makes or sells the infringed-upon product. For example, in Reebok Int'l Ltd. v. Baker, Inc., 32 F.3d 1552 (Fed. Cir. 1994), the trial court found that plaintiff Reebok "no longer produces" the patented shoe. Affirming the denial of injunctive relief, the Federal Circuit concluded that any alleged harm to reputation (which KV has alleged here) is "unlikely to occur or may be de minimis once the patentee stops making and advertising its product embodying the patent and its distributors have nearly ceased selling any." Id., 32 F.3d at 1558; see also Foster v. American Machine & Foundry Co., 492 F.2d 1317 (2d Cir. 1974) (finding no irreparable harm where plaintiff patent holder did not make a product using the patent and would not be benefited by the injunction). Here, there is no dispute that KV has stopped selling its product, thus showing KV cannot sustain its burden of proving irreparable harm.

Moreover, given that KV is no longer selling its PrimaCareONE product, enjoining sales of Lannett's generic product would not serve the "public interest." See Shields, 254 F.3d at 482. To the contrary, it would thwart the public interest by denying the public access to a generic equivalent of the now-unavailable PrimaCareONE product. An injunction would mean that the public could buy neither the PrimaCareONE product nor Lannett's generic.

---

[2] Lannett only briefly sold the Multivitamin with Minerals product, which is the accused product in KV's Counterclaim. In October 2008 Lannett launched another product, OB-Natal ONE. The parties dispute whether OB-Natal ONE is an accused product because KV never sought leave to amend its Counterclaim to designate it as such. Lannett's motion on this topic is pending.

7

## CONCLUSION

For the foregoing reasons, Counterclaim-Defendant Lannett requests that the Court issue the attached Order striking the claim for permanent injunction asserted by Counterclaim-Plaintiffs KV Pharmaceutical Company, Ther-RX Corporation and DrugTech Corporation.

Respectfully Submitted,

**FOX ROTHSCHILD LLP**

/s/ Sophia Siddiqui
Sophia Siddiqui, Esq. (No. 4914)
James L. Griffith, Esq. (*)
Alfred J. Monte, Jr., Esq. (*)
Jonathan R. Lagarenne, Esq. (*)
Joshua M. Hummel, Esq. (*)
Eric E. Reed, Esquire (*)
919 N. Market Street, Suite 1300
Wilmington, DE 19801
Telephone: (302) 622-4278
Facsimile: (302) 656-8920
*Attorneys for Plaintiff/Counterclaim-Defendant Lannett Company, Inc.*

(*) Admitted *Pro Hac Vice*

Dated: February 27, 2009

**CERTIFICATE OF SERVICE**

I, Sophia Siddiqui, hereby certify that on this date the foregoing was served upon the following individuals via CM/ECF and as follows:

**VIA HAND DELIVERY & E-MAIL**

Frederick L. Cottrell, III, Esquire
Chad M. Shandler, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street, P.O. Box 551
Wilmington, DE 19801

**VIA E-MAIL**
Richard L. DeLucia, Esquire
Elizabeth A. Gardner, Esquire
Charles A. Weiss, Esquire
Kenyon & Kenyon LLP
One Broadway
New York, NY 10004

By: /s/ Sophia Siddiqui
Sophia Siddiqui, Esquire (No. 4914)

Dated: February 27, 2009